DENNIS K. BURKE
United States Attorney
District of Arizona
WALLACE H. KLEINDIENST
Assistant U.S. Attorney
United States Courthouse
405 W. Congress St., Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Wallace.Kleindienst@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 11-0187-TUC-LAB |
| Plaintiff, | **GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION TO QUASH GRAND JURY SUBPOENAS** |
| v. | |
| Jared Lee Loughner, | |
| Defendant. | **(Filed Under Seal)** |

Now comes the United States, by and through its undersigned attorneys, to respond to the defendant's Emergency Motion to Quash Grand Jury Subpoenas. In support of this response, the government states as follows:

I. Background

The grand jury is investigating matters relating to a shooting on January 8, 2011 in Tucson, Arison. The defendant moves to quash subpoenas served on his parents (Randy and Amy Loughner) and other relatives (Jeff, Linda, and Jenny Totman) in connection with that investigation. The defendant asserts that the grand jury's investigation "must not proceed beyond the point the grand jury 'has identified an offense' to the satisfaction of the probable cause standard." (Memo. of Points And Authorities (hereinafter "Memo."), p. 5 (quoting *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991))  The defendant further asserts, in essence, that the subpoenaed witnesses do not have any evidence relevant to the limited role he perceives for the grand jury. The defendant's arguments, which misconstrue the nature of the grand jury's role, must be rejected.

II. <u>The Grand Jury's Function</u>

The Supreme Court has repeatedly emphasized the broad power of the federal grand jury. For example, the grand jury "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *R. Enterprises, Inc*., 498 U.S. at 297 (quoting *United States v. Morton Salt Co.*, 338 U.S. 632, 642-643 (1950)). "The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *R. Enterprises, Inc.*, 498 U.S. at 297. Accordingly, the Supreme Court has recognized that the grand jury "paints with a broad brush." *Id.* "A grand jury investigation 'is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.'" *Id.* (quoting *Branzburg v. Hayes*, 408 U.S. 665, 701 (1972) (quoting *United States v. Stone*, 429 F.2d 138, 140 (2d Cir. 1970))).

III. <u>The Subpoenas Seek Relevant Information</u>

To the extent that the grand jury is investigating murder, the state of mind of the defendant would be relevant to the grand jury's proper function of running down every available clue and examining all witnesses in a proper way. *R. Enterprises, Inc.*, 498 U.S. at 297; *Branzburg v. Hayes*, 408 U.S. at 701. For first degree murder, the grand jury would be entitled to consider all evidence relating to premeditation. The Ninth Circuit recently recognized that motive and planning activities are probative of premeditation. *United States v. Begay*, ___ F.3d ___, 2011 WL 94566 at *3 (9th Cir. Jan. 12, 2011) (citing 2 Wayne R. LaFave, *Substantive Criminal Law* § 14.7(a) (2d ed. 2009)).

For example, in *United States v. Furrow*, 125 F. Supp. 2d 1170 (C.D.Ca. 2000), the grand jury was investigating several murders and firearms offenses and had returned a three-count indictment charging Furrow with one of the murders, but not the others. The grand jury continued its investigation, and Furrow claimed that the subpoenas to his family and friends, who had not witnessed the shootings, were improper on several grounds. The court rejected his challenges. First, it held that "[t]he grand jury is not limited . . . to seeking information from individuals present at the crime scene. Rather, it is entitled to question

'persons suspected of no misconduct but who may be able to provide links in a chain of evidence relating to criminal conduct of others.'" *Id*. at 1174 (quoting *United States v. Mandujano*, 425 U.S. 564, 573 (1976)). The court also rejected Furrow's claim that questions about his mental health, use of drugs, and ability to form the required specific intent were improper because they could be used at the penalty phase. Because the testimony was relevant to the grand jury's determination of Furrow's intent and whether it should indict at all, the court stated that such inquiries were properly within the grand jury's purview. *Id*. at 1175-76. The court thus concluded that "the government was entitled to inquire into the subject of Defendant's mental capacity, even though its questions may have been likely to elicit evidence relevant to sentencing considerations." *Id*.

