Judy Clarke
Clarke and Rice, APC
1010 2nd Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

Mark Fleming
Law Office of Mark F. Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 300-6202

Reuben Camper Cahn
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Defendant Jared Lee Loughner

**UNDER SEAL**

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>JARED LEE LOUGHNER,<br><br>    Defendant. | **Case No. 11CR00187-LAB**<br><br>**REPLY IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION TO QUASH SUBPOENAS EXCEEDING THE GRAND JURY'S AUTHORITY**<br><br>**REQUEST FOR ORAL ARGUMENT** |

**ISSUES PRESENTED**

1. Whether the subpoenas issued to the Loughners and the Totmans are presumptively improper efforts to use the grand jury as a discovery tool because they violate the Department of Justice's policy to "ordinarily avoid seeking to compel the testimony of a witness who is a close family relative of the defendant on trial," <u>see</u> United States Attorney's Manual § 9-23.211, and the government has presented no "specific justification" or theory of relevance to proper grand jury investigation, and the government has not "aver[red] that [they] are sought in good faith to aid the grand jury's investigation." <u>United States v. (Under Seal)</u>, 714 F.2d 347, 350 (4th Cir. 1983).

2. Whether the Totmans' subpoenas should be quashed because the government has failed to proffer any theory of relevance their testimony might provide to premeditation, intent, or any potentially relevant statutory aggravating factor under 18 U.S.C. § 3592, and there exists no such theory.

3. Whether the Loughners' subpoenas should be quashed, or in the alternative limited in scope to "links in the chain" evidence, because there exists a strong likelihood that free-ranging examination would result in the grand jury abuse by the government, especially in light of the government's refusal to identify a specific theory of relevance despite their possession of the results of both the FBI's and Pima County Sheriff's investigative interviews of the Loughners.

**OVERVIEW**

Mr. Loughner filed an emergency motion to quash grand jury subpoenas on January 26, 2011, out of concern that the government was attempting to use the grand jury for the improper purpose of obtaining pre-trial discovery about his defenses and potential sentencing mitigation. Specifically, he expressed concern about the subpoenas to his parents, Randy and Amy Loughner ("the Loughners"), and his aunt's family, Jeff and Linda Totman and their daughter Jennifer Totman ("the Totmans")—none of whom were witnesses to the shootings nor discernibly possessed any evidence relevant to the grand jury's probable cause determination. Mtn. at 6-7. These family members, however, might well possess evidence relevant to Mr. Loughner's trial defenses and mitigation. This raised the specter of grand jury abuse. See United States v. (Under Seal), 714 F.2d 347, 349-50 (4th Cir. 1983) (forbidden practices include "use of a grand jury by the prosecutor to harass witnesses . . . [or] as a means of civil or criminal discovery").

In the motion, Mr. Loughner identified the universe of statutory provisions possibly relevant to the grand jury's inquiry: 18 U.S.C. §§ 1111 & 1114 (official homicide and murder statutes) and 18 U.S.C. §§ 3593 & 3593 (authorization of the death penalty). Mtn. at 6-7. He also noted that the government's subpoenas to his close family members was especially egregious in light of the Department of Justice's policy against compelling the testimony of close family relatives. Mtn. at 9 (citing U.S. Attorney's Manual § 9-23.211).

On January 27, the Court ordered the government to respond forthwith and temporarily suspended enforcement of the subpoenas.

The government filed an opposition on January 31, in which it raises three arguments in response: (1) that Mr. Loughner has "misconstrue[d] the nature of the grand jury," Opp. at 1; (2) that

the Loughners and Totmans possess information relevant to "premeditation," "motive and planning activities," and statutory aggravating factors under 18 U.S.C. §§ 3592 & 3592, Opp. at 2-3; and (3) that the government must meet only a low threshold if "the United States Attorney avers that [the testimony] is sought in good faith" and, therefore, Mr. Loughner has not met his burden, Opp. at 5-6.

The government's arguments lack merit, and are addressed in turn below.

**ARGUMENT**

**I.**

**THE GRAND JURY'S ROLE IS TO INVESTIGATE CRIMES FOR THE PURPOSE OF DETERMINING PROBABLE CAUSE, NOT TO SERVE AS A DISCOVERY TOOL FOR THE GOVERNMENT**

The government's first argument is a red herring. It claims that "[Mr. Loughner's] arguments . . . misconstrue the nature of the grand jury's role." Opp. at 1. But, despite its claim, the government does not appear—as far as its brief goes—to disagree with Mr. Loughner's view of "the nature of the grand jury's role."

Specifically:

- The government agrees that the grand jury may not be used as a civil discovery tool. See Mtn at 6; accord Opp. at 5.

- The government agrees that the grand jury's function is to investigate "*until* it has identified an offense or has satisfied itself that none has occurred." See Mtn. at 5; accord Opp. at 2 (quoting the same language from United States v. R. Enterprises, Inc., 498 U.S. 292, 297 (1991)).

- The government agrees that grand jury subpoenas are subject to a relevance limitation governed by the first degree murder and death authorization statutes. See Mtn. at 6-7; Opp. at 2-3.

- The government does not dispute that the reasoning in United States v. Furrow, 125 F. Supp. 2d 1170 (C.D. Cal. 2000), advocating grand jury authority to conduct a broad-ranging inquiry into mental capacity and possible defenses has been abrogated by subsequent Ninth Circuit law. See Mtn. at 8 n.2; Opp. at 2-3 (citing Furrow but not disputing its partial abrogation).

In other words, the government's claim that Mr. Loughner has "misconstrue[d] the nature of the grand jury's role" is smoke and mirrors. The government itself has more or less the same view of the law, and nowhere in its brief does it identify any allegedly erroneous legal interpretation in Mr. Loughner's motion.

To the extent that Furrow's misconceptions might still be in play despite the government's implicit abandonment, it is worth noting that Furrow's reasoning was dubious even before United States

3

1  v. Navarro-Vargas put it to rest. See 408 F.3d 1184, 1187 (9th Cir. 2002) (en banc) (affirming district
2  judge's instruction setting forth narrow view grand jury's role—that is, its duty to indict upon finding
3  of probable cause). The district court in Furrow asserted that a grand jury could probe into the
4  defendant's possible mental state defenses, reasoning that the government was duty-bound to present
5  exculpatory evidence to the grand jury. 125 F. Supp. 2d at 1176.

6  Aside from its absurdity—this is akin to claiming that a magistrate reviewing an arrest warrant
7  for probable cause is duty-bound to reflect on possible defenses and should refuse to issue the warrant
8  if evidence of self-defense or voluntary intoxication is present—Furrow's foundation was legally
9  unsupported. As the Ninth Circuit recently put it, "telling the grand jurors that prosecutors must present
10 exculpatory evidence . . . is flat wrong." United States v. Navarro, 608 F.3d 529, 537 (9th Cir. 2010).
11 Indeed, the "the Supreme Court held in United States v. Williams[, 504 U.S. 36, 52-53 (1992),] that a
12 prosecutor does *not* have a duty to present exculpatory evidence to a grand jury when seeking an
13 indictment." Id.

14 In any event, it appears that the parties agree on the most important legal principles. As the
15 government concedes, evidence relevant only to mitigation or non-statutory aggravating factors falls
16 beyond the scope of a proper grand jury investigation. See Opp. at 4.

17 **II.**

18 **THE LOUGHNERS AND THE TOTMANS POSSESS NO RELEVANT INFORMATION**

19 Having settled the legal framework, the government's second argument is easily dismissed. It
20 claims that "the evidence that the grand jury seeks is relevant to the crimes being investigated"—but,
21 tellingly, nowhere in its brief does it identify any specific theory of relevance. This is because there is
22 none. This is easiest to see by addressing the Totmans and Loughners separately.

23 **A.    The Totmans possess no relevant information**

24 Asserting that state of mind, premeditation, motive, and planning activities are relevant to
25 murder charges, the government has the following to say about the Totmans:

26 > Jeffrey Totman, Mona [sic] Totman, and Jennifer Totman, the defendant's uncle, aunt
27 > and cousin, respectively, live in the Phoenix area.

28

Opp. at 4. That's it. What this has to do with state of mind, premeditation, motive, and planning is left unanswered. It is unsurprisingly that the government has proffered nothing more about the Totmans; there is nothing more there.

The government neglects to mention that it has already interviewed Jennifer Totman, who has made herself readily available to the FBI, and has discovered through those interviews that she had not had any contact with Mr. Loughner for several months before the shootings. In other words, the government possesses *actual knowledge* that Jennifer Totman has no information relevant to Mr. Loughner's state of mind, premeditation, motive, or planning. It does know, however, that Jennifer Totman possesses information possibly relevant to trial defenses and mitigation that Mr. Loughner may present.

The government also neglects to mention that it has learned through Jennifer Totman that her parents, Jeff and Linda Totman likewise had not had any direct contact with Jared for months before the shootings. Again, the government possesses actual knowledge that Jeff and Linda Totman have nothing relevant to offer the grand jury, but do have information potentially relevant to trial defenses and mitigation due to their relationship and contact with the Loughners over the span of Mr. Loughner's lifetime.

In sum, it is hard to imagine a clearer case of grand jury abuse than the government's subpoenas to the Totmans. Particularly revealing is the fact that the government *already knows* what the Totmans might say, yet has *nothing* to proffer about its potential relevance other than the unremarkable (and irrelevant) facts that they live in a city about a two-hour drive from Mr. Loughner's residence and are blood-related to him. The government's attempts to invoke "state of mind" as an excuse to explore Mr. Loughner's entire life is a transparent effort to use the grand jury for pretrial discovery.

**B.    The Loughners possess little, if any, relevant information**

The government's position with respect to the Loughners fares only marginally better. As to the Loughners, the government says:

> The defendant is the only child of Amy and Randy Loughner. The defendant's mother worked outside the home, and his father was a stay-at-home dad. Defendant briefly lived outside the family home in 2007 or 2008, when he shared an apartment with an acquaintance. For approximately the last two years, up to and including the date of the offense, January 8, 2011, the defendant has resided with his parents at their home. The defendant purchased the murder weapon, a 9mm Glock semi-automatic pistol, in

    November 2010. It is believed that he stored the weapon at the family residence. Agents seized electronic media and a safe from the house following the defendant's arrest. Relevant evidence has been recovered from those items. His parents were aware of some of his activities which occurred the night before the shooting, on the evening of January 7, 2011, as well as the following morning before the shootings.

Opp. at 4.

    Again, the government neglects to mention that it has already interviewed the Loughners. Indeed, the Loughners have already been interviewed at length by both the FBI and the Pima County Sheriff's department. Thus government thus already knows what information the Loughners possess. And, as is apparent from its very limited representations to the Court, see Opp. at 4, it recognizes that much of that information is relevant only to defenses and mitigation.

    As the government's brief makes clear, the only possibly proper evidence the Loughners might possess is "links in the chain" evidence. See United States v. Mandujano, 425 U.S. 564, 573 (1976) (grand jury may question people "who may be able to provide links in a chain of evidence relating to criminal conduct of others"). Specifically, as the government suggests, the Loughners may be able to provide evidence linking the gun, "electronic media," and the safe to Mr. Loughner. See Opp. at 4. They also arguably might have evidence relevant to the existence *vel non* of planning or premeditation the night before and the morning of the shootings, as the government suggests.

    Beyond that, however, the Loughners' testimony to the grand jury is extremely susceptible to government abuse. As the government itself admits, no one was physically closer to Mr. Loughner—he lived at home with his parents for approximately the last two years, Opp. at 4—and thus more likely to have relevant defense and mitigation evidence. If the Court finds that the subpoenas to the Loughners are partially valid, it should issue a protective order limiting their scope to "links in the chain" evidence and exploration of planning and premeditation within the two days prior to the shootings identified by the government, and disallow the free-ranging exploration of Mr. Loughner's life history that the appears to be the sole purpose of the government's subpoena to the Totmans.[1]

---

[1] Mr. Loughner maintains that the subpoenas should be quashed. Any evidence possessed by his parents could be (and probably already has been) brought before the grand jury through hearsay testimony of government agents. As explained below, the Loughners's subpoenas are particularly suspect because they violate DOJ policy.

1. Finally, the Court should reject the government's suggestion that the grand jury's need to find statutory aggravating factors under Ring v. Arizona, 536 U.S. 584 (2002), somehow authorizes the government to use the grand jury to conduct a fishing expedition. See Opp. at 3 & 5 n.2. Obviously, Ring requires statutory aggravators to be alleged in an indictment; Mr. Loughner has never claimed otherwise. In fact, he made that point in his motion—indeed, he identified the only two possibly applicable aggravating factors, multiple killings and high public official as victim. See Mtn. at 7 (citing 18 U.S.C. §§ 3592(c)(14) & (16)). And the government, aside from general hand-waving about the statutory aggravating factors, Opp. at 3, makes no claim to the contrary. This is important because it exposes the government's "statutory aggravating factors" argument as the red herring it is. Neither the Loughners nor the Totmans have any information conceivably related to the statutory aggravators—that is, whether there were multiple killings and whether there was a high-public-official victim.

## III.

## THE SUBPOENAS SHOULD BE QUASHED

The government's final argument is that Mr. Loughner has not met his burden of prevailing on his motion to quash in light of the low threshold applicable if "the United States Attorney avers that [the testimony] is sought in good faith," Opp. at 5-6 (quoting (Under Seal), 714 F.2d at 350, which in turn cites In re Grand Jury Subpoenas, April 1978, 581 F.2d 1103 (4th Cir. 1978)). The government's position is unpersuasive. The authorities it relies on actually support Mr. Loughner's argument. This is true for four reasons.

First, the authorities relied on by the government expressly affirm the basis of Mr. Loughner's motion—that the grand jury's authority is limited to *relevant* information. See R. Enterprises, 498 U.S. at 301; (Under Seal), 714 F.2d at 349. Both R. Enterprises and (Under Seal) concerned admittedly relevant information. See R. Enterprises, 498 U.S. at 302 (there was a reasonable possibility that the records of defendant's other businesses "would produce information relevant to the grand jury's investigation" into defendant's pornography trafficking); (Under Seal), 714 F.2d at 350 ("the sought-after testimony is of demonstrated relevancy to the grand jury's investigation"). By contrast, as is evident here, the government has subpoenaed witnesses who possess no conceivably relevant

information (the Totmans), and witnesses who arguably possess very limited relevant information, but are highly likely to possess defense- and mitigation-related evidence.

Second, the government's citation to (Under Seal) for the proposition that it is enough for the United States Attorney to "aver[] that [the subpoenas are] sought in good faith to aid the grand jury's investigation even though circumstances suggest that it might also be used as a means for civil discovery," Opp. at 5, is particularly ironic because the government here *has not offered any such good faith averral*. See (Under Seal), 714 F.2d at 350 (citing In re Grand Jury Subpoenas, April 1978, 581 F.2d 1103, 1106 n.5 (4th Cir. 1978) (a DOJ attorney, under oath before the Court, swore that the grand jury was engaged solely in the investigation of criminal matters, not civil discovery). Given the government's citation to this "good faith averral" language, it seems only reasonable to draw the appropriate adverse inferences from its failure to provide any such sworn "aver[ral] that [the subpoenas are] sought in good faith." Should it continue to refuse to provide an under-oath averral of good faith, it must be concluded that the government is, in fact, attempting to engage in grand jury abuse.

Moreover, the government's suggestion that a good-faith averral can overcome the relevancy requirement is incorrect. In re Grand Jury Subpoenas, the case cited by (Under Seal), concerned *undisputedly relevant* evidence. See 581 F.2d at 1108 (petitioner conceded that documents were relevant to criminal investigation). That case concerned whether the documents subpoenaed by the grand jury were *also* going to be used in a civil investigation by IRS. Id. That, obviously, is not the case here.

Third, the government's citation to (Under Seal) also highlights the fact that it has offered no justification for its violation of DOJ policy to avoid compelling the grand jury testimony of close relatives—a policy also violated in (Under Seal). See 714 F.2d at 348. Specifically, the U.S. Attorney's manual provides that:

> Absent specific justification, the Department will ordinarily avoid seeking to compel the testimony of a witness who is a close family relative of the defendant on trial or of the person upon whose conduct grand jury scrutiny is focusing. Such specific justification exists, among other circumstances, where (i) the witness and the relative participated in a common business enterprise and the testimony to be elicited relates to that enterprise or its activities; (ii) the testimony to be elicited relates to illegal conduct in which there is reason to believe that both the witness and the relative were active participants; or (iii) testimony to be elicited relates to a crime involving overriding prosecutorial concerns.

8

U.S. Atty's Manual § 9-23.211.  Here, the Loughners are clearly "close family relatives" of "the person upon whose conduct grand jury scrutiny is focusing."  They are his parents, and therefore fall squarely within § 9-23.211's definition of "close family relative."  Nevertheless, the government has not offered *any* "specific justification" for trying to coerce their testimony.  There is no claim that the Loughners participated in part of a "common business enterprise," that they were "active participants" in illegal conduct, or that their testimony serves "overriding prosecutorial concerns."  Indeed, the government could just as easily bring forth any evidence possessed by the Loughners through hearsay testimony of any of the multiple government agents who interviewed them.  Additionally, the Fourth Circuit's reason for reversing the district court's order to quash in (Under Seal) is inapposite here.  In that case, no one claimed that sought-after testimony was not relevant; the chief complaint was that the government's motivation for exercising its subpoena power was suspect.  See 714 F.2d at 350 (district court found that petitioner had "relevant and material evidence to present to the Grand Jury").  Here, the opposite is true.  The subpoenaed witnesses have no relevant evidence; the government has not offered a good-faith averral; and the subpoenas facially violate DOJ policy.

Fourth, and finally, as (Under Seal) and In re Grand Jury Proceedings demonstrate, there are no other adequate remedies for the grand jury abuse that is imminent here.  In (Under Seal), the alleged abuse was the government's attempt to use a grand jury subpoena to "coerce a plea bargain from a relative of the witness by threatening the witness with imprisonment for contempt." 714 F.2d at 351.  There, Rule 11 of the Federal Rules of Criminal Procedure provided an adequate remedy for any abuse: "If the resulting plea [was] truly coerced, it [could ]not be properly accepted under Rule 11(d)."  Id.  Likewise, in In re Grand Jury Proceedings, the alleged abuse was that the evidence obtained by the grand jury in its criminal investigation would be improperly conveyed to the IRS for use in a civil case against the defendant.  There, Rule 6(e) protected the defendant because "[d]isclosure to the IRS for civil enforcement purposes requires a court order predicated on a demonstration of good faith."  Id. at 1110.  In other words, the harm could be prevented *before* it occurred.

Here, by contrast, there are no such protections in place—and the government certainly does not claim otherwise.  The only adequate remedy is for the Court to quash the improper subpoenas.

**CONCLUSION**

For all of the reasons stated above and in Emergency Motion, the subpoenas should be quashed and all appropriate protective orders fashioned. Oral argument is requested as warranted to assist the Court in its decision.

DATED: February 1, 2011　　　　　　　　Respectfully submitted,

*/s/ Judy C. Clarke*

Judy C. Clarke
Clarke & Rice APC

Mark F. Fleming
Law Office of Mark Fleming

Reuben Camper Cahn
Federal Defenders of San Diego, Inc.

Attorneys for Defendant Jared Lee Loughner

|   |   |   |
|---|---|---|
| 1 | UNITED STATES DISTRICT COURT | |
| 2 | FOR THE DISTRICT OF ARIZONA | |

UNITED STATES OF AMERICA,  ) CR-11-0187-TUC LAB
  )
    Plaintiff,    )
  )
v.    )
  )  **PROOF OF SERVICE**
  )
JARED LEE LOUGHNER,   )
  )
  )
    Defendant.    )
_____)

I, the undersigned, say:

1) That I am over eighteen years of age, a resident of the County of San Diego, State of California, and not a party in the within action;

2) That my business address is 225 Broadway, Ste. 900, San Diego, California 92101-5008;

3) That on February 1, 2011, I served the within <u>REPLY IN SUPPORT OF DEFENDANT'S EMERGENCY MOTION TO QUASH SUBPOENAS EXCEEDING THE GRAND JURY'S AUTHORITY / REQUEST FOR ORAL ARGUMENT</u> on opposing counsel via email to:

WALLACE H. KLEINDIENST, Assistant United States Attorney
Wallace.Kleindienst@usdoj.gov, Bev.Anderson@usdoj.gov
Christina.Cabanillas@usdoj.gov; Mary.Sue.Feldmeier@usdoj.gov

I certify under penalty of perjury that the foregoing is true and correct. Executed on February 1, 2011 at San Diego, California.

                                     /s/ Judy Clarke
                                     JUDY CLARKE
                                     MARK FLEMING
                                     REUBEN CAMPER CAHN

                                   Attorneys for Jared Lee Loughner