STEPTOE & JOHNSON LLP
Collier Center
201 East Washington Street, Suite. 1600
Phoenix, Arizona 85004-2382
Telephone: (602) 257-5200
Facsimile:  (602) 257-5299

David J. Bodney (06065)
dbodney@steptoe.com
Peter S. Kozinets (019856)
pkozinets@steptoe.com

Attorneys for Phoenix Newspapers, Inc.
and KPNX Broadcasting Co.

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| IN THE MATTER OF: | 11 SW 0026 and 11 SW 0040 |
| 11 SW 0026 and 11 SW 0040 | **NOTICE OF NON-OPPOSITION OF PHOENIX NEWSPAPERS, INC. AND KPNX BROADCASTING CO. TO THE UNITED STATES' NOTICE OF REMOVAL** |
| (Jared Lee Loughner) | |
| | - and - |
| | **REPLY IN SUPPORT OF APPLICATION FOR LEAVE TO INTERVENE FOR THE LIMITED PURPOSE OF SEEKING TO VACATE THE STATE COURT'S ORDER SEALING SEARCH WARRANT RECORDS** |
| | **(Oral Argument Requested on Application to Intervene)** |

Preliminary Statement

To enforce the public's right of prompt access to search warrant records in this matter of acute public concern, Phoenix Newspapers, Inc. ("PNI") and KPNX Broadcasting Co. ("KPNX") (collectively, "Intervenors") filed their Application for Leave to Intervene for the Limited Purpose of Seeking to Vacate the State Court's Order Sealing Search Warrant Records (the "Application"). In response, the United States filed papers in this Court, and state court, seeking three types of relief. First, it filed a Notice of Removal asking that the Application be decided by this Court. Second, as part of its Notice, it filed a Response to the Application in which it proposed giving the Court – nearly three weeks later – any search warrant materials that it and Defendant Jared Loughner agree could be unsealed. Third, it filed a Motion to Seal its Notice and Response.

Intervenors had planned to object to the Notice of Removal and Motion to Seal, but two things occurred on Friday, February 4, that altered Intervenors' position. First, the Pima County Attorney agreed to defer filing state charges against Loughner until the federal prosecution is completed.[1] While 18 U.S.C. § 351 says nothing about "removal," and does not preclude concurrent state jurisdiction over the January 8 shootings in which 19 Arizona residents were killed or wounded, Intervenors do not oppose removal in view of the County Attorney's recent announcement, if the Court otherwise deems removal appropriate. Second, also on February 4, the Court denied the Government's Motion to Seal because the United States had failed to establish good cause for sealing its recent filings. Intervenors agree with and support the February 4 Order, which mooted the need to oppose the United States' Motion to Seal in this Court.

With the issues narrowed, Intervenors respectfully submit that – whether decided in federal or state court – *no* basis exists for the continued, blanket sealing of the search

---

[1] Michael Kiefer, *Feds to be 1st to try Loughner*, Ariz. Republic, Feb. 5, 2011, http://www.azcentral.com/arizonarepublic/local/articles/2011/02/05/20110205Loughner0205.html.

warrants, affidavits and inventories/returns at issue (the "Records"). As shown below, under both federal and Arizona law, the public has a strong presumptive right of access to the Records, and the United States has not met its heavy burden of demonstrating with specific facts that (1) disclosure will harm any compelling interests, (2) continued sealing is narrowly tailored to avert any such harm, and (3) no less restrictive alternatives exist to sealing off the Records in their entirety. Accordingly, the Records should be unsealed.

Intervenors do not object to permitting Loughner to review the Records, but the timeline suggested by the United States should be shortened to advance the public's right of *prompt* access. The United States has had the Records for nearly a month, and should be ordered to provide them to Loughner and the Court within 48 hours. Thereafter, the United States and Loughner should have five calendar days to propose redactions, if any. The Records should then be unsealed and released as promptly as possible, as outlined in the Proposed Order submitted herewith.[2]

---

[2] While the United States does not object to PNI and KPNX's intervention in state court, it has reserved its position regarding their intervention in any matter removed to federal court. [Notice n.1] Lest there be any doubt, news organizations are routinely permitted to intervene in federal and state court proceedings to challenge requests or orders to restrict public access to information of acute public interest and concern. *E.g., Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1 (1986) (press permitted to object to closure of transcripts of preliminary hearings in case involving alleged murder of 12 hospital patients); *Press-Enterprise Co. v. Super. Ct.*, 464 U.S. 501 (1984) (press allowed to object to closure of *voir dire* examinations in criminal trial); *Globe Newspaper Co. v. Super. Ct.*, 457 U.S. 596 (1982) (upholding newspaper's right to challenge order closing a criminal trial from the general public). Hence, Intervenors' consent to removal of this Application is predicated on their right to intervene for the limited purpose of securing an order vacating the Arizona Superior Court's sealing orders.

<u>Argument</u>

I.  THE FIRST AMENDMENT REQUIRES DISCLOSURE OF THE SEARCH WARRANT RECORDS IN THIS CASE.

    A.  <u>The Press and Public Have a Strong First Amendment Right of Access to the Records</u>.

The Supreme Court long ago recognized that "a presumption of openness inheres in the very nature of a criminal trial under our system of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980) (plurality opinion). The Ninth Circuit has similarly observed that "the public and press have a first amendment right of access to pretrial documents in general." *Associated Press v. Dist. Ct.*, 705 F.2d 1143, 1145 (9th Cir. 1983) (John DeLorean criminal prosecution). To determine whether the First Amendment provides a right of access to particular types of records, the Supreme Court considers whether: (1) the records have historically been open to the public; and (2) "public access plays a significant positive role in the function of the particular process in question." *See, e.g.*, *Press-Enterprise Co. v. Super. Ct.*, 478 U.S. 1, 8-9 (1986) ("*Press-Enterprise II*"). Both prongs of this "experience" and "logic" test support a public right of access here.

First, the warrant materials Intervenors seek are traditionally filed in the Court's open, public files. *In re Application of N.Y. Times Co.*, 585 F. Supp. 2d 83, 88-89 (D.D.C. 2008) ("[R]outine historical practice countenances in favor of a qualified First Amendment right of access to warrant materials; warrant applications and receipts are routinely filed with the clerk of court without seal.") (citing cases). *See also* Fed. R. Crim. P. 41(i) (requiring that warrant materials be delivered to the clerk in the district where the property was seized). Similarly, search warrant materials filed in Arizona state court routinely become public after the warrants are returned. *See, e.g.*, A.R.S. § 13-3918(A) (search warrants, affidavits and returns "shall be open to the public as a judicial record" after the warrants are returned); *Phoenix Newspapers, Inc. v. Super. Ct.*, 180 Ariz. 159, 162, 882 P.2d 1285, 1288 (Ct. App. 1994) (search warrants are subject to a presumption of public access). Accordingly, search warrant materials in federal and

state court have historically been open – absent a showing capable of justifying an exception to the usual practice of full disclosure.

Second, access to post-indictment warrant materials plays a significant positive role in the functioning of the process. As the Supreme Court explained in *Globe Newspaper Co. v. Super. Ct.,* public scrutiny of criminal trials "enhances the quality and safeguards the integrity of the factfinding process, with benefits to both the defendant and to society as a whole"; "fosters an appearance of fairness, thereby heightening public respect for the judicial process"; and "permits the public to participate in and serve as a check upon the judicial process – an essential component in our structure of self-government." 457 U.S. 596, 606 (1982). These considerations also apply to search warrant records. Indeed, "[p]ublic access to warrant materials serves as a check on the judiciary because the public can ensure that judges are not merely serving as a rubber stamp for the police." *Application of N.Y. Times*, 585 F. Supp. 2d at 90. Moreover, access enhances "the public's understanding of the function and operation of the judicial process and the criminal justice system and may operate as a curb on prosecutorial or judicial misconduct." *In re Search Warrant for Secretarial Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). Most fundamentally, access promotes public trust in the legitimacy and integrity of further proceedings that may involve evidence gathered during the searches of Loughner's residence.

Because both prongs of the Supreme Court's "experience" and "logic" test favor a First Amendment right of access to the warrant materials, the United States has the burden of meeting stringent First Amendment standards to justify continued closure. Specifically, the United States must establish that (1) closure is necessary to further a compelling governmental interest, (2) the closure order is narrowly tailored to serve that interest, and (3) no less restrictive means are available to adequately protect that interest. *Press-Enterprise II*, 478 U.S. at 13-14. Courts applying these substantive requirements must "make specific factual findings supporting its closure decision" that "satisfy all

three substantive requirements for closure." *Phoenix Newspapers, Inc. v. Dist. Ct.*, 156 F.3d 940, 950 (9th Cir. 1998).

      B.    <u>The United States Has Failed to Show that Closure Is Narrowly Tailored to Averting Harm to a Compelling Interest and Is the Least Restrictive Alternative</u>.

For several reasons, the United States has failed to meet the strict First Amendment standards for closure. First, the United States has not demonstrated how disclosure of the Records will harm any compelling government interests. While it suggests generally that the search warrant affidavit "may describe the continuing investigation" [Notice at 3 n.5], it provides no specific facts capable of showing that disclosure will harm an ongoing investigation. As Federal Public Defender Jon Sands has recognized, this case is "not a whodunit."[3] Loughner is the sole suspect, and he was arrested and detained at the scene immediately after the shootings. He has been in federal custody since, has been charged and indicted, and has appeared for his initial appearance and arraignment.[4] The United States has disclosed to Loughner the recordings of 250 witness interviews and 45 tapes from his computer.[5] Law enforcement officials have released to the public a wealth of information about the investigation, including selective results of the searches of Loughner's residence and computer.[6] In short, Loughner's criminal case is well under way, and the United States has not demonstrated that releasing the Records will harm an ongoing investigation.

---

[3] Dennis Wagner, *Jared Loughner case: Defense attorney gets juries to see the other side*, Ariz. Republic, Jan. 24, 2011, http://www.azcentral.com/news/articles/2011/01/24/20110124gabrielle-giffords-loughner-judy-clarke.html.

[4] *United States v. Loughner*, Case No. 4:11-cr-000187-LAB, ECF Nos. 2, 6, 36, 46.

[5] Michael Kiefer, *Loughner pleads not guilty in Arizona shootings*, Ariz. Republic, Jan. 25, 2011, http://www.azcentral.com/news/articles/2011/01/24/20110124giffords-shooting-loughner-pleads-not-guilty.html).

[6] *See, e.g.*, Joseph Goldstein and Marc Lacey, *Man Charged in Tucson Shootings Had Researched Assassins, Official Says*, N.Y. Times, Jan. 26, 2011, http://www.nytimes.com/2011/01/27/us/27giffords.html (describing results of analysis of Loughner's computers); Sari Horwitz and David Nakamura, *Loughner's computer could hurt defense*, Wash. Post, Jan. 27, 2011, http://www.washingtonpost.com/wp-dyn/content/article/2011/01/26/AR2011012608090.html.

Second, the United States has failed to show how disclosure of the Records might harm victim privacy. [*Cf.* Notice at 3] There is no indication that Loughner knew of any of the victims in advance, apart from Rep. Giffords. The Government has provided no reason to believe that disclosure of the Records will harm the privacy interests of any victim.

Third, equally unavailing is the United States' suggestion that release could harm the Defendant's rights. [Notice at 3] The United States has not even attempted to show that unsealing the Records poses any such threat. As the Supreme Court noted in *Press-Enterprise II,* 478 U.S. at 14, *voir dire* is more than sufficient to prevent any conceivable threat from pre-trial publicity: "Through *voir dire* . . . a court can identify those jurors whose prior knowledge of a case would disable them from rendering an impartial verdict." 478 U.S. at 15. Moreover, the Ninth Circuit has observed that impartial jurors easily can be found in "a large metropolitan area." *Associated Press*, 705 F.2d at 1146 (noting that impartial juries were empanelled in the Watergate and Abscam cases, which involved extensive publicity). Even if jurors are exposed to pretrial publicity, such exposure, standing alone, rarely rises to the level of material prejudice. *See, e.g., Mu'Min v. Virginia*, 500 U.S. 415, 417, 431 (1991) (extensive news coverage of defendant's capital murder case and disclosure of prejudicial information inadmissible at trial did not rise to a level requiring individual questioning of jurors about the content of publicity to which they had been exposed).

Fourth, the United States has not demonstrated that closure is narrowly tailored to advance any compelling interests, or that less restrictive alternatives – such as redacting specific information for so long as necessary to avert harm – would not suffice. *See Application of N.Y. Times*, 585 F. Supp. 2d at 91 (the government's interest in maintaining the confidentiality of informants 'can be accomplished by simply redacting the identity and personal identifiers of the informants'").

The United States' cases are not to the contrary. [*Cf.* Notice at 3 n.5] For example, while the Ninth Circuit held in *Times Mirror Co. v. United States*, 873 F.2d

- 6 -

1210 (9th Cir. 1989), that a First Amendment right of access to search warrant records does not attach "*before* any indictments have been returned," *id*. at 1211 (emphasis added), Intervenors submitted their application *after* the United States filed a criminal complaint against Loughner on January 9, and *after* the grand jury indicted Loughner on January 19.   In this *post*-indictment case, *Times Mirror* does not control.  The United States' reliance on *In re Eyecare Physicians of Am.*, 100 F.3d 514, 518 (7th Cir. 1996) – another pre-indictment search warrant case – is likewise misplaced.

Similarly, while the United States suggests that *Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989), indicates that search warrant records should remain sealed even after indictment, the warrants and returns in *Baltimore Sun* were *immediately* unsealed, and the supporting affidavit was unsealed shortly after indictment.  886 F.2d at 62-63. *Baltimore Sun* addressed only the right of access to the affidavit in the interval between execution of the warrant and the return of indictment.  *Id*. at 62.  Moreover, *Baltimore Sun* ultimately embraced a test for closure substantially identical to the First Amendment test, and held that the search warrant affidavit had been improperly sealed because the magistrate and district judges failed to make specific findings establishing that sealing is "essential to preserve higher values and is narrowly tailored to serve that interest."  *Id*. at 65-66.

In short, the United States has not overcome the First Amendment hurdles to closure, and the Records should be unsealed promptly.

II.   THE PUBLIC HAS A RIGHT OF ACCESS TO THE RECORDS UNDER FEDERAL COMMON LAW.

The Records should also be unsealed as a matter of federal common law.  Under the common-law right of access, Intervenors must make a "threshold showing of a legitimate need for disclosure."  *United States v. Kaczynski*, 154 F.3d 930, 931 (9th Cir. 1998).  "Once that showing has been made, the court must balance the media's asserted need against any asserted reasons for confidentiality."  *Id*.

Intervenors have made their initial showing here because the Records relate to matters of acute public interest, and because public access will have all of the salutary effects described above. Furthermore, the public has a legitimate interest in the determination of Loughner's competency to stand trial and his motives, and access to the Records will likely shed light on these and other issues. *See id.* (recognizing public interest in access to competency report and defendant's motives). These interests satisfy Intervenors' threshold common law showing and weigh heavily in favor of unsealing the Records.

For its part, the United States offers only vague, unsupported references to the confidentiality of an investigation, the privacy of victims and the defendant's rights. [Notice at 3] Without more, the mere recitation of these interests is insufficient. Indeed, "[a]ny step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat and *requires rigorous justification*." *In re Sealing and Non-disclosure of Pen/Trap/2703(D) Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) (discussing common-law right of access) (emphasis added). To set forth a "rigorous justification," the United States should have provided specific support for its suggestion that these interests will be harmed. It has not done so, and the Records should be released as a matter of federal common law.[7]

III. ARIZONA LAW PROVIDES A STRONG PRESUMPTIVE RIGHT OF ACCESS TO SEARCH WARRANT RECORDS.

For several reasons, the Court should consider Arizona law – including the Arizona Search Warrant Disclosure Law – in evaluating the United States' recent filings. First, Arizona has an ongoing and substantial interest and stake in these proceedings. The citizens of Arizona have been deeply affected by this tragedy, and

---

[7] *Foltz v. State Farm Mut. Auto. Insurance Co.*, 331 F.3d 1122 (9th Cir. 2003), recognizes that *compelling* interests could override the common-law right of access, but none of the interests at issue in that civil case are relevant to this criminal prosecution. In any event, *Foltz* found that the existence of small number of medical and personnel records (which could be redacted) were *in*sufficient to justify continued closure. *Id*. at 1136-38.

- 8 -

they have an acute interest in understanding and monitoring the workings of law enforcement and the response of the criminal justice system to these events. Second, the United States sought and obtained the warrants from Arizona Superior Court; filed the returns with that Court in connection with the joint federal-state investigation into the January 8 mass shooting of 19 Arizona residents; and obtained the warrants in reliance on an affidavit sworn to by local and federal law enforcement officers. [Notice at 1-2] Such extensive state-federal cooperation further underscores Arizona's connection with, and interest in, the Records.

Third, the United States concedes that, under Arizona law, the Records became presumptively open upon the warrants' execution and return. [Notice at 4-5] Under long-established Arizona law, the citizens of Arizona have a legitimate expectation of access to the Records – which the Arizona Legislature has declared "shall be open to the public" once the warrants were returned. A.R.S. § 13-3918(A). Indeed, post-return, the Records became public judicial records subject to a strong presumption of access and disclosure pursuant to the Arizona Constitution, art. II § 11, A.R.S. § 13-3918(A) and Ariz. Sup. Ct. R. 123. *See also Phoenix Newspapers*, 180 Ariz. at 162, 882 P.2d at 1288 (search warrants are subject to a presumption of public access).

The United States has not offered any reasons for overcoming that presumption of access and disclosure. In view of the acute public interest in access to information about the Loughner case – a matter of intense concern to the community and nation – the Records should be unsealed. Alternatively, if temporary closure is justified for any specific portions of the Records, the Court should order the redaction of *only* those specific portions and release the remainder. *Cf.* Ariz. Sup. Ct. R. 123(f)(4)(B)(i) ("If access to any record is denied for any reason, the custodian shall explore in good faith with the applicant alternatives to allow access to the requested records, including redaction of confidential information.").

In sum, no justification exists for blanket, ongoing sealing of the Records, and the Records should be released promptly.

<u>Conclusion</u>

For the foregoing reasons, the State Court's Sealing Order(s) should be vacated, and this Court should promptly order release of the Search Warrant Records to PNI and KPNX after following the procedure set forth in Intervenors' Proposed Order, submitted herewith.

RESPECTFULLY SUBMITTED this 7th day of February, 2011.

STEPTOE & JOHNSON LLP

By /s/ David J. Bodney
David J. Bodney
Peter S. Kozinets
201 East Washington Street, Suite 1600
Phoenix, Arizona 85004

Attorneys for Phoenix Newspapers, Inc. and KPNX Broadcasting Co.

# CERTIFICATE OF SERVICE

I hereby certify that on February 7, 2011, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

> Wallace H. Kleindienst
> Wallace.Kleindienst@usdoj.gov
> Beverly K. Anderson
> Bev.Anderson@usdoj.gov
> Christina M. Cabanillas
> Christina.Cabanillas@usdoj.gov
> Mary Sue Feldmeier
> Mary.Sue.Feldmeier@usdoj.gov
> Attorneys for Plaintiff

> Judy C. Clarke
> judyclarke@jcsrlaw.net
> Reuben Camper Cahn
> Reuben_Cahn@fd.org
> Mark Francis Fleming
> mfflaw@cox.net
> Attorneys for Defendant

I hereby certify that on February 7, 2011, I caused the attached document to be emailed and mailed to the following:

> The Honorable Larry Alan Burns
> efile_burns@casd.uscourts.gov
> United States District Court
> Southern District of California
> 940 Front Street, Suite 2190
> San Diego, CA 92101

                                              /s/ Monica Medlin
                                              Legal Secretary