DENNIS K. BURKE
United States Attorney
District of Arizona
WALLACE H. KLEINDIENST
BEVERLY K. ANDERSON
CHRISTINA M. CABANILLAS
MARY SUE FELDMEIER
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress Street, Suite 4800
Tucson, Arizona 85701
(520) 620-7300
Wallace.Kleindienst@usdoj.gov
Bev.Anderson@usdoj.gov
Christina.Cabanillas@usdoj.gov
Mary.Sue.Feldmeier@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>      v.<br><br>Jared Lee Loughner,<br><br>            Defendant. | CR11-0187-TUC-LAB<br><br>**GOVERNMENT'S RESPONSE TO INTERVENOR'S MOTION TO UNSEAL SEARCH WARRANT DOCUMENTS** |

The United States, through counsel undersigned and at the direction of the Court, files a response to the motion to unseal originally filed in state court by Phoenix Newspapers, Inc. and its television partner, KPNX Broadcasting Company (collectively, "PNI"). PNI seeks search warrants and their supporting documents, to include the inventories of items seized, during the investigation of this ongoing criminal prosecution. PNI claims an expansive First Amendment right – which the Ninth Circuit has never applied in the search warrant context – as well as a common law right of access to the complete search warrant materials. For the reasons set forth below, the government responds as follows:

First, and principally, the defense has proposed a deferral of consideration of PNI's motion until the filing of any dispositive motions which rely on the evidence seized. The government concurs with the defense proposal to defer consideration at this time.

Alternatively, if the Court elects to decide the motion now, the government opposes the complete disclosure of the materials, and produces under seal to the court the defense its proposed redactions to protect: a) certain material in the affidavits  not already publicly

disclosed by the United States in public filings; b) the identities of the affiants; and c) the complete inventories and material derived from the inventories.

The government executed two warrants supported by two affidavits[1] resulting in two separate inventory returns. The government sought the second warrant pursuant to Fed. R. Crim. P. 41, in an abundance of caution, for permission to forensically search certain items seized during the execution of the first warrant, although the initial warrant also authorized the search of those items. The government has produced the full package containing each warrant and the supporting material to the Court and the defense, and will produce its proposed redactions to the Court under seal, contemporaneous with this filing.

**1.    Legal Analysis**

PNI concedes that its right of access, whether based on the Constitution or on common law, is not absolute.  Warrant materials are *not* historically open to the public and PNI's constitutional claim lacks merit in the circumstances of these pre-trial proceedings.  The government acknowledges PNI's more limited common law right of access to materials, and under the facts and circumstances of this case a balancing of the defendant's constitutional rights (and the government's own rights in ensuring a constitutional process) justifies a deferral of PNI's motion or, in the alternative, the limited redactions proposed *in camera*

**a.    The Ninth Circuit has never provided a First Amendment right of access to warrant materials, and this Court should not do so now in the context of pre-trial proceedings**.

PNI claims a constitutional mantle without any meaningful support for its position.  In order to justify a constitutional right, PNI must establish that warrant proceedings are historically open, and that access by the press would provide a significant and positive role in

---

[1] The first warrant (11 SW 0026) was executed on January 8, 2011, based on a written affidavit from a county law enforcement officer and a federal agent.  Prior to the issuance and execution of 11 SW 0026, the county law enforcement officer had relayed substantially the same probable cause via telephone to the issuing judge. A transcript of that telephonic communication is included within the warrant materials.

1 the justice system. Times Mirror Co. v. U.S., 873 F.2d 1210, 1213 (9th Cir. 1989). PNI
2 cannot meet the first prong[2] because search warrants are historically closed proceedings.

3     This Circuit has clearly held that the press lacks a constitutional right of access to search
4 warrant materials prior to indictment. Id. at 1214-18. The Fourth Circuit concurs. Baltimore
5 Sun Co. v. Goetz, 886 F.2d 60, 64 (4th Cir. 1989). PNI relies exclusively for appellate support
6 on a split decision in an Eight Circuit case that produced two concurrences and one dissent, and
7 in which two judges agreed with the constitutional right of access and two judges agreed that
8 the government nonetheless had the right to preclude access to a large swath of the warrant
9 materials. In re Search Warrant for Secretarial Area Outside Office of Thomas Gunn, 855 F.2d
10 569, 571 (8th Cir. 1988).

11     The fundamental distinction between Times Mirror and Gunn is the circuits' views on
12 access. In Times Mirror, the court iterated its closed view: "We know of no historical tradition
13 of public access to warrant proceedings. Indeed, our review of the history of the warrant
14 process in this country indicates that the issuance of search warrants has traditionally been
15 carried out in secret." Times Mirror, 873 F.2d at 1214. Moreover, the Ninth Circuit has
16 expressly rejected the use of the filing requirement of Fed. R. Crim. P. 41 as the basis for
17 historic openness. "At this time, we need only point out that [Rule 41(i)'s] requirement that
18 returned warrant materials be filed with the district court does not establish a tradition of open
19 warrant proceedings and materials because [Rule 41(i)] does not require that the warrant
20 materials when filed be open to public inspection." Id; see also United States v. Sealed Search
21 Warrants, 1999 WL 1455215 at * 5 (D.N.J. 1999) (rejecting first amendment and common law
22 challenges to access). Given that Gunn relies on the filing requirement for its primary

---

[2/] Nor does the government concede the second prong. While the media surely have an important and legitimate role in publicly scrutinizing judicial proceedings, and while the Intervenors in particular are known to the government to practice responsible journalism, this Court cannot consider this institutional benefit without considering the "manifest taint" that may occur to criminal proceedings due to "overzealous reporting efforts." E.g. Skilling v. United States, 130 S. Ct. 2896, 2914 (2010) (describing the circumstances in Estes v. Texas, 381 U.S. 532 (1965)).

argument on openness, 855 F.2d at 573, the holdings of the two circuits are inconsistent with each other, and this Court should not draw on the Eighth Circuit's reasoning in analyzing this case.

More consistent with Times Mirror is a district court case cited by the defense. The District Court for the District of Columbia found a qualified first amendment right of access to warrant materials in the investigation into the mailing of anthrax to Members of Congress, but only after the investigation had concluded with the death of the subject. In re Application of New York Times Co. for Access to Certain Sealed Court Records, 585 F.2d 83 (D.D.C. 2008). "This Court's holding is a narrow one. This is a case of first impression, and as such, the Court only decides the narrow issue in front of it; whether there is a qualified First Amendment right of access to warrant materials after an investigation has concluded." Id. at 90 f.n. 10. The court further rejected the overly-expansive Eighth Circuit view in Gunn, and opined that its approach was "not contrary to" the holdings of the Fourth and Ninth Circuits.[3]

Rather than focusing on the formal charge of a defendant, then, the District of Columbia court focused on disposition, which in that case was the end of an investigation without charges. Cf. United States v. Kaczynski, 154 F.3d 930, 931 (9th Cir. 1998) (using a common law right of access theory, and releasing a competency report with limited redactions after a guilty plea and sentencing). PNI asks the Court to create a new First Amendment right in this Circuit which is triggered prior to the disposition of the charges against the defendant, and the Court should reject the Intervenors' request.

---

[3] Its decision was somewhat inconsistent to the extent it relied on the historic openness of warrant proceedings. The court found that the routine practice in the District of Columbia is to make warrant materials publicly available after a search. Id. at 88 f.n. 8. The local practice found in the District of Columbia contrasts markedly with the practices in the District of New Jersey, Sealed Search Warrants, 1999 WL 1455215 at * 5 (noting that the practice in the District of New Jersey is to seal warrant documents, "almost as a matter of course") and the practices articulated as to the Central District of California in Times Mirror, 873 F.2d at 1214 (observing that the government has always been able to restrict access to warrant materials through a sealing order, which courts have freely granted upon a showing that an investigation requires secrecy).

Finally, to the extent that the Court finds that it must decide the constitutional claim rather than relying on the common law, and to the extent that the Court extends First Amendment protections in these circumstances, the government may overcome the qualified privilege. In particular, to overcome any constitutional protection which the Court deemed existed, the government would need to show its compelling interest, a narrowly tailored approach and the use of the least restrictive means. The government has a sufficient interest in the constitutionality of the proceedings, and PNI has not articulated any other means the government could use to protect the proceedings, short of a prior restraint on the press. Moreover, even under PNI's cited case, the government may withhold large portions of the warrant packages. Gunn, 855 F. 2d at 571. In Gunn, even after affording a constitutional right that exists nowhere else in the federal system, the Eighth Circuit affirmed limited press access to only the description of the affiant, the description of the premises, and portions of one section of the affidavit. "We also agree with the district court's determination that line-by-line redaction of the sealed documents was not practicable." Id. In the alternative to deferral of the motion, the government's proposed redactions are consistent with any rights of PNI.

### b. Under the common law, as an alternative to deferral, the Court should permit redactions in pursuit of the "higher values" of a fair trial

PNI's common law right of access is more of a balancing test between the importance of press access and the preservation of "higher values." Baltimore Sun, 886 F. 2d at 66. A court may, for example, consistent with the Crime Victims' Rights Act, restrict press access to records. United States v. Patkar, 2008 WL 233062 at * 6 (D. Hawaii 2008) (upholding a protective order, and holding that an extortion victim could be protected from disclosure due to his privacy interest). A court may also redact portions of a competency report to protect the defendant's own privacy interest. Kazcynski, 154 F.3d at 932. A narrowly tailored approach may therefore require the disclosure of a redacted version, id., as the government suggests here in the alternative.

The government seeks limited redactions as set forth below particularly because PNI's rights do not rise to a constitutional level[4]

### c. As an alternative to deferral, the Court should adopt the proposed redactions to protect the privacy of the affiants and to protect material not otherwise publicly disclosed by the United States

In its <u>in camera</u> submission, the government seeks to redact the material generally described below.

First, the proposed redactions protect the names of the county and state affiants referenced in the warrants. These names have not been made public – the government affirms that the affiant on the criminal complaint did not sign any of the warrant affidavits or returns, and the privacy of the agents balances in favor of redaction. Cf. <u>Lahr v. National Transportation Safety Board</u>, 569 F.3d 964, 978-79 (9th Cir. 2009) (holding that FBI agents have a cognizable privacy interest and withholding names under an exemption in the Freedom of Information Act).

Second, the proposed redactions protect certain limited material in the warrant affidavits that has not already been made public by the United States.

Third, the proposed redactions protect the items sought to be seized and those actually seized. This includes: the inventory from the warrant executed on January 8, 2011; the inventory of the items forensically examined following the warrant executed on January 12, 2011; and the references in the affidavit and Attachment A to those same items to be forensically examined. The government seeks the complete withholding of the inventory of items seized consistent with the Eighth Circuit holding that line-by-line redactions may be impractical where each page references protected material. <u>In re Gunn</u>, 855 F.2d at 574. The <u>in camera</u> submission articulates more specifically the material seized – to include books,

---

[4] PNI asserts that the media's rights are stronger where the matters are of "acute public interest." (Notice of Non-Opposition and Reply, at 8.) But it is precisely the acuity of interest that gives rise to the pretrial publicity concerns on the part of the government.

music, writings and college materials – and the danger that disclosure could prejudice the proceedings.[5]

### 2. Conclusion

For the foregoing reasons, the government proposes a deferral of PNI's motion until the filing of any dispositive motions based on the evidence seized. In the alternative, the government produces its proposed redactions to the Court and the defense under seal.

Respectfully submitted this 14th day of February, 2011.

DENNIS K. BURKE
United States Attorney
District of Arizona

*s/Beverly K. Anderson*

BEVERLY K. ANDERSON
Assistant U.S. Attorney

Copy of the foregoing served electronically or by other means this 14th day of February, 2011.

Judy C. Clarke
Mark Francis Fleming
Reuben Camper Cahn
Counsel for the Defendant Jared Lee Loughner

David C. Bodney
Peter S. Kozinets
Counsel for Phoenix Newspapers, Inc.

---

[5] Among the items seized in the January 8 warrant are certain materials for forensic analysis. PNI contends in its state court filing that those items, and material found on them, have already been disclosed, and cites to several internet postings on January 26, 2011. Those postings, however, refer to a statement by "an [unidentified] official close to the investigation." The press may of course utilize unidentified sources, but an attribution to an unidentified source hardly makes a matter a public record.