Judy Clarke
Clarke and Rice, APC
1010 2nd Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

Mark Fleming
Law Office of Mark Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 794-0220

Reuben Camper Cahn
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Defendant Jared Lee Loughner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> JARED LEE LOUGHNER, <br><br> Defendant. | Case No. 11CR00187-LAB <br><br> **DEFENDANT'S OPPOSITION TO THE GOVERNMENT'S MOTION TO COMPEL HANDWRITING EXEMPLARS** |

**INTRODUCTION**

There is no basis at this time for ordering compulsory extraction of handwriting exemplars. Defense counsel has offered to review the documents believed to contain Mr. Loughner's writing and enter into an appropriate stipulation. A stipulation would conclusively establish authorship for all relevant purposes. The government, for no apparent reason, rejected the offer to stipulate and now asks for a court order compelling Mr. Loughner

1

to submit to extraction of handwriting exemplars by FBI agents "in the amount and manner required by the agents." The motion should be denied.

## STATEMENT OF FACTS

Prior to filing the Motion to Compel Handwriting Exemplars, government counsel contacted defense counsel requesting that the defendant voluntarily provide handwriting exemplars for the purposes of comparison to writings discovered during the investigation. Defense counsel offered, in lieu of exemplars, to review the documents in question and enter an appropriate stipulation. Defense counsel requested that the government provide clear copies of the documents in question to facilitate such a stipulation. The government rejected the offered stipulation and on February 3 filed a motion to compel Mr. Loughner to submit handwriting exemplars in an unspecified quantity and manner, as directed by FBI agents.

In its motion, the government acknowledged defense counsel's offer to stipulate. See Mtn. at 2 (Doc. 71). It did not state any reason for rejecting the defense offer, nor did it claim that a stipulation would be inadequate. It stated only the following: "The government declines to accept this offer, and requests that the defendant submit exemplars." In the proposed order lodged with its motion, the government asked that Mr. Loughner be compelled to "provide handwriting exemplars to agents of the Federal Bureau of Investigation, in the amount and manner required by the agents." Proposed Order at 1 (Doc. 71-1). To date, defense counsel has not received a copy of the documents containing the handwriting in question. The defense offer to enter into an appropriate stipulation remains open.

## LEGAL ANALYSIS

For the Court to issue the order requested by the government, there must be a legitimate source of authority. The two possible sources of authority proffered by the government are: (1) the Court's subpoena power under Rule 17(c) of the Federal Rules of Criminal Procedure; and (2) the All Writs Act, codified at 28 U.S.C. § 1651(a). Both provisions require some showing of need (the standards are a bit different between the two), which the government cannot make. There is no conceivable necessity to compel handwriting exemplars where the defense has

1 offered to review the specific documents in question and enter into an appropriate stipulation
2 confirming handwriting.

### A. The government cannot meet the requirements of Rule 17(c)

The compulsion order is improper under Rule 17(c) for two reasons: (1) Rule 17(c) authorizes only the production of already-existing evidence, not the creation of new evidence such as handwriting exemplars; and (2) even if it were applicable, the government cannot meet its threshold requirements.

#### 1. Rule 17(c) does not authorize the creation of new evidence

The government's claim that Rule 17(c) gives a district court the power to order a defendant to create new evidence—in the form of handwriting exemplars—misunderstands the law. The government cites for support one district court decision from 1986, United States v. Vanegas, 112 F.R.D. 235 (D.N.J. 1986), but neglects to mention that the Seventh Circuit has expressly rejected Rule 17(c) as a basis for compelling a defendant to create handwriting exemplars. See United States v. Li, 55 F.3d 325, 329 (7th Cir. 1995) ("The government cites [Rule 17(c)] . . . for the lower court's power to issue this order. . . . [but] Rule 17(c) is inapplicable.").

The Seventh Circuit's interpretation of Rule 17(c) is correct. That rule authorizes the compelled production of documents or objects *already in existence.* This is evident from the advisory committee notes. Specifically, Rule 17(c) was designed to be "substantially the same" as the comparable document production rule in civil cases, Rule 45 of the Federal Rules of Civil Procedure. See Fed. R. Crim. P. 17, advisory committee's notes (1944 note to subdivision (c)). Civil Rule 45, which governs subpoenas to non-parties, is in turn coextensive in scope with the civil document-production discovery rule, Rule 34. See Fed. R. Civ. P. 45, advisory committee's notes (1991 note to subdivision (a)) ("The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34."). And Rule 34, of course, requires only production for inspection documents and *tangible* things that exist in a party's "possession, custody or control." Fed. R. Civ. P 34(a)(1). It does not require a party to produce new evidence—like the handwriting

exemplars sought by the government—for the use of the opposing party. <u>Vanegas</u>, the sole Rule 17(c) case cited by the government, engaged in no consideration at all of the limitation on its scope.

### 2. The government cannot make the necessary four-pronged showing under *Nixon*

Even if Rule 17(c) could somehow be read to authorize the compelled creation of new evidence, the government cannot meet its requirements. The applicable four-pronged test established by the Supreme Court is laid out in <u>Vanegas</u>, the case relied on by the government. Under it, the government must show:

> (1) that the evidence is relevant and evidentiary;
> (2) it is not otherwise procurable reasonably before trial;
> (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that failure to obtain such inspection may unreasonably delay the trial; and
> (4) that the application is made in good faith and is not intended as a general fishing expedition.

<u>Vanegas</u>, 112 F.R.D. at 239 (citing <u>United States v. Nixon</u>, 418 U.S. 683, 699-700 (1974)). The government fails on all four prongs—indeed, it does not even profess an ability to satisfy the <u>Nixon</u> factors. <u>See generally</u> Mtn. (devoid of even a bare assertion of satisfying the <u>Nixon</u> test). In any event, the facts clearly establish that issuance of a Rule 17(c) subpoena is improper.

First, the government cannot show that the exemplars are relevant or evidentiary in light of the defense offer to stipulate to the authorship of the handwritten documents the government possesses. A stipulation would conclusively establish Mr. Loughner's authorship and would obviate any claimed relevance of handwriting exemplars and accompanying expert testimony. <u>Cf.</u> <u>Old Chief v. United States</u>, 519 U.S. 172, 174 (1997) (holding that a district court abused its discretion when it spurned the defendant's offer to stipulate to a prior felony conviction).

Second, the government cannot show that the desired material is not otherwise procurable before trial. The desired material—identification of the authorship of handwritten documents in the government's possession—is absolutely procurable before trial. The defense has expressly offered to stipulate, if appropriate, to the defendant's handwriting.

Third, the government cannot show that it needs handwriting exemplars to properly prepare for trial. The government quite certainly can prepare for trial: it can provide the documents to the defense for inspection and stipulation. Such a stipulation would be, moreover, far superior to the handwriting analysis testimony contemplated by the government—which very well could be inadmissible under Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993). Handwriting analysis, like other "junk science," has dubious scientific value. Numerous courts have rejected attempts to introduce handwriting expert testimony opining on the identity of the author for failing the Daubert test for a host of reasons:

> [In previous cases,] courts held hearings and generally concluded that handwriting analysis did not pass muster because the evidence showed that, despite its long history of acceptance, the validation studies are few (and those that have been done have been criticized as methodologically flawed), there has been no peer review by an unbiased and financially disinterested community of practitioners, the potential error rate is largely unknown, and the technique suffers from a lack of controlling standards.

United States v. Brewer, 2002 WL 596365 (N.D. Ill. 2002) (unpublished) (excluding handwriting expert's testimony). The long list of cases in which expert testimony, opining on the ultimate conclusion of the identity of the author or that exemplars were a match, has been found inadmissible include: Legacy Vision, LLC v. Yeamans, No. 04-CV-1320-M, 2005 WL 6227149, at *8 (W.D. Okla. 2005) (unpublished); United States v. Oskowitz, 294 F. Supp. 2d 379, 384 (E.D.N.Y. 2003); United States v. Hidalgo, 229 F. Supp. 2d 961, 967-68 (D. Ariz. 2002); United States v. Saelee, 162 F. Supp. 2d 1097, 1106 (D. Alaska 2001); United States v. Rutherford, 104 F. Supp. 2d 1190, 1194 (D. Neb. 2000); United States v. Van Wyk, 83 F. Supp. 2d 515, 523 (D.N.J. 2000); United States v. Hines, 55 F. Supp. 2d 62, 70-71 (D. Mass. 1999); United States v. Santillan, 1999 WL 1201765, at *5 (N.D. Cal. 1999); United States v. McVeigh, 1997 WL 47724 (D. Colo. Feb. 5, 1997) (transcript of hearing). See also United States v. Starzecypzel, 880 F. Supp. 1027, 1036 (S.D.N.Y. 1995 (concluding, in a decision predating Kumho Tire Co. v. Carmichael, 526 U.S. 137 (1999), which extended Daubert rule to non-scientific expert opinions: "Were the Court to apply Daubert to the proffered [handwriting expert] testimony, it would have to be excluded."); accord United States v. Crisp, 324 F.3d 261, 272-81 (3d Cir. 2003) (Michael, J., dissenting).

Fourth, the government cannot establish that its compulsion motion is made in good faith when *it* has not even made the handwritten documents available to the *defense* for inspection. Consideration of the good-faith prong raises the question of why the government has refused the defense offer to stipulate and instead seeks to subject Mr. Loughner to the unsupervised discretion of FBI agents who would require his compliance "in the amount and manner" they specify. See Proposed Order (Doc. 71-1).

Finally, it is worth noting that none of the cases cited by the government involve an order compelling handwriting exemplars where the defendant has offered to stipulate to the very documents in question.

**B.     The government cannot meet the requirements of the All Writs Act**

Unlike Rule 17(c), the All Writs Act, codified at 28 U.S.C. § 1651(a), does provide a possible source of authority for an order compelling handwriting exemplars. See Li, 55 F.3d at 328-39. However, this source of authority does not support such an order here because the government cannot make the required showing of necessity.

The All Writs Act provides that a district court "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). Necessity is a prerequisite to a court's exercise of authority under the All Writs Act. As the Supreme Court has explained, "the purpose and function of the All Writs Act [is] to supply the courts with the instruments *needed* to perform their duty." Harris v. Nelson, 394 U.S. 286, 300 (1969) (emphasis added); see also In re Montes, 677 F.2d 415, 416 (5th Cir. 1982) ("[I]t is well settled that relief under the All Writs Act is not available unless the applicant has shown that he has no other adequate remedy.").

The government cannot establish that an extraordinary writ is "needed." See Harris, 394 U.S. at 300. To the contrary, the government has readily available at its disposal a far more "adequate remedy," Montes, 677 F.2d at 416, than forced production of handwriting exemplars for the purpose of subjecting them to comparison to handwritten documents it presumably anticipates using as evidence at trial. As already stated, the defense remains willing to stipulate to their authorship—that is, once the government actually provides a copy of the documents.

Notably, not a single case cited by the government concerned an order compelling handwriting exemplars where the defense has offered to stipulate to the *very documents in question*. At most, the government might have some basis to seek a compulsion order if it is unable to obtain a satisfactory stipulation; even then, the government would face an impossible burden of establishing a need for FBI agents to have unbounded, discretionary access to Mr. Loughner rather than a neutral examiner conduct an examination of predetermined manner and scope.[1]

**C.    Compelled extraction of handwriting exemplars via dictation violates the Fifth Amendment**

Mr. Loughner recognizes that the Ninth Circuit has held that extraction of handwriting exemplars through dictation does not violate the Fifth Amendment. United States v. Pheaster, 544 F.2d 353, 372 (9th Cir. 1976). For the purpose of preservation, he maintains here that Pheaster was wrongly decided and has been thoroughly undermined by subsequent law. As the First Circuit explained, "[w]hen [a person] writes a dictated word, the writer is saying, 'This is how I spell it,'—a testimonial message in addition to a physical display." United States v. Campbell, 732 F.2d 1017, 1021 (1st Cir. 1984) (rejecting Pheaster). Compelling such a communicative act violates a defendant's privilege against self-incrimination. As Campbell put it:

> This might be tested another way; could the defendant be put on the stand and given a spelling test? Obviously, compelled answers would be testimonial, or communicative. Yet that is precisely what the government proposed.

Id. Campbell plainly has the better of the argument; Pheaster's contrary holding runs afoul of the Supreme Court's communicative-acts jurisprudence. See, e.g., Doe v. United States, 487 U.S. 201, 209 (1988) ("[T]he Fifth Amendment privilege against self-incrimination applies to *acts* that imply assertions of fact.") (emphasis added).

For much the same reasons, and notwithstanding Gilbert v. California, 388 U.S. 263, 266 (1967) (holding that taking of handwriting exemplars did not violate a defendant's Fifth

---

[1] If exemplars are ultimately to be ordered produced, the defendant seeks leave to litigate the conditions of the examination, as well as the "amount and manner" of the exemplars.

7

Amendment privilege), even a non-dictated compulsory production of handwriting exemplars violates the Fifth Amendment. To paraphrase the First Circuit, when a person hand writes a printed word, the writer is saying, "This is my normal handwriting"—a testimonial message in addition to a physical display. Id. Gilbert's holding, which took no account of the communicative-acts doctrine, is no longer viable. See e.g., United States v. Hubbell, 530 U.S. 27 (2000).

The communicative act of presenting a handwriting exemplar falls squarely within the definition of "testimonial" evidence as defined by the Supreme Court in an analogous context in Crawford v. Washington, 541 U.S. 36 (2004) (statements must be testimonial to trigger Confrontation Clause right to confront "witness[es]," the same term used in the Fifth Amendment's Self-Incrimination Clause), and Davis v. Washington, 547 U.S. 813 (2006). Davis held that statements to law enforcement officers are testimonial "when the circumstances objectively indicate that there is no . . . ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution." 547 U.S. at 822. The taking of a handwriting exemplar perfectly fits this definition: there is no "ongoing emergency"; the "primary purpose" of its extraction is to "establish [the] past event[]" of the defendant's authorship of some piece of evidence that is "potentially relevant to later criminal prosecution." See id. A defendant's act of communicating to a handwriting examiner, "This is my normal handwriting," does "precisely *what a witness does* on direct examination." Id. at 830 (emphasis in original). It is thus "inherently testimonial," id., and subject to Fifth Amendment protection.

//
//
//
//
//
//
//

8

**CONCLUSION**

The government's motion should be denied. The Court should order the government to provide the defense with copies of the handwritten documents whose authorship it wishes to verify, in order to enable to parties to enter into a mutually satisfactory stipulation.

DATED: February 18, 2011                    Respectfully submitted,

                                          */s/ Reuben Camper Cahn*

Judy Clarke
Clarke & Rice APC

Mark Fleming
Law Office of Mark Fleming

Reuben Camper Cahn
Federal Defenders of San Diego, Inc.

Attorneys for Defendant Jared Lee Loughner

Copy of the foregoing served electronically to:
Wallace Kleindeinst, Beverly Anderson
Christina Cabanillas, Mary Sue Feldmeier

9