# Exhibit B

11-CR-187-LAB                                    1

1                    UNITED STATES DISTRICT COURT

2                   FOR THE DISTRICT OF ARIZONA

3

4

   UNITED STATES OF AMERICA,            .
5                                       .
          Plaintiff,                    .  No. 11-CR-187-LAB
6                                       .
             v.                         .  February 4, 2011
7                                       .
   JARED LEE LOUGHNER,                  .  1:30 p.m.
8                                       .
          Defendant.                    .  San Diego, California
9   . . . . . . . . . . . . . . .

10

11

12

13            TRANSCRIPT OF EX PARTE MOTION HEARING
            BEFORE THE HONORABLE LARRY ALAN BURNS
14               UNITED STATES DISTRICT JUDGE

15                  (SEALED PROCEEDINGS)

16

17

18

19

20

21  Court Reporter:        Melinda S. Setterman, RPR, CRR
                           USDC Clerk's Office
22                         880 Front Street, Room 4290
                           San Diego, California, 92101
23                         melinda_setterman@casd.uscourts.gov

24

25  Reported by Stenotype, Transcribed by Computer

Case 4:11-cr-00187-LABU   Document 124-3   Filed 03/02/11   Page 3 of 17

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 3 of 17

|        |    |                                                                  |
|--------|----|------------------------------------------------------------------|
|        | 1  | sufficient, Your Honor.                                          |
|        | 2  | THE COURT:  All right.  Well, I don't want to bleed             |
|        | 3  | into the next issue just yet, but Ms. Williams, I appreciate    |
|        | 4  | your obligation to pass on a request.                           |
| 02:19  | 5  | I have considered the letter of Ms. Udall.  Frankly, I         |
|        | 6  | think it is very, very speculative.  And in light of the       |
|        | 7  | assurance that I have from the lead prosecutor on the case that |
|        | 8  | no criminal charges are contemplated and he can envision no     |
|        | 9  | scenario where criminal charges would be brought against any of |
| 02:19  | 10 | the subpoenaed witnesses, I find no authority under 3006(a) to  |
|        | 11 | provide counsel for them at taxpayer expense.                   |
|        | 12 | So they are, of course, free to hire counsel if they           |
|        | 13 | want, including Ms. Udall, but I deny the motion to appoint     |
|        | 14 | counsel for them.                                               |
| 02:19  | 15 | MS. WILLIAMS:  I'll pass that on.                               |
|        | 16 | THE COURT:  Ms. Williams, thank you for joining us.  I         |
|        | 17 | appreciate your input on this.  You are excused at this time.   |
|        | 18 | MS. WILLIAMS:  Thank you.                                       |
|        | 19 | THE COURT:  Thank you.                                          |
| 02:19  | 20 | (Proceedings without Ms. Williams telephonically present.)     |
|        | 21 | THE COURT:  Okay.  For the record now it is just               |
|        | 22 | counsel for the Government, counsel for Mr. Loughner here to    |
|        | 23 | discuss the grand jury matter.  I read the papers on this.      |
|        | 24 | Ms. Clarke, I believe that of all the cases cited and          |
| 02:20  | 25 | I read all of them -- I actually have gone back and tried to    |

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 4 of 17

11-CR-187-LAB                                              37

1   acquaint myself with the underlying facts, but I am guided most

2   by the *R. Enterprises* case, and my belief is in this scenario

3   that there is -- what the Supreme Court calls a presumption of

4   regularity, which means I am to assume that the Government

02:20   5   lawyers are operating according to the rules and that the grand

6   jury is operating according to the rules and that the burden is

7   on the defendant to show some deviation from that before I

8   would intervene.

9            I couldn't find a case, to be honest with you, where a

02:20   10   Court had prospectively intervened, maybe one District Court

11   case out of Virginia.  It wasn't clear to me that that

12   happened.  But I saw, for example, in a case in Los Angeles --

13   in fact I think you were counsel in that case, weren't you,

14   *Furrow*, was that his name?

02:21   15            MS. CLARKE:  That's correct.

16            THE COURT:  That there had been an application made,

17   and this -- I am kind of reading between the lines -- the

18   emergency application, like the one made here, was made to

19   Judge Paez who was a District Judge, I am assuming, up in LA,

02:21   20   and it appeared that he denied it because he could not find

21   enough information to rebut the presumption of regularity.

22            And then it came down to a motion after the fact

23   before Judge Monella after the transcripts had been revealed to

24   say, look, this questioning went too far, and we're entitled to

02:21   25   a remedy.  That seemed to me to be the context in which *Furrow*

Case 4:11-cr-00187-LABU Document 124-3 *SEALED* Filed 03/02/11 Page 5 of 17

11-CR-187-LAB                          38

1    was decided.

2              So, I guess my first question to you is, Is there any

3    case where a Court has intervened before the witnesses had been

4    questioned to kind of stake out a position to tell the

02:21   5    Government what they could and couldn't ask?

6              MS. CLARKE:  Well, Your Honor, I am not aware of one,

7    if there is.  In *Furrow* -- and I have to acknowledge that is

8    about 11 or 12 years ago, so I don't know about this Court's

9    memory, but mine is not as clear.

02:22   10             But in the opinion itself, the Fed Sup opinion that

11   the parties have cited, it does indicate that defense counsel

12   didn't know the identity of the witnesses at the time, so we

13   were in a little bit different shape.

14             My recollection was that there were witnesses that we

02:22   15   were aware of at the time, but I can't untangle in my head the

16   procedural history, but it did come to fruition where there was

17   an abuse of grand jury process motion after the fact.

18             THE COURT:  Look, I can readily envision how the

19   process could be abused.  I can see somebody, for example, with

02:22   20   an indictment going back trying to get discovery information

21   that never itself leads to an indictment.

22             But if I have our procedural posture correct in my

23   mind, the Government has indicted on three charges, two

24   attempted murder charges, and this attempted assassination of a

02:23   25   Congressperson.

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 6 of 17

11-CR-187-LAB                                        39

1          And I think kind of reading between the lines and even

2     reading directly, what is contemplated is that they are asking

3     the grand jury to consider now murder charges, additional

4     charges that will be the subject of a superseding indictment.

02:23      5          So I can distinguish this situation from one where

6     everything is done as far as the charging decision and then the

7     grand jury is being misused to gather more information that

8     will be presented at trial.  That is not the situation that we

9     are in.

02:23    10          It seems to me that -- you say discussions with the

11    Government has lead you to believe that what is being presented

12    to the grand jury now is evidence to support these additional

13    murder charges.

14          MS. CLARKE:  That is what it sounds like.  We haven't

02:23    15    had any discussions about it.

16          THE COURT:  So here is where I am at, the lynchpin to

17    you know proper questioning in front of the grand jury is is

18    this relevant in a very broad sense to the grand jury's

19    investigation?

02:24    20          And if they are contemplating murder charges that

21    involve elements such as malice, premeditation, willfulness, I

22    mean, it would seem to me that inquiry into people that were

23    exposed to the defendant leading up to the time of the alleged

24    crime would be relevant.

02:24    25          It may, as you say, bleed into other things, and it,

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 7 of 17

11-CR-187-LAB                                    40

        1   you know, would be a matter, I suppose, of just exactly what
        2   questions were being asked.
        3           I agree with your point that if this is being done to
        4   try to brace for mitigation evidence, if there is a penalty
02:24   5   phase in this case, that that would not be a proper function.
        6   I agree with you, and my reading of the cases tells me that.
        7           But I would have to find, I think, in order to squelch
        8   this or quash the subpoenas as you requested, that is the
        9   dominant purpose.  As I look at this in context, I can't say
02:25  10   that, particularly given that they have to prove these elements
       11   at a guilt phase.
       12           And then there is even some authority -- I've seen
       13   this Fourth Circuit case that says that even the indictment has
       14   to have language in it that meets the intent factors for the
02:25  15   penalty phase as well.
       16           Isn't there a case to that effect from the Fourth
       17   Circuit that says the indictment has to give some notice that
       18   Aprendi has some application to how the -- how the charging
       19   paper reads?
02:25  20           MR. KLEINDINST:  Yes, Your Honor.
       21           MS. CLARKE:  It has been the Government's position
       22   that across the country that they need to indict so-called
       23   special findings.  That is a subject of debate that hasn't been
       24   resolved by the Supreme Court.
02:25  25           THE COURT:  Right.  I -- frankly, and if you disagree

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 8 of 17

11-CR-187-LAB                                           41

```
     1   with that, I am sort of with you.  I mean, I read that opinion,
     2   and I -- you know, look, I respect that three circuit judges in
     3   the Fourth Circuit saw it that way, but it seemed to me that it
     4   took a Sixth Amendment issue that has to do with jury findings
02:26 5   before somebody could be found accountable and then morphed
     6   that into what the charging paper has to say.
     7            There is all kinds of instances where you and I can
     8   point to where they do it by information, and the defendant
     9   gets the same notice that he is entitled to, and then the
02:26 10  Aprendi issues have to do with what the jury has to find, and
     11  the defendant's sentencing -- before the defendant is exposed,
     12  you know, to sentencing.
     13           But, you know, I have to recognize that that case is
     14  out there, and the Government recognizes that it is out there.
02:26 15  They certainly have to comply with it in the Fourth Circuit.  I
     16  am not aware of any law in the Ninth Circuit that is imported
     17  that Aprendi requirement to the pleading phase, are you?
     18           MS. CLARKE:  There's only been one Ninth Circuit
     19  federal death penalty case decided in the Ninth Circuit,
02:26 20  Mitchell, and I don't recall whether it addressed that or not.
     21           It is an issue that is going to percolate at some
     22  point to the Supreme Court, and the question is whether the
     23  federal statutes charge death-eligible crimes because they
     24  don't charge all of the elements that make them capital
02:27 25  eligible, but that is not for today, I don't think.
```

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 9 of 17

11-CR-187-LAB                                          42

```
         1          THE COURT:  Okay.
         2          MS. CLARKE:  Your Honor, and I certainly appreciate
         3   what the Court is saying, and I know the Court's experience
         4   with grand juries and grand jury work, and the R. Enterprises
02:27    5   case and the relevance standard, but the language is pretty
         6   good in R. Enterprises and Williams and Branzburg and all the
         7   cases, the Supreme Court cases, that talk about the function of
         8   the grand jury, and it is to determine probable cause.
         9          And I know that there's been litigation in this
02:27   10   district over grand jury instructions and those issues, but it
        11   is a determination of probably cause whether a crime has been
        12   committed.
        13          The Government cites the language that they have --
        14   they are obligated to run down the clues but the rest of that
02:27   15   sentence is "in order to establish that a crime has been
        16   committed."
        17          So I guess the question is, At what point does the
        18   Government have to stop?  And at what point do they get
        19   probable cause and keep going because they are interested in
02:28   20   discovery or in discovering, you know, affirmative defenses or
        21   discovering what the defense, you know, ultimately will try to
        22   present as a case in mitigation?
        23          So I suppose the line is -- the question is, When does
        24   it stop?  And when does it become, you know, the inference be
02:28   25   that they are abusing the process?
```

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 10 of 17

        1              THE COURT:  How do I fashion a prospective order

        2    though?  That is the difficulty I am having.  I have already

        3    identified to you that if this was to confront an expected

        4    defense -- maybe it is.  Maybe the Government takes a different

02:28   5    position on that.

        6              But my reading of the cases that you cited would

        7    suggest that is not an appropriate matter for the grand jury.

        8    But how do I tell them, look, this question is okay because

        9    this goes to intent, malice, premeditation, and maybe the

02:28   10   special intent factors that you have to plead in a capital

        11   murder indictment, but this question is not okay because this

        12   really goes to blunting mitigation evidence?

        13             It would be very, very difficult for us to figure out,

        14   you know, where those lines are in advance and for me to issue

02:29   15   an order that doesn't have the affect of chilling the

        16   Government in performing a function that is incumbent upon

        17   them.

        18             MS. CLARKE:  Well, I mean, certainly the Court could

        19   quash, and we've asked, and that takes the issue off the table

02:29   20   because the parents -- the reality is they don't need the

        21   parents to give them the elements of the offenses that they are

        22   investigating.  They don't need the parents or the aunt and

        23   uncle or the cousin to give them any of the *Ring* factors as

        24   they are saying it.

02:29   25             So the question is, When does it stop?  And at what

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 11 of 17

1    point does it become abuse to haul these family member in who

2    are clearly distraught and don't want to in any way hurt their

3    community or hurt their son, and that's the tough call.

4              And it seems to me that the Government has pushed it

02:30    5    beyond the line in this case in particular, and that's why

6    we've come to you to ask for some relief.

7              THE COURT:  Do you have any idea - and if you do, it

8    is not in the papers -- but have you had discussions with the

9    prosecutor?  You have some idea of what questions will be put

02:30   10    to these people that give you particular concern that this is

11    going to be an abuse of the grand jury process?

12             MS. CLARKE:  No, but I would be happy to have

13    conversations with the prosecutor.  They haven't offered that

14    up.

02:30   15             THE COURT:  See, the problem I am having is if there

16    is a presumption of regularity and acknowledging that I am a

17    dealing with an experienced lead counsel and probably

18    experienced other counsel for the Government who know what the

19    rules are, who I presume will act in good faith, I just don't

02:30   20    see anything here that rebuts this presumption of regularity

21    and would cause me to -- certainly wouldn't cause me to quash

22    the subpoenas.

23             I see relevance in subpoenaing these witnesses.  I

24    agree with you.  There is no evidence that they were there,

02:31   25    that they are actual fact witnesses as to what happened at the

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 12 of 17

11-CR-187-LAB                                          45

1    Safeway that day, but that is a small part of this.  Whenever

2    there is special mens rea involved, people that know the

3    defendant and can say here's how he appeared a day before, a

4    week before, a month before, that is, I think, very potentially

02:31    5    very relevant evidence in a case with special mens rea.

6          So -- and I don't think it would be an abuse of

7    process at all for them to make inquiry of that and to people

8    who had exposure to the defendant and knowledge of those

9    things.

02:31    10          I am -- I am a little queazy about this, I have to

11    tell you, because I am a parent myself, and I would hate to be

12    in a position of being pitted against my own kids.  I would.

13          I had a nephew once who was in trouble, and my brother

14    called and tried to put -- I said don't put him on the phone.

02:31    15    I don't want to have to be a witness.  If he talks to me

16    directly, then potentially somebody could call me as a witness

17    to this thing.

18          So I am sensitive to that concern, but, you know, the

19    stakes are high here, and I am really reluctant and loathed to

02:32    20    import, you know, whatever my personal sense of things is to

21    the Government and saying this the law because it is not.  It

22    is just personal sentiment that I have to be in that position.

23    Any parent would hate to be in that position.

24          So I get that part of it.  I understand that part of

02:32    25    the concern.  I am very sympathetic to the parents and aunt and

Case 4:11-cr-00187-LABU  Document 124-3 *SEALED*  Filed 03/02/11  Page 13 of 17

11-CR-187-LAB                    46

1  uncle that they are in this situation now that they are faced

2  with this awful dilemma, but I don't see that I have any legal

3  authority to stop it in its tracks.

4          Mr. Kleindinst, do you want to speak to the issue?

02:32   5          MR. KLEINDINST:  Judge, one of the least desirable

6  parts of my job in my career as an AUSA is having to talk to

7  parents of children who are being investigated.  I share the

8  Court's sentiments exactly.  I don't relish it.  I try to avoid

9  it.  In this case it can't be avoid, but in any event, though,

02:33  10  that isn't a reason anyway to quash the subpoenas.

11          I think the Court is right on.  There is a presumption

12  of regularity.  There are, obviously, issues that as to mens

13  rea or premeditation that transcend the events on the morning

14  of January 8th that took place before them.

02:33  15          I don't believe that the Government has to justify to

16  the Court why we want to bring witnesses before the grand jury

17  and/or give the Court a script that will be asked.  The

18  Government is well aware of our professional responsibilities,

19  and we'll do everything to make sure that what ever is done

02:33  20  with these people will be done correctly, appropriately, and

21  humanely.

22          THE COURT:  Mr. Kleindinst, was it your intention --

23  you told me that you were essentially treating this -- and,

24  again, I hasten to say I am using the term loosely -- you are

02:34  25  treating this as an open discovery type case where you are

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 14 of 17

11-CR-187-LAB                                                    47

1    giving witness statements in advance.

2              Is it your intention that if a superseding indictment

3    is returned you are going to give over the transcript of the

4    grand jury proceeding to counsel?

02:34   5         MR. KLEINDINST:  At some point after an indictment,

6    yes, Your Honor.

7              THE COURT:  All right.  Anything else on this issue,

8    Ms. Clarke?

9              MS. CLARKE:  The alternative suggestion that we had in

02:34   10   the pleadings, Your Honor, was a protective order to direct

11   that the Government limit their questions of the family members

12   to the specific probable cause related links in the chain kind

13   of evidence, and I think that might be appropriate because, you

14   know, this issue is probably going to come back.

02:34   15        THE COURT:  Well, okay.  I am reluctant to do that

16   because I do think that its unwarranted Court interference at

17   this point with an executive branch function.  I don't find

18   that I have any evidence that suggests to me that the

19   presumption of regularity or the good faith presumption that I

02:35   20   would apply to the Government in conducting grand jury

21   investigations has been rebutted.

22              So I am going to assume, and I've been assured to some

23   extent by Mr. Kleindinst that they are well aware of what their

24   responsibilities are and they don't intend to breach those, so

02:35   25   I find no justification for me to issue even a warning to the

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 15 of 17

1    prosecutors at this point.

2           The reason I asked the last question, Ms. Clarke, is

3    that there will be an opportunity to verify at some point

4    exactly what was said, and if you are right and it strayed

02:35  5    beyond the proper function of the grand jury, then you and the

6    defendant will have a remedy.

7           The grand jury transcripts will be turned over to you

8    at some point, so you'll be able to look at the questions that

9    were asked, and I think at this point that is the only remedy

02:36 10    that the Court can offer.

11           Again, as I said, I found the best and most direct

12    guidance from the *R. Enterprises*.  Justice O'Connor writes

13    that, "The function of the grand jury is to inquire into all

14    information that might possibly bear on its investigation until

02:36 15    it has identified an offense or satisfied itself that none has

16    occurred."

17           She writes that "the grand jury paints with a broad

18    brush."  "A grand jury investigation is not fully carried out

19    until every available clue has been run down and all witnesses

02:36 20    examined in every proper way to find out if a crime has been

21    committed."

22           She cautions also against the fear of -- or the

23    specter of mini-trials, a Court getting involved prior to the

24    return of indictment, and at page 298, 299 of the opinion, she

02:37 25    quotes from Dionisio, which is at 410 U.S. 1, that, "Any

Case 4:11-cr-00187-LABU   Document 124-3 *SEALED*   Filed 03/02/11   Page 16 of 17

11-CR-187-LAB                                        49

1    holding that would saddle a grand jury with mini-trials and

2    preliminary showings would assuredly impede its investigation

3    and frustrate the public's interest in the fair and expeditious

4    administration of the criminal laws."

02:37    5          I've been guided by those statements and general

6    characterizations of the function of the grand jury, and

7    Ms. Clarke knows and acknowledges that I have substantial

8    experience in running grand jury investigations as well.

9          I agree with Ms. Clarke that there is a point where

02:37   10    questions of parents, you know, of potentially or of relatives

11    of the defendant could go overboard and could be more designed

12    to try to offset the anticipated defense, and I wouldn't think

13    that that is a proper function.

14          But having said that, I have no belief that that is

02:37   15    what is going to occur here.  Instead, focusing on the

16    anticipated murder charges, I think there are special mens rea

17    involved in those that the Government must establish by

18    probable cause that the grand jury must find before those

19    charges are returned.

02:38   20          I also find at this point that the Government out of

21    an abundance of caution is trying to comply with what the

22    Circuit courts have said the requirements are for a capital

23    case indictment and the notice provisions of that indictment.

24          Whether I agree with it or not, I think it is smart

02:38   25    practice for the Government to say, look, there is cases out

1   there that suggest that we have to do this.  It doesn't hurt if

2   we have it in there, even if it turns out to be surplusage, so

3   we're going to attempt to comply with what we think the case

4   law is in the United States for respecting this kind of charge

02:38  5   and this kind of indictment.

6        All of those factors, the presence of the special mens

7   rea, the need to try to comply with Court decisions, importing

8   *Aprendi* principles to the indictment, and then just the general

9   function of the grand jury, which is to look very broadly at

02:39  10   all relevant evidence that might support a charge dictates the

11   conclusion here that the motion to quash must be denied, and

12   the Court does deny it.

13        Again, I point out that there will be recourse.  If

14   there has been any impropriety, you certainly, Ms. Clarke and

02:39  15   Mr. Fleming, be able to study the transcripts at some point and

16   bring to the Court's attention if you think the grand jury has

17   been abused and ask for appropriate remedy in the future.  So

18   the Court denies the motion to quash the subpoenas at this

19   point.

02:39  20        Mr. Kleindinst, you may reissue them if you choose.  I

21   am not directing any particular action other than to say that

22   the temporary suspension of enforcement of those subpoenas is

23   now lifted as of today.

24        So I think that is it.  Is there other issues that we

02:39  25   should discuss respecting the grand jury, Ms. Clarke?