<pre>
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA
 2
              HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4    UNITED STATES OF AMERICA,        )
                                       )
 5                  PLAINTIFF,         )CASE NO. 4:11CR187-TUC LAB
                                       )
 6           VS.                       )
                                       )  SAN DIEGO, CALIFORNIA
 7    JARED LEE LOUGHNER,              )  FEBRUARY 18, 2011
                                       )  1:30 P.M.
 8                  DEFENDANT.         )
      _____)
 9                        REPORTER'S TRANSCRIPT
10                          MOTION HEARING

11    APPEARANCES:

12    FOR THE GOVERNMENT:          DENNIS K. BURKE, U.S. ATTORNEY
                                   BY:  BEVERLY ANDERSON, ESQ.
13                                      MARY SUE FELDMEIER, ESQ.
                                   ASSISTANT U.S. ATTORNEYS
14                                 405 W. CONGRESS ST., STE. 4800
                                   TUCSON, ARIZONA 85701
15
      FOR THE DEFENDANT:           FEDERAL DEFENDERS, INC.
16                                 BY:  JUDY CLARKE, ESQ.
                                        MARK FLEMING, ESQ.
17                                      REUBEN CAHN, ESQ.
                                   220 BROADWAY, STE. 900
18                                 SAN DIEGO, CA 92101

19    FOR PHOENIX NEWSPAPERS,ET AL: STEPTOE & JOHNSON LLP
                                    BY:   DAVID J. BODNEY, ESQ.
20                                  201 E WASHINGTON STR., STE. 1600
                                    PHOENIX, AZ 85004
21

22                                 OFFICIAL COURT REPORTER
                                   UNITED STATES COURTHOUSE
23                                 940 FRONT STREET, STE. 2190
                                   SAN DIEGO, CA 92101
24                                 TEL: (619) 615-3103

25
</pre>

1    **SAN DIEGO, CALIFORNIA – FRIDAY, FEBRUARY 18, 2011, 1:30 P.M.**

2              THE CLERK:  NO. 2, 4:11CR187, UNITED STATES OF

3    AMERICA VERSUS JARED LEE LOUGHNER FOR MOTION HEARING.

4              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

5    RECORD.

6              MS. FELDMEIER:  MARY SUE FELDMEIER AND BEVERLY

7    ANDERSON ON BEHALF OF THE UNITED STATES.

8              WITH US AT COUNSEL TABLE ARE ALSO FBI AGENTS ALLEN

9    SPASTIC (PHONETIC) AND TONY TAYLOR.

10             MS. CLARKE:  JUDY CLARKE AND REUBEN CAHN AND MARK

11   FLEMING ON BEHALF OF MR. LOUGHNER WHO IS NOT PRESENT.

12             THE COURT:  GOOD AFTERNOON.

13             MAY WE HAVE APPEARANCE FOR THE INTERVENER AS WELL?

14             MR. BODNEY:  GOOD AFTERNOON, YOUR HONOR.

15             MY NAME IS DAVID BODNEY OF STEPTOE & JOHNSON IN

16   PHOENIX.

17             THE COURT:  WELCOME.

18             THE FIRST ORDER OF BUSINESS HAS TO DO WITH RULES OF

19   THE COURT.  FOLKS, IF ANY OF YOU HAVE CELL PHONES, THERE IS

20   NOT TO BE ANY TRANSMISSION OF TODAY'S PROCEEDINGS OUTSIDE OF

21   COURT TODAY.  SO PLEASE, DON'T DO THAT IF YOU HAVE A CELL

22   PHONE.  WE DIDN'T TRY TO TAKE THEM FROM YOU.  OUR RULES OF

23   COURT REQUIRE NO ELECTRONIC TRANSMISSIONS OF COURT

24   PROCEEDINGS.  SO PLEASE, DON'T ATTEMPT TO ENGAGE IN THAT.

25             THIS MATTER IS ASSIGNED TO THE DISTRICT OF TUCSON.

1   I HAVE BEEN SPECIALLY ASSIGNED TO HANDLE THE CASE.  DOES

2   ANYONE HAVE OBJECTION TO THESE NONDISPOSITIVE MOTIONS BEING

3   HEARD TODAY IN SAN DIEGO FEDERAL COURT AS OPPOSED TO CONVENING

4   IN TUCSON?

5           MS. CLARKE:  NOT ON BEHALF OF MR. LOUGHNER, YOUR

6   HONOR.

7           THE COURT:  HOW ABOUT THE UNITED STATES?

8           MS. FELDMEIER:  NO, YOUR HONOR.

9           THE COURT:  YOU ARE HERE.  YOU MIGHT HAVE PREFERRED

10  TUCSON, BUT YOU ARE HERE NOW.  DO YOU HAVE OBJECTION TO GOING

11  FORWARD TODAY IN THIS COURTROOM?

12          MR. BODNEY:  NO OBJECTION, YOUR HONOR.

13          THE COURT:  LET ME DEAL FIRST WITH THE MATTER OF THE

14  SO-CALLED MUG SHOT RELEASE.  I HAVE READ THE PAPERS ON THAT,

15  AND I WANT TO ADDRESS THIS FIRST TO THE UNITED STATES.

16          MOST OF THE ARGUMENT IN OUR PAPERS HAS TO DO WITH

17  YOUR CONTENTION THAT THE SIXTH CIRCUIT GOT IT WRONG WHEN THEY

18  DETERMINED THAT MUG SHOTS ARE PRODUCIBLE UNDER THE FREEDOM OF

19  INFORMATION ACT AND THAT THEIR DISCUSSION OF THE PRIVACY ACT

20  EXEMPTIONS IS WRONG.

21          AND THE PROBLEM I HAVE WITH THAT IS I DON'T THINK I

22  CAN MAKE ANY DIFFERENCE ON THAT SCORE.  I THINK IF THERE IS

23  ANY BASIS FOR ME TO FORBID THE RELEASE OF THE SO-CALLED MUG

24  SHOT IN THIS CASE, IT HAS TO BE GROUND ON MR. LOUGHNER'S RIGHT

25  TO A FAIR TRIAL.  I TELL YOU WHY I THINK THAT.

4

1          THE MARSHAL HAS A PROCEDURE, AND I HAVE READ VERY

2    CAREFULLY THE ATTACHED PROCEDURE THAT WAS APPENDED TO THE

3    PLEADINGS.  THE PROCEDURE CALLS FOR MUG SHOTS GENERALLY NOT TO

4    BE RELEASED BY THE MARSHAL SERVICE.  THE EXCEPTION IS IN THE

5    SIXTH CIRCUIT IN TENNESSEE AND OHIO AND KENTUCKY WHERE A COURT

6    OF APPEALS HAS RULED THAT THOSE MUST BE PRODUCED UPON A

7    FREEDOM OF INFORMATION ACT REQUIRED.  I READ THE CASE.  I SAW

8    WHAT HAPPENED.  THE GOVERNMENT WAS SUED THERE FOR NOT

9    PRODUCING THE MUG SHOT.  AN AWARD OF DAMAGES WAS MADE AGAINST

10   THE UNITED STATES.  THAT DECISION WAS NOT APPEALED AND REMAINS

11   THE LAW OF THE SIXTH CIRCUIT.

12          SO WHETHER I AGREE WITH IT OR DON'T AGREE WITH IT

13   DOESN'T REALLY SEEM TO MATTER HERE.  IF I ISSUE A DECISION

14   BASED ON THE STATUTE THAT'S CONTRARY TO THE SIXTH CIRCUIT, NO

15   ONE WILL PAY ANY ATTENTION TO IT IN THE SIXTH CIRCUIT.  I CAN

16   IMAGINE THAT ONE OF THE REPORTERS -- AND YOU TELL ME THERE

17   HAVE BEEN FOUR REQUESTS FROM MEMBERS OF THE MEDIA IN THE SIXTH

18   CIRCUIT.

19          ONE OF THOSE REPORTERS WILL WALK BACK INTO COURT AND

20   YOU'LL SAY, WELL, JUDGE BURNS SAID THAT WE CAN'T HAVE THIS

21   UNDER FOIA, AND THEY'LL SAY JUDGE WHO?  THAT'S BINDING

22   PRECEDENT FOR THEM IN THE SIXTH CIRCUIT.  SO I REALLY DON'T

23   UNDERSTAND WHY THE ARGUMENT WAS MADE TO ME UNDER FOIA.

24          THERE IS NOTHING I CAN DO TO AFFECT THAT DECISION

25   THAT IS IN EFFECT IN THE SIXTH CIRCUIT.  AND IT APPEARS TO ME

1    THAT THAT'S THE IMPETUS FOR THE MARSHALS BRINGING THIS -- THE

2    U.S. ATTORNEY -- THE MARSHALS THROUGH THE U.S. ATTORNEY

3    BRINGING THIS TO MY ATTENTION.

4            HAVE I MISUNDERSTOOD THIS?  I DON'T UNDERSTAND HOW I

5    COULD ISSUE ANY CONTRARY PROCLAMATION THAT WOULD BIND ANY

6    DISTRICT COURT WITHIN THE SIXTH CIRCUIT.

7            MS. FELDMEIER:  WELL, I THINK, YOUR HONOR, THE

8    POSITION THAT WE ARE TAKING IS THAT YOU WOULD HAVE THE ABILITY

9    TO, IF YOU CHOSE, TO BAR THE RELEASE OF THE PHOTO; THAT THE

10   U.S. MARSHAL WOULD BE BOUND BY THIS COURT'S ORDER BECAUSE OUR

11   ARGUMENT IS THAT YOU HAVE THE VENUE TO DO THAT BECAUSE THE

12   PHOTO ORIGINATES HERE IN THE DISTRICT OF ARIZONA.  BUT FOR THE

13   WONDERS OF TECHNOLOGY, NOBODY COULD WALK INTO THE OFFICES OF

14   THE U.S. MARSHAL AND GET ONE OF THOSE PHOTOS.  THAT WOULD THEN

15   SET AT THAT POINT A CHALLENGE, I GUESS, TO THIS COURT'S ORDER

16   IN THE SIXTH CIRCUIT THAT WOULD BE LITIGATED IN THE SIXTH

17   CIRCUIT, OF COURSE, NOT HERE.

18           SO I DON'T KNOW, I CAN'T PREDICT DOWN THE ROAD OF

19   THE EVENTUAL OUTCOME OF HOW SUCH A CONFLICT WOULD BE RESOLVED.

20   IT WOULD HAVE TO BE RESOLVED IN THE SIXTH CIRCUIT, NOT HERE IN

21   THE NINTH.  AND THAT'S THE BASIS OF OUR POSITION BECAUSE WE DO

22   HAVE TO ABIDE BY THE POLICY OF THE DEPARTMENT OF JUSTICE, AND

23   THE NINTH CIRCUIT DOES NOT FOLLOW THE SIXTH.  THEY HAVEN'T

24   COME OUT ON THE ISSUE OR COME OUT DIRECTLY AGAINST WHAT THE

25   SIXTH CIRCUIT HAS SAID.

1        WE ARE ASKING THIS COURT TO FOLLOW THE PROCEDURES OF

2   THE MARSHAL AND ALSO FIND THAT THE PRIVACY RIGHTS OBVIOUSLY

3   THAT MR. LOUGHNER IS ASSERTING WOULD BE A REASON TO NOT GIVE

4   UP THE MUG SHOT.  AND, FINALLY, LAST BUT NOT LEAST, OF COURSE,

5   TRYING TO GIVE A FAIR TRIAL TO MR. LOUGHNER.  AND PUTTING THIS

6   OUT THERE, I DON'T KNOW ESSENTIALLY WHAT'S GOING TO HAPPEN.

7        ALL THIS COURT CAN DO IS CONTROL US BEFORE IT, AND

8   OUR SUGGESTION WOULD BE THAT YOU COULD BAR IT IN THE INTEREST

9   OF GIVING MR. LOUGHNER A FAIR TRIAL.  AND THEN THAT WOULD JUST

10  SET OUT AT THAT POINT, I ASSUME, A CHALLENGE WILL PROBABLY

11  FLOW FROM THAT IN THE SIXTH CIRCUIT, BUT I CANNOT BEGIN TO

12  PREDICT WHAT THE OUTCOME WOULD BE.

13        THE COURT:  THERE IS SPECIAL COUNSEL FOR FREEDOM OF

14  INFORMATION ACT REQUEST, IS THAT RIGHT, AT THE DEPARTMENT OF

15  JUSTICE?

16        MS. FELDMEIER:  I GUESS I DIDN'T UNDERSTAND THE

17  QUESTION.  THERE IS COUNSEL YOU ARE SAYING?

18        THE COURT:  YES, THERE IS SPECIAL COUNSEL WHO DEAL

19  DAY-TO-DAY WITH FOIA REQUESTS?

20        MS. FELDMEIER:  WE CAN'T EVEN TAKE CREDIT FOR THE

21  MAJORITY, BECAUSE THAT COUNSEL HELPED US TREMENDOUSLY IN

22  TRACKING THIS.

23        THE COURT:  THE DIFFICULTY I HAVE WITH THIS IS THAT

24  MARSHAL'S POLICY SEEMS TO BE THAT IF A REQUEST EMANATES FROM

25  THE SIXTH CIRCUIT THAT IT HAS TO BE HONORED.  THIS IS A CASE

1  THAT'S HAD NATIONAL ATTENTION, CONTINUES TO HAVE NATIONAL

2  ATTENTION, AND YOU TELL ME IN YOUR PLEADINGS THERE HAVE BEEN

3  15 REQUESTS FOR THE SO-CALLED MUG SHOT AND FOUR OF THOSE, IN

4  YOUR JUDGMENT, EMANATE FROM SIXTH CIRCUIT STATES?

5          MS. FELDMEIER:  YES.  THAT IS MY UNDERSTANDING FROM

6  COUNSEL.

7          THE COURT:  SEEMS TO ME CONSISTENT WITH THE POLICY,

8  AS I READ IT, THAT YOU HAVE TO EXCEED TO THOSE.  WHAT YOU ARE

9  TELLING ME TODAY THAT I CAN ISSUE SOME CONTRARY RULING AND

10  THAT'LL JOIN THE ISSUE AGAIN FOR THE SIXTH CIRCUIT, I DON'T

11  SEE THIS IN THE POLICY THAT YOU ATTACHED.

12          MS. FELDMEIER:  WHAT I WOULD SUGGEST IS THAT THE WAY

13  WE WOULD SUGGEST THE ORDER BEING WRITTEN IS THAT IT BE GRANTED

14  ORDERING THAT THE UNITED STATES INCLUDING THE U.S. MARSHAL

15  SERVICE SHALL NOT PUBLICLY RELEASE IT.  YOU ARE COMING DOWN

16  "DON'T FOLLOW YOUR SIXTH CIRCUIT EXCEPTION.  I AM GIVING YOU

17  AN ORDER NOT TO RELEASE THIS BECAUSE I WANT MR. LOUGHNER'S TO

18  HAVE A FAIR TRIAL."

19          THE COURT:  THAT'S A DIFFERENT BASIS.  THAT EMANATES

20  FROM HIS SIXTH AMENDMENT RIGHT TO A FAIR TRIAL.  I AGREE THAT

21  I HAVE AUTHORITY TO ISSUE SUCH AN ORDER.  I JUST DON'T THINK

22  IT MAKES SENSE OR WOULD BE EFFICACIOUS FOR ME TO TELL JUDGES

23  IN THE SIXTH CIRCUIT THAT THEY SHOULDN'T FOLLOW A CIRCUIT

24  PRECEDENT THERE ON THE FOIA MATTERS.  SO I MAKE NO RULING AS

25  TO THE FOIA MATTER.

8

1          FRANKLY, BETWEEN US HERE, I AM NOT CONVINCED THAT HE

2    HAS A PRIVACY INTEREST.  ON THE OTHER HAND, I AM LIKEWISE NOT

3    CONVINCED THAT THE MUG SHORT NEEDS TO BE RELEASED TO SHOW THE

4    FUNCTIONING OF GOVERNMENT HERE.  I JUST DON'T GET THAT

5    CONNECTION HERE.  EVERYBODY KNOWS WHO THE DEFENDANT IS.  HE

6    HAS BEEN IDENTIFIED.  THERE HAVE BEEN PHOTOS OF HIM.  SO I AM

7    BUFFETED A LITTLE BIT, BUT I DON'T REACH THAT ISSUE.

8          ON THE ISSUE OF WHETHER HE HAS A SIXTH AMENDMENT

9    RIGHT THAT NEEDS TO BE PROTECTED BY ME ISSUING AN ORDER --

10   MS. CLARKE, YOU ARE GOING TO SPEAK FOR MR. LOUGHNER ON THIS --

11   MR. FLEMING.

12         MR. FLEMING, I AM LIKEWISE NOT PERSUADED IN THIS

13   CASE.  LET ME SAY THIS:  WE ARE DEALING WITH TWO PICTURES OF

14   MR. LOUGHNER; CORRECT?

15         MR. FLEMING:  THAT'S RIGHT, YOUR HONOR.

16         THE COURT:  THEY HAVE BEEN PRESENTED TO ME IN

17   CAMERA.  I HAVE LOOKED AT THEM.  I HAVE READ THE DESCRIPTIONS

18   OF MUG SHOTS GENERALLY IN THE CASES.

19         I THINK THERE IS A DANGER WHEN MUG SHOTS LOOK LIKE

20   THE DESCRIPTIONS IN THOSE CASES.  I HAVE ONE, A FAMOUS ONE

21   HERE THAT I FOUND OF JAMES BROWN, NOW DECEASED, UPON HIS

22   ARREST.  HERE HE IS HOLDING UP SOME KIND OF PLACARD IN FRONT

23   OF HIM.  HE HAS GOT THE LINES THAT TELL EXACTLY HOW TALL HE

24   IS.  THIS IS CLEARLY RECOGNIZABLE AS A SHOT TAKEN BY POLICE, A

25   SO-CALLED MUG SHOT.

9

1          THE TWO PHOTOS, MR. FLEMING, THAT I HAVE LOOKED AT

2     DON'T LOOK ANYTHING LIKE THIS.  AND, IN FACT, I HAVE GOT TO

3     TELL YOU WITH RESPECT TO THE FRONT-ON PHOTO, IF SOMEONE DIDN'T

4     PARTICULARLY TELL ME THAT THIS WAS TAKEN BY JAILERS, I

5     WOULDN'T GLEAN THAT NECESSARILY.  I CAN'T MAKE OUT JAIL GARB

6     UNLESS SOMEBODY SAYS THAT IS ACTUALLY JAIL GARB.  YOU CAN'T

7     REALLY TELL AND THERE IS NOTHING ELSE, AT LEAST THE FRONTAL

8     VIEW PHOTO.

9          NOW, THE SIDE ONE, PICTURES ARE TYPICALLY TAKEN SIDE

10    VIEW WHEN THEY ARE TAKEN IN CONNECTION WITH AN ARREST OR

11    SOMETHING.  SO THAT ONE IS A LITTLE CLOSER.  I HAVE TO TELL

12    YOU, I JUST DON'T SEE THE DANGERS THAT THOSE CASES TALK ABOUT.

13         HERE IS WHAT ELSE TROUBLES ME ABOUT THE REQUEST.  I

14    AM -- ON THE SIXTH AMENDMENT SCORE, I CAN'T JUST AUTOMATICALLY

15    SAY THIS IS LIKELY TO DEPRIVE HIM OF A FAIR TRIAL.  I NEED TO

16    TAKE INTO CONSIDERATION THE PARTICULAR CONTEXT OF THE CASE,

17    CIRCUMSTANCES INCLUDING IN THIS CASE THE FACT THAT HIS IMAGE

18    HAS BEEN WIDELY DISSEMINATED ALREADY.  I HAVE GOT TO TELL YOU

19    AT LEAST AS TO THE FRONTAL SHOT IN THIS CASE, I THINK IT'S

20    TAMER THAN THE IMAGE THAT EVERYBODY HAS SEEN OF HIM THAT HAS

21    BEEN CIRCULATED AROUND THE INTERNET.

22         SO WHEN I LOOK AT THIS QUALITATIVELY AND TRY TO DO

23    THE BALANCING AND SAY IS THERE A GREAT RISK THAT HIS RIGHT TO

24    A FAIR TRIAL IS GOING TO BE COMPROMISED BY RELEASE OF ONE OR

25    BOTH OF THESE PHOTOS, I JUST DON'T SEE IT.

10

1          I AM HAPPY TO HEAR FROM YOU.

2          MR. FLEMING:  YOUR HONOR, WE ARE JUST GOING TO REST

3   ON OUR PAPERS.  I DO WANT TO MAKE A COMMENT ABOUT BALANCING

4   CONCERNS THAT THE COURT EXPRESSED.

5          AS THE COURT HAS POINTED OUT, THERE HAS BEEN A

6   WIDELY CIRCULATED PHOTOGRAPH OF MR. LOUGHNER THAT THE COURT

7   HAS DESCRIBED AS PERHAPS WORSE THAN THE ONES THAT ARE NOW

8   UNDER CONSIDERATION.  IN LOOKING AT THE BALANCING TEST, THE

9   INFORMATION OR THE PHOTOGRAPH THAT'S OUT THERE HAS BEEN WIDELY

10  DISSEMINATED, AND SO THERE DOESN'T SEEM TO BE MUCH ON THE SIDE

11  OF THE EQUATION FOR RELEASING THESE ADDITIONAL PHOTOGRAPHS.

12         WE RATHER NOT GET INTO THE REASONS WHY ONE PHOTO IS

13  MORE OR LESS DAMAGING THAN THE OTHER AT THIS TIME.  WE SIMPLY

14  ASSERT HIS PRIVACY RIGHTS.  THE MARSHAL'S OWN INTERNAL

15  POLICIES ARE PRETTY CLEAR ON THE RELEASE OF MUG SHOTS.  THERE

16  IS STILL AN ONGOING GRAND JURY CONVENING RIGHT NOW.

17         AND SO YOU HAVE THE ISSUE, YOUR HONOR, OF RELEASING

18  THIS MUG SHOT BEFORE THE CONCLUSION OF THE GRAND JURY

19  INVESTIGATION.  AT A MINIMUM, WE WILL URGE THE COURT TO DELAY

20  UNTIL THEY FINISH THEIR WORK.

21         THE COURT:  THERE IS THE SPECTER OF HOLDING THINGS

22  BACK, TOO.  I HAVE THOUGHT ABOUT THAT, AND I THINK THAT THAT

23  CAN BE EQUALLY BAD HERE.  WE ARE MAKING THESE PICTURES LOOK OR

24  SEEM WAY MORE OMINOUS THAN THEY REALLY ARE.  I HAVE LOOKED AT

25  BOTH OF THEM.

1          AS I SAID, I THINK BOTH SHOTS, EVEN THE SIDE SHOT,

2     IS TAMER THAN THE ONE THAT HAS BEEN CIRCULATING AROUND FOR A

3     MONTH NOW.  I DON'T WANT TO GIVE ANYBODY THE IMPRESSION THAT

4     THERE IS SOMETHING OMINOUS HERE AND ALL OF A SUDDEN IT'S GOING

5     TO BE NEWSWORTHY.  FRANKLY, I DON'T UNDERSTAND THE

6     NEWSWORTHINESS AT THIS POINT.

7               WELL, ANYTHING ELSE FROM COUNSEL FOR MR. LOUGHNER?

8               MR. FLEMING:  NO, YOUR HONOR.

9               THE COURT:  FROM THE UNITED STATES, ANY POSITION ON

10    THIS?

11              MS. FELDMEIER:  NO, YOUR HONOR.

12              THE COURT:  HERE IS -- I AM GOING TO TRY TO MAKE

13    THIS VERY CLEAR.  I ISSUE NO ORDER REGARDING THE MUG SHOTS AT

14    THIS POINT.  I HAVE GIVEN MY REASONS WHY I THINK IT WOULD BE

15    INEFFECTUAL FOR ME TO ISSUE AN ORDER UNDER THE FREEDOM OF

16    INFORMATION ACT REQUEST.

17              THERE IS A CIRCUIT COURT IN THE MID-WEST THAT HAS

18    SAID THESE TYPES OF MATERIALS, MUG SHOTS, ARE PRODUCIBLE UNDER

19    THE FREEDOM OF INFORMATION ACT.  I HAVE NO AUTHORITY TO

20    CONTRAVENE THAT DECISION.  AND THE UNITED STATES NEVER SOUGHT

21    TO APPEAL IT TO THE SUPREME COURT.  IT IS PRECEDENCE THERE.

22    AND IT WOULD BE AN ACT OF FUTILITY TO DECIDE DIFFERENTLY UNDER

23    THE FREEDOM OF INFORMATION ACT.  SO I DECLINE TO DO THAT.

24              I HAVE READ AND CONSIDERED THE PAPERS IN THE CONTEXT

25    OF MR. LOUGHNER'S SIXTH AMENDMENT RIGHT TO A FAIR TRIAL, AND I

12

1    HAVE DONE THE BALANCING THAT ALL COURTS INDICATE IS REQUIRED

2    THERE.  I DO NOT SEE A SERIOUS THREAT TO HIS ABILITY TO GET A

3    FAIR TRIAL IF THE TWO SHOTS ARE RELEASED.

4          NOW, WHAT I WANT TO MAKE CLEAR I AM NOT ORDERING THE

5    RELEASE OF THEM.  I AM NOT, BUT I AM NOT -- BY THE SAME TOKEN

6    I AM NOT GOING TO PROHIBIT IT EITHER.  I DON'T SEE THAT I HAVE

7    AUTHORITY UNDER FOIA.  I DON'T SEE ADEQUATE GROUNDS FOR IT

8    UNDER THE SIXTH AMENDMENT.  I, FRANKLY, DON'T THINK IT WOULD

9    IMPAIR HIS RIGHT TO A FAIR TRIAL SOME MONTHS DOWN THE LINE IF

10   THE OTHER WHAT I REGARD AS TAMER PHOTOS OF HIM ARE RELEASED.

11         SO IF THE MARSHALS FEEL THEY HAVE TO DO THIS TO

12   COMPLY WITH SIXTH CIRCUIT PRECEDENT IN LIGHT OF THE REQUEST

13   THAT COMES FROM THE SIXTH CIRCUIT, I'LL LEAVE THAT TO THEM.

14   BUT I ISSUE NO ORDER ON THAT.  I AM NEITHER REQUIRING IT THAT

15   YOU ISSUE NOR AM I FORBIDDING THAT YOU ISSUE -- I SHOULD SAY

16   RELEASE -- THE MUG SHOTS.  SO THAT SETTLES THAT ISSUE.

17         THE OTHER ISSUE HAS TO DO WITH SEARCH WARRANTS AND

18   RELEASE OF SEARCH WARRANTS.  I WANT TO GO BACK AND PUT THIS IN

19   CONTEXT, MAKE SURE EVERYONE AGREES HOW WE GOT TO THIS POINT.

20         MY UNDERSTANDING -- AND I PUT THIS TO THE UNITED

21   STATES PROSECUTORS.  MY UNDERSTANDING IS THAT THERE ARE TWO

22   WARRANTS THAT ISSUED IN THIS CASE; IS THAT CORRECT?

23         MS. ANDERSON:  THAT'S CORRECT, YOUR HONOR.

24         THIS IS BEVERLY ANDERSON.

25         THE COURT:  OKAY, MS. ANDERSON.

1          AND THOSE HAVE BEEN PRODUCED TO THE COURT.  I HAVE

2    REVIEWED THOSE WARRANTS.

3          THEY WERE BOTH SIGNED BY A SUPERIOR COURT JUDGE FOR

4    THE PIMA COUNTY SUPERIOR COURT.

5          MS. ANDERSON:  THAT'S CORRECT.  JUDGE BROWNING.

6          THE COURT:  AND AT LEAST ONE OF THE WARRANTS WAS A

7    COLLABORATION BETWEEN FEDERAL AND STATE LAW ENFORCEMENT AND

8    HAD TWO AFFIANTS, BOTH A STATE OFFICER AND A FEDERAL OFFICER.

9    IS THAT ALSO TRUE?

10          MS. ANDERSON:  THAT IS CORRECT.

11          THE COURT:  THERE WAS A REQUEST TO SEAL THESE AT THE

12    TIME THAT THE INVENTORIES OR THE PROPERTY THAT WAS SEIZED

13    PURSUANT TO THE WARRANTS WAS RETURNED; IS THAT TRUE?

14          MS. ANDERSON:  THAT IS TRUE.

15          THE COURT:  AT SOME POINT THEN, MY UNDERSTANDING IS

16    IN ARIZONA THERE IS A RIGHT TO LOOK AT THE WARRANT AFTER FIVE

17    DAYS AFTER THE INVENTORIES ARE RETURNED AND THE REQUEST WAS

18    MADE BY TWO MEDIA OUTLETS, PHOENIX NEWSPAPERS -- AND YOU'LL

19    HAVE TO GIVE ME THE CALL SIGNS FOR THE TV STATION.  I CAN'T

20    REMEMBER THEM.

21          MR. BODNEY:  KPNX BROADCASTING COMPANY.

22          THE COURT:  BOTH THOSE MEDIA OUTLETS MADE

23    APPLICATION UNDER THE ARIZONA STATUTE FOR RELEASE OF THE

24    SEARCH WARRANTS AT SOME POINT AFTER FIVE DAYS; IS THAT ALSO

25    CORRECT?

14

1          MS. ANDERSON:  I BELIEVE THAT IS CORRECT, YOUR

2     HONOR, YES.

3          THE COURT:  AND THE APPLICATIONS WERE FIRST MADE

4     WITH THE PIMA COUNTY SUPERIOR COURT.  THEN THE GOVERNMENT

5     REMOVED THEM TO FEDERAL COURT.  ALSO TRUE, EVERYBODY IS

6     TRACKING ON THE PROCEDURAL BACKGROUND SO FAR?

7          MS. ANDERSON:  YES, YOUR HONOR.

8          THE COURT:  AND THAT WAS WITHOUT OBJECTION BY

9     PHOENIX NEWSPAPERS AND THE TV STATION?

10         MR. BODNEY:  YES, THAT'S CORRECT.

11         THE COURT:  SO WHAT'S LEFT TO DECIDE HERE IS WHETHER

12    THERE IS A COMMON LAW RIGHT TO DISCLOSURE OF THESE OR

13    CONSTITUTIONAL RIGHT UNDER THE FIRST AMENDMENT; CORRECT?

14         MS. ANDERSON:  CORRECT.

15         THE COURT:  IF IT IS HELPFUL, I CAN TELL YOU WHAT MY

16    PRELIMINARY VIEW IS ON THIS.

17         MS. ANDERSON:  THAT WOULD BE HELPFUL, YOUR HONOR.

18         THE COURT:  MY PRELIMINARY VIEW IS THAT IN LIGHT OF

19    THE FACT THAT GOVERNMENT HAS REPEATEDLY SAID IT IS PURSUING

20    ADDITIONAL DIFFERENT CHARGES AND THAT THERE HAS BEEN NO

21    INDICTMENT ON THOSE CHARGES, YET THAT TIMES-MIRROR CONTROLS.

22         TIMES-MIRROR, OF COURSE, FORBADE THE RELEASE OF

23    SEARCH WARRANT MATERIALS WHEN AN INVESTIGATION WAS ONGOING AND

24    NO INDICTMENT HAD BEEN RETURNED.  THEY FOUND SPECIFICALLY THAT

25    THERE WAS NO RIGHT TO SEARCH WARRANT MATERIALS UNDER THE FIRST

1    AMENDMENT ON THE PART OF THE MEDIA.

2            IN THIS CASE I UNDERSTAND THE MEDIA HAS TAKEN THE

3    POSITION WHILE THE GOVERNMENT ANNOUNCED THAT THE

4    INVESTIGATIONS ARE OVER, AND THEY APPENDED TO THEIR REPLY

5    BRIEF AT LEAST SOME PROOF OF THAT STATEMENTS BY BOTH PIMA

6    COUNTY OFFICIALS AND THE FBI SPOKESPERSON THAT THE

7    INVESTIGATION HAS NOW BEEN COMPLETED AND THE CASE SUBMITTED TO

8    THE U.S. ATTORNEY.

9            WHAT'S MISSING, HOWEVER, IS I THINK THERE IS AN

10   EXPECTATION, CERTAINLY ON THE PART OF DEFENSE COUNSEL, ON MY

11   PART GIVEN THE REPRESENTATIONS THAT HAVE BEEN MADE IN PRIOR

12   HEARINGS THAT THERE IS A SUPERSEDING INDICTMENT EXPECTED.  AND

13   GIVEN WHAT WAS IN THE COMPLAINT, IT IS EXPECTED I THINK THAT

14   THERE WILL BE ADDITIONAL AND DIFFERENT CHARGES.  AND UNDER THE

15   CIRCUMSTANCES I THINK THAT IS SUFFICIENT TO CONTINUE IN PLACE

16   THE STAY ON THE RELEASE OF SEARCH WARRANT DOCUMENTS AT THIS

17   TIME.

18           NOW, HAVING SAID THAT, LET'S MOVE AHEAD.  THE

19   GOVERNMENT TOLD ME THAT AS OF MARCH 9TH THEY WOULD EXPECT ANY

20   AND ALL CHARGES CRYSTALLIZED, AND SO I EXPECT WE'LL KNOW BY

21   THEN WHETHER THERE IS GOING TO BE AN ADDITIONAL INDICTMENT AND

22   WHAT THOSE CHARGES ARE.

23           IT'S MY VIEW BASED ON THE CASES THAT AT THAT POINT

24   THE SITUATION UNDER THE CONSTITUTION CHANGES AND UNDER THE

25   FEDERAL COMMON LAW CHANGES.  PARTIES HAVE RELIED ON THE

1    INZUNZA CASE DECIDED BY JUDGE MILLER OUT OF THIS DISTRICT, AND

2    I HAVE READ THAT CASE VERY CAREFULLY.  I HAVE SOME RESPECTFUL

3    DISAGREEMENTS WITH THE HOLDING IN THAT CASE.

4           ONE, MS. ANDERSON AND MS. CLARKE, IS THAT JUDGE

5    MILLER SAID HE COULD NOT FIND ANY TRADITION OR HISTORY OF

6    OPENNESS OF SEARCH WARRANTS.  AND MY OWN RESEARCH TELLS ME

7    THAT THAT IS NO LONGER THE CASE AS OF 2011.  INZUNZA WAS

8    DECIDED IN 2004, MAY NOT HAVE EVEN BEEN TRUE THEN, BUT IT IS

9    CERTAINLY NOT TRUE NOW.  THE CASES SEEM TO BE SPLIT ON THIS

10   ISSUE.

11          THE EIGHTH CIRCUIT HAS SAID THAT THERE IS A COMMON

12   LAW RIGHT OF ACCESS TO IT.  THERE ARE NUMEROUS STATE STATUTES

13   THAT, LIKE ARIZONA STATUTE DOES, PROVIDE THAT THE SEARCH

14   WARRANT MATERIALS WILL BE OPEN, ABSENT THE BALANCING AND A

15   COUNTERVAILING INTEREST BEING SHOWN, SOME DAYS AFTER THE AWARD

16   ISSUES.

17          I HAVE REVIEWED STATUTES FROM ALASKA, ARKANSAS,

18   CALIFORNIA, ARIZONA, NEW HAMPSHIRE, NORTH CAROLINA, NUMEROUS

19   STATES THAT HAVE SOME PROVISION SIMILAR TO THE PROVISION THAT

20   THE INTERVENERS RELY ON IN THIS CASE.

21          CALIFORNIA, FOR EXAMPLE, HAS A PROVISION UNDER 1534

22   OF THE PENAL CODE THAT SAYS TEN DAYS AFTER THE SERVICE OF THE

23   WARRANT AND THE RETURN OF THE INVENTORY THE WARRANT SHALL BE

24   OPEN TO THE PUBLIC.  MANY STATES TREAT THESE AS A PUBLIC

25   RECORD AND GIVEN THE TREND TOWARD OPENING UP GOVERNMENT AND

17

1    OPENING UP PUBLIC RECORDS, MANY SAY THAT THESE ARE TO BE

2    OPENED ABSENT THE BALANCING TEST WHERE EITHER SOME INTEREST IN

3    INVESTIGATION IS COMPROMISED, THE DEFENDANT'S FAIR TRIAL RIGHT

4    IS COMPROMISED OR THE LIKE.

5         SO I HAVE TO TELL YOU, I DISAGREE WITH THAT PART OF

6    INZUNZA THAT SAYS THERE IS NO HISTORY OR TRADITION.  THE

7    HISTORY IS MORE RECENT.  IT'S NOT A HISTORY GOING BACK

8    HUNDREDS OF YEARS, BUT THE HISTORY BASICALLY CORRESPONDS WITH

9    WHAT I THINK HAS BEEN A TREND IN OUR SOCIETY TO OPEN UP

10   AGENCIES OF GOVERNMENT, THE GENESIS FOR THE FREEDOM OF

11   INFORMATION ACT, FOR EXAMPLE.  AND THAT HAS RESULTED IN A

12   NUMBER OF STATES AND SOME OF THE CIRCUITS WHO LOOKED AT THIS

13   ISSUE AND SAID, YES, THERE IS A COMMON LAW RIGHT OF ACCESS TO

14   SEARCH WARRANTS.

15        THE NINTH CIRCUIT HAS SAID IT IN AN UNPUBLISHED

16   CASE.  I DON'T KNOW IF YOU SAW THAT KORT CASE.  IF YOU DIDN'T,

17   I CAN GIVE YOU THAT.

18        KORT IS AT 2005 WESTLAW 1400288 -- 2005 WESTLAW

19   1400288.  AND WHILE IT'S NOT BINDING, IT IS PERSUASIVE TO ME.

20   THE NINTH CIRCUIT FINDS "WE CONCLUDE THAT A COMMON LAW RIGHT

21   OF ACCESS APPLIES TO BOTH THE SEARCH WARRANT MATERIALS AND THE

22   INDICTMENT."  THE INDICTMENT WAS BEING WITHHELD IN THAT CASE

23   AS WELL.

24        NOW, THE CIRCUMSTANCES IN KORT ARE DIFFERENT FROM

25   THE CIRCUMSTANCES HERE.  BUT THEY ARE ALSO VERY DIFFERENT FROM

1    THE CIRCUMSTANCES IN TIMES-MIRROR AND IN INZUNZA.

2         NOW, IN KORT, THE DEFENDANT PLED GUILTY AND IT WAS

3    THE KIND OF DEAL THAT WAS WORKED OUT QUIETLY, CAME IN AND

4    PLED, AND THERE WAS AN EFFORT TO KEEP THE INDICTMENT UNDER

5    SEAL AND THE SEARCH WARRANT UNDER SEAL.  AND THERE WAS A

6    PETITION INTERVENING TRYING TO GET THOSE MATERIALS, AND THE

7    COURT SAID EVEN THOUGH THE DEFENDANT HAS NOT BEEN SENTENCED

8    YET, LOOK, THERE IS RIGHT OF ACCESS TO THESE THINGS.  THE

9    USUAL REASONS FOR PROTECTING NO LONGER APPLY.

10        AND THAT'S THE SITUATION THAT I HAVE TO TELL YOU

11   TENTATIVELY I THINK WE'D BE IN IF AN INDICTMENT IS RETURNED IN

12   THIS CASE.  INTERVENERS SAY THE GOVERNMENT SAYS THE

13   INVESTIGATION IS OVER AND THE RETURN OF THE INDICTMENT WOULD

14   CRYSTALLIZE THE CHARGES.

15        SO TO ME WHAT SEEMS TO BE LEFT ARE ANY PRIVACY

16   CONCERNS THAT MAY BE IMPLICATED BY RELEASE OF AFFIDAVITS AND

17   THE SEARCH WARRANTS, AND THEN, OF COURSE, THE BALANCING THAT

18   HAS TO TAKE PLACE TO DETERMINE WHETHER ANY OF THE MATERIAL

19   WOULD BE LIKELY TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL

20   RIGHT.

21        WE ARE NOT THERE AT THIS POINT, I DON'T THINK.  I

22   THINK TIMES-MIRROR STILL CONTROLS.  BUT I HAVE TO TELL YOU,

23   MS. ANDERSON -- AND, MR. FLEMING, ARE YOU ON THIS ONE, TOO, OR

24   IS THIS -- MR. CAHN.

25        MR. CAHN, I HAVE TO TELL YOU, YOU CAN'T READ

19

1    TIMES-MIRROR WITHOUT COMING AWAY SAYING WHAT IF TWO

2    CIRCUMSTANCES WERE DIFFERENT, THERE WOULD HAVE BEEN A

3    DIFFERENT RESULT IN TIMES-MIRROR.  ONE, AN INDICTMENT HAS BEEN

4    RETURNED; AND TWO, THE INVESTIGATION WAS OVER AND THERE IS NO

5    CHANCE OF COMPROMISING INVESTIGATION.

6         AT EACH JUNCTURE WHERE THEY STATE THE HOLDING IN

7    TIMES-MIRROR, THEY MAKE CLEAR IT'S DEPENDENT ON THOSE TWO

8    THINGS.  AND IT'S RIGHT THAT THEY LEAVE OPEN THE ISSUE OF

9    WHETHER AT SOME OTHER TIME AFTER THOSE THINGS HAVE HAPPENED,

10   THERE WOULD BE A RIGHT OF ACCESS UNDER THE FIRST AMENDMENT.

11   BUT I THINK THE VERY PREGNANT IMPLICATION IS THAT YES, THERE

12   WOULD BE ONCE THE COUNTERVAILING CONSIDERATIONS FOR KEEPING A

13   WARRANT SEALED ARE CLOSED.

14        HERE IS THE OTHER OBSERVATION I HAVE.  I HAVE READ

15   THE MATERIAL, AND IT APPEARS TO ME THAT MUCH OF THE MATERIAL

16   IS ALREADY IN THE PUBLIC DOMAIN.  I SUPPOSE IF YOU PARSED IT

17   AND BROUGHT TO MY ATTENTION SOME THINGS THAT HAVE NOT BEEN

18   MADE PUBLIC, I THINK THAT CUTS AGAINST THE ARGUMENT THAT

19   MR. LOUGHNER'S FAIR TRIAL RIGHTS WOULD BE COMPROMISED BY

20   RELEASING THIS AT THIS POINT GIVEN THAT MUCH OF THE

21   INFORMATION IS ALREADY OUT THERE AND HAS BEEN DESCRIBED.

22        NOW, IT'S UNFORTUNATE THAT WE ARE IN THAT SITUATION.

23   I DON'T WANT TO CHARACTERIZE IT AS LEAKS, BUT THERE HAVE BEEN

24   STATEMENTS MADE AT THE TIME OF THE EXECUTION OF WARRANTS

25   DESCRIBING WHAT WAS FOUND.  I DON'T THINK THEY WERE MADE BY

1    FEDERAL LAW ENFORCEMENT AGENTS.  THEY WOULD HAVE BEEN IMPROPER

2    UNDER THE MARSHAL'S GUIDELINES AND UNDER THE ABA PUBLICATION.

3    THEY ARE NOT SUPPOSED TO TALK ABOUT EVIDENCE THAT'S SEIZED,

4    BUT THAT'S DONE.  THAT'S WATER UNDER THE BRIDGE NOW.  I AM NOT

5    SURE THE U.S. PROSECUTORS HAD MUCH CONTROL OVER THAT PROCESS.

6              BUT WHAT I AM FACED WITH IS A CONTEXT WHERE THE

7    INFORMATION LARGELY IS ALREADY OUT THERE.  AND SO THE QUESTION

8    IS, IS IT REALLY COMPROMISING THE DEFENDANT'S RIGHTS TO A FAIR

9    TRIAL?

10             HERE IS ONE OTHER CONSIDERATION I HAVE, MR. CAHN,

11   THAT I THINK YOU'LL NEED TO SPEAK TO.  AND AGAIN, I AM

12   ANNOUNCING ALL OF THIS AS A TENTATIVE.  I WANT TO GIVE YOU THE

13   BENEFITS OF MY THOUGHTS.

14             ASSUMING THAT THERE IS A RIGHT OF ACCESS, AND I

15   THINK THERE IS AT THE POINT THAT THE INVESTIGATION ENDS AND

16   THE INDICTMENT IS RETURNED, THE SUPREME COURT HAS SAID AND THE

17   NINTH CIRCUIT HAS REPEATED THAT "AN ACCUSED WHO SEEKS

18   CLOSURE" -- IN THIS CASE CONTINUED SEALING OF THE SEARCH

19   WARRANTS -- "MUST ESTABLISH THAT IT IS STRICTLY AND

20   INESCAPABLY NECESSARY IN ORDER TO PROTEST THE FAIR TRIAL

21   GUARANTEE.  THE BURDEN MAY BE DISCHARGED BY DEMONSTRATING A

22   SUBSTANTIAL PROBABILITY THAT IRREPARABLE DAMAGE TO THE

23   DEFENDANT'S FAIR TRIAL RIGHT WOULD RESULT FROM CONDUCTING THE

24   PROCEEDINGS IN PUBLIC" -- IN THIS CASE, OF COURSE, OPENING UP

25   THESE WARRANTS.

1        "TWO, A SUBSTANTIAL PROBABILITY THAT ALTERNATIVES TO

2    CLOSURE WILL NOT PROTECT ADEQUATELY THE DEFENDANT'S RIGHT TO A

3    FAIR TRIAL; AND THREE, A SUBSTANTIAL PROBABILITY THAT THE

4    CLOSURE WILL BE EFFECTIVE IN PROTECTING THE PERCEIVED HARM."

5        THE NATURE OF THE SHOWING WAS FURTHER EXPLAINED IN

6    WALLER VERSUS GEORGIA.  THERE THEY FOUND THE SHOWING OF JUST A

7    GENERIC CLAIM THAT THEIR TRIAL RIGHTS SHOULD BE COMPROMISED

8    INADEQUATE.

9        AND JUSTICE POWELL WROTE "HERE THE STATE'S PROFFER

10   WAS NOT SPECIFIC AS TO WHOSE PRIVACY RIGHTS MIGHT BE INFRINGED

11   OR HOW THEY WOULD BE INFRINGED OR WHAT PORTIONS" -- IN THIS

12   CASE IT WAS TAPES -- "OF TAPES MIGHT INFRINGE THEM.  WHAT

13   PORTION OF THE EVIDENCE CONSISTED OF THE TAPES.  AS A RESULT,

14   THE TRIAL COURT'S FINDINGS, WHICH ARE FOUND TO BE INCOMPLETE

15   AND INADEQUATE, WERE BROAD AND GENERALIZED AND THEREBY

16   INADEQUATE."

17       THE CASES THAT I'D CITE YOU TO THAT KIND OF INFORMED

18   MY THINKING ON THIS IS THE BROOKLIER CASE.

19       BROOKLIER IS AT 685 F. 2D 1162.  THAT SETS FORTH THE

20   STANDARD THAT I READ TO YOU, MR. CAHN, FOR JUSTIFYING CLOSURE,

21   AND THEN WALLER VERSUS GEORGIA.  I HAVE LOOKED AT

22   PRESS-ENTERPRISE AND GANNETT AS WELL.

23       ONE OTHER FACTOR HERE, THE SECOND FACTOR IN

24   BROOKLIER TALKS ABOUT ALTERNATIVE.  AND THE ALTERNATIVES, OF

25   COURSE, ARE KNOWN TO ALL OF US.  THEY WERE MENTIONED IN

1    ANOTHER NINTH CIRCUIT CASE, U.S. V. SACRAMENTO BEE, 656 F. 2D
2    477.
3         WHAT THAT CASE HOLDS IS THAT "THE COURT BEFORE
4    CLOSING, OR IN THIS CASE KEEPING SEALED ITEMS TO WHICH THERE
5    MIGHT BE A FIRST AMENDMENT RIGHT, MUST CONSIDER ALTERNATIVES
6    INCLUDING CHANGE OF VENUE, INTENSIVE VOIR DIRE, GRANTING OF
7    ADDITIONAL PEREMPTORY CHALLENGES, SEQUESTERING THE JURY, AND
8    THEN ADMONITION INSTRUCTIONS."
9         AND I HAVE TO TELL YOU AS I LOOK AT THIS AND
10   CONSIDER EVERYTHING TOGETHER INCLUDING THE FACT THAT MOST OF
11   IT IS ALREADY OUT IN THE PUBLIC DOMAIN, I THINK A LOT OF THESE
12   THINGS ARE GOING TO BE IN PLAY ANYWAY.  ALL OF THOSE
13   ALTERNATIVES ARE GOING TO BE IN PLAY.
14        I GET IT.  I UNDERSTAND THAT THIS CASE HAS MUCH
15   GREATER SCRUTINY AND MUCH GREATER ATTENTION THAN THE AVERAGE
16   CASE.  AND SO I FEEL GREATER OBLIGATION IN THIS CASE TO LOOK
17   VERY CAREFULLY AND MAKE THE JUDGMENTS VERY CAREFULLY ABOUT
18   PROTECTING MR. LOUGHNER'S TRIAL RIGHTS.  I UNDERSTAND THAT
19   ASPECT.  THIS IS DIFFERENT THAN MAYBE ALL OF THE CASES I HAVE
20   LOOKED AT.  BUT I THINK THOSE STANDARDS APPLY IF I AM RIGHT
21   THAT THERE IS A COMMON LAW AND FIRST AMENDMENT RIGHT OF ACCESS
22   AT SOME POINT.
23        LET ME SAY ONE OTHER THING ON THE INZUNZA CASE.  I
24   KNOW JUDGE MILLER TIED THE RIGHT OF ACCESS TO SEARCH WARRANT
25   MATERIALS TO A PARTICULAR STAGE OF THE PROCESS.  THAT IS, IF A

23

1    MOTION TO SUPPRESS WERE BROUGHT, THEN HE FORESAW THAT PERHAPS

2    RELEASING THE MATERIALS WOULD BE APPROPRIATE.

3         I DISAGREE WITH THAT AS BEING A HOLDING IN PRESS-

4    ENTERPRISE.  PRESS-ENTERPRISE TALKS ABOUT THE PROCESS, AND

5    JUDGE MILLER IN INZUNZA PARTICULARIZED THAT TO A STEP IN A

6    CRIMINAL TRIAL PROCESS.  HE DIDN'T LOOK AT THE WHOLE, AND I

7    THINK PRESS-ENTERPRISE SPOKE TO THE WHOLE.

8         HERE, THE INTERVENERS, FOR EXAMPLE, SAY, LOOK, THERE

9    IS A LOT OF FIRST AMENDMENT INTEREST IN WHAT THIS WARRANT WAS

10   ABOUT, WHAT WAS SAID TO THE JUDGE WHO SIGNED IT, WHAT THE

11   JUDGE AUTHORIZED, WHETHER THEY EXCEEDED THE SCOPE OF THE

12   WARRANT AND WHAT WAS TAKEN.  AND ALL OF THOSE FIRST AMENDMENT

13   INTERESTS ARE IN PLAY FROM THE MOMENT THAT THE WARRANT IS

14   SOUGHT AND AUTHORIZED AND THEN EXECUTED.  THEY ARE NOT

15   DEPENDENT UPON A JUDGE SCHEDULING A SUPPRESSION HEARING OR A

16   SUPPRESSION MOTION BEING BROUGHT.

17        I HAVE TO TELL YOU, THE PROBLEM I HAVE WITH THAT

18   BEING THE WAY PRESS-ENTERPRISE IS INTERPRETED, WHAT IF THERE

19   IS NO SUPPRESSION MOTION BROUGHT?  THEN THESE THINGS NEVER SEE

20   THE LIGHT OF DAY.  AND I ALSO AM PERSUADED BY A POINT IN THE

21   INTERVENERS'S REPLY BRIEF THAT FIRST AMENDMENT RIGHTS ATTACH

22   AT SUCH POINT THAT THEY ARE KNOWN.  THERE IS A TEMPORAL FIRST

23   AMENDMENT RIGHT, TOO; THAT IF THEY HAVE AN ENTITLEMENT TO IT,

24   THAT IT'S AN IMMEDIATE ENTITLEMENT UNLESS THERE IS LEGAL

25   JUSTIFICATION FOR PREVENTING IT.

1          SO FOR THOSE REASONS I AM NOT ONBOARD WITH THAT

2     PORTION OF INZUNZA THAT SAYS, WELL, THIS MAY BECOME RELEVANT

3     IF THERE IS A SUPPRESSION MOTION.  I DON'T THINK THAT THE

4     RIGHTS IDENTIFIED HERE ARE DEPENDENT UPON THAT.  THAT WOULD

5     MAKE THEM IN MY JUDGMENT NOT RIGHTS AT ALL, REALLY.  THEY'D BE

6     DEPENDENT ON WHEN I SCHEDULE A SUPPRESSION HEARING OR WHETHER

7     YOU AND MS. CLARKE AND MR. FLEMING DECIDED TO BRING A

8     SUPPRESSION MOTION.  SO I REALLY THINK THE RIGHTS ARISE AND

9     APPLY INDEPENDENT OF WHAT THE PARTIES DO ONCE THE PROCESS IS

10    UNDERWAY.  THOSE ARE MY PRELIMINARY FINDINGS.

11         TO CAP OFF, I AM NOT GOING TO RELEASE IT TODAY.

12    THERE HAS BEEN NO INDICTMENT.  I THINK TIMES-MIRROR BINDS.  I

13    WANT YOU TO THINK ABOUT THOSE ISSUES.  I WOULD INVITE YOU TO

14    REPLY OR SUBMIT ADDITIONAL BRIEFING BEFORE MARCH 9TH, BECAUSE

15    I THINK IT'S GOING TO BE A DIFFERENT SITUATION IF THE

16    INDICTMENT IS RETURNED.

17         ALL THOSE THINGS SAID, MR. CAHN, I AM HAPPY TO HEAR

18    FROM YOU.

19         MR. CAHN:  THE COURT TALKED ABOUT CONTEXT --

20         MS. ANDERSON:  I AM SORRY, YOUR HONOR.  WE ARE

21    HAVING A HARD TIME HEARING.

22         MR. CAHN:  I'LL PULL THE MICROPHONE A LITTLE CLOSER.

23         THE COURT:  EITHER THAT, OR STEP TO THE LECTERN.

24         MS. ANDERSON:  THANK YOU.

25         MR. CAHN:  JUST VERY, VERY BRIEFLY.

25

1          I THINK THE CONTEXT IS A LITTLE BIT DIFFERENT WHEN

2     YOU TALK ABOUT FACTS THAT ARE MERELY OUT REPORTED IN THE NEWS

3     VERSUS FACTS THAT ARE SWORN TO BY GOVERNMENT AGENTS TOGETHER

4     WITH THE CONCLUSIONS ABOUT THOSE FACTS AND INFERENCES DRAWN

5     FROM THOSE FACTS.  I THINK THAT DOES ALTER THE CONTEXT

6     SOMEWHAT.

7          YOUR HONOR, WE UNDERSTAND THE BALANCING TEST SET

8     FORTH IN PRESS-ENTERPRISE, THE THREE-PART TEST, AND WE DON'T

9     DISPUTE THAT IN ANY WAY.  THE FIRST STEP IS THAT THE FIRST

10    AMENDMENT INTEREST EXISTS OR DOES THE COMMON LAW TRADITION

11    EXIST.  AND WHILE I UNDERSTAND THAT THERE IS AN ONGOING TREND,

12    CERTAINLY IN STATE COURTS, TO ESTABLISH THAT SORT OF OPENNESS,

13    I DON'T THINK THAT EXISTS IN FEDERAL COURTS GENERALLY.

14         CERTAINLY, IT DIDN'T EXIST AT THE TIME OF THE

15    FRAMING OF THE CONSTITUTION AND BILL OF RIGHTS THAT WAS

16    ESTABLISHED.  I THINK THAT'S THE CONTEXT IN WHICH THE FIRST

17    AMENDMENT RIGHT NEEDS TO BE ESTABLISHED.  I THINK FOR FEDERAL

18    COMMON LAW PURPOSES IT NEEDS TO BE ESTABLISHED.  YOU ARE

19    SMILING.  I THINK YOU ARE THINKING OF JUSTICE SCALIA.

20         THE COURT:  I AM SURPRISED TO HEAR YOUR ORIGINALIST

21    THOUGHTS THAT WERE LOCKED IN TIME WHEN THE FIRST AMENDMENT WAS

22    FRAMED.  I WOULDN'T THINK THAT YOU SUBSCRIBE TO THAT.

23         MR. CAHN:  JUSTICE SCALIA IS SAID TO BE THE PATRON

24    OF SAINTS OF CRIMINAL DEFENSE ATTORNEYS IN THE LAST 10 YEARS.

25    BUT I'D MAKE THAT OBSERVATION.  WE DON'T THINK THAT THERE IS

26

1    AN ESTABLISHMENT OF EITHER THE COMMON LAW POSITION OR THE

2    FIRST AMENDMENT RIGHT.

3            THE COURT:  CONSIDER THIS, MR. CAHN:  I LOOKED VERY

4    CAREFULLY AT PRESS-ENTERPRISE.  AND THE SURVEY IN PRESS-

5    ENTERPRISE TWO AS TO PRELIMINARY HEARINGS INCLUDING PREVAILING

6    PRACTICES AT THE TIME AS TO PRELIMINARY HEARINGS.

7            AND SO THAT'S WHY, AT LEAST IN MY SURVEY ON THIS

8    ISSUE, I HAVE INCLUDED THE STATE STATUTES AND STATE HOLDINGS

9    ON OPENNESS.  THEY LOOKED AT THOSE THINGS, AND THERE IS

10   NOTHING IN PRESS-ENTERPRISE THAT SUGGESTS THAT THE SUPREME

11   COURT THOUGHT IT WAS BOUND TO THE 1786 VERSION OF THE

12   CONSTITUTION.  THAT'S WHY I THINK THESE THINGS HAVE SOME

13   RELEVANCE HERE.

14           MR. CAHN:  I UNDERSTAND, YOUR HONOR.  AND WE'LL

15   CERTAINLY -- FOR THE MOMENT WE'LL SIMPLY RELY ON OUR

16   PLEADINGS, BUT WE WILL LOOK INTO THAT FURTHER, AND IF WE THINK

17   IT'S APPROPRIATE, WE WILL FILE FURTHER PLEADINGS PRIOR TO

18   MARCH 9TH AND SERVE THEM ON ALL PARTIES.

19           THE COURT:  I AM INTERESTED PARTICULARLY THAT THE

20   REDACTIONS THAT I GOT FROM BOTH SIDES I DON'T THINK CUT IT AT

21   THIS POINT.

22           I AM WILLING TO CONSIDER SOME REDACTIONS IF THERE IS

23   A RELEASE, BUT THE REDACTIONS HERE WERE WHOLESALE REDACTIONS.

24   AS DESCRIBED IN THE WALLER CASE, I THINK YOU HAVE TO POINT TO

25   WHY A PARTICULAR PORTION THAT YOU WANT REDACTED WOULD BE

1    LIKELY TO DEPRIVE THE DEFENDANT OF A FAIR TRIAL.  IT HAS GOT

2    TO BE A MORE PARTICULARIZED ARGUMENT THAN JUST WHOLESALE.

3          I CAN GLEAN IT ON SOME OF IT.  I HONESTLY CAN,

4    BECAUSE I TAKE YOUR POINT THESE ARE THINGS THAT ARE REPORTED

5    TO ME.  THE PROBLEM IS THEY ARE ATTRIBUTED TO LAW ENFORCEMENT

6    OFFICERS WHO PRESUMABLY HAD KNOWLEDGE OR PARTICIPATED IN THE

7    SEARCH.  SO IT'S NOT LIKE IT'S JUST A RUMOR FLOATING OUT

8    THERE.  THE THINGS THAT THE INTERVENERS HAVE POINTED OUT HAVE

9    ATTRIBUTIONS TO SPECIFIC PEOPLE WHO HAVE HISTORICAL CONNECTION

10   TO THE INVESTIGATION.

11          MR. CAHN:  JUDGE, I UNDERSTAND.  WE'LL CERTAINLY

12   ADDRESS THAT.  IF I COULD NOTE THAT THERE ARE CERTAIN PIECES

13   OF INFORMATION THAT WILL IDENTIFY THAT SPECIFICALLY AND AFFECT

14   INDIVIDUAL'S PRIVACY RIGHTS AND REALLY SHOULD NOT BE SPREAD

15   ACROSS FROM HERE TO PEKING AND BACK.

16          THE COURT:  OKAY.  I THINK THAT IS STILL IN PLAY,

17   MR. CAHN.  EVEN GIVEN MY TENTATIVE FINDING ON THIS, I THINK

18   THEY ARE STILL IN PLAY, MR. LOUGHNER'S TRIAL RIGHTS, OBVIOUSLY

19   HEIGHTENED, GIVEN THE INTENSE COVERAGE OF THIS CASE.  AND

20   PRIVACY INTERESTS OF ANY THIRD PARTY WHO REALLY DON'T HAVE A

21   SAY IN WHETHER NAMES OR INFORMATION THEY MAY HAVE PROVIDED

22   GETS RELEASED.  I WOULD BE INTERESTED IN SEEING WHAT YOU HAVE

23   TO SAY ON THAT SCORE.

24          MR. CAHN:  THANK YOU, YOUR HONOR.

25          THE COURT:  ANYTHING ELSE FROM THE UNITED STATES

1    BEFORE I HEAR FROM THE INTERVENERS?

2            MS. ANDERSON:  YOUR HONOR, THE ONLY THING THE

3    GOVERNMENT WOULD LIKE TO ADD IS THE INVESTIGATION IS STILL

4    ONGOING.  I KNOW THERE HAVE BEEN STATEMENTS IN THE PRESS THAT

5    THE FBI HAS CONCLUDED THEIR INVESTIGATION, BUT THAT'S NOT

6    TRUE.

7            THE COURT:  WELL, THE INTERVENERS ATTACHED NEWS

8    ACCOUNTS FROM THE AP TO THEIR REPLY THAT QUOTES AN FBI

9    SPOKESMAN SAYING ESSENTIALLY "WE ARE THROUGH, AND WE HAVE

10   SUBMITTED THE CASE TO U.S. ATTORNEY'S OFFICE."  YOU SAY THAT'S

11   NOT SO?

12           MS. ANDERSON:  IT IS NOT SO, YOUR HONOR.  IN FACT, I

13   POINTED THAT OUT TO THE TWO FBI AGENTS, THE TWO CASE AGENTS

14   WHO ARE HERE WITH US RIGHT NOW AND THEY SAID THAT IS NOT TRUE.

15   AND THEY DO NOT KNOW WHO MADE THAT COMMENT OR, IN FACT, THEY

16   EVEN GO SO FAR AS SAYING THAT DOES NOT COME FROM THE FBI.

17           THE COURT:  WELL, I SAW AT ONE POINT -- AND THE NAME

18   ESCAPES ME, BUT IT WAS A SPOKESPERSON FOR THE FBI, AS I RECALL

19   IN YOUR PAPERS AND REPORTED IN THE AP, WHO SAID THE

20   INVESTIGATION IS OVER.  IT ALSO QUOTED A SPOKESPERSON FOR THE

21   PIMA COUNTY SHERIFF WHO SAID "WE HAVE TURNED OUR INVESTIGATIVE

22   MATERIALS OVER TO THE FBI" AND THE FBI SPOKESPERSON SAID "WE

23   TURNED EVERYTHING OVER TO THE U.S. ATTORNEY."

24           YOU KNOW BETTER THAN ANY NEWS ACCOUNT THAT THE

25   INVESTIGATION IS ONGOING, AND I'LL ACCEPT THAT REPRESENTATION.

1    I THINK THAT WEIGHS IN THE BALANCE AS WELL.

2            ANYTHING ELSE, MS. ANDERSON?

3            MS. ANDERSON:  NO, YOUR HONOR.

4            THE COURT:  I AM HAPPY TO HEAR FROM YOU ON BEHALF OF

5    THE MEDIA OUTLETS.

6            MR. BODNEY:  GOOD AFTERNOON, YOUR HONOR.

7            I REALIZE IT'S A FRIDAY AFTERNOON.  ONLY THREE WEEKS

8    BEFORE MARCH 9TH.  BUT NEVERTHELESS, I WOULD VERY MUCH LIKE TO

9    PERSUADE THE COURT THAT THE TIME FOR RELEASE OF THESE SEARCH

10   WARRANT RECORDS IS NOW.  AND I SAY THAT BASED ON YOUR HONOR'S

11   RELIANCE ON THE TIMES-MIRROR CASE AND YOUR HONOR'S

12   INTERPRETATION OF THE SOUTHERN DISTRICT OF CALIFORNIA CASE

13   FROM 2004.

14           TWICE IN THE TIMES-MIRROR CASE THE NINTH CIRCUIT

15   SEVERAL YEARS BACK SAID, AND I QUOTE, "WE NEED NOT AND DO NOT

16   DECIDE AT THIS TIME THE QUESTION WHETHER THE PUBLIC HAS A

17   FIRST AMENDMENT RIGHT OF ACCESS TO WARRANT MATERIALS AFTER AN

18   INVESTIGATION IS CONCLUDED OR AFTER INDICTMENTS HAVE BEEN

19   RETURNED."

20           IT SAYS THAT SAME THING AGAIN ESSENTIALLY AT

21   FOOTNOTE 11.  SO IT SEEMS TO ME THAT TIMES-MIRROR MAY BE THE

22   CLOSEST THING WE HAVE SEEN IN THE NINTH CIRCUIT TO THESE

23   FACTS.  IT ISN'T CONTROLLING BECAUSE IT EXPRESSLY LEFT THOSE

24   QUESTIONS FOR ANOTHER DAY.

25           AND I WOULD WANT TO URGE THE COURT, THIS COURT THAT

30

1    THE RATIONALE FOR TIMES-MIRROR DOESN'T BEGIN TO APPLY TO THIS

2    CASE.  AS YOUR HONOR KNOWS, TIMES-MIRROR AROSE OUT OF A FAR

3    RANGING INVESTIGATION ORIGINATING IN THE EASTERN DISTRICT OF

4    VIRGINIA WHERE THE GOVERNMENT SOUGHT SEARCH WARRANTS IN

5    DISTRICT COURTS AROUND THE COUNTRY, AND AN INVESTIGATION WAS

6    VERY MUCH STILL GOING ON.

7          THIS CASE, AS THE FEDERAL PUBLIC DEFENDER IN ARIZONA

8    IS QUOTED AS SAYING, IS NOT A WHO DONE IT.  THIS IS A CASE

9    WHERE NONE OF THE FACTORS THAT MAY HAVE MILITATED IN FAVOR OF

10   THE RESULT IN TIMES-MIRROR REALLY APPLY HERE.

11         BASED ON THE INFORMATION WE HAVE HEARD DIRECTLY FROM

12   THE FBI AND FROM PIMA COUNTY SHERIFF'S DEPARTMENT, THE

13   INVESTIGATION HAS CONCLUDED.  I DON'T DOUBT FOR A MOMENT THAT

14   THE U.S. ATTORNEY'S OFFICE HAS AGENTS BEFORE THEM WHO WILL

15   SAY, OF COURSE, THE INVESTIGATION ISN'T OVER.  JUST AS I COULD

16   FIND AGENTS BACK IN ARIZONA WHO PROBABLY WOULD TESTIFY TO THIS

17   DAY THAT THE HOMICIDE INVESTIGATION INVOLVING THE DEATH OF

18   REPORTER DON BOLLES IN 1976 IS NOT OVER.

19         BUT AT SOME POINT THOSE CONCERNS THAT YOUR HONOR

20   ARTICULATED ABOUT THE PUBLIC'S RIGHT TO UNDERSTAND WHAT'S

21   HAPPENING IN OUR JUDICIAL SYSTEM AND THE LAW ENFORCEMENT

22   SYSTEM REALLY TAKE HOLD.

23         THE FACTORS CONSIDERED BY THE NINTH CIRCUIT IN

24   TIMES-MIRROR IS THERE A RISK OF HARM TO AN ONGOING

25   INVESTIGATION.  I KNOW FROM A REPORTER IN THIS COURTROOM AND A

1    STORY THAT WE HAVE ATTACHED TO OUR PAPERS THAT THERE HAVE

2    ALREADY BEEN SOME 250 WITNESS INTERVIEWS AND TAPES PRODUCED

3    AND TURNED OVER.

4            IN THE REAL WORLD THE INVESTIGATION INTO WHAT

5    HAPPENED IN THIS CASE IS OVER.  OTHER INFORMATION MAY TRICKLE

6    IN AND OTHER INDICTMENTS MAY IN FACT SUPERSEDE, BUT THE FACT

7    IS THIS IS A POST-INDICTMENT CASE, AND THIS IS A

8    POST-INVESTIGATION CASE.  AND THE RISK OF HARM IN RELEASING

9    INFORMATION, AS YOUR HONOR KNOWS FAR BETTER THAN I BECAUSE I

10   HAVE NOT SEEN THE RECORDS, INVOLVING RECORDS, MANY OF WHICH

11   HAVE ALREADY BEEN SEEN, CANNOT POSSIBLY OVERCOME THAT FIRST

12   AMENDMENT INTEREST OR THE COMMON LAW INTEREST IN KNOWING WHAT

13   THE JUDICIAL SYSTEM AND THE LAW ENFORCEMENT SYSTEM WAS UP TO.

14           THE COURT:  WHAT DO I MAKE, MR. BODNEY, OF THE FACT

15   THAT THE PROSECUTOR WHO IS REALLY AT THE CUSP OF THE

16   INVESTIGATION SAYS THE INVESTIGATION IS NOT OVER, AND WHAT

17   HAVE YOU TO SAY ABOUT THE SPECTER OF ANOTHER INDICTMENT IN THE

18   CASE?

19           IT SEEMS TO ME THE PRINCIPLE OF TIMES-MIRROR IS IF

20   THE CHARGES AREN'T CERTAIN, THE WAY IT WORKS IN THE FEDERAL

21   COURT, OF COURSE, IS THE PROCESS IS INITIATED TYPICALLY WITH

22   THE COMPLAINT.  ONE CAN SAY, WELL, THE CHARGES ARE

23   CRYSTALLIZED IN THE COMPLAINT.  WELL, NOT SO FAST.  NOT UNTIL

24   THE GRAND JURY PASSES ON THE INFORMATION AND CHARGES ARE

25   AUTHORIZED TO BE BROUGHT BEFORE THE COURT AND BEFORE A JURY.

1          HERE I HAVE BEEN REPEATEDLY TOLD AND -- LOOK, LET'S

2     BROADEN THIS A LITTLE BIT.  THE DEPARTMENT OF JUSTICE HAS

3     PROTOCOLS THAT THEY MUST GO TO THROUGH WITH RESPECT TO CERTAIN

4     CHARGES, AND I AM AWARE OF THOSE.  I HAVE BEEN REPEATEDLY TOLD

5     THAT THEY ARE LOOKING AT ADDITIONAL DIFFERENT CHARGES.  THEY

6     ARE LOOKING AT MURDER CHARGES.  NO MURDER HAS BEEN CHARGED IN

7     THIS CASE YET.

8          I THINK IT WOULD BE PRESUMPTUOUS OF BOTH OF US, YOU

9     AND I, TO SAY "PAY NO ATTENTION TO IT.  NEVER MIND."  THEY HAD

10     TOLD ME THAT IN GOOD FAITH, MS. ANDERSON AND MR. KLEINDIENST

11     ARE OFFICERS OF THE COURT.  THEY HAVE REPRESENTED TO ME THAT

12     THAT WAS THE REASON FOR DELAYING NOT SETTING DATES AT THE

13     INITIAL APPEARANCE, THAT THERE WAS AN ONGOING GRAND JURY

14     PROCESS.

15          AND NOW I AM TOLD BY MS. ANDERSON TODAY IN OPEN

16     COURT AS PART OF THIS RECORD THAT THE INVESTIGATION IS NOT

17     OVER, NOTWITHSTANDING WHAT YOU MAY HAVE BELIEVED AND I MAY

18     HAVE BELIEVED BASED ON STATEMENTS ATTRIBUTED TO THE FBI

19     SPOKESMAN.

20          HOW DOES THAT GET US OUTSIDE OF TIMES-MIRROR WHEN

21     THOSE TWO OPERATIVE FACTS THAT WERE THE OPERATIVE FACTS IN

22     TIMES-MIRROR ARE STILL IN PLAY?

23          MR. BODNEY:  WELL, I WOULD APPROACH IT IN TWO WAYS:

24     ONE, TIMES-MIRROR, AND THE OTHER PRESS-ENTERPRISE TWO.

25          IN TIMES-MIRROR THERE WERE CERTAIN FACTORS INVOLVING

33

1    AN ONGOING INVESTIGATION AND NO INDICTMENT THAT CAUSED THE

2    COURT TO RULE THE WAY IT DID.  AND IT SAID "WE ARE NOT LOOKING

3    AT THOSE CASES WHERE EITHER ONE OF THOSE TWO FACTORS MAY MAKE

4    THE OUTCOME DIFFERENT, EITHER POST-INDICTMENT OR

5    POST-INVESTIGATION."

6         IF I LOOK AT PRESS-ENTERPRISE TWO AND ANALYZE THE

7    CASE AS I HEARD YOUR HONOR ARTICULATE IT A FEW MOMENTS AGO, I

8    THINK WHAT YOU DO -- AND I DON'T QUESTION THE GOOD FAITH OF

9    OUR UNITED STATES OFFICIALS HERE -- IF I ANALYZE THE CASE AS

10   THE COURT ARTICULATED A FEW MOMENTS AGO, I WOULD SAY WHAT IT

11   TELLS ME THESE ARE PUBLIC RECORDS.  THESE ARE COURT RECORDS.

12        LOGIC TELLS ME THAT THE PUBLIC INTEREST IN KNOWING

13   WHAT THEY SAY NOW IS COMPELLING.  AND EXPERIENCE TELLS ME

14   BASED ON THE NUMBER OF CASES I HAVE READ SINCE THE INZUNZA

15   CASE, INDICATE THAT THERE IS A HISTORIC BASIS TO INSPECT

16   SEARCH WARRANT RECORDS WITHIN A MATTER OF DAYS AFTER THEY ARE

17   RETURNED.  AND WE CITED THE ARIZONA STATUTE FOR PRECISELY THAT

18   EXAMPLE.

19        THE COURT:  IT IS A MORE RECENT HISTORY.  I THINK

20   MR. CAHN IS RIGHT TO SAY THE TIME THE CONSTITUTION WAS FRAMED

21   AND FOR 150 YEARS AFTER, NO ONE THOUGHT THAT THERE WAS A RIGHT

22   OF ANYONE TO INSPECT SEARCH WARRANTS THAT WERE SEALED.  THAT

23   HAS CHANGED WITH SOME OF THESE SUNSHINE LAWS AND WITH

24   CONSTRUCTIONS OF SEARCH WARRANTS AS BEING PART OF JUDICIAL

25   RECORDS THAT COME UNDER THE SUNSHINE LAWS, AND I ACKNOWLEDGE

34

1    THAT.

2         THERE ARE A NUMBER OF STATE STATUTES AND STATE COURT

3    DECISIONS THAT HAVE BROUGHT THESE THINGS WITHIN THE PURVIEW OF

4    THOSE OPENNESS LAWS.  AND I THINK I AGREE WITH YOU THAT THAT'S

5    PART OF THE EXPERIENCE.

6         BUT HERE IS THE PROBLEM I AM HAVING WITH WHAT YOU

7    ARE SAYING.  TIMES-MIRROR STANDS FOR THE FACT THAT EVEN THOUGH

8    ALL THAT MAY BE TRUE, THERE ARE COUNTERVAILING CONSIDERATIONS.

9    ONE IS, THEY DON'T WANT TO COMPROMISE AN ONGOING

10   INVESTIGATION.  I DON'T KNOW WHAT THEY ARE LOOKING AT OR WHAT

11   ADDITIONAL DETAIL THEY MAY BE INVESTIGATING.  IT WOULD BE

12   PRESUMPTUOUS OF ME TO SAY I KNOW ALL ABOUT THIS CASE.  I KNOW

13   VERY LITTLE ABOUT IT AT THIS POINT, JUST WHAT YOU KNOW

14   PROBABLY, WHAT WE LOOKED AT IN THE PAPER.  THERE HAS BEEN NO

15   EVIDENCE PRESENTED AT ALL.

16        AND SO I TAKE MS. ANDERSON AT HER WORD THAT THE

17   GOVERNMENT IS CONTINUING TO LOCK AT FACETS OF THIS CASE.

18   THERE IS AN ONGOING INVESTIGATION.  AND I THINK IT IS

19   MEANINGFUL THAT FROM THE GET GO IN THIS CASE, THERE HAS BEEN

20   THE SPECTER OF ADDITIONAL CHARGES.  AND WE HAVE BEEN TOLD

21   THAT, AND I WAS GIVEN A DATE BY WHICH THAT DECISION WAS GOING

22   TO BE CRYSTALLIZED.  AND IF THERE ARE ADDITIONAL CHARGES,

23   THEY'LL BE ANNOUNCED.

24        I AGREE THAT THAT'S A VARIATION ON TIMES-MIRROR

25   WHERE THERE WAS NO INDICTMENT YET.  BUT IT SEEMS TO ME THAT

35

1   THE RATIONALE FOR TIMES-MIRROR APPLIES WHEN THE SPECTER OF

2   ADDITIONAL CHARGES AND THAT REPRESENTATION MADE IN OPEN COURT

3   BY THE VERY PROSECUTORS WHO ARE LOOKING AT THE CASE.

4           MR. BODNEY:  I GUESS THE WAY I WOULD COME AT IT,

5   YOUR HONOR, AND THE WAY I THINK MAKES THE MOST SENSE IS IF YOU

6   ARE PERSUADED CONSTITUTIONALLY, AS I HAVE HEARD YOU SAY, THAT

7   BOTH LOGIC AND EXPERIENCE ESTABLISHED A QUALIFIED RIGHT OF

8   ACCESS UNDER THE FIRST AMENDMENT TO THESE MATERIALS, THEN THE

9   BURDEN SHIFTS TO THE GOVERNMENT TO DEMONSTRATE A SUBSTANTIAL

10  PROBABILITY OF HARM TO AN ARTICULABLE, OVERRIDING INTEREST.

11  AND BASED ON WHAT I HAVE HEARD YOU SAY, THE GOVERNMENT HASN'T

12  DONE THAT YET AND THE DEFENDANT HASN'T DONE THAT YET.

13          AND THE CONSTITUTIONAL CONSTRUCT BASED ON THAT

14  QUARTET OF CASES BY THE UNITED STATES SUPREME COURT FROM

15  RICHMOND TO PRESS-ENTERPRISE TWO TELLS US THAT WON'T CHANGE

16  SIGNS AS YOU HAVE FOUND THAT THE QUALIFIED RIGHT ATTACHES, THE

17  BURDEN DECIDEDLY SHIFTS TO THE GOVERNMENT.  SO THEY SHOULD

18  COME FORWARD AND DO MORE THAN SIMPLY SAY, "DON'T RELEASE

19  ANYTHING MORE THAN WE HAVE DECIDED TO RELEASE TODAY BECAUSE WE

20  TOLD YOU SO."

21          THE COURT:  LET ME BE CLEAR ABOUT WHAT MY FINDING IS

22  TODAY.  I DON'T FIND THAT THE QUALIFIED RIGHTS ATTACH GIVEN

23  THAT THE INVESTIGATION IS ONGOING, AND THERE IS THE SPECTER OF

24  ANOTHER INDICTMENT WITH DIFFERENT CHARGES.  I DON'T FIND THAT.

25  BUT I WAS -- I TOLD YOU I WAS GOING TO GIVE YOU A TENTATIVE ON

36

1    THIS, AND I SEE ALL OF THAT CHANGING, AND I SEE THAT QUALIFIED

2    RIGHT ATTACHING AT SUCH POINT THAT WE HAVE AN INDICTMENT, AND

3    MAYBE AN ASSURANCE FROM MS. ANDERSON THAT, "YES, WE HAVE

4    COMPLETED OUR INVESTIGATION."

5           OBVIOUSLY, I TAKE YOUR POINT WITH INVESTIGATIONS

6    THEY ARE NEVER REALLY CLOSED.  I CAN'T IMAGINE IF SOMEBODY

7    WALKS IN THREE MONTHS FROM NOW WITH PERTINENT INFORMATION THAT

8    THE U.S. ATTORNEY AND THE FBI ARE GOING TO TURN THEM AWAY.

9           THAT'S NOT WHAT I AM TALKING ABOUT.  I AM TALKING

10   ABOUT, "WE HAVE SETTLED ON WHAT CHARGES WE ARE GOING TO BRING.

11   WE HAVE COMPLETED OUR INVESTIGATION BEFORE THE GRAND JURY ON

12   THAT, AND BUT FOR OR BARRING SOME ADDITIONAL NEW INFORMATION,

13   WE ARE SET TO GO ON THESE CHARGES."

14          THEN I AGREE WITH YOU.  AT THIS POINT I THINK THERE

15   IS A QUALIFIED RIGHT THAT ATTACHES, BUT I DON'T THINK WE ARE

16   THERE TODAY BECAUSE OF WHAT I JUST HAVE BEEN TOLD.  I HAD

17   THOUGHT BASED ON YOUR PAPERS AND THE STATEMENTS ATTRIBUTED TO

18   THE FBI AGENT THAT THE INVESTIGATION WAS DONE.  SO I THOUGHT

19   WE HAD ONE LEG LEFT ON THE STOOL WHICH WAS THE INDICTMENT.

20          NOW IN LIGHT OF WHAT MS. ANDERSON TELLS ME THAT BOTH

21   OF THE FACTORS THAT WERE OPERATIVE IN TIMES-MIRROR ARE STILL

22   IN EFFECT HERE.  NO INDICTMENT, NO SUPERSEDING INDICTMENT HAS

23   BEEN RETURNED AND A REPRESENTATION FROM THE UNITED STATES

24   ATTORNEY THAT THE INVESTIGATION IS CONTINUING.

25          SO I WANT TO BE CLEAR ON THAT.  I HAVE NOT -- I

1   DON'T FIND AS OF TODAY THAT THERE IS A QUALIFIED RIGHT.  I

2   DON'T THINK THERE IS.

3          MR. BODNEY:  I UNDERSTAND.  I GUESS WHAT I WAS

4   SAYING IS THIS:  IF THE COURT GOES THROUGH THE LOGIC AND

5   EXPERIENCE TEST AND FINDS THAT A QUALIFIED RIGHT ATTACHES,

6   THEN THE BURDEN WOULD SHIFT.

7          THE COURT:  I AGREE.  THAT'S WHY I TOLD MR. CAHN

8   WHAT I WAS THINKING AND WHAT SHOWINGS WOULD HAVE TO BE

9   ADEQUATE TO CONTINUE IN EFFECT THE SEALING ORDER AT SUCH POINT

10  THE INVESTIGATION IS OVER AND A SUPERSEDING INDICTMENT IS

11  RETURNED.

12         YES, I TAKE YOUR POINT THAT FIRST AMENDMENT RIGHTS

13  ARE TEMPORAL AND EVEN DELAYING THEM YOU VIEW AS A VIOLATION OF

14  FIRST AMENDMENT.  I GET THAT.  I AM IN AGREEMENT WITH THAT.

15  BUT HERE I FIND THAT THERE IS LEGAL JUSTIFICATION AND CAUSE

16  FOR GIVEN THE TIMES-MIRROR CASE AND THE FACT THE

17  REPRESENTATIONS THAT HAVE BEEN MADE.  IT WILL LIKELY BE A

18  DIFFERENT STORY AS OF MARCH 9TH.

19         MR. BODNEY:  IT UNDERSTAND.  SO WE HAVE A DIVERGENCE

20  IN REPRESENTATIONS FROM THE LAW ENFORCEMENT COMMUNITY ABOUT

21  THE STATUS OF THIS INVESTIGATION, AND THE LAST THING ANY OF US

22  WOULD WANT TO DO IS JEOPARDIZE IT.  AND I RECOGNIZE THAT'S A

23  VERY LEGITIMATE CONCERN.

24         AND WE APPRECIATE YOUR HONOR'S FIRST WILLINGNESS TO

25  ALLOW US TO INTERVENE IN THIS PROCEEDING.  WE KNOW IT IS ONE

1    OF GREAT IMPORTANCE TO OUR COMMUNITY AND ARIZONA AND ACROSS

2    THE COUNTRY.  AND WE APPRECIATE YOUR SENSITIVITY TO THE

3    IMPORTANCE OF TIMELY RELEASE OF PUBLIC INFORMATION.

4         SO I THANK YOU AND COLLEAGUES ON THE LINE FROM

5    ARIZONA AND FOR THE DEFENDANT HERE TODAY.

6         THE COURT:  ANYTHING ELSE ON BEHALF OF MR. LOUGHNER,

7    MS. CAHN?

8         MR. CAHN:  NOTHING FURTHER, YOUR HONOR.

9         THE COURT:  MS. ANDERSON, ANYTHING MORE?

10        MS. ANDERSON:  YES, YOUR HONOR, JUST BRIEFLY.

11        WE WERE ABLE TO ACTUALLY HUNT DOWN THE PRESS RELEASE

12   THAT CAME OUT REGARDING THE STATUS OF THE INVESTIGATION.  AND

13   WHAT WE HAVE IS MANUEL JOHNSON, WHO IS AN FBI SPOKESPERSON,

14   SAYING ALL THE MATERIAL HAS BEEN TURNED OVER TO THE U.S.

15   ATTORNEY'S OFFICE.

16        ALSO I NOTE THAT IN THE ARTICLE THAT PNI ATTACHED AS

17   AN EXHIBIT TO THEIR PLEADINGS, IN THE SECOND COLUMN IT SAYS

18   THAT FBI SPOKESPERSON MANUEL JOHNSON NOTED THAT AN

19   INVESTIGATION WAS NOT NECESSARILY FINAL ONCE IT GOES TO A

20   PROSECUTOR.  PROSECUTORS MAY ASK INVESTIGATORS TO FOLLOW UP ON

21   INFORMATION TO SUPPLEMENT INITIAL REPORTS AS THEY PREPARE FOR

22   TRIAL.

23        SO, YOUR HONOR, THE FBI SPOKESPERSON HAS NEVER GONE

24   ON RECORD AS INDICATING THAT THE FBI HAS COMPLETED THEIR

25   INVESTIGATION.  THEY HAVE SAID THAT ALL OF THE MATERIAL HAS

1    BEEN TURNED OVER TO THE U.S. ATTORNEY'S OFFICE.  BUT THAT'S

2    SOMETHING DIFFERENT THAN AN INVESTIGATION BEING COMPLETED.

3            THE COURT:  I AGREE.  AND GIVEN THE PENDENCY OF A

4    GRAND JURY INVESTIGATION, AS YOU HAVE REPRESENTED, I AM NOT

5    FINDING THAT THE INVESTIGATION IS OVER.

6            BUT I HAVE TO TELL YOU, MS. JOHNSON (SIC), THAT

7    CHANGES AT THE POINT THAT YOU SETTLE ON CHARGES, THE CHARGES

8    THAT GUIDE THE DIRECTION OF THIS CASE.  IT'S ALWAYS THE CASE

9    THAT PROSECUTORS AND AGENTS ARE WILLING TO CONSIDER ADDITIONAL

10   INFORMATION AS THE CASE GOES FORWARD, BUT AT SOME POINT THERE

11   IS AT LEAST A PRACTICAL OR FINITE END TO AN INVESTIGATION.

12           SO WE ARE NOT HERE TODAY.  I AGREE WITH YOU.  I

13   RESPECT THE REPRESENTATION THAT YOU MADE.  I AM BASING MY

14   DECISION IN PART ON THAT REPRESENTATION.  BUT I AM NOT

15   PREPARED TO FIND THAT JUST BECAUSE YOU ARE OPEN TO RECEIVING

16   ADDITIONAL INFORMATION THAT THAT MEANS THE INVESTIGATION IS

17   ONGOING.  I WOULD THINK THAT AT SUCH POINT THAT THE CHARGES

18   HAVE CRYSTALLIZED AND YOU REPRESENT TO ME THAT NO ADDITIONAL

19   CHARGES AT LEAST ARE ANTICIPATED THAT THAT WOULD SIGNAL TO ME

20   THAT THE INVESTIGATION HAS CONCLUDED AS WELL, BUT WE WILL

21   LEAVE IT AT THAT.

22           ANYTHING ELSE, MS. ANDERSON?

23           MS. ANDERSON:  NO, YOUR HONOR.  THANK YOU.

24           THE COURT:  THE MOTION ON BEHALF OF INTERVENERS TO

25   UNSEAL THE SEARCH WARRANT IS DENIED WITHOUT PREJUDICE.

40

1          YOU MAY RENEW, MR. BODNEY, THE MOTION AT THE MARCH

2     9TH HEARING, IF YOU THINK THAT'S APPROPRIATE AT THE TIME.

3          ALL COUNSEL MAY SUBMIT ANY ADDITIONAL BRIEFS ON THIS

4     ISSUE THAT THEY THINK ARE WARRANTED IN LIGHT OF THE COURT'S

5     COMMENTS.

6          MR. CAHN:  THANK YOU, YOUR HONOR.

7          THE COURT:  ANYTHING ELSE, THEN?

8          MS. ANDERSON:  I DON'T THINK SO, YOUR HONOR.

9          THE COURT:  HAVE A NICE LONG WEEKEND.

10         WE ARE IN RECESS.

11                         --OOO--

12

13

14              I HEREBY CERTIFY THAT THE TESTIMONY

15              ADDUCED IN THE FOREGOING MATTER IS

16              A TRUE RECORD OF SAID PROCEEDINGS.

17

18              S/EVA OEMICK            2-28-2011

19              EVA OEMICK               DATE

20              OFFICIAL COURT REPORTER

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION