```
 1                    UNITED STATES DISTRICT COURT
                          DISTRICT OF ARIZONA
 2                   HELD AT SAN DIEGO, CALIFORNIA

 3            HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING

 4


 5
     UNITED STATES OF AMERICA,        )
 6                                     )
                     PLAINTIFF,        )   CASE NO.4:11CR187-TUC LAB
 7                                     )
             VS.                       )
 8                                     )   SAN DIEGO, CALIFORNIA
     JARED LEE LOUGHNER,               )   MARCH 4, 2011
 9                                     )   1:15 P.M.
                     DEFENDANT.        )
10   _____)

11                       REPORTER'S TRANSCRIPT
                          TELEPHONIC HEARING
12
     APPEARANCES:
13
     FOR THE GOVERNMENT:            DENNIS K. BURKE, U.S. ATTORNEY
14                                  BY:  MARY SUE FELDMEIER, ESQ.
                                    ASSISTANT U.S. ATTORNEY
15                                  405 W. CONGRESS ST., STE. 4800
                                    TUCSON, ARIZONA 85701
16
     FOR THE DEFENDANT:             FEDERAL DEFENDERS, INC.
17                                  BY:  JUDY CLARKE, ESQ.
                                    220 BROADWAY, STE. 900
18                                  SAN DIEGO, CA 92101

19   COURT REPORTER:               EVA OEMICK
                                    OFFICIAL COURT REPORTER
20                                  UNITED STATES COURTHOUSE
                                    940 FRONT STREET, STE. 2190
21                                  SAN DIEGO, CA 92101
                                    TEL: (619) 615-3103
22

23

24

25
```

2

<u>**SAN DIEGO, CALIFORNIA — FRIDAY, MARCH 4, 2011 — 1:15 P.M.**</u>

1   THE CLERK:  NO. 1, 4:11CR187, UNITED STATES OF

2   AMERICA VERSUS JARED LEE LOUGHNER; TELEPHONIC HEARING.

3   COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

4   RECORD.

5   MS. FELDMEIER:  MARY SUE FELDMEIER ON BEHALF OF THE

6   UNITED STATES.

7   MS. CLARKE:  JUDY CLARKE ON BEHALF OF JARED LEE

8   LOUGHNER.

9   THE COURT:  THE COURT HAS SCHEDULED THIS HEARING

10  IMPROMPTU.  I APPRECIATE BOTH OF YOU BEING AVAILABLE.

11  MS. CLARKE, DO YOU WAIVE MR. LOUGHNER'S PRESENCE FOR

12  THE PURPOSES OF THIS HEARING?

13  MS. CLARKE:  YES, YOUR HONOR.

14  THE COURT:  DOES EITHER THE GOVERNMENT OR THE

15  DEFENSE OBJECT TO THE COURT HOLDING THE HEARING TELEPHONICALLY

16  AT THIS POINT AND NOT IN THE TUCSON DIVISION?

17  MS. CLARKE:  NO, YOUR HONOR.

18  MS. FELDMEIER:  NO, YOUR HONOR.

19  THE COURT:  IT CAME TO MY ATTENTION THIS MORNING

20  THAT THE CORONER, WHO WAS THE SUBJECT OF THE GOVERNMENT'S

21  MOTION, HAS NOW TAKEN A PUBLIC POSITION AND ANNOUNCED THAT HE

22  INTENDS TO RELEASE THESE AUTOPSY REPORTS.  THAT WAS NOT THE

23  STATUS OF THINGS AT THE TIME I RULED ON THE MOTION INITIALLY.

24  AND SO I THOUGHT, AS I SAID IN THE MOTION, THAT THE

COMPUTER—AIDED TRANSCRIPTION

3

1   REQUEST TO BLOCK THE RELEASE OF THE AUTOPSY REPORTS WAS

2   PREMATURE.

3          AND MOREOVER, AS I SAID, I HADN'T SEEN THEM.  SO I

4   COULDN'T GO THROUGH THE REQUIRED ANALYSIS TO MAKE A

5   DETERMINATION OF WHETHER THEIR RELEASE WAS LIKELY TO IMPAIR

6   MR. LOUGHNER'S RIGHT TO A FAIR TRIAL.

7          SO WHAT'S CHANGED NOW IS THE GOVERNMENT HAS LODGED

8   WITH ME COPIES OF THE SIX AUTOPSY REPORTS THAT ARE THE SUBJECT

9   OF THE MOTION.  AND THE COURT WILL TAKE JUDICIAL NOTICE OF THE

10  FACT THAT DR. PETERS HAS ANNOUNCED THAT HE IS GOING TO RELEASE

11  THESE ON MONDAY.

12         SO I DENIED THE MOTION WITHOUT PREJUDICE AND AM

13  PREPARED TO RECONSIDER IT NOW, BUT I HAVE A FEW QUESTIONS.

14         MS. FELDMEIER, TO BEGIN WITH, I AM ASSUMING THAT YOU

15  BELIEVE MY JURISDICTION, MY AUTHORITY TO ISSUE AN ORDER

16  BLOCKING THE RELEASE OF THESE STEMS FROM THE JURISDICTIONAL

17  PROVISION OF 351?

18         MS. FELDMEIER:  YOU ARE THINKING -- I SEE WHAT THE

19  COURT IS REFERRING TO, 351.  WELL, BECAUSE YOU HAVE A CASE

20  PENDING BEFORE YOU, I GUESS MY THEORY IS THAT IT IS YOUR CASE

21  THAT'S PENDING BEFORE YOU IN FEDERAL COURT ON THIS INDICTMENT,

22  YOU THEN HAVE CONTROL OVER THE WITNESSES IN THAT PARTICULAR

23  CRIMINAL MATTER.  AND I WOULD ANTICIPATE THAT THIS ASSISTANT

24  CORONER WOULD BE ONE OF THE GOVERNMENT'S WITNESSES.  AND AS

25  SUCH, THAT YOU WOULD HAVE THE AUTHORITY TO CONTROL WHAT

4

1    STATEMENTS HE CHOOSES TO MAKE TO THE PRESS.  IN THIS CASE IT

2    WOULDN'T OBVIOUSLY BE AN ORAL STATEMENT.  IT WOULD BE A

3    WRITTEN STATEMENT.

4            THE COURT:  DR. PETERS, I WANT TO CLARIFY, IS HE THE

5    CORONER FOR PIMA COUNTY OR IS HE AN ASSISTANT CORONER?

6            MS. FELDMEIER:  NO, HE IS THE ASSISTANT CORONER.

7    DR. BRUCE PARKS IS THE MEDICAL EXAMINER FOR PIMA COUNTY.  HE

8    WAS ACTUALLY THE SUBJECT OF THE CASE THAT THE GOVERNMENT CITED

9    EARLIER IN ITS PLEADINGS.  HE WOULD JUST BE ONE OF THE

10   EMPLOYEES, ONE OF THE OTHER DOCTORS IN THE OFFICE.

11           THE COURT:  WHO ACTUALLY PERFORMED THE AUTOPSIES IN

12   THIS CASE?  IS IT DR. PETERS OR DR. PARKS?

13           MS. FELDMEIER:  DR. PETERS.

14           THE COURT:  NOW, AT THE TIME THAT THE MOTION WAS

15   FILED, NO INDICTMENT HAD BEEN RETURNED.  I AM INFORMED NOW

16   THAT AN INDICTMENT HAS BEEN RETURNED THAT CHARGES

17   MR. LOUGHNER, AMONG OTHER THINGS, WITH THE DEATHS OF THESE SIX

18   INDIVIDUALS; IS THAT CORRECT ALSO?

19           MS. FELDMEIER:  THAT IS CORRECT.

20           THE COURT:  YOU ANTICIPATE THAT YOU WILL CALL

21   DR. PETERS THEN AS A WITNESS IN YOUR CASE-IN-CHIEF?

22           MS. FELDMEIER:  I DO.

23           THE COURT:  AND SO IT'S ON THAT BASIS THAT YOU SAY I

24   HAVE SOME CONTROL OVER HIM BECAUSE HE IS A WITNESS IN THE

25   CASE, AND THESE DOCUMENTS ARE LIKELY TO PLAY A PART IN THE

1    TRIAL OF THE CASE?

2            MS. FELDMEIER:  YES.  IN PARTICULAR, THESE DOCUMENTS

3    EXPLAIN THE BULLET TRAJECTORY AND THE DAMAGE DONE TO THE

4    VICTIM'S BODY.  AND SO THAT WOULD BE OBVIOUSLY RELEVANT TO NOT

5    ONLY CAUSE OF DEATH BUT ALSO TO ANY RECONSTRUCTIONS THAT WE

6    WERE TO PRESENT TO THE COURT AND TO THE JURY.

7            THE COURT:  MS. CLARKE, HAVE YOU HAD AN OPPORTUNITY

8    TO LOOK AT THE AUTOPSIES REPORTS?

9            MS. CLARKE:  NOT OTHER THAN SCANNING THEM, YOUR

10   HONOR.  I REALLY HAVEN'T BEEN -- MICHELLE MEYER E-MAILED THEM

11   AGAIN TO ME.  I GOT THEM ONLY TO MY BLACKBERRY.

12           THE COURT:  WELL, I AM CONVINCED, I THINK, BY THE

13   JURISDICTIONAL PROVISION UNDER 351(F) THAT THE MATTER IS

14   PROPERLY IN FRONT OF ME.  THAT CHARGE THAT GIVES THE FEDERAL

15   GOVERNMENT PRIMARY JURISDICTION TO PROCEED OVER OTHER LAW

16   ENFORCEMENT INTEREST WITH CONCURRENT JURISDICTION REMAINS PART

17   OF THE SUPERSEDING INDICTMENT IN THIS CASE.  AND THE CHARGES

18   THAT ARE THE SUBJECT OF THE AUTOPSY REPORTS ARE NOW JOINED

19   WITH THAT ONE."

20           SO THE COURT BELIEVES THAT IT DOES HAVE JURISDICTION

21   TO REGULATE THE DISSEMINATION OF INFORMATION IN THIS CASE.  I

22   BELIEVE I HAVE JURISDICTION TO ISSUE AN ORDER FORBIDDING THE

23   CORONER'S OFFICE FROM RELEASING THE DOCUMENT.

24           THE NEXT QUESTION, THOUGH, IS WHETHER ON BALANCE I

25   SHOULD DO THAT.  I HAVE TO TELL YOU, MS. CLARKE, I HAVE GONE

6

1   OVER THESE REPORTS.  I HAVE LOOKED AT EACH AND EVERY ONE.

2   FRANKLY, THERE IS NOTHING IN THERE THAT'S REMARKABLE OR THAT

3   SETS OFF A SIREN IN MY MIND BASED ON MY EXPERIENCE.

4          I AM FRANKLY SURPRISED THAT THERE IS A -- OTHER THAN

5   THE FACT THAT I UNDERSTAND THAT THERE IS A BIT OF A MEDIA

6   FRENZY ABOUT THIS CASE.  OTHER THAN THAT, I AM FRANKLY

7   SURPRISED THAT THERE IS ANY INTEREST IN OBTAINING THESE,

8   BECAUSE I WOULD HAVE THOUGHT THERE WASN'T REALLY A QUESTION

9   THAT THESE PEOPLE DIED AS A RESULT OF GUNSHOT WOUNDS.  SO I

10  HAVE LOOKED AT THEM.  THEY ARE PRETTY STANDARD FARE AS AUTOPSY

11  REPORTS GO.  NOTHING JUMPS OUT AT ME.  THEY LIST THE CAUSE OF

12  DEATH IN EACH CASE AS HOMICIDE.  AND AS MS. FELDMEIER

13  MENTIONS, THEY DO DESCRIBE BULLET TRAJECTORIES.

14         I AM HAVING A DIFFICULT TIME, AS I SAID, CONVINCING

15  MYSELF UNDER THE APPLICABLE STANDARD THAT THE RELEASE OF THIS

16  MATERIAL WOULD LIKELY JEOPARDIZE THE DEFENDANT'S ABILITY TO

17  GET A FAIR TRIAL.  I GET IT.  I DON'T WANT YOU TO THINK THAT I

18  AM NAIVE OR FEIGNING NAIVETE.  I UNDERSTAND FROM THE

19  DEFENDANT'S PROSPECTIVE ANY PUBLICITY ABOUT THIS CASE IS

20  UNWELCOME AT THIS POINT.  YOU JUST AS SOON HAVE PEOPLE FORGET

21  ABOUT IT UNTIL IT CAN BE TRIED ON THE EVIDENCE AT TRIAL.

22         I UNDERSTAND THAT CONCERN.  UNFORTUNATELY, THAT'S

23  NOT THE CONTROLLING LEGAL PRINCIPLE HERE.  I AM SUPPOSED TO DO

24  A BALANCE AND MAKE A GOOD-FAITH DETERMINATION THAT A

25  PARTICULAR ITEM OF INFORMATION IS MORE LIKELY THAN NOT TO

7

1    INTERFERE WITH THE DEFENDANT'S ABILITY TO GET A FAIR TRIAL

2    BEFORE I PREVENT DISSEMINATION ON THIS.

3          SO I AM HAPPY TO HEAR FROM YOU, MS. CLARKE.  THAT'S

4    WHERE I AM AT ON THIS.

5          MS. CLARKE:  YOUR HONOR, WE JOINED THE GOVERNMENT'S

6    REQUEST TO CONTINUE THE NONPUBLIC DISSEMINATION OF THE AUTOPSY

7    REPORTS.  MY UNDERSTANDING, AS I RECALL THE GOVERNMENT'S

8    MOTION, IS THEY WERE REPRESENTING THAT NONE OF THE VICTIMS'S

9    SURVIVING FAMILY MEMBERS WANTED THESE REPORTS RELEASED.  THERE

10   COULD BE THAT INTEREST AS WELL, AND WE JOINED OUT OF THE SIXTH

11   AMENDMENT CONSIDERATIONS THAT THE COURT HAS NOTED.  BEYOND

12   THAT, I THINK WE DEFER TO THE JUDGMENT OF THE COURT.

13         THE COURT:  WELL, LET ME SAY THIS ABOUT THE LAST

14   POINT.  AGAIN, I DON'T WANT TO SOUND UNSYMPATHETIC.  I AM

15   CERTAINLY NOT INSENSITIVE TO THE PRIVACY CONCERNS OF THE

16   VICTIMS'S NEXT OF KIN.  HOWEVER, I DON'T THINK THAT THAT IS A

17   PROPER ISSUE ON WHICH I SHOULD BASE AN ORDER IN THIS CASE.

18         THEY PRESUMABLY, THE VICTIMS'S NEXT OF KIN, HAVE THE

19   RIGHT TO COMMUNICATE WITH THE CORONER'S OFFICE AND REGISTER

20   THEIR OBJECTIONS.  AND I JUST DON'T SEE THAT THAT'S PART OF

21   THE CALCULUS FOR ME.  I DON'T STAND AS A REPRESENTATIVE OF THE

22   NEXT OF KIN TO OBJECT TO THIS.

23         I HAVE TO SAY WERE I IN THEIR POSITIONS, I WOULD

24   CERTAINLY OBJECT.  I WOULD CALL THE CORONER'S OFFICE AND SAY,

25   "WHY ARE YOU DOING THIS?"  BUT I JUST DON'T THINK THAT'S THE

8

1    COURT'S PLACE, AND I DON'T THINK THAT IT IS LEGITIMATELY PART

2    OF THE LEGAL CALCULUS HERE.

3           I AGREE WITH WHAT MS. CLARKE SAID THAT THE ISSUE

4    PROBABLY PROPERLY HAS TO FOCUS ON WHETHER THE DEFENDANT'S

5    SIXTH AMENDMENT RIGHT IS GOING TO BE IMPAIRED BY RELEASE OF

6    THESE.

7           MS. FELDMEIER, ANYTHING MORE ON THAT SUBJECT?

8           MS. FELDMEIER:  ON THAT SUBJECT, YOUR HONOR, I WOULD

9    NOTE THAT IN THE FIRST FOOTNOTE OF OUR MOTION WE DID NOTE THAT

10   THE VICTIMS HAVE TOLD THE CORONER THAT THEY DO NOT WANT THESE

11   RELEASED.  BUT THE FIVE OF THE SIX THAT THEY WERE ABLE TO GET

12   AHOLD OF DO OBJECT TO RELEASE.

13          HOWEVER, THE CORONER -- THE HEAD CORONER, BEING

14   DR. BRUCE PARKS, HAVING BEEN THE SUBJECT OF IDENTICAL LAWSUITS

15   IN THE PAST, HAS EXPLAINED TO THE VICTIMS THAT HE FEELS

16   COMPELLED TO RELEASE THESE REPORTS UNDER CURRENT OPEN RECORD

17   LAWS.

18          AND THE GOVERNMENT WOULD, OF COURSE, LODGE OUR

19   OBJECTION UNDER THE PRIVACY SIDE UNDER THE SEVERAL VICTIMS'S

20   RIGHTS ACT, THAT THESE INDIVIDUALS OUT OF RESPECT FOR PRIVACY

21   FOR THE SURVIVING FAMILY WOULD LIKE THAT REPORT --

22          THE COURT:  IS THERE A SPECIFIC PROVISION OF LAW

23   THAT YOU CAN POINT ME TO THAT MIGHT ALLOW ME TO TAKE INTO

24   CONSIDERATION THE OBJECTION OF THE VICTIMS'S FAMILY MEMBERS?

25          MS. CLARKE:  WELL, THERE ARE A SERIES OF CASES THAT

9

1    ARE COMING OUT REGARDING THE VICTIMS'S RIGHTS ACT.  WHAT I CAN

2    TELL THE COURT AT THIS STAGE IS THAT THERE ARE PRIVACY

3    INTERESTS FOR LIVE VICTIMS THAT WE HAVE SEEN IN THE PAST WHERE

4    MAYBE A NAME OF AN EXTORTION VICTIM, FOR EXAMPLE, SHALL NOT BE

5    MADE PUBLIC.

6            I HAVE SEEN CASES THAT TALK ABOUT GIVING OUT E-MAIL

7    ADDRESSES AGAIN OF VICTIMS -- LIVE VICTIMS THAT GOT BARRED

8    BASED ON PRIVACY INSURANCE.

9            WE HAVE SEEN OTHER ONES THAT TALK ABOUT GRAPHIC

10   VIDEOS BEING RELEASED.  AND OUT OF PRIVACY CONCERNS FOR THE

11   VICTIM, WE WOULDN'T WANT TO OBVIOUSLY RELEASE SOMETHING LIKE

12   THAT.  NOTHING ALONG THE LINES OF THE PRINTED WORD, NOT

13   DESCRIBING ANY PARTICULAR ACT, MERELY ANALYTICALLY LAYING OUT

14   THE RESULTS, I HAVE NOT SEEN ANYTHING LIKE THAT.

15           THE COURT:  HAVE YOU SEEN ANY CASE THAT EXTENDS

16   RIGHTS TO NEXT OF KIN, NOT LIVE VICTIMS AS YOU HAVE

17   IDENTIFIED, BUT NEXT OF KIN IN THE CASE OF FATALITIES?

18           MS. FELDMEIER:  NOT THAT I AM AWARE OF, YOUR HONOR,

19   NO.

20           THE COURT:  IF YOU COULD PRESENT A CASE LIKE THAT OR

21   TOUCHING ON THAT TO ME, THEN I WOULD RECONSIDER.  BUT ABSENT

22   SOME AUTHORITY, I JUST DON'T THINK IT IS APPROPRIATE FOR ME

23   ESSENTIALLY TO BECOME CAT'S PAW FOR THE VICTIMS'S NEXT OF KIN.

24           I AGAIN EMPHASIZE THAT I AM VERY SYMPATHETIC WITH

25   THEM.  I WOULD OPPOSE THIS WERE I IN THEIR POSITION, AS THEY

10

1    HAVE, BUT I DON'T JUST THINK IT'S PROPERLY A MATTER FOR THIS

2    COURT TO ACT UPON ISSUING AN ORDER FORBIDDING THE CORONER FROM

3    RELEASING THESE REPORTS.

4            CONFINED TO THE SIXTH AMENDMENT ANALYSIS, THE COURT

5    HAS DONE THE BALANCING HERE, AND I CANNOT SAY THAT IT IS

6    REASONABLY LIKELY THAT THE RELEASE OF THESE REPORTS IN MY

7    JUDGMENT WILL IMPERIL THE DEFENDANT'S FAIR TRIAL RIGHTS.  I

8    SAY THAT MINDFUL OF WHAT HAS ALREADY BEEN DISSEMINATED; HAVE

9    BEEN MANY, MANY REPORTS, OF COURSE, OF THE CIRCUMSTANCES OF

10   THE OFFENSE.  IT IS KNOWN TO THE GENERAL PUBLIC THAT THESE

11   PEOPLE, THAT THE VICTIMS HERE, THE DECEDENTS, DIED AS A RESULT

12   OF BEING SHOT, GUNSHOT WOUNDS.

13           I THINK THERE HAS BEEN EVEN MORE SPECIFIC REPORTING.

14   I CAN'T RECITE CHAPTER AND VERSE, BUT THERE HAS BEEN MORE

15   SPECIFIC REPORTING ABOUT THE ACTUAL PLACES ON PEOPLE,

16   VICTIMS'S BODIES WERE THEY WERE SHOT, SHOT IN THE HEAD, SHOT

17   IN THE CHEST, THAT TYPE OF THING.  I THINK THAT'S ALREADY OUT

18   THERE.  AND ALL THESE REPORTS DO IS SORT OF CONFIRM THAT IN A

19   VERY CLINICAL, ANTISEPTIC SENSE.  WHEN I LOOK AT THAT AGAINST

20   WHAT'S OUT THERE AND WHAT'S KNOWN, IT JUST DOES NOT APPEAR TO

21   ME THAT THE RELEASE OF THESE REPORTS WOULD BE LIKELY TO

22   IMPERIL THE DEFENDANT'S RIGHT TO A FAIR TRIAL.

23           YOU HAVE ASKED ME ALSO, MS. FELDMEIER, TO

24   CONSIDER -- ISSUING A GAG ORDER ON THE CORONER WHICH, OF

25   COURSE, IMPLICATES AN EVEN HIGHER STANDARD.  THE NINTH CIRCUIT

1 ADHERES TO THIS CLEAR AND PRESENT DANGER STANDARD. AND THE

2 COURT FOUND THAT THERE WAS NO EVIDENCE THAT WOULD SUPPORT

3 MAKING SUCH A FINDING AT THE TIME YOU FILED THE ORIGINAL

4 MOTION.

5 DO YOU HAVE REASON TO BELIEVE THAT EITHER DR. PARKS

6 OR DR. PETERS IS ALSO GOING TO PUBLICLY COMMENT ON THEIR

7 AUTOPSY FINDINGS?

8 MS. FELDMEIER: NO, YOUR HONOR. I INARTFULLY WORDED

9 THAT MOTION. WHAT I WAS ATTEMPTING TO COMMUNICATE TO THE

10 COURT WAS A GAG ON THE RELEASE OF THE REPORT. SO, IN ESSENCE,

11 THE WRITTEN STATEMENT OF DR. PETERS.

12 THE COURT: SO THAT'S NOT IMPLICATED HERE. HAVE YOU

13 BEEN IN TOUCH WITH THE DOCTOR, AND HAS HE ASSURED YOU THAT HE

14 INTENDS TO DO NOTHING MORE THAN WHAT HE BELIEVES THE LAW

15 REQUIRES WHICH IS TO RELEASE THESE REPORTS?

16 MS. FELDMEIER: YES, YOUR HONOR.

17 THE COURT: AND HAS HE ASSURED YOU THAT HE IS NOT

18 GOING TO MAKE EXTRA JUDICIAL STATEMENTS ABOUT THE AUTOPSIES OR

19 ANY ASPECT OF THE CASE?

20 MS. FELDMEIER: YES. WHAT HE EXPLAINED TO ME IS

21 THAT HE WOULD INTEND TO EXPLAIN MEDICAL TERMS IF ASKED.

22 SOMETIMES THEY WILL ASK "WHAT DOES POSTERIOR MEAN?"

23 THE COURT: WELL, AGAIN, I HAVE GIVEN THIS A FRESH

24 LOOK IN LIGHT OF WHAT I FIND TO BE A CHANGED CIRCUMSTANCE, AND

25 THAT CHANGED CIRCUMSTANCE IS, AS I HAVE IDENTIFIED, IS THE

1    DOCTOR'S PUBLIC STATEMENT THAT HE DOES INTEND TO RELEASE

2    THESE.  THAT WAS NOT CLEAR.  I THOUGHT THERE WAS SOME

3    POSSIBILITY THAT HE COULD RELY ON THE EXCEPTIONS UNDER ARIZONA

4    LAW NOT TO RELEASE THESE.

5            I AGREE WITH THE GENERAL SENTIMENT, AND I HAVE SORT

6    OF IMPUTED THIS TO MS. CLARKE -- SHE HASN'T SAID IT, BUT THE

7    GENERAL SENTIMENT IN A CASE LIKE THIS IF I WERE DEFENDING THE

8    CASE, I WOULD WANT TO PUT A LID ON ALL PUBLICITY, AS I SAID,

9    SO AS TO ENHANCE THE PROBABILITY THAT WHEN THERE IS A TRIAL

10   THAT CASE WILL BE BASED ON EVIDENCE PRESENTED AT TRIAL RATHER

11   THAN PRESS SPECULATION OR EXTRA JUDICIAL STATEMENTS MADE

12   BEFORE TRIAL.  I GET THAT PRINCIPLE.

13           UNFORTUNATELY, THE STANDARD FOR RESTRICTING THE

14   DISSEMINATION OF INFORMATION, PARTICULARLY HERE WHERE THERE

15   HAVE BEEN APPARENTLY STATE COURT HOLDINGS ON THIS THAT REQUIRE

16   RELEASE OF THIS PARTICULAR TYPE OF DOCUMENT, ARE MORE

17   STRINGENT THAN JUST WHAT I'D LIKE TO DO OR WHAT I WOULD THINK

18   IS BEST IN TERMS OF THIS CASE.

19           SO WITH THAT SAID, RESPECTFULLY, THE COURT CONFIRMS

20   THE ORDER DENYING THE MOTION TO PROHIBIT RELEASE OF THE

21   AUTOPSY REPORTS.

22           ANYTHING ELSE FROM EITHER YOU, MS. CLARKE, OR YOU,

23   MS. FELDMEIER?

24           MS. FELDMEIER:  YOUR HONOR, FROM THE GOVERNMENT I

25   WANT TO REITERATE THAT THE GOVERNMENT SEEKS TO -- WE ARE VERY

COMPUTER-AIDED TRANSCRIPTION

1    CONCERNED ABOUT THE DEFENDANT'S SIXTH AMENDMENT RIGHT, AND WE

2    WANT HIM TO RECEIVE A FAIR TRIAL.  WE JOIN IN MS. CLARKE'S

3    SENTIMENTS IN THAT AREA.

4            THE COURT:  I UNDERSTAND THAT.  I THINK BOTH SIDES

5    SO FAR HAVE BEEN VERY DILIGENT NOT MAKING EXTRA JUDICIAL

6    STATEMENTS.  THE PROBLEMS HAVE REALLY COME INDEPENDENT OF

7    ANYTHING THE PARTIES OR THEIR REPRESENTATIVES HAVE DONE.

8            I KNOW IN PARTICULAR, MS. CLARKE HAS BEEN ABSOLUTELY

9    MUM, HAS NOT RESPONDED TO ANY QUESTIONS FROM REPORTERS.  I

10   THINK THE GOVERNMENT IS TAKING THE SAME TASK.  I MADE CLEAR ON

11   THIS RECORD THAT I DON'T SEE THIS PROBLEM ARISES FROM ANYTHING

12   THAT THE PARTIES HAVE SAID OR DONE.  THERE IS AN EFFORT HERE

13   TO TRY TO CONTAIN WHAT THIRD PARTIES MAY BE DOING OR EVEN

14   WITNESSES.

15           HAVE A NICE WEEKEND.  I'LL SEE YOU BOTH NEXT

16   WEDNESDAY.

17           MS. FELDMEIER:  THANK YOU, YOUR HONOR.

18           MS. CLARKE:  THANK YOU, YOUR HONOR.

19                       --O0O--

20               I HEREBY CERTIFY THAT THE TESTIMONY

21               ADDUCED IN THE FOREGOING MATTER IS

22               A TRUE RECORD OF SAID PROCEEDINGS.

23               S/EVA OEMICK          3-17-2011

24               EVA OEMICK                  DATE
                 OFFICIAL COURT REPORTER

25

COMPUTER-AIDED TRANSCRIPTION