Moreover, to have the potential to pursue the death penalty, the grand jury will need to hear evidence on, and any indictment would have to allege (1) factors that render the defendant eligible for the death penalty, *see* 18 U.S.C. § 3591(a); (2) the threshold mental culpability requirements, *see* 18 U.S.C. § 3591(a)(2); and (3) statutory aggravating factors, *see* 18 U.S.C. § 3592(c). That is, in *Ring v. Arizona*, the Supreme Court held that, for purposes of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), eligibility factors operate as the "functional equivalent of an element of a greater offense," and therefore must be found by a petit jury under the Sixth Amendment. 536 U.S. 584, 609 (2002) (citation omitted). Because, in federal prosecutions, an offense element (or its functional equivalent) must be charged in the indictment under the Indictment Clause of the Fifth Amendment, *see, e.g., United States v. Cotton*, 535 U.S. 625, 627 (2002), those factors must be alleged in the indictment. Accordingly, relevant evidence on those factors must be presented to the grand jury. *United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003) ("with the exception of the fact of prior convictions, those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt"). One of the statutory

aggravating factors is "[t]he defendant committed the offense after substantial planning and premeditation to cause the death of a person." 18 U.S.C. § 3592(c)(9).

The defendant is the only child of Amy and Randy Loughner. The defendant's mother worked outside the home, and his father was a stay-at-home dad. Defendant briefly lived outside the family home in 2007 or 2008, when he shared an apartment with an acquaintance. For approximately the last two years, up to and including the date of the offense, January 8, 2011, the defendant has resided with his parents at their home. The defendant purchased the murder weapon, a 9mm Glock semi-automatic pistol, in November 2010. It is believed that he stored the weapon at the family residence. Agents seized electronic media and a safe from the house following the defendant's arrest. Relevant evidence has been recovered from those items. His parents were aware of some of his activities which occurred the night before the shooting, on the evening of January 7, 2011, as well as the following morning before the shootings. Jeffrey Totman, Mona Totman, and Jennifer Totman, the defendant's uncle, aunt and cousin, respectively, live in the Phoenix area.

Evidence collection (and the exploration of that evidence) relevant *only* to mitigating or non-statutory aggravating factor(s) could arguably be considered to be outside the scope and power of a proper grand jury investigation. *But see Furrow*, 125 F. Supp. 2d at 1176. However, it is conceivable that evidence relevant to the elements (and the functional equivalent of elements) of the crime may also be relevant to mitigating factors. That kind of overlap does not mean the grand jury is precluded from pursuing the evidence. For example, in *United States v. (Under Seal)*, 714 F.2d 347, 350 (1983), the Fourth Circuit reversed a district court's order quashing a grand jury subpoena "because sought-after testimony is of demonstrated relevancy to the grand jury's investigation." As the Court explained:

> Central to our decision is the district court's finding that it was likely that the petitioner "had relevant and material evidence to present to the Grand Jury." Once it is shown that a subpoena might aid the grand jury in its investigation, it is generally recognized that the subpoena should issue even though there is also a possibility that the prosecutor will use it for some purpose other than obtaining

evidence for the grand jury. [10/]   For example, we have held that an adequate showing is made to justify the issuance of a subpoena if the United States Attorney avers that it is sought in good faith to aid the grand jury's investigation even though circumstances suggest that it might also be used as a means for civil discovery. *In re Grand Jury Subpoenas, April 1978*, 581 F.2d 1103 (4 Cir.1978). Similarly, it has been held that a subpoena, issued after an indictment was returned and allegedly sought by the prosecutor to obtain evidence for a criminal trial, should be quashed only if that is shown to be the "sole or dominant purpose of seeking the evidence." Conversely, "a good faith inquiry into other charges within the scope of the grand jury's lawful authority is not prohibited even if it uncovers further evidence against an indicted person." *In re Grand Jury Proceedings*, 632 F.2d 1033, 1040-41 (3d Cir.1980), and cases cited therein.

*(Under Seal)*, 714 F.2d at 350-51; *but see United States v. Friend*, Criminal Action No. 3:99cr201-01 (E.D.Va.), Memorandum Opinion of April 5, 2000, at 8-9 (grand jury practice which did not aid the grand jury in its quest for information bearing on its decision to indict improper, despite satisfaction of the sole or dominant purpose test). [2/]

IV. <u>The Defendant Has Not Met The Burden Required For Quashing</u>

The Supreme Court has stated that "the law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *R. Enterprises, Inc.,* 498 U.S. at 300. Thus, "a grand jury subpoena issued through normal channels is presumed to be reasonable, and the burden of showing unreasonableness must be on the recipient who seeks to avoid compliance." *Id*. at 301.

---

[10/] [Footnote in original] In the rare cases where a witness has been granted relief from the grand jury's process it is usually predicated upon a finding that nothing of relevance will be obtained by enforcing the process. *See Ealy v. Littlejohn*, 569 F.2d 219 (5 Cir.1978) (First Amendment protects political association from inquiry by the grand jury into its financing and membership when that bears no relation to the subject matter of the investigation); *Bursey v. United States*, 466 F.2d 1059, 1079-81 (9 Cir.1972) (protecting witness from abusive, repetitive questioning found to serve no useful purpose); *Brown v. United States*, 245 F.2d 549, 555 (8 Cir.1957) (perjury conviction may not be grounded upon false statements made on matters immaterial to the grand jury's investigation).

[2/] It should be noted that the viability of *Friend* is questionable. *Friend* was decided before the Supreme Court decided *Ring*. In *Friend*, one of the bases given for the Court's conclusion that the government's questioning was improper was that "it is clear that the aggravating and mitigating factors necessary to the imposition of the death penalty cannot be construed as elements of the offense, and therefore, need not be assessed by the grand jury or charged in the indictment." *Friend*, Memo. at 13. (The defendant has attached a copy of *Friend* to his motion.) As demonstrated above, after *Ring*, there is no questions that the aggravating factors must be considered by the grand jury and alleged in the indictment.

In the instant case, the defendant's claim is that the subpoenaed witnesses do not have evidence relevant to the appropriate inquiry of the grand jury. The Supreme Court has held that where "a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id*. The defendant has not met his burden.

V. The Timing of the Motion to Quash the Subpoenas

On Tuesday, January 25, 2011, agents served the defendant's parents and Phoenix relatives with subpoenas to appear before the grand jury on January 27, 2011. These five witnesses jointly retained attorney Laura Udall to represent them. On January 26, 2011, Ms. Udall emphatically asked government counsel to postpone the parents' appearance for humane reasons, because the parents were emotionally distraught and would have difficulty answering questions without crying. The government acceded to a one week continuance, based on this reason and counsel's assurance that the witnesses would appear before the grand jury on February 3, 2011, without the issuance of new subpoenas. Sometime on January 26, 2011, the defendant filed the motion to quash the grand jury subpoenas for all five witnesses. The grand jury meets this Thursday, February 3, 2011, and the government respectfully asks this Court make an expedited decision so that these witnesses can testify on that date, if the Court denies the motion to quash.

VI. Conclusion

As explained above, the evidence that the grand jury seeks is relevant to the crimes being investigated by the grand jury. Accordingly, the motion to quash should be denied.

Respectfully submitted this 31st day of January, 2011.

                                      DENNIS K. BURKE
                                      United States Attorney
                                      District of Arizona

                                      *s/Wallace H. Kleindienst*

                                      WALLACE H. KLEINDIENST
                                      Assistant U.S. Attorney

| | |
|---|---|
| 1 | Copy of the foregoing served electronically |
| 2 | or by other means this 31st day of January, 2011, to: |
| 3 | Judy C. Clarke, Esq.<br>Mark F. Fleming, Esq.<br>Reuben Camper Cahn, Esq. |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |