1          UNITED STATES DISTRICT COURT
              DISTRICT OF ARIZONA
2      HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING

3

     UNITED STATES OF AMERICA,        )
4                                     )
                    PLAINTIFF,        )  CASE NO.: 4:11-CR-00187-LAB
5          VS.                        )
                                      )  TUCSON, ARIZONA
6      JARED LEE LOUGHNER,            )  MARCH 9, 2011
                                      )  1:30 P.M.
7                   DEFENDANT.        )
     _____)
8
                       REPORTER'S TRANSCRIPT
9
                          ARRAIGNMENT
10                     STATUS CONFERENCE

11                      MOTION HEARING

12   APPEARANCES:
     FOR THE GOVERNMENT:          DENNIS K. BURKE, U.S. ATTORNEY
13                                BY:  BEVERLY ANDERSON, ESQ.
                                       MARY SUE FELDMEIER, ESQ.
14                                     WALLACE KLEINDIENST, ESQ.
                                  ASSISTANT U.S. ATTORNEYS
15                                405 W. CONGRESS ST., STE. 4800
                                  TUCSON, ARIZONA 85701
16
     FOR THE DEFENDANT:           FEDERAL DEFENDERS, INC.
17                                BY:  JUDY CLARKE, ESQ.
                                       MARK FLEMING, ESQ.
18                                     REUBEN CAHN, ESQ.
                                  220 BROADWAY, STE. 900
19                                SAN DIEGO, CA 92101

20   FOR PHOENIX NEWSPAPERS,ET AL: STEPTOE & JOHNSON LLP
                                  BY:  DAVID J. BODNEY, ESQ.
21                                201 E WASHINGTON STR., STE. 1600
                                  PHOENIX, AZ 85004
22
     COURT REPORTER:             EVA OEMICK
23                               OFFICIAL COURT REPORTER
                                 UNITED STATES COURTHOUSE
24                               940 FRONT STREET, STE. 2190
                                 SAN DIEGO, CA 92101
25                               TEL: (619) 615-3103

1              **TUCSON, ARIZONA — WEDNESDAY, MARCH 9, 2011—1:30 P.M.**

2              THE CLERK:  NO. 1, 4CR0187, UNITED STATES OF AMERICA

3      VERSUS JARED LOUGHNER.

4              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

5      RECORD.

6              MR. KLEINDIENST:  GOOD AFTERNOON, YOUR HONOR.

7              WALLACE KLEINDIENST, MARY SUE FELDMEIER AND BEVERLY

8      ANDERSON FOR THE UNITED STATES, YOUR HONOR.

9              THE COURT:  GOOD AFTERNOON.

10             MS. CLARKE:  JUDY CLARKE, REUBEN CAHN AND MARK

11     FLEMING ON BEHALF OF MR. LOUGHNER WHO IS ALSO PRESENT AND

12     BEFORE THE COURT.

13             THE COURT:  GOOD AFTERNOON.

14             I AM INFORMED THAT A SUPERSEDING INDICTMENT HAS BEEN

15     RETURNED.  AND IT IS APPROPRIATE THAT THE DEFENDANT BE

16     ARRAIGNED ON THE SUPERSEDING INDICTMENT.

17             SO, MS. CLARKE, IF YOU AND MR. LOUGHNER WILL STAND

18     AND THE CLERK WILL ARRAIGN YOU ON THE NEW CHARGES.

19             THE CLERK:  JARED LOUGHNER, IS THAT YOUR TRUE NAME?

20             THE DEFENDANT:  YES, IT IS.

21             THE CLERK:  YOU ARE INFORMED THAT A SUPERSEDING

22     INDICTMENT HAS BEEN FILED CHARGING YOU WITH:

23             COUNT I, ATTEMPTED ASSASSINATION OF A MEMBER OF

24     CONGRESS;

25             COUNTS 3, 11, 13, ATTEMPTED MURDER OF A FEDERAL

1    EMPLOYEE;

2             COUNTS 2, 4, 6, 9, 12, 14, 16, 19, 22, 25, 28, 31,

3    33, 35, 37, 39, 41, 45, 47, 49, USE, CARRY, BRANDISH AND

4    DISCHARGE OF A FIREARM IN RELATION TO A CRIME OF VIOLENCE;

5             COUNTS 5 AND 8, MURDER OF A FEDERAL EMPLOYEE;

6             COUNTS 7, 10, 17, 20, 23, 26, 29, CAUSING DEATH OF

7    USE OF A FIREARM;

8             COUNTS 15, 18, 21, 24 AND 27, CAUSING DEATH TO

9    PARTICIPANTS AT FEDERALLY PROVIDED ACTIVITY;

10            COUNTS 30, 32, 34, 36, 38, 40, 42, 44, 46 AND 48,

11   ENTERING PARTICIPANTS AT FEDERALLY PROVIDED ACTIVITY.

12            COUNSEL, HAVE YOU RECEIVED A COPY AND DO YOU WAIVE

13   FURTHER READING?

14            MS. CLARKE:  WE HAVE RECEIVED A COPY, REVIEWED IT

15   AND WAIVE FURTHER READING.

16            THE CLERK:  YOU ARE FURTHER INFORMED THAT YOU HAVE

17   THE RIGHT TO BE REPRESENTED BY COUNSEL AT ALL STAGES OF THE

18   PROCEEDINGS BEFORE THE COURT; YOU HAVE THE RIGHT TO REMAIN

19   SILENT; YOU ARE ENTITLED TO TRIAL BY JURY; YOU HAVE THE RIGHT

20   TO CONFRONT AND CROSS-EXAMINE ANY WITNESSES WHO TESTIFY

21   AGAINST YOU; AND YOU HAVE THE RIGHT TO HAVE WITNESSES

22   SUBPOENAED TO TESTIFY IN YOUR BEHALF.

23            HOW DO YOU PLEAD TO ALL COUNTS OF THE SUPERSEDING

24   INDICTMENT?

25            MS. CLARKE:  YOUR HONOR, WE WOULD ASK THAT THE COURT

1    ENTER THE PLEA OF NOT GUILTY.

2            THE COURT:  THE COURT ENTERS A NOT-GUILTY PLEA TO

3    ALL CHARGES IN THE INDICTMENT.

4            THERE IS A SPECIAL ALLEGATION ALLEGED.  I ASSUME,

5    MS. CLARKE, TO THE EXTENT IT IS NECESSARY, YOU WANT ME TO

6    ENTER A DENIAL AS TO THAT SPECIAL ALLEGATION?

7            MS. CLARKE:  THAT WILL BE FINE, YOUR HONOR.

8            THE COURT:  DENIAL IS ENTERED AS TO THAT SPECIAL

9    ALLEGATION AS WELL.

10            THERE ARE A NUMBER OF MATTERS BEFORE THE COURT

11   TODAY.  AND I PROPOSE THAT WE DEAL FIRST WITH THE CARRY-OVER

12   MATTER.  I NOTICE I THINK MR. BODNEY IS HERE.  AND THE COURT

13   HAD POSTPONED -- ACTUALLY, THE COURT INDICATED TO MR. BODNEY

14   AND PARTIES AT THE LAST HEARING THAT I WOULD RECONSIDER THE

15   MOTION TO UNSEAL.

16            I HAVE SINCE RECEIVED A SUPPLEMENTAL BRIEF FROM THE

17   MEDIA OUTLETS IN THIS CASE WHICH I HAVE READ AND CONSIDERED.

18   I AM HAPPY TO HEAR FROM COUNSEL, IF THERE IS ANY ADDITIONAL

19   ARGUMENT ON THE POINT AT THIS TIME.

20            MS. CLARKE.

21            MS. CLARKE:  NO ADDITIONAL ARGUMENT, YOUR HONOR.  WE

22   HAD A HEARING REGARDING THIS MATTER.

23            THE COURT:  MR. KLEINDIENST.

24            MS. ANDERSON:  NO ADDITIONAL ARGUMENT, YOUR HONOR,

25   ON BEHALF OF THE GOVERNMENT.

 1            THE COURT:  I AM ASSUMING THAT THE ACTIVE

 2   INVESTIGATION OF THIS CASE HAS BEEN COMPLETED BY THE UNITED

 3   STATES AT THIS POINT?

 4            MS. ANDERSON:  YOUR HONOR, JUST THE GRAND JURY

 5   INVESTIGATION AT THIS POINT.

 6            THE COURT:  WELL, I DON'T WANT TO SPLIT HAIRS, BUT I

 7   AM TALKING ABOUT AN ACTIVE, AFFIRMATIVE INVESTIGATION.

 8   OBVIOUSLY, IF ADDITIONAL INFORMATION COMES TO THE ATTENTION OF

 9   LAW ENFORCEMENT THAT THEY'LL DEAL WITH THAT PROCESS.

10            I AM TALKING ABOUT AN AFFIRMATIVE INVESTIGATION THAT

11   LEADS TO A CHARGE.  HAS THAT BEEN COMPLETED?

12            MS. ANDERSON:  YES, YOUR HONOR.

13            THE COURT:  THE GOVERNMENT, I ASSUME, EXPRESSED THAT

14   THESE ARE THE FINAL CHARGES; AT LEAST AT THIS POINT THERE'LL

15   BE NO ADDITIONAL CRIMINAL CHARGES, FEDERAL CRIMINAL CHARGES?

16            MS. ANDERSON:  THAT'S CORRECT.

17            THE COURT:  MR. BODNEY, I AM HAPPY TO HEAR FROM YOU.

18            MR. BODNEY:  GOOD AFTERNOON, YOUR HONOR.

19            THE COURT:  GOOD AFTERNOON.

20            MR. BODNEY:  THANK YOU AGAIN ON BEHALF OF THE

21   INTERVENERS KPNX AND PHOENIX NEWSPAPERS.  WE APPRECIATE THE

22   OPPORTUNITY TO BE HEARD.

23            I THINK WHEN YOUR HONOR HEARD FROM US LAST MONTH,

24   YOU INDICATED THAT IT LIKELY BE A DIFFERENT STORY ON MARCH

25   9TH.  I THINK THE QUESTIONS YOUR HONOR ASKED OF COUNSEL

1   INDICATE IT IS A DIFFERENT STORY TODAY.  THERE IS NO LONGER AN

2   ACTIVE INVESTIGATION.  A SUPERSEDING INDICTMENT HAS BEEN

3   ISSUED.  AND CONSEQUENTLY, THE FIRST AMENDMENT RIGHT OF THE

4   PRESS AND PUBLIC TO INSPECT THE SEARCH WARRANT RECORDS

5   ATTACHES.  AND THE BURDEN SHIFTS TO THE PARTIES TO JUSTIFY ANY

6   CONTINUED CONCEALMENT OF THOSE SEARCH WARRANT RECORDS.

7           YOUR HONOR GAVE THE PARTIES AN OPPORTUNITY NEARLY

8   THREE WEEKS AGO AT THE HEARING ON FEBRUARY 18TH TO JUSTIFY, IN

9   SOMETHING OTHER THAN A WHOLESALE MANNER, THE REDACTIONS THAT

10  THEY HAD PROPOSED.  AND YOUR HONOR HAS GIVEN THEM AN

11  OPPORTUNITY IN THE INTERVENING WEEKS TO JUSTIFY THE KIND OF

12  REDACTIONS THAT THE LAW REQUIRES.

13          I THINK WE HAVE SATISFIED BOTH PRONGS OF THE FIRST

14  AMENDMENT TEST THAT BOTH LOGIC AND EXPERIENCE COMPELLED THE

15  FINDINGS IN SUPPORT OF THE PUBLIC'S RIGHT TO INSPECT THE

16  SEARCH WARRANT RECORDS.  AND NOW THEY MUST JUSTIFY, AS WE HAVE

17  NOT HEARD THEM JUSTIFY IN THE PAST SEVERAL WEEKS, THE KINDS OF

18  REDACTIONS THAT THEY HAVE PROPOSED.  NAMELY, THAT THE PUBLIC

19  NOT BE ENTITLED TO SEE ANYTHING OTHER THAN THE GOVERNMENT HAS

20  ALLOWED THE PUBLIC TO SEE SO FAR.

21          UNDER THE FIRST AMENDMENT, AS YOUR HONOR IS WELL

22  AWARE, ANY PROPOSED CONCEALMENT OF THOSE SEARCH WARRANT

23  RECORDS WOULD HAVE TO BE NARROWLY TAILORED, LESS DRASTIC

24  ALTERNATIVES TO CLOSURE WOULD NEED TO BE CONSIDERED UNDER THE

25  BROOKLIER TEST.  ANY REDACTIONS WOULD HAVE TO BE PROVEN

1    EFFECTIVE.

2           SO WE UNDERSTAND THAT YOUR HONOR HAS REVIEWED THOSE

3    SEARCH WARRANT RECORDS, AND WE KNOW FROM THE LAST HEARING THAT

4    THE COURT APPRECIATES TEMPORAL IMPORTANCE OF THE PUBLIC'S

5    RIGHT TO INSPECT THE SEARCH WARRANT RECORDS PROMPTLY.

6    THEREFORE, WE WOULD ASK THAT THEY BE UNSEALED TODAY.

7           THE COURT:  THANK YOU, MR. BODNEY.

8           MR. BODNEY:  THANK YOU, YOUR HONOR.

9           THE COURT:  THE COURT HAS PREPARED AN ORDER IN THIS

10   CASE.  AND THE GIST OF THE ORDER IS IT GRANTS THE MEDIA

11   INTERVENERS' APPLICATION FOR RELEASE OF THE SEARCH WARRANT

12   MATERIAL IN PART.

13          THE COURT WAS GUIDED AT THE FIRST HEARING BY TIMES

14   MIRROR, A NINTH CIRCUIT PRECEDENT WHICH HELD A PRE-INDICTMENT

15   ONGOING INVESTIGATION PROVIDED COMPELLING REASONS TO PREVENT

16   THE PUBLIC FROM READING SEARCH WARRANTS.  THAT JUST MAKES

17   SENSE.  YOU DON'T WANT TO GIVE UP THE GHOST BEFORE THE

18   INVESTIGATION IS COMPLETED.  YOU DON'T WANT TO TAKE A CHANCE

19   THAT THE GRAND JURY WON'T BE ABLE TO FUNCTION PROPERLY AND

20   REACH WHATEVER DECISION THE GRAND JURY IS GOING TO REACH.  AND

21   THOSE ARE IMPORTANT COUNTERVAILING REASONS THAT SUPPORT

22   SECRECY IN THE PRE-INDICTMENT INVESTIGATORY PHASE.

23          READING BETWEEN THE LINES OF TIMES MIRROR, IT IS

24   VERY CLEAR THAT THE COURT WAS INTENT ON LIMITING THEIR HOLDING

25   TO THAT PARTICULAR STAGE IN THE CRIMINAL PROCESS.

1          THE COURT HAS CANVASSED THE GENERAL LAW ON THIS

2     SUBJECT.  I AGREE WITH MR. BODNEY THAT THE TEST HERE FOR

3     OPENNESS IS WHETHER THERE IS A HISTORY OR TRADITION OF

4     OPENNESS AT THIS POINT, AND WHETHER LOGIC ALSO SUPPORTS THAT.

5          THE LOGIC PRONG HAS BEEN DEFINED BY THE NINTH

6     CIRCUIT AS ESSENTIALLY MEANING WOULD THIS BE HELPFUL TO THE

7     PUBLIC'S UNDERSTANDING OF THE SYSTEM; WOULD IT GUARD AGAINST

8     SOME OF THE DANGERS OF CLOSURE THAT PEOPLE MIGHT BE SKEPTICAL

9     OF THINGS THAT THEY DON'T KNOW, AND THEY MIGHT DEVELOP

10    CYNICISM TOWARD THE SYSTEM THAT THEY MIGHT NOT HAVE THE

11    CONFIDENCE THAT THE SYSTEM IS REACTING PROPERLY TO A SHOCKING

12    EVENT.

13         THE DIFFICULTY I HAD -- I WILL BE HONEST WITH YOU --

14    IS THAT MOST OF THE CASE LAW DEALS WITH THE PRE-INDICTMENT

15    SITUATION, AND THE CASE LAW IS FAIRLY CLEAR ACROSS THE BOARD

16    THAT IN THAT SITUATION THERE IS NO EITHER COMMON-LAW RIGHT OR

17    QUALIFIED FIRST AMENDMENT RIGHT.

18         WHEN IT GETS TO THE STAGE THAT WE ARE AT, THE ACTIVE

19    INVESTIGATION HAS BEEN COMPLETED AND THE GRAND JURY HAS ISSUED

20    WHAT THE PROSECUTORS BELIEVE ARE FINAL INDICTMENT, THEN THE

21    CASE LAW IS MORE MIXED.  AND THE COURT FOUND CASES GOING BOTH

22    WAYS.

23         WHAT I ALSO FOUND, HOWEVER, WAS THAT THE GREAT BULK

24    OF AUTHORITIES SINCE WATERGATE IS IN FAVOR OF OPEN GOVERNMENT

25    RECORDS INCLUDING COURT RECORDS.  AND THAT TREND TOWARD

1    OPENNESS HAS MANIFESTED ITSELF IN MANY OF THE STATES WITH

2    SPECIFIC STATUTES THAT COMPEL THAT SEARCH WARRANTS BE OPEN AND

3    AFTER THEY ARE EITHER EXECUTED OR SERVED AND WHEN THERE ARE NO

4    COUNTERVAILING CONSIDERATIONS SUCH AS AN ONGOING INVESTIGATION

5    OR A LACK OF CHARGES.  THE TREND IS CLEARLY IN FAVOR OF

6    OPENNESS UNDER THOSE CIRCUMSTANCES.

7              THE COURT CONSIDERED THE PURPOSE OF OPENNESS,

8    WHETHER IT'S A COURT PROCEEDING OR DOCUMENTS.  AS I SAID,

9    THOSE ARE OUTLINED IN A NUMBER OF THE CASES WHICH THE

10   NEWSPAPER CASE PROBABLY MAKES THE CLAIM BEST.

11             IN 1980, CHIEF JUSTICE BURGER WROTE "WHEN A SHOCKING

12   CRIME OCCURS, THE COMMUNITY REACTION OF OUTRAGE AND PUBLIC

13   PROTEST OFTEN FOLLOWS.  THEREAFTER, THE OPEN PROCESSES OF

14   JUSTICE SERVE AN IMPORTANT PROPHYLACTIC PURPOSE, PROVIDING FOR

15   THE OUTLET OF COMMUNITY CONCERN, HOSTILITY AND EMOTION.

16   WITHOUT AN AWARENESS THAT SOCIETY'S RESPONSES TO CRIMINAL

17   CONDUCT ARE UNDERWAY, NATURAL HUMAN REACTION OF OUTRAGE AND

18   PROTEST IS FRUSTRATED AND MAY MANIFEST ITSELF IN SOME FORM OF

19   VENGEFUL SELF-HELP, AS INDEED REGULARLY HAPPENED ON OUR

20   FRONTIERS."

21             I THINK THIS SUMS UP WHY WE HAVE A PREFERENCE FOR

22   OPENNESS IN THIS COUNTRY AND WHY THERE HAVE TO BE GOOD AND

23   COMPELLING REASONS BEFORE WE CLOSE PROCEEDINGS OR DISALLOW

24   ACCESS TO COURT DOCUMENTS.

25             HERE I FIND THAT NOW WE ARE PAST THE POINT WHERE

1    THERE IS A NEED FOR SECRECY THAT THERE IS A QUALIFIED FIRST

2    AMENDMENT RIGHT TO ACCESS THOSE WARRANTS AND THE BURDEN SHIFTS

3    TO THE PARTIES OPPOSING THE OPENING OF WARRANTS TO SHOW ME, AS

4    YOU POINT OUT, MR. BODNEY, COMPELLING REASONS WHY THEY MUST

5    REMAIN CLOSED, MUST CONVINCE ME THAT THERE IS NO ALTERNATIVE

6    THAT WOULD ADEQUATELY GUARD AGAINST THOSE INTERESTS, AND THEY

7    HAVE TO CONVINCE ME ALSO THAT CLOSURE WOULD BE EFFECTIVE IN

8    PROTECTING THE INTEREST THAT'S ASSERTED.

9          THE PARTIES HERE, BOTH THE GOVERNMENT AND THE

10   DEFENDANT, HAVE ASSERTED VALID INTERESTS.  ONE OF THEM

11   OBVIOUSLY HAS TO DO WITH THE FAIR TRIAL RIGHTS OF BOTH SIDES

12   IN THIS CASE.  THERE HAS BEEN A VIRTUAL MEDIA FRENZY ABOUT

13   THIS CASE, NOT UNEXPECTED, COMPLETELY UNDERSTANDABLE.  THIS IS

14   A MATTER OF GREAT PUBLIC CONCERN.  IT HAS BEEN HEAVILY

15   COVERED.  THERE HAVE BEEN ARTICLES ABOUT THE CIRCUMSTANCES OF

16   THE EVENT, ARTICLES ABOUT THE VICTIMS, ARTICLES ABOUT THE

17   DEFENDANT, ARTICLES ABOUT THE REACTION OF PUBLIC OFFICIALS TO

18   THIS.  WE HAVE HAD A FULL GAMUT OF COVERAGE ON THIS CASE.  AND

19   AT SOME POINT I THINK THE PARTIES ARE JUSTIFIED IN THINKING

20   THAT THE CASE MIGHT WELL BE TRIED BEFORE IT EVER GETS TO

21   COURT, AND THAT'S THE CONCERN, I THINK, RAISED BY BOTH THE

22   DEFENSE AND THE GOVERNMENT SAYING, "ENOUGH NOW, ENOUGH IS OUT

23   THERE.  LET'S WAIT AND LET THE CASE BE TRIED ON COMPETENT,

24   TESTED EVIDENCE IN COURT."

25          THAT'S A LEGITIMATE CONCERN.  I HAVE WEIGHED THAT

1    CONCERN AGAINST THE FIRST STATEMENT RIGHT.  YOU HAVE ALSO

2    RAISED A CONCERN THAT THIRD PARTIES, WHOSE NAMES ARE MENTIONED

3    IN THE WARRANT AFFIDAVITS, WILL HAVE THEIR PRIVACY INVADED AND

4    MAY BE DAMAGED TO THEIR REPUTATIONS.  I THINK THAT'S ALSO A

5    VALID CONCERN, AT LEAST IN A HYPOTHETICAL SENSE.

6         HERE, HAVING REVIEWED THE WARRANT AFFIDAVITS, THE

7    COURT FINDS THAT THERE ARE NOT THIRD-PARTY REPUTATIONAL

8    CONCERNS.  NO ONE MENTIONED IN THE AFFIDAVIT THEY ARE

9    SUSPECTED OF WRONG-DOING OTHER THAN THE DEFENDANT.

10        AND SO TO THE EXTENT THE AFFIDAVITS MENTIONED THIRD

11   PARTIES, IT'S ONLY IN THE SENSE THAT THEY ARE CITIZEN

12   WITNESSES PROVIDING INFORMATION THAT SUPPORTS THE ISSUANCE OF

13   THE WARRANTS.

14        IT WOULD BE A DIFFERENT CASE, I THINK, IF THERE WERE

15   UNDERCOVER INFORMANTS OR PEOPLE INVOLVED IN CRIME, AND RELEASE

16   OF THE AFFIDAVIT MIGHT BE ACTUALLY POTENTIALLY HARM THEIR

17   REPUTATIONS.  THAT'S NOT THE CASE HERE.  I HAVE FULLY

18   CONSIDERED THE IMPACT ON THIS CASE OF RELEASING EVEN MORE

19   INFORMATION.  I HAVE DONE MY BEST TO BE SENSIBLE AND WISE AND

20   FLEXIBLE ABOUT THAT.

21        AND ON BALANCE, I JUST DON'T FIND THAT A COMPELLING

22   CASE HAS BEEN SHOWN BY EITHER PROSECUTION OR THE DEFENSE THAT

23   THIS IS LIKELY TO HAPPEN HERE.  HERE IS WHY.

24        90 PERCENT -- IT'S HARD TO QUANTIFY, BUT I'D SAY

25   ABOUT 90 PERCENT OF THE INFORMATION IN THE WARRANT MATERIALS

1    IS ALREADY IN THE PUBLIC DOMAIN, ABOUT 90 PERCENT OF IT.  AND

2    SO REPUBLICATION OF INFORMATION, I THINK, IS A HARD CASE TO

3    MAKE THAT THAT POSES SOME KIND OF INESCAPABLE THREAT TO THE

4    TRIAL RIGHTS OF THE PARTIES.  I AM NOT EVEN SURE -- I AM NOT A

5    NEWS PERSON, BUT I AM NOT EVEN SURE IT'S NEWSWORTHY TO PUBLISH

6    INFORMATION THAT'S ALREADY OUT THERE.  MAYBE IT IS.  I'LL

7    LEAVE THAT TO THE OTHER PEOPLE'S JUDGMENT.

8             I HAVE LOOKED ALSO AT THE THIRD ISSUE, AND BECAUSE

9    THE FIRST AND THIRD FACTORS, MR. BODNEY, THAT YOU MENTIONED,

10   THE COMPELLING INTEREST AND WHETHER CLOSURE WOULD BE EFFECTIVE

11   IN MAINTAINING THOSE COMPELLING INTERESTS.  THEY TEND TO MERGE

12   IN THIS CASE BECAUSE SO MUCH OF THE INFORMATION IS OUT THERE,

13   AND IT REALLY CAN'T BE SAID THAT CONTINUED CLOSURE IS GOING TO

14   HELP GUARD AGAINST THE DANGERS OF TOO MUCH EXPOSURE.

15            I MADE THIS OBSERVATION, I THINK, AT THE FEBRUARY

16   HEARING.  I REITERATE IT NOW.  THERE IS SOMETHING MYSTIC AND

17   SUSPICIOUS WHEN A COURT WITHHOLDS INFORMATION.  I THINK IT

18   LEADS TO MORE SPECULATION.  IT MAKES THINGS MORE OMINOUS THAN

19   THEY REALLY ARE.  I REALLY BELIEVE THAT THAT WOULD BE THE

20   EFFECT HERE OF NOT RELEASING MATERIALS AT THIS TIME.

21            FINALLY, THE COURT HAS CONSIDERED THE OTHER FACTOR

22   WHICH IS WHETHER THERE ARE OTHER ALTERNATIVES THAT WILL

23   ADEQUATELY AFFECT THE RIGHTS OF THE PARTIES, AND I HAVE

24   DETERMINED THAT THERE ARE SEVERAL.

25            FIRST, THE TRIAL IN THIS CASE IS NOT EXPECTED FOR

1    MONTHS.  WE WILL TALK MORE ABOUT THAT AS THE HEARING GOES ON

2    TODAY, BUT IT'S NOT EXPECTED FOR MONTHS.  AND EXPERIENCE

3    TEACHES ME THAT THE PASSAGE OF TIME DIMS PEOPLE'S MEMORY ABOUT

4    EVENTS, EVEN SHOCKING EVENTS, AND IT TENDS TO DAMPEN DOWN

5    COMMUNITY REACTION.

6              I SAY THAT WITH GREAT UNDERSTANDING AND EMPATHY FOR

7    WHAT HAS HAPPENED HERE NOW AFFECTING MANY, MANY PEOPLE, BUT

8    THAT IS A REALITY THAT THE TIME TENDS TO DAMPEN DOWN

9    SENTIMENTS.  SO I HAVE IN MIND THIS CASE IS NOT GOING TO BE

10   TRIED FOR A WHILE.  PERHAPS BY THE TIME IT IS TRIED,

11   CIRCUMSTANCES WILL BE A LITTLE LESS FAMILIAR.

12             NEXT, THE COURT INTENDS, WITH THE ASSISTANCE OF

13   COUNSEL AT SUCH POINT THERE IS A TRIAL AND PRIOR TO IT, TO

14   DEVELOP AN EXTENSIVE JURY QUESTIONNAIRE THAT WILL BE SENT OUT

15   THAT WILL PROBE ALL ASPECTS OF JUROR KNOWLEDGE ABOUT THIS

16   EVENT AND THEIR ATTITUDES TOWARD IT.  THAT, IN MY EXPERIENCE,

17   IN THE PAST HAS PROVED A USEFUL TOOL FOR FERRETING OUT THE

18   PEOPLE WHO HAVE FIXED OPINIONS ABOUT THE CASE.  I HAVE USED IT

19   BEFORE, AND IT HAS BEEN VERY EFFECTIVE AND SATISFACTORY IN

20   IMPANELING AN IMPARTIAL JURY.

21             NEXT, ALTHOUGH IT'S NOT USUAL IN FEDERAL COURT, I

22   INTEND TO ALLOW THE PARTIES TO EXTENSIVELY PERSONALLY VOIR

23   DIRE THE JURY.  AND I THINK THAT THAT WILL BE ADDITIONAL GUARD

24   AGAINST PREJUDICIAL INFORMATION TO AFFECT THE OUTCOME HERE.

25             I ALSO HAVE IN MIND THAT I HAVE AUTHORITY IF THE

1    NEED PRESENTS ITSELF TO GRANT ADDITIONAL PEREMPTORY

2    CHALLENGES, AND I AM PREPARED TO DO THAT IF THE NEED PRESENTS

3    ITSELF DURING VOIR DIRE.

4         FINALLY, MR. BODNEY, I HAVE LOOKED OVER THE

5    MATERIAL, AND I HAVE DETERMINED THAT SOME OF IT SHOULD BE

6    MAINTAINED UNDER SEAL.  AND IN MAKING THAT DETERMINATION, I

7    WAS GUIDED BY THE SAME FACTORS THAT HAVE BEEN ARGUED SEVERAL

8    TIMES.  I GUARANTEE YOU I AM WELL AWARE OF THOSE FACTORS.  I

9    DO FIND THAT THERE IS A COMPELLING NEED TO KEEP SOME OF THE

10   INFORMATION UNDER SEAL.

11        THIS IS INFORMATION THAT GENERALLY FALLS INTO A

12   CATEGORY OF NOT YET BEING IN THE PUBLIC DOMAIN.  IT HAS NOT

13   BEEN REPORTED.  IT'LL BE NEW INFORMATION.  EITHER IT'S

14   INFLAMMATORY AND PROBABLY LESS LIKELY TO BE FORGETTABLE OR

15   INFORMATION THAT I HAVE DETERMINED IS LIKELY NOT TO BE

16   ADMISSIBLE AT TRIAL.  I THINK AT THIS POINT THAT THERE IS

17   DANGER TO BOTH SIDES IN LETTING THIS INFORMATION OUT IN THE

18   PUBLIC DOMAIN.

19        THE REDACTIONS I MADE TO THE WARRANTS ARE MUCH LESS

20   SUBSTANTIAL THAN THOSE THAT WERE PROPOSED BY THE PARTIES.  IT

21   IS MINIMAL INFORMATION FROM ONE AFFIDAVIT AND FROM THE

22   INVENTORY OF SEIZED PROPERTY.  AND THE COURT INTENDS AT THE

23   CONCLUSION OF THIS HEARING TO HOLD AN IN-CAMERA PROCEEDING

24   WITH THE PARTIES AND ON THE RECORD TO EXPLAIN THE REASONS FOR

25   THE CONTINUED WITHHOLDING OF THAT INFORMATION SPECIFICALLY, SO

1    THAT THERE IS A RECORD THAT CAN BE REVIEWED IN THE EVENT THERE

2    IS ANY APPEAL OF MY DETERMINATION.

3           SO THAT RECORD WILL BE AVAILABLE.  IT WILL BE A

4    SEALED RECORD THAT I INTEND TO GO THROUGH AND EXPLAIN WITH

5    PARTICULARITY WHY EACH LINE ITEM THAT I HAVE REDACTED SHOULD

6    BE REDACTED IN MY JUDGMENT AND ACCORDING TO THE STANDARDS.

7           SO THAT'S THE RULING OF THE COURT.  I HAVE A WRITTEN

8    ORDER THAT WILL BE AVAILABLE AT THE CONCLUSION OF THE HEARING,

9    THE REDACTED APPROVED COPY OF THE WARRANT MATERIALS THAT WILL

10   BE MADE AVAILABLE TO THE INTERVENERS AND THE GENERAL PUBLIC.

11          NEXT, MR. BODNEY, BEFORE YOU GO, WE HAD A SECOND

12   MOTION TO INTERVENE.  IF YOU CAN APPROACH THE LECTERN AGAIN,

13   I'D LIKE TO TALK TO YOU ABOUT THAT.  I GRANTED THAT MOTION TO

14   ALLOW YOU TO INTERVENE ON THE QUESTION OF SEALED MATERIALS IN

15   THE DOCKET, BUT I DID NOT GRANT THE OTHER REQUEST WHICH IS TO

16   MAKE THOSE SEALED MATERIALS AVAILABLE RIGHT AWAY OR HOLD A

17   HEARING ON THOSE.

18          I AM HAPPY TO HEAR FROM YOU ON THE REQUEST YOU HAVE

19   ABOUT THE SEALED MATERIALS, BUT LET ME MAYBE JUMP IN FRONT AND

20   TELL YOU WHAT I HAVE DONE.

21          AS YOU PROBABLY KNOW AND PROBABLY MUCH TO YOUR

22   FRUSTRATION, IT'S FAIRLY COMMONPLACE AND BOTH STATE AND

23   FEDERAL COURTS FOR PARTIES TO FILE THINGS UNDER SEAL AND

24   RUBBER STAMP THOSE THINGS.

25          AND I UNDERSTAND THAT THAT IS NOT THE PROCEDURE THAT

1    IS REQUIRED BEFORE SEALING TAKES PLACE.  I GET THAT.  I KNOW

2    YOU ARE AWARE AND SHOULD BE AWARE THAT I HAVE ISSUED AN ORDER

3    REMINDING PARTIES IN THIS CASE THAT SEALING ORDERS HAVE TO BE

4    ACCOMPANIED BY DECLARATIONS THAT SPELL OUT WHY IT IS

5    ESSENTIALLY THE SAME THREE FACTORS THAT YOU HAVE ALLUDED TO

6    AND WHY SEALING IS APPROPRIATE.

7         YOU ARE CONCERNED ABOUT A NUMBER OF ITEMS THAT

8    APPEAR IN THE DOCKET THAT WERE FILED UNDER SEAL.  HERE IS WHAT

9    I HAVE LEARNED SINCE MY INVOLVEMENT IN THIS CASE.  THE

10   DOCKETING PROCEDURE IN THIS COURT IS DIFFERENT FROM THE COURT

11   WHERE I COME FROM.  ANYTHING LODGED WITH THE COURT HERE, EVEN

12   WITH THE REQUEST TO SEAL IS IMMEDIATELY DOCKETED.  AND SO IT

13   MAY APPEAR THAT THERE ARE MANY MORE ITEMS IN THE DOCKET THAN

14   THERE ACTUALLY ARE.  THEY ARE THERE, THEY ARE WAITING, BUT

15   THEY ARE AWAITING COURT DETERMINATION OF THE MOTION TO SEAL.

16        I CAN'T TELL YOU EXACTLY HOW MANY ITEMS I HAVE

17   ORDERED SEALED, BUT IT'S A VERY FINITE NUMBER, MAYBE FIVE.  IN

18   SOME INSTANCES I HAVE NOTIFIED THE PARTIES THAT I DIDN'T FIND

19   GOOD CAUSE FOR SEALING, THAT I DIDN'T FIND COMPELLING NEED FOR

20   SEALING.  AND IN THOSE INSTANCES THE PARTIES HAVE -- IN SOME

21   CASES THEY HAVE WITHDRAWN THE MOTION, AND THEY RESUBMITTED IT

22   IN THE PUBLIC FORMAT.  A LOT OF WHAT YOU ARE SEEING AND WHAT

23   YOU MAY BE SUSPICIOUS ABOUT I WOULD SUGGEST ARE DUPLICATE

24   ENTRIES.  DON'T HOLD ME TO THE NUMBER, BUT IT IS ABOUT FIVE

25   THINGS THAT ARE SEALED, AND I CAN TELL YOU GENERALLY WHAT THEY

1    ARE SEALED.  THEY DEAL WITH DEFENSE STRATEGIES OR DEFENSE

2    REQUESTS THAT NO ONE SHOULD KNOW AT THIS POINT, AND IN

3    PARTICULAR IF THEY ARE IN A PUBLIC DOCKET, THE GOVERNMENT

4    WOULD HAVE ACCESS TO THEM.  THAT'S NOT THE WAY OUR SYSTEM

5    WORKS.  THESE ARE THINGS THAT ARE UNDER SEAL IN THE DOCKET,

6    ARE THINGS THAT I HAVE DETERMINED BASED ON JUDGMENT AND

7    EXPERIENCE THAT APPLY IN THESE FACTORS ARE LEGITIMATELY UNDER

8    SEAL.  AND I HAVE TAKEN ADDITIONAL STEPS, AS I SAID, REMINDING

9    COUNSEL AND REQUIRING A SUFFICIENT AFFIDAVIT BEFORE I'LL

10   CONSIDER ITEMS FOR SEALING.

11          SO THE PROBLEM MAY BE MUCH SMALLER THAN YOU HAVE

12   PERCEIVED BASED ON THE NUMBER OF DOCKET ENTRIES.  I CAN TELL

13   YOU FOR SURE THAT MORE THINGS HAVE BEEN WITHDRAWN THAN HAVE

14   BEEN SEALED.  SO NUMBERS YOU SEE IF YOU WENT THERE AND I

15   ALLOWED YOU TO HAVE ACCESS TO THOSE THINGS, THERE'D BE NOTHING

16   THERE BECAUSE THEY HAVE BEEN WITHDRAWN.

17          I AM SKEPTICAL THAT WE HAVE TO HAVE A HEARING EVERY

18   TIME COUNSEL FILES SOMETHING WITH ME AND ASKS THAT I SEAL IT.

19   AND I WOULD HOPE THAT YOU TRUST MY JUDGMENT.  AFTER ALL, YOU

20   SAID THAT I AM CERTAINLY CONVERSANT WITH THE FIELD OF LAW THAT

21   YOU PRACTICE AND WHAT THE STANDARDS ARE, THAT I AM EXERCISING

22   CORRECT JUDGMENT TO FERRET OUT THOSE THINGS THAT OUGHT NOT TO

23   BE SEALED.

24          SO I AM HAPPY TO HAVE YOU INTERVENE IF THERE IS

25   ANYTHING SPECIFIC.  I AM NOT INCLINED TO GIVE YOU ACCESS TO

1    WHAT'S SEALED IN THE DOCKET NOW.  IT'S SEALED FOR GOOD REASON,

2    AND I AM NOT INCLINED TO HOLD A HEARING EVERY TIME WE GET A

3    MOTION TO SEAL SOMETHING.

4            I AM NOT SURE THAT THAT'S SUPPORTED BY THE CASE LAW.

5    I KNOW THAT THERE ARE PROCEDURAL REQUIREMENTS THAT ATTEND

6    CLOSING A HEARING.  I HAVEN'T SEEN A CASE THAT IMPORTS THOSE

7    TO DOCUMENT SEALING.

8            MR. BODNEY:  YOUR HONOR, FIRST, I WANT TO THANK YOU

9    ON BEHALF OF PHOENIX NEWSPAPERS, PUBLISHER, ARIZONA PUBLIC,

10   FOR GRANTING OUR APPLICATION TO INTERVENE AND THE OPPORTUNITY

11   TO BE HEARD TODAY.  AND I WANT TO EMPHASIZE THAT NEITHER I NOR

12   MY CLIENT WANTS TO SEE ANYTHING THAT WE SHOULDN'T SEE.  WE

13   WANT TO MAKE SURE THAT WE AND THE PUBLIC CAN SEE THOSE THINGS

14   THAT THE SUPREME COURT HAS SAID THE FIRST AMENDMENT ENTITLES

15   THE PUBLIC TO SEE FOR PRECISELY THOSE REASONS THAT YOUR HONOR

16   ARTICULATED A MOMENT AGO SO THAT FOLKS DON'T WORRY ABOUT

17   SOMETHING MYSTICAL OR SUSPICIOUS IS HAPPENING IN THIS COURT OF

18   ALL COURTS THAT SHOULD MAKE THEM DISTRUST THE SYSTEM IN ANY

19   WAY.

20           AND WHEN WE REVIEWED THE DOCKET IN THIS CASE, YOUR

21   HONOR, AS WE MENTIONED IN OUR PAPER, WE SAW AT THE TIME --

22   THIS WAS LAST FRIDAY -- THAT SOME 62 OUT OF 126 DOCKET

23   ENTRIES, OR NEARLY HALF, WERE MISSING.  THERE WAS NO

24   DESCRIPTION OF WHAT HAD BEEN FILED; THUS, CREATING THE

25   IMPRESSION THAT ROUGHLY HALF OF THE DOCUMENTS SUBMITTED HAVE

1    BEEN SEALED OR OTHERWISE ON SOME SECRET DOCKET THAT THE PUBLIC

2    DOESN'T GET TO KNOW ABOUT.

3             AND SO -- AND WE VERY MUCH APPRECIATE YOUR HONOR'S

4    PREEMPTIVE ORDER.  THIS WAS THE ORDER ON FUTURE SEALING

5    REQUESTS THAT THE COURT ISSUED LAST FRIDAY ADDRESSING THIS

6    ISSUE PROSPECTIVELY.  AND FROM LANGUAGE IN THAT ORDER THAT

7    OPENNESS IS THE DEFAULT PRESUMPTION AND THE MERE ASSERTION

8    THAT AN OPEN FILING WILL JEOPARDIZE THE RIGHTS OF ANY PARTY IS

9    INADEQUATE TO JUSTIFY SEALING.

10            SO WE ARE IN COMPLETE AGREEMENT WITH THAT APPROACH.

11   AND I WANT TO MAKE SURE YOUR HONOR DOESN'T THINK THAT OUR

12   APPEARANCE HERE TODAY IS ANY SUGGESTION THAT WE BELIEVE THAT

13   WE HAVE A RIGHT TO BE HERE WHENEVER.  WE ARE NOT SUGGESTING

14   THAT WE WISH TO SECOND-GUESS YOUR RULINGS.  WE HAVE BEEN

15   INSPIRED BY THEM.  BUT WE DO WANT TO MAKE SURE THAT PARTIES

16   ARE NOT ROUTINELY FILING DOCUMENTS THAT THE CONSTITUTION SAYS

17   SHOULD BE SUBJECT TO A STRICT SCRUTINY STANDARD.  AND WE DO

18   WANT TO MAKE SURE THAT WHEN YOUR HONOR ISSUES A CLOSING ORDER

19   THAT THE PUBLIC SIMPLY BE GIVEN AN OPPORTUNITY TO BE HEARD.

20   AND THAT CAN BE AFTER THE FACT, BECAUSE WE DO TRUST YOUR

21   JUDGMENT, BUT WE NEED TO KNOW THAT A DOCUMENT HAS BEEN SEALED,

22   TO KNOW WHETHER THIS MIGHT BE THE INSTANCE WHEN THE PUBLIC

23   DEMANDS A FURTHER EXPLANATION.

24            THE COURT:  IT'S A DIFFICULT POSITION TO BE IN,

25   THOUGH.  IF I TELL YOU DOCKET 124 HAS BEEN SEALED, YOU COME

1    BACK TO THE COURT AND SAY, "WELL, WHY?"  AND SAY, "LET ME TELL

2    YOU WHY.  THE PROSECUTOR HAS GOOD REASONS.  THERE IS

3    COMPELLING REASONS AND I GOT A SUFFICIENT DECLARATION."  WHERE

4    DOES THE CONVERSATION GO FROM THERE?

5              MR. BODNEY:  I THINK THE CONSTITUTION DOES REQUIRE

6    PERHAPS ANOTHER WORD OR TWO OR MAYBE EVEN A SENTENCE BEYOND

7    COMPELLING REASON.  I THINK THERE IS A LINE THE COURT COULD

8    WALK BETWEEN SIMPLY REPEATING TALISMANICALLY THE WORDS

9    "COMPELLING INTEREST" AND SAYING SOMETHING THAT GIVES THE

10   PUBLIC SOME SENSE OF WHAT THAT INTEREST MIGHT BE WITHOUT

11   DEFEATING THE INTEREST.

12             THE COURT:  IT'S A FINDING, MR. BODNEY, THAT I MAKE

13   BASED ON A SUFFICIENT AFFIDAVIT.  I CAN ASSURE YOU IN EVERY

14   CASE NOW OR IN VERY INSTANCE WHERE A DOCUMENT IS FILED UNDER

15   SEAL IT IS NOW ACCOMPANIED BY A SUFFICIENT AFFIDAVIT TELLING

16   ME WHY.  AND I SEAL THE AFFIDAVIT, AND I SEAL THE DOCUMENT.

17   AND THERE WILL COME A TIME WHEN THOSE THINGS WILL BE OPEN TO

18   THE PUBLIC OR SHOULD BE, AT LEAST MOST OF IT.  THERE MAY BE

19   PRIVILEGE ISSUES THAT PERSIST LONG AFTER THE CASE IS DISPOSED

20   OF.  BUT THE BULK OF THOSE THINGS I ANTICIPATE IF YOU CAME

21   BACK TO ME WHEN THIS IS ALL OVER AND SAID THERE IS SOMETHING I

22   WANT TO SEE, YOU WOULD SEE A SUFFICIENT AFFIDAVIT AND YOU

23   WOULD BE ASSURED THAT THE PROPER PROCEDURES HAVE BEEN

24   FOLLOWED.

25             THE DIFFICULTY I AM HAVING IS YOU RELIED ON

1    BROOKLIER, AND BROOKLIER HOLDS GENERALLY HEARINGS SHOULD BE

2    OPEN AND THAT PROCEDURAL REQUIREMENTS THAT ATTEND TO THE

3    CLOSING TO A HEARING.  YOU CAN'T JUST SAY "TRUST ME."  YOU

4    HAVE A RIGHT TO SHOW UP AND OBJECT AND BE ASSURED.

5          I HAVEN'T FOUND A CASE THAT IMPORTS THOSE PROCEDURAL

6    REQUIREMENTS TO DOCUMENTS.  I KNOW THE PERILS.  I KNOW BOTH

7    THINGS ARE PRESUMPTIVELY OPEN, THE DOCUMENTS AND SORT OF

8    FOLLOW THE OPENNESS OF COURT PROCEEDINGS.

9          BUT THERE IS A LINE IN BROOKLIER THAT SAYS "IN

10   DETERMINING WHAT STEPS ARE REASONABLE TO EFFECT CLOSURE, THE

11   COURT SHOULD AWAIT ANY THAT MIGHT RESULT IN MATERIAL DELAY IN

12   THE UNDERLYING PROCEEDINGS."

13         NOW, WERE I TO HOLD A HEARING EVERY TIME I GET A

14   REQUEST FOR A SEALED DOCUMENT, I WOULD BE DOING NOTHING MORE

15   THAN HOLDING HEARINGS.  SO I DON'T THINK THAT'S INDICATED BY

16   THIS CASE.

17         MR. BODNEY:  AND, YOUR HONOR, I WOULD JUST SAY THESE

18   THINGS.  THE ONE CASE THAT I THINK, THE NINTH CIRCUIT CASE

19   THAT DOES APPLY THE CONSTITUTIONAL STANDARDS TO DOCUMENTS IS

20   PHOENIX NEWSPAPERS, INCORPORATED VERSUS DISTRICT COURT.

21         THE CASE AROSE OUT OF ASSIGNMENT IN CRIMINAL TRIAL

22   BACK IN THE LATE '90S.

23         THE COURT:  I AM FAMILIAR WITH IT.  YOU MIGHT LOOK

24   AT THE COPLEY PRESS CASE, TOO, PUBLISHED OPINION, WHERE I DID

25   MY BEST AND TO SOME EXTENT, EVEN THE NINTH CIRCUIT DISAGREED

1    WITH ME ON THE EXTENT OF THE DISCLOSURES.  THEY ACTUALLY SAID

2    SOME OF THE STUFF SHOULD NOT COME OUT WHEN I FOUND THAT THERE

3    WAS NO GOOD REASON FOR IT.

4           MAYBE IF YOU CONSIDER WHAT'S HAPPENED SO FAR AND OUR

5    INTERACTION AND YOU LOOK AT THOSE CASES, YOU CAN CONVINCE YOUR

6    CLIENT TO BE A LITTLE MORE CONFIDENT THAT THE JUDGMENTS I AM

7    MAKING ABOUT WHAT OUGHT TO BE SEALED WERE PROBABLY LEGITIMATE

8    ONES.

9           MR. BODNEY:  YOUR HONOR, I HAVE NO QUESTION ABOUT

10   THAT.  AND I DO WANT TO EMPHASIZE THAT IT IS NOT OUR INTENTION

11   TO HAVE A HEARING EVERY TIME THE COURT CONCLUDES THAT A

12   DOCUMENT SHOULD BE SEALED.  BUT I DO THINK THE LAW REQUIRES

13   NOTICE OF SEALING AND AN OPPORTUNITY TO BE HEARD SO THAT THERE

14   IS AT LEAST THAT CHANCE.  IT IS TIME CONSUMING FOR YOU AND THE

15   PARTIES.  WE UNDERSTAND THAT.  WE DON'T WANT TO BE A DRAG ON

16   THE JUSTICE SYSTEM.  IT'S EXPENSIVE, FRANKLY, FOR ALL PARTIES

17   CONCERNED EVERY TIME WITH HAVE TO DO IT.

18          THE COURT:  THE PRACTICAL PROBLEM WITH THAT IS I

19   HAVE TO HOLD A MINI-HEARING BEFORE WE GET TO THE HEARING TO

20   WHICH THE DOCUMENT IS RELATED, THOUGH.  WE HAVE TO HOLD A

21   HEARING, AND THEN I AM REALLY AT A LOSS TO KNOW WHAT YOU WOULD

22   BE ABLE TO SAY.  IF YOU CAN'T KNOW WHAT THE CONTENTS ARE, WHAT

23   POSITION ARE YOU GOING TO ARGUE THAT THEY OUGHT TO BE OPEN TO

24   THE PUBLIC?

25          MR. BODNEY:  I DO THINK WE ARE ENTITLED -- THE

1    PUBLIC IS ENTITLED TO SEE THE SEALING ORDERS.  AND I DO THINK

2    SEALING ORDERS OUGHT TO CONTAIN THE MINIMUM CONSTITUTIONAL

3    JUSTIFICATION FOR SEALING.

4              THE COURT:  THAT'S FAIR ENOUGH, BUT IT WILL BE A

5    GENERIC RECITAL.  IT'LL SAY THAT I HAVE LOOKED AT THIS,

6    BALANCES THE INTEREST THAT YOU AND I BOTH KNOW APPLY, AND I

7    FOUND THAT THOSE INTERESTS OUTWEIGH THE NEED FOR OPENNESS AS

8    TO PARTICULAR DOCUMENTS.  IF YOU WANT ME TO BEGIN FILING THOSE

9    OPENLY, I'LL DO SO.

10             NOW, NECESSARILY, THEY ARE GOING TO BE GENERIC.  I

11   CAN'T GIVE UP THE GHOST BY SAYING HERE IS WHAT I AM SEALING.

12             MR. BODNEY:  WE UNDERSTAND.  AS MUCH INFORMATION AS

13   THE COURT CAN REVEAL TO JUSTIFY WITHOUT DEFEATING THE PURPOSE

14   OF SECRECY I THINK IS WHAT THE PUBLIC IS ENTITLED TO.

15             THE COURT:  DOES EITHER COUNSEL, GOVERNMENT OR

16   DEFENSE, HAVE ANY OBJECTION TO ME MODIFYING THE ORDER SEALING

17   SO I'D SAY THE RECITAL THAT MR. BODNEY IS TALKING ABOUT THAT I

18   HAVE LOOKED AT THE THREE-STRONG TEST AND DETERMINED THAT

19   SEALING IS APPROPRIATE.  AND I WON'T -- OBVIOUSLY WON'T

20   IDENTIFY THE NATURE OF WHAT'S BEING SEALED OR THE CONTENT OF

21   IT.

22             MS. CLARKE, ANY OBJECTION TO THAT?

23             MS. CLARKE:  NO.

24             MR. KLEINDIENST:  NO, YOUR HONOR.

25             THE COURT:  THAT'S A REASONABLE REQUEST, MR. BODNEY.

```
1    I'LL DO THAT.  AT LEAST YOU HAVE SOME ASSURANCE THAT I HAVE

2    LOOKED AT EVERYTHING AND THINGS AREN'T WILLY-NILLY SEALED.  I

3    GIVE YOU THAT ASSURANCE.  THAT'S NOT WHAT IS HAPPENING AND NOT

4    WHAT HAS HAPPENED.  YOU'LL HAVE IT FORMALIZED WITH MY JOHN

5    HENRY ON IT.

6              MR. BODNEY:  WE APPRECIATE THAT.  THANK YOU, SIR.

7              THE COURT:  THANK YOU, MR. BODNEY.

8              BEFORE THE COURT TODAY ARE SEVERAL OTHER MOTIONS

9    THAT ARE PENDING AND THAT I AM PREPARED TO HEAR ARGUMENT ON.

10   I WANTED TO TALK ABOUT SOME SCHEDULING.  I THINK THAT MAY BE

11   PREEMPTED BY ONE OF THE MOTIONS THE GOVERNMENT HAS FILED FOR

12   COMPETENCY HEARING.  SO I WOULD -- I DON'T WANT TO PUT THAT

13   OFF.

14             I THINK, MS. CLARK, WITHOUT REGARD TO THE COMPETENCY

15   ISSUE AT THIS POINT, SOME OF THESE THINGS STILL NEED TO BE

16   DISCUSSED AND SHOULD BE DISCUSSED TODAY.  THE DISSEMINATION OF

17   INFORMATION, FOR EXAMPLE, THAT IS THE SUBJECT OF A MOTION

18   BROUGHT BY THE DEFENDANT; HANDWRITING EXEMPLAR.  I THINK THERE

19   WAS ONE OTHER.

20             I THINK THOSE ARE THE TWO THAT I WOULD PROPOSE THAT

21   WE DISCUSS AND MAYBE GET A DECISION ON TODAY.

22             MS. CLARKE:  THAT WOULD BE FINE, YOUR HONOR.  WE

23   WILL BE OBJECTING TO THE GOVERNMENT'S MOTION REGARDING THE

24   COMPETENCY PROCEEDING, IN THAT LIGHT DO NOT BELIEVE THAT THE

25   COURT WOULD MAKE FINDINGS FOR REASONABLE CAUSE AT THIS POINT
```

1    SO THAT WE WOULD BE ABLE TO GO FORWARD WITH SUBSTANTIVE

2    MOTIONS.

3            THE COURT:  YOU THINK WE OUGHT TO HANDLE THE

4    COMPETENCY ISSUE FIRST?

5            THE REASON I ASK IS THAT WE HAVE BEEN ABLE TO HANDLE

6    SOME MOTIONS PUBLICLY WHERE MR. LOUGHNER'S PRESENCE HAS BEEN

7    WAIVED BECAUSE THEY WERE ESSENTIALLY MATTERS OF LAW WHERE

8    COUNSEL WAS IN A POSITION TO ANSWER THOSE ON BEHALF OF THE

9    DEFENDANT, DIDN'T PARTICULARLY NEED HIS INPUT.  I SEE THESE

10   TWO ISSUES WHETHER HE IS COMPELLED TO GIVE A HANDWRITING

11   EXEMPLAR ESSENTIALLY AN ISSUE OF LAW.  THERE IS NO FACTUAL

12   COMPONENT TO IT.

13           SAME THING WITH WHETHER THE BUREAU OF PRISON STAFF

14   DISSEMINATES OBSERVATIONS TO THE GOVERNMENT.  AGAIN, I DON'T

15   INTEND TO GET INTO THE PARTICULARS.  I DON'T THINK THE

16   PARTICULARS ARE RELEVANT.  THEY ARE LEGAL ISSUES THAT HAVE

17   BEEN RAISED BY THE PARTIES.  SO THAT'S WHY I PROPOSE WE HANDLE

18   THOSE THINGS BEFORE WE TALK ABOUT THE COMPETENCY MOTION.

19           MS. CLARKE:  I UNDERSTAND THAT.  AND THE ISSUE WITH

20   COMPETENCY PROCEEDING IS THAT BEFORE WE WOULD ENTER THAT DOOR,

21   THE COURT WOULD HAVE TO MAKE A FINDING THAT THERE IS

22   REASONABLE CAUSE TO BELIEVE THE STATUTORY REQUIREMENTS EXIST,

23   AND THAT'S A GATEWAY TO LITIGATION IN THE CASE.

24           THE COURT:  I UNDERSTAND.  THEY ARE ONLY ASKING ME

25   TO SET A HEARING ON THAT AND I AM ASSUMING HAVE THE DEFENDANT

1    EXAMINED.  IF YOU JUMP AHEAD, WE CAN ON THAT.  THEY HAVE

2    PROVIDED SOME MATERIAL THAT I THINK YOU HAVE, YOU HAVE SEEN.

3    AND THEN I LOOKED AT THE GEORGE CASE.  HAVE YOU CONSIDERED

4    UNITED STATES VERSUS GEORGE?

5         MS. CLARKE:  I HAVE NOT SEEN THE GEORGE CASE, YOUR

6    HONOR.

7         THE COURT:  THE GEORGE CASE DEALS WITH PRACTICALLY

8    WHAT A MANDATORY DUTY ON THE PART OF THE COURT UNDER 4241.

9    AND IT DEALT WITH THE PREDECESSOR STATUTE 4244, I THINK, THAT

10   WAS RENUMBERED AS 4241; SAID IT WAS A REQUIREMENT UNDER THAT

11   STATUTE WHEN THE PARTIES MADE A MOTION THAT THE COURT SHALL

12   GRANT IT.  THIS STATUTE READS VERY SIMILARLY.  ANY DECISION I

13   MAKE IS REVIEWED FOR USE OF DISCRETION.

14        I HAVE TO TELL THAT YOU THE GEORGE CASE IS PRETTY

15   STRONG IN ITS LANGUAGE THAT IF A PARTY HAS A CONCERN ABOUT THE

16   COMPETENCY OF THE DEFENDANT, THAT EITHER PARTY, EITHER THE

17   DEFENDANT OR THE GOVERNMENT OR THE COURT ON ITS OWN MOTION, IS

18   ENTITLED TO RAISE THOSE ISSUES -- THIS ISSUE.

19        THE GOVERNMENT, AS YOU KNOW, HAS PROVIDED ME WITH

20   SOME MATERIALS WHICH I HAVE REVIEWED.  AND I HAVE TO TELL YOU

21   I THINK THE REQUEST THEY MAKE AT THIS POINT FOR A HEARING, NOT

22   FOR A DETERMINATION IF THAT'S WHAT HAPPENS BUT FOR A HEARING,

23   IS WELL FOUNDED.

24        MS. CLARKE:  WELL, YOUR HONOR, I DON'T HAVE GEORGE

25   IN FRONT OF ME, BUT I HAVE LITIGATED IN THIS ARENA PREVIOUSLY.

1    AND THE STATUTE IS PRETTY CLEAR THAT THE COURT GRANTS THE

2    MOTION IF THERE IS REASONABLE CAUSE TO BELIEVE THAT THE

3    DEFENDANT MAY PRESENTLY BE SUFFERING MENTAL DISEASE OR DEFECT

4    RENDERING HIM MENTALLY INCOMPETENT TO THE EXTENT HE IS UNABLE

5    TO UNDERSTAND THE NATURE AND CONSEQUENCES OF THE PROCEEDING OR

6    TO PARTICIPATE, ASSIST IN HIS DEFENSE.

7            AND I THINK THE CORE OF THE COMPETENCY ISSUE IS

8    REALLY ABOUT THE RELATIONSHIP WITH COUNSEL AND THE ABILITY TO

9    WORK WITH COUNSEL.  WE ARE 60 DAYS INTO THE CASE.  THE REQUEST

10   FOR COMPETENCY EVALUATION IS ENTIRELY PREMATURE.  MY

11   CONCERN -- OUR CONCERN IS THAT COMPETENCY EVALUATION PROCESS

12   AT THIS POINT WILL INTERFERE IN A VERY NEGATIVE WAY WITH OUR

13   ABILITY TO WORK THROUGH ISSUES AND DEVELOP THIS RELATIONSHIP

14   OF TRUST THAT'S REQUIRED IN THE REPRESENTATION.

15           AND AT THIS POINT OF THE PROCEEDINGS 60 DAYS INTO

16   THE CASE AND WITH TRIAL MONTHS AWAY -- AND I REALIZE WE HAVE A

17   SCHEDULING ISSUE TO DEVELOP -- THE TRIAL STILL IS MONTHS AWAY.

18   THE RESPONSE THAT THE COURT WOULD GET WOULD BE LARGELY

19   IRRELEVANT AND MAYBE VERY UNRELIABLE AT THIS STAGE.  IT IS

20   TRIAL RIGHT.  IT IS AN EVALUATION THAT DEFENSE COUNSEL TAKES

21   VERY SERIOUSLY.

22           THE GOVERNMENT'S POSITION IS THAT IF THERE IS

23   EVIDENCE OF MENTAL ILLNESS, THEN THAT MEANS COMPETENCY

24   HEARING.  AND THAT SIMPLY IS NOT THE CASE.  THIS COURT HAS

25   VAST EXPERIENCE IN THESE AREAS AND KNOWS THAT THE EXISTENCE OF

1    MENTAL ILLNESS DOES NOT NECESSARILY RENDER SOMEONE

2    INCOMPETENT.  IT MAY.  WE DON'T EVEN KNOW AT THIS POINT IN

3    TIME WHAT IT IS.  AND I KNOW THIS COURT, FROM OUR PLEADINGS

4    REGARDING SCHEDULING, HAS LOOKED AT WHAT WE HAVE DONE AND

5    HAVEN'T DONE, AND TO HAVE A REASONABLE EVALUATION OF

6    COMPETENCY WILL REQUIRE EXPERTS TO HAVE SOME HISTORY THAT WE

7    ARE WORKING VERY DILIGENTLY TO OBTAIN.  THE DIAGNOSIS ITSELF

8    IS NOT THE END RESULT OF COMPETENCY.  IT DOESN'T TELL THE

9    COURT ANYTHING.  THE COMPETENCY DETERMINATION IS A LEGAL

10   DETERMINATION FOR THIS COURT TO MAKE WITH THE INPUT FROM

11   COUNSEL WHO IS WORKING WITH THE DEFENDANT.  IT IS NOT A

12   JUDGMENT CALL FOR PSYCHIATRISTS OR PSYCHOLOGISTS TO MAKE.

13   THEY CAN PROVIDE TO THE COURT THEIR OWN ANALYSIS SUPPORTED BY

14   WHATEVER INFORMATION THEY HAVE OF THE EXISTENCE OR

15   NONEXISTENCE OF A MENTAL DISEASE, DEFECT OR OTHER MENTAL

16   CONDITION, A SERIOUS MENTAL ILLNESS, AND THEN THE COURT HAS TO

17   ASK US FOR SOME EVALUATION OF HOW THAT'S AFFECTING OUR

18   RELATIONSHIP AND OUR ABILITY TO WORK WITH THE CLIENT AND TO

19   MOVE FORWARD.

20          THE COURT:  I AM NOT SURE IT'S THAT NARROW, BECAUSE

21   IF IT WERE FOCUSED STRICTLY ON -- AND I KNOW THAT'S ONE OF THE

22   COMPONENTS, HIS ABILITY TO ASSIST THE ATTORNEY HIMSELF, BUT

23   ALSO THE OTHER COMPONENT IS TO UNDERSTAND THE NATURE OF THE

24   PROCEEDINGS.  AND THE PROBLEM I AM HAVING WITH WHAT YOU ARE

25   SAYING IS IF WE ARE ESSENTIALLY IN LIMBO.

1          UNLESS I AM CONFIDENT THAT HE IS UNDERSTANDING

2     WHAT'S GOING ON HERE, EVERYTHING WE DO IS SUSPECT AND IT'LL BE

3     SET ASIDE LATER.  IF HE IS NOT COMPETENT TO UNDERSTAND, THEN

4     ALL THESE PROCEEDINGS ARE FOR NOUGHT.

5          MS. CLARKE:  RIGHT, BUT I THINK THE COURT HAS TO

6     LOOK TO THIS SIDE OF THE COURTROOM FOR THE INDICATION THAT

7     THAT IS OR IS NOT HAPPENING.

8          THE COURT:  CERTAINLY, ON ONE PART OF IT.  CERTAINLY

9     ON THE PART OF WHETHER HE IS ABLE TO COOPERATE WITH YOU.  AND

10    I AGREE WITH YOU.  I WILL DEFER TO YOU.  YOU ARE VERY

11    EXPERIENCED IN YOUR DEALING FIRSTHAND WITH MR. LOUGHNER, BUT

12    THERE IS A SECOND PART OF THAT, AND THAT'S THE PART I ALLUDED

13    TO, THE ABILITY TO UNDERSTAND THE NATURE OF THE PROCEEDINGS.

14    THE STATUTE GIVES THE GOVERNMENT THE RIGHT TO RAISE THIS.

15    THEY CANNOT BE SOLELY DEPENDENT UPON THE DEFENDANT, AND THE

16    COURT CAN RAISE IT SUA SPONTE.

17          AS YOU KNOW FROM THE MATERIALS THAT HAVE BEEN FILED,

18    I THINK THEY HAVE A LEGITIMATE CONCERN ABOUT GOING FORWARD,

19    DOING ANYTHING IN THIS CASE UNTIL THAT THRESHOLD ISSUE IS

20    RESOLVED.  THAT'S THE PROBLEM I AM HAVING.

21          I WANT TO GIVE YOU A CITATION.  I HAVE GEORGE HERE.

22    85 F. 3RD 1433.  AND IF YOU WANT TO -- YOU OR MR. CAHN WANT TO

23    LOOK AT MY COPY, I HAVE IT HERE.

24          BUT ANYWAY, MS. CLARK, THAT'S THE PROBLEM I AM

25    HAVING.  WE ARE JUST SORT OF IN LIMBO, AND THAT CREATES ALL

1    KINDS OF PROBLEMS.  SPEEDY TRIAL ISSUE, I CAN DEAL WITH

2    OBVIOUSLY, BUT IT KIND OF FREEZES US IN TIME.  WE CAN'T DO

3    ANYTHING UNTIL I AM ASSURED THAT MR. LOUGHNER IS ON BOARD

4    HERE, HE IS ABLE TO ASSIST YOU AND HE IS ABLE TO UNDERSTAND

5    WHAT'S GOING ON.

6         MS. CLARKE:  I THINK THAT THAT'S AGAIN WHAT THE

7    COURT HAS TO LOOK TO THIS SIDE OF THE COURTROOM FOR.  AND AT

8    THE POINT THAT THIS SIDE OF THE COURTROOM, MR. LOUGHNER'S

9    COUNSEL, HAS REASONABLE CAUSE TO BRING TO THE COURT'S

10   ATTENTION, THEN WE MOST ASSUREDLY WILL.  I THINK THE COURT CAN

11   REST CONFIDENT IN THAT ASSURANCE.

12        THE POINT NOW IS WHETHER OR NOT THERE IS REASONABLE

13   CAUSE TO BELIEVE.  AND WHAT THE GOVERNMENT IS RELYING UPON IS,

14   AS THEIR PLEADINGS INDICATE, SOME SUGGESTION OF A MENTAL

15   ISSUE.  WE KNOW THAT THE SERIOUSLY MENTALLY ILL ARE FOUND

16   COMPETENT AND GO FORWARD WITH PROCEEDINGS.  SO TO TAKE NOW THE

17   GOVERNMENT'S ASSERTIONS AND DEFAULT US INTO COMPETENCY

18   PROCEEDINGS WHEN WE ARE TELLING YOU WE ARE NOT AT THAT STATE,

19   AND WE THINK THAT THE DOWNSIDE SUBSTANTIALLY OUTWEIGHS THE

20   UPSIDE IN TERMS OF OUR ABILITY TO DEVELOP A RELATIONSHIP AND

21   THE CASE NECESSARY TO MAKE AN EVALUATION WHETHER THERE IS

22   REASONABLY CAUSE TO BRING TO THE COURT'S ATTENTION.  I THINK

23   THAT DOWNSIDE FAR OUTWEIGHS.

24        THE COURT:  HOW LONG DO YOU THINK IT WOULD TAKE YOU

25   TO GET TO THE POINT WHERE YOU COULD INFORM ME ON THAT?

1          MS. CLARKE:  I DON'T KNOW.  I DON'T KNOW, YOUR

2    HONOR.  YOU HAVE READ OUR PLEADINGS.  YOU KNOW THE WORK THAT

3    WE ARE DOING.  YOU KNOW THE EXPECTATIONS OF WHAT WE HAVE OR

4    WHAT WE NEED TO BE DOING, AND THIS IS A PROCESS BY WHICH WE

5    GO.

6          I CAN TELL YOU THAT WE WILL RAISE IT WITH THE COURT

7    AS SOON AS WE BELIEVE THAT IT IS AN ISSUE THAT THE COURT NEEDS

8    TO ADDRESS.  I CAN ASSURE YOU OF THAT.

9          AS THE COURT KNOWS FROM WORKING WITH COMPETENCY

10   MATTERS, THIS CAN BE AN ISSUE THAT CAN CHANGE.  AND 60 DAYS

11   INTO A CASE IS LIKELY TO BE THE MOST IRRELEVANT TIME TO MAKE

12   THAT DETERMINATION, PARTICULARLY WHEN WE WOULD ALL BE RISKING

13   A DERAILMENT OF A RELATIONSHIP THAT IS BEING ESTABLISHED.  I

14   THINK THAT'S THE PROBLEM.

15          THE COURT:  I HAVE YOUR POSITION ON THAT.

16          WHO SPEAKS FOR THE GOVERNMENT?

17          MR. KLEINDIENST:  I DO, YOUR HONOR.

18          THE COURT:  MR. KLEINDIENST, I AM HAPPY TO HEAR FROM

19   YOU.

20          MR. KLEINDIENST:  I BELIEVE COUNSEL IS WRITING

21   SOMETHING INTO THE STATUTE THAT'S NOT THERE.  I HEAR HER

22   SAYING THAT SHE IS THE GATEKEEPER TO DETERMINE WHEN THIS ISSUE

23   SHOULD BE CONSIDERED AND AT WHAT POINT IN TIME.  THE STATUTE

24   MAKES IT PLAIN THAT IT CANNOT COME FROM THE DEFENDANT; THAT

25   THE COURT ITSELF OR THE GOVERNMENT CAN RAISE IT AS AN ISSUE.

1   AND IT'S NOT FOR DEFENSE COUNSEL TO BE THE DETERMINER IN THE

2   END WHETHER OR NOT HER CLIENT SHOULD HAVE A COMPETENCY

3   EXAMINATION IF THERE IS REASONABLE GROUNDS BASED ON THE

4   EVIDENCE BY THE GOVERNMENT THAT HE MAY, IN FACT, BE

5   INCOMPETENT.

6         AND, IN FACT, COUNSEL HERSELF HAS ALREADY PLEADINGS

7   FILED IN THIS CASE ON THE 4TH THAT HER CLIENT HAS MENTAL

8   AFFLICTIONS.  AND SHE ALSO ADMITS THERE HAVE BEEN PUBLICIZED

9   DETAILS ABOUT MR. LOUGHNER'S MENTAL FUNCTIONS OVER THE LAST

10  FEW YEARS.  I DON'T THINK THAT JUST BECAUSE WE ARE 60 DAYS

11  INTO THIS CASE MEANS THERE IS NOT ENOUGH OF A BACKGROUND OR

12  TRACK RECORD WITH THE DEFENDANT TO SAY IT'S JUST PREMATURE.

13        WE HAVE AN IRRATIONAL ACT TO BEGIN WITH ABOUT WHAT

14  HAPPENED ON JANUARY 8.  CERTAINLY, EVERY MURDER IS IRRATIONAL,

15  BUT IS MORE IRRATIONAL THAN MANY OTHERS.  WE HAVE A PERSON WHO

16  IS IRRATIONALLY OBSESSED WITH CONGRESSWOMAN GIFFORD WHICH LED

17  TO THE SHOOTING, AND WE HAVE SOMEBODY WHO ACTED IN AN

18  IRRATIONAL MANNER THAT DAY AND KILLED SIX AND TRIED TO KILL 13

19  PEOPLE.

20        WE HAVE SUBMITTED TO THE COURT IN THE PUBLIC FILING

21  YOUTUBE VIDEOS THAT HE POSED HIMSELF PRIOR TO JANUARY 8TH

22  WHICH SHOWS THAT SOMEBODY IS VERY SERIOUSLY -- NOT SERIOUSLY

23  DISTURBED BUT HAS SEVERE MENTAL ISSUES.  WHAT WE SUBMITTED IN

24  CAMERA UNDER SEAL REINFORCES THAT.  AND WHAT WE HAVE GIVEN TO

25  THE COURT IS A SNAPSHOT OF MR. LOUGHNER THAT PREDATES JANUARY

8.   IT GOES BACK TO LAST YEAR AND THE YEAR BEFORE.

THAT RAISES SERIOUS QUESTIONS, AND THERE IS
QUESTIONS THAT THE EVIDENCE INDICATES HIS DISTRUST FOR THE
GOVERNMENT, HIS DISTRUST FOR JUDGES, HIS BELIEF THAT THE FBI,
THE CIA ARE BUGGING HIM; HIS ANIMOSITY TOWARDS THE GOVERNMENT
AND THE FACT THAT AT ONE POINT IN TIME HE WAS HEARING VOICES.

WE ARE NOT LOOKING AT THINGS 60 DAYS OUT.  THIS HAS
BEEN GOING ON FOR QUITE A WHILE.  THE PROBLEM IS WHEN DO WE
ADDRESS THAT ISSUE.  IF MS. CLARKE IS CORRECT, SHE IS THE ONE
WHO COMES FORWARD AND SAYS, "OKAY, LET'S HAVE A COMPETENCY
HEARING."  WHEN IS THAT GOING TO HAPPEN?

THE COURT:  I UNDERSTAND YOUR COMMENTS IN THAT
CONTEXT, MR. KLEINDIENST.  FOR ALL THE REASONS THAT YOU JUST
RECITED, IT IS VERY, VERY DIFFICULT FOR ANY COUNSEL, EVEN
EXPERIENCED COUNSEL LIKE MS. CLARKE, TO DEVELOP A RELATIONSHIP
WITH THE DEFENDANT.

IF WHAT YOU SAY IS TRUE, I CAN IMAGE SHE HAS HER
WORK CUT OUT, AS DO THE OTHER DEFENSE COUNSEL, TO DEVELOP A
WORK RELATIONSHIP WITH THE DEFENDANT.  AND THE WORRY THAT SHE
HAS, CUTTING THROUGH EVERYTHING ELSE, PICKING HIM UP AND
TOWING HIM AWAY TO SOME GEOGRAPHICALLY DIFFERENT DISTANT PLACE
FOR THE PURPOSE OF CONDUCTING A COMPETENCY EXAM IS GOING TO
SET THEM BACK IN THE DEVELOPMENT OF THIS ATTORNEY-CLIENT
RELATIONSHIP SO THAT SHE IS IN A POSITION TO REPRESENT HIM.
THAT'S THE CONCERN.

1            MR. KLEINDIENST:  WITH THE CASE I RECOGNIZE THAT,

2      YOUR HONOR.  I HAVEN'T SEEN A CASE YET THAT SAYS THAT THAT'S

3      A REASON NOT TO DO IT.

4            THE COURT:  LISTEN, I THINK THAT THOSE CONCERNS GO

5      TO THE FIRST PRONG OF THE COMPETENCY DETERMINATION, WHETHER HE

6      IS ABLE TO ASSIST HIS COUNSEL AND DEFEND HIMSELF.  I REALLY

7      DO.

8            THERE IS A SECOND PRONG, AND THAT'S -- FOR A LACK OF

9      A BETTER TERM -- A MORE PRACTICAL PRONG.  WHERE DO WE GO FROM

10     HERE, AND HOW LONG IS THIS GOING TO TAKE, AND CAN I DO

11     ANYTHING WITH COMPETENCE.  AND I DON'T HAVE CONFIDENCE THAT

12     MR. LOUGHNER IS COMPETENT AT THIS POINT TO UNDERSTAND THE

13     PROCEEDINGS.  IT SEEMS TO ME THAT'S THE BASIS FOR YOUR

14     ARGUMENT AT THIS POINT.

15            MR. KLEINDIENST:  OBVIOUSLY, WE CAN'T DEAL WITH HIM

16     ON A DAILY BASIS, CERTAINLY.  WE HAVE TALKED TO THE B.O.P.,

17     YOUR HONOR, AND WE BELIEVE THAT IT IS NOT GOING TO BE A

18     LENGTHY PROCESS OF DETACHMENT FROM THIS TRIAL TEAM.  IT CAN BE

19     EXPEDITED.

20            THE COURT:  CAN IT BE DONE HERE?

21            MR. KLEINDIENST:  IN TUCSON?

22            THE COURT:  CAN IT BE DONE HERE SO THAT HE IS NOT

23     DISRUPTED FROM HIS CELL AND THAT COUNSEL CAN CONTINUE TO SEE

24     HIM?

25            MR. KLEINDIENST:  B.O.P. HERE DOESN'T HAVE THAT

1    CAPACITY, BUT I SUSPECT WE CAN GET A PSYCHIATRIST TO EXAMINE

2    HIM, JUDGE.

3            THE COURT:  I DON'T KNOW WHAT THE PRACTICE IS HERE,

4    BUT IN THE DISTRICT WHERE I AM FROM, WE FREQUENTLY BRING IN AN

5    OUTSIDE PSYCHIATRIST ON COMPETENCY ISSUES WHO GO TO THE JAIL

6    WHERE THE DEFENDANT IS AND DO A CLINICAL EXAMINATION, AND THEN

7    DO A REPORT AND REPORT BACK TO THE COURT.  I THINK THAT WOULD

8    BE LESS DISRUPTIVE THAN PULLING HIM AWAY.

9            MR. KLEINDIENST:  SAN DIEGO HAS THE CAPACITY.

10           MS. ANDERSON:  YES.

11           MR. KLEINDIENST:  THAT CERTAINLY WOULD BE MORE

12   CONDUCIVE WHERE HIS LAWYERS RESIDE THAN EVEN TUCSON AND DOING

13   IT THROUGH A LOCAL DOCTOR.

14           THIS IS A VERY -- AS THE COURT KNOWS, THAT IS A VERY

15   SERIOUS CASE, AND THESE ARE VERY SERIOUS ISSUES.  WE DON'T

16   WANT TO FIND OURSELVES SIX MONTHS DOWN THE ROAD AND ALL OF A

17   SUDDEN FIND OUT HE HASN'T BEEN COMPETENT FOR FIVE MONTHS.

18           THE COURT:  BELIEVE ME, MR. KLEINDIENST, THAT

19   CONCERN RESONATES WITH ME.  AT SOME POINT WE ARE GOING TO ASK

20   WHAT ARE WE DOING HERE.  AND THE ANSWER IS I DON'T KNOW YET.

21   THAT'S NOT A GOOD ANSWER.

22           MR. KLEINDIENST:  I DON'T BELIEVE MS. CLARKE HAS THE

23   RIGHT TO BE THE GATEKEEPER OF THAT WHEN THE DECISION IS

24   MADE.

25           THE COURT:  MS. CLARKE, ANYTHING MORE?

1          MS. CLARKE:  NO.

2          THE COURT:  I THINK I HAVE BOTH SIDES' POSITION.

3          I AM HAPPY TO HEAR FROM YOU IF THERE IS ANY JOINDER.

4          MS. CLARKE:  YOUR HONOR, I THINK THE DISTANCE ISSUE

5    THAT THE COURT RECOGNIZED IS AN ISSUE, BUT ALSO BY THE NATURE

6    OF THE COMPETENCY EVALUATION AND THE EXPECTATION THAT THE

7    MEDICAL PROFESSIONAL WILL WANT TO TALK TO COUNSEL ABOUT THEIR

8    INTERACTIONS.

9          THE COURT:  RIGHT.

10          MS. CLARKE:  THAT LEVEL OF INQUIRY IS DAMAGING TO

11   THE RELATIONSHIP.  AND I DON'T KNOW WHAT I CAN DO TO ASSURE

12   THE COURT THAT WE WILL BRING THAT TO THE COURT'S ATTENTION AT

13   THE POINT THAT WE TRULY BELIEVE THAT THE MENTAL ILLNESS HAS

14   BEEN IDENTIFIED AND IS INTERFERING WITH THE ABILITY TO

15   UNDERSTAND THE NATURE OF THE PROCEEDINGS AND TO ASSIST

16   COUNSEL.  I CAN'T EXPRESS SERIOUSLY ENOUGH TO THE COURT THE

17   DAMAGE THAT A PREMATURE COMPETENCY EXAMINATION CAN DO.  I

18   CANNOT ASSURE THE COURT THAT WE ARE NOT GOING THERE.

19          THE COURT:  WHAT IF IT WERE TO BE HELD IN SAN DIEGO

20   SINCE YOU, MR. CAHN, MR. FLEMING ARE BASED THERE, AND IT WOULD

21   BE ACTUALLY EASIER FOR YOU TO COMMUNICATE WITH THE DEFENDANT,

22   I WOULD THINK.  IT'S NOT AN HOUR AWAY BY PLANE.

23          MS. CLARKE:  THAT ADDRESSES A DISTANCE ISSUE AND IT

24   ALSO PUTS MR. LOUGHNER IN ITS THIRD LOCATION OR FOURTH SINCE

25   HIS ARREST WHICH IS DISRUPTIVE ENOUGH, BUT IT DOESN'T ADDRESS

1    THE QUESTION OF ROLE OF COUNSEL DURING THAT PROCESS AND THE

2    INTERFERENCE THAT THAT ITSELF DOES TO THE RELATIONSHIP THAT

3    COUNSEL ARE ATTEMPTING TO BUILD.  I HAVE NO DESIRE TO CONTINUE

4    WITH COURT PROCEEDINGS IF MR. LOUGHNER IS TRULY INCOMPETENT.

5    BUT I DON'T BELIEVE -- OBVIOUSLY, WE HAVE AN OBLIGATION TO

6    COME TO THE COURT WHEN WE THINK THAT THE PRONGS HAVE BEEN MET

7    AND THAT BY VIRTUE OF SERIOUS MENTAL DISEASE OR DEFECT, HE IS

8    RENDERED UNABLE TO ASSIST COUNSEL AND UNDERSTAND THE NATURE OF

9    THE PROCEEDINGS.  WE ARE JUST NOT THERE YET, JUDGE, AND I ASK

10   YOU FOR MORE TIME TO WORK ON THIS AND TO COME BACK TO THE

11   COURT AS PROMPTLY AS POSSIBLE.

12         THE COURT:  HOW MUCH TIME?

13         THAT'S THE PROBLEM.  I KNOW IT'S KIND OF PAINTING

14   YOU IN A CORNER, BUT I DON'T WANT TO BE IN LIMBO ON THIS.  I

15   WANT A DETERMINATION.  HERE IS ANOTHER THING.

16         COMPETENCY DETERMINATION IS FAR DIFFERENT FROM THE

17   DISPOSITIVE DETERMINATION THAT MAYBE LAY AHEAD ABOUT WHAT HIS

18   FRAME OF MIND WAS AT THE TIME OF THESE ALLEGED ACTS.  THAT'S

19   VERY, VERY DIFFERENT.  AND I AGREE WITH YOU THAT THAT INVOLVES

20   MORE COMPREHENSIVE DEVELOPMENT.

21         BUT THE ISSUE THAT IS RAISED BY THE GOVERNMENT THERE

22   IS A FAIRLY NARROW ISSUE TO ASK THE PSYCHIATRIST TO LOOK AT

23   TWO THINGS.  OBVIOUSLY, YOUR INPUT IS IMPORTANT TO ONE OF

24   THOSE TWO PRONGS.  BUT IF WE ARE MISSING THAT THE SHOWING IS

25   MADE ON EITHER OF THE PRONGS, THEN WE'VE GOT A PROBLEM.  AND I

1    NEED TO KNOW THAT SOONER RATHER THAN LATER, MS. CLARKE.

2         MS. CLARKE:  WELL, THAT'S TRUE, BUT COMPETENCY IS

3    TEMPORAL.  IT IS AFFECTED BY WHAT'S GOING ON AT ANY GIVEN

4    TIME.

5         IT'S A SITUATION WHERE THE MENTAL HEALTH

6    PROFESSIONAL IS CALLED UPON TO RENDER AN ANALYSIS IN A VACUUM

7    WITHOUT AN EXTENSIVE HISTORY THAT THEY WOULD WANT TO HAVE IN A

8    CASE LIKE THIS, AND IT WOULD REQUIRE US TO PARTICIPATE IN A

9    WAY THAT I THINK WOULD BE ULTIMATELY DAMAGING.

10        PERHAPS THE BEST THING TO DO IS TO SET THIS FOR A

11   STATUS, LET US BRIEF THE ISSUE TO THE COURT.  AND PERHAPS THAT

12   GIVES US A CHANCE FOR MORE TIME, IF THE COURT WOULD SET A

13   STATUS CONFERENCE IN 30 DAYS OR 60 DAYS AND LET US ADDRESS THE

14   ISSUE AGAIN AT THAT TIME.  THAT GIVES US THREE OR FOUR MONTHS

15   WORKING WITH MR. LOUGHNER AND MAYBE MAKE BETTER JUDGMENTS AND

16   MORE RELIABLE JUDGMENTS.

17        THE COURT:  ANYTHING ELSE?

18        MR. KLEINDIENST:  IF THE COURT HAS LOOKED AT THE

19   MATERIALS SUBMITTED, AND LOOKING AT THAT, THE TOTALITY OF ALL

20   THAT, THAT THE COURT HAS REASONABLE GROUNDS TO BELIEVE THAT HE

21   MAY BE INCOMPETENT, THE STATUTE IS QUITE CLEAR THAT IT SAYS

22   THAT THE COURT SHALL -- NOT MAY BUT SHALL -- ORDER A

23   COMPETENCY EXAMINATION.

24        I THINK THAT WE SUBMITTED THE EVIDENCE THAT'S MORE

25   THAN AMPLE AS TO REASONABLE GROUNDS TO BELIEVE THAT HE IS

1    INCOMPETENT.

2              I KNOW THE CONCERNS THAT MS. CLARKE IS TALKING

3    ABOUT.  I AM SURE COURTS AND CONGRESS HAVE LOOKED AT AND

4    EXAMINED.  I DON'T BELIEVE THAT HER CONCERNS NEGATE THE

5    OVERALL PURPOSE OF HAVE A PROCEEDING THAT IS FAIR TO BOTH

6    SIDES WHERE YOU HAVE A DEFENDANT WHO IS COMPETENT, SO DOWN THE

7    ROAD THIS CASE IS NOT GOING TO BE REVERSED BECAUSE WE LET IT

8    SLIDE AWAY FOR 30 OR 60 DAYS.

9              THE COURT:  SECTION 4241 PROVIDES THAT AT ANYTIME

10   AFTER THE COMMENCEMENT OF A PROSECUTION AND PRIOR SENTENCING,

11   THE DEFENDANT OR THE ATTORNEY FOR THE GOVERNMENT MAY FILE A

12   MOTION FOR A HEARING TO DETERMINE THE MENTAL COMPETENCY OF THE

13   DEFENDANT.

14             THE COURT SHALL GRANT THE MOTION OR SHALL ORDER SUCH

15   A HEARING ON ITS OWN MOTION IF THERE IS REASONABLE CAUSE TO

16   BELIEVE THAT THE DEFENDANT MAY PRESENTLY BE SUFFERING FROM A

17   MENTAL DISEASE OR DEFECT RENDERING HIM MENTALLY INCOMPETENT TO

18   THE EXTENT THAT HE IS UNABLE TO UNDERSTAND THE NATURE AND

19   CONSEQUENCES OF A PROCEEDING AGAINST HIM OR TO ASSIST PROPERLY

20   IN HIS DEFENSE.

21             I AM WELL FAMILIAR WITH THE STATUTE.  COMPETENCY

22   ISSUES ARISE ALL THE TIME.  I THINK THE ARGUMENTS THAT

23   MS. CLARKE HAS MADE ON THE SECOND PRONG -- AND I AGREE WITH

24   HER THAT I WOULD BE DEFERENTIAL TO HER AND THE OTHER

25   EXPERIENCED COUNSEL REGARDING MR. LOUGHNER'S ABILITY TO

1    COOPERATE AND ASSIST THEM IN DEFENDING HIM.  I LOOK TO HER

2    FIRST.  I THINK IT WOULD BE PRESUMPTUOUS, I THINK, FOR ANYONE

3    ELSE INVOLVED IN THE PROCESS TO TRY TO SECOND-GUESS THAT.

4         I AM ALSO AWARE THAT MS. CLARKE IS A VERY

5    EXPERIENCED LAWYER AND SHE, TOO, HAS DEALT WITH THIS ISSUE

6    BEFORE, AND I TAKE VERY SERIOUSLY HER STATEMENTS TO ME THAT I

7    ASSUME ARE BASED ON EXPERIENCE THAT THIS COULD BE VERY

8    DISRUPTIVE OF HER RELATIONSHIP WITH THE DEFENDANT.

9         I AM BUFFETED TO SOME EXTENT IN APPLYING THIS

10   STANDARD IN THIS CASE, BECAUSE THE TWO DIFFERENT FACTORS SEEM

11   TO BE SOMEWHAT AT ODDS WITH EACH OTHER.

12        ON THE OTHER HAND, THIS IS A LEGAL DECISION TO BE

13   MADE, AND THE STANDARD IS AM I CONVINCED MORE LIKELY THAN NOT

14   BY THE GOVERNMENT'S SHOWING THAT THERE IS WORDS OF A STATUTE

15   REASONABLE CAUSE TO BELIEVE THAT THE DEFENDANT MAY BE

16   PRESENTLY SUFFERING FROM A MENTAL DECEASE OR DEFECT THAT

17   RENDERS HIM UNABLE TO UNDERSTAND THE NATURE AND CONSEQUENCES

18   OF THE PROCEEDINGS.

19        THE GOVERNMENT HAS FILED NOT ONLY PUBLICLY, AS

20   ALLUDED TO BY MR. KLEINDIENST, THE YOUTUBE VIDEOS WHICH I HAVE

21   REVIEWED, BUT ALSO IN CAMERA MATERIALS THAT ARE MUCH MORE

22   RECENT, MUCH MORE APPROXIMATE TO TODAY.  TO THE EXTENT THERE

23   WAS A QUESTION ABOUT WHETHER THE DOUBT IS PERCOLATING TODAY OR

24   PERCOLATING A MONTH OR TWO MONTHS AGO, THAT'S RESOLVED, I

25   THINK, BY THE VIEW OF IN CAMERA MATERIALS.

1              I HAVE TO SAY THIS ALSO, MS. CLARKE.  I RAISED THIS

2     THE VERY FIRST TIME I CAME IN.  I HAVE A CONCERN.  FORGET

3     ABOUT THE TAX IN THIS CASE.  THERE HAS BEEN ALL KINDS OF

4     PUBLICITY ABOUT THE BACKGROUND OF THE DEFENDANT.  I HAVE

5     PICKED UP ON THIS MORE THAN IN ANY OTHER CASE.  I HAVE

6     CONCERNS GIVEN THE DEFENDANT'S AFFECT ABOUT WHETHER HE IS

7     FULLY UNDERSTANDING THE NATURE OF THE PROCEEDINGS HERE.  I

8     HAVE THAT CONCERN.

9              NOW, I DID NOT RAISE IT SUA SPONTE.  I ASKED YOU AT

10    THE FIRST HEARING ABOUT WHETHER YOU WANTED TO RAISE THE

11    CONCERN THEN.  I NOW BETTER UNDERSTAND WHY YOU WANTED TO DEFER

12    BASED ON WHAT YOU HAVE EXPLAINED.

13             BUT HERE, I AM DEALING WITH A PARTY WHO HAS A RIGHT

14    TO MAKE THIS REQUEST.  I FIND THAT THE SHOWING HAS BEEN MADE.

15    I RELY ON MATERIALS THAT THE GOVERNMENT HAS SUBMITTED.  I CAN

16    FIND THAT THERE IS REASONABLE CAUSE FOR ME TO QUESTION WHETHER

17    THE DEFENDANT AT THIS POINT UNDERSTANDS THE NATURE OF THE

18    PROCEEDINGS.  I'LL DEFER TO MS. CLARKE ON THE OTHER PART.  SHE

19    HAS NOT RAISED THAT ISSUE.

20             AND SO THE COURT GRANTS THE MOTION FOR THE

21    COMPETENCY HEARING.

22             WHAT I'D LIKE TO DO, MR. KLEINDIENST, IS TO

23    ACCOMMODATE THE INTEREST AND CONCERNS THAT THE DEFENSE HAS

24    RAISED TO THE EXTENT POSSIBLE.  I WOULD PREFER NOT TO SEND

25    MR. LOUGHNER TO SOME DISTANT PLACE.  I DON'T KNOW, I AM NOT

1    SURE, IS THERE A WAY THAT YOU APPOINT A PSYCHIATRIST TO SEE

2    HIM HERE SO THAT HIS HOUSING SITUATION IS NOT DISRUPTED?

3            MR. KLEINDIENST:  MAY I HAVE ONE MOMENT?

4            THE COURT:  YES.

5            MR. KLEINDIENST:  THE DISADVANTAGE OF HAVING IT DONE

6    HERE IS HE IS NOT IN A PRETRIAL DETENTION FACILITY.  HE IS IN

7    A MAXIMUM SECURITY PRISON, AND I THINK THERE ARE COMPLICATIONS

8    IN TERMS OF HAVING ACCESS TO HIM THAT INTERFERE WITH THE

9    SECURITY OF THE PRISON.

10           SAN DIEGO HAS TOLD US THAT THEY ARE MORE THAN HAPPY

11   TO DO IT.  COUNSEL ARE FROM SAN DIEGO.  WE ARE NOT TAKING

12   ABOUT MINNESOTA OR NORTH CAROLINA.  WE ARE TALKING ABOUT SAN

13   DIEGO.

14           THE COURT:  FOR TODAY ALL I NEED TO DECIDE IS THE

15   DATE TO SET THE COMPETENCY HEARING.

16           WHAT I'D ASK, MS. CLARKE, IS THAT YOU AND OTHER

17   COUNSEL MEET AND CONFER WITH GOVERNMENT COUNSEL AND DECIDE

18   LOGISTICALLY WHAT'S THE BEST IN LIGHT OF THE CONCERNS THAT YOU

19   HAVE RAISED.  IF IT REQUIRES AN ORDER BY ME TRANSFERRING HIM

20   TO SAN DIEGO FOR THE PURPOSE OF AN EXAM, I WILL BE HAPPY TO

21   GIVE THAT.  IF YOU WANT TO EXPLORE FURTHER WHETHER THERE IS

22   SOMEPLACE HERE WHERE HE CAN BE PRESENTED FOR A CLINICAL EXAM.

23           I WANT TO BE SURE.  I HAVE IN MIND THE CONCERNS THAT

24   YOU HAVE RAISED, BUT I ALSO KNOW IN THE RUN OF THE MINE

25   CASE -- THIS IS NOT IT -- IN A RUN OF THE MINE CASE, THE

1    COMPETENCY DETERMINATION IS FREQUENTLY MADE ON THE BASIS OF A

2    CLINICAL INTERVIEW AND MATERIALS.  I FIND AT THIS POINT THE

3    MATERIALS IN POSSESSION ON BOTH SIDES ARE SUFFICIENT TO ALLOW

4    A QUALIFIED PSYCHOLOGIST OR PSYCHIATRIST ALONG WITH A CLINICAL

5    INTERVIEW TO MAKE AN ASSESSMENT OF WHETHER THE DEFENDANT

6    UNDERSTANDS THE NATURE OF THE PROCEEDINGS.

7            AGAIN, I SAY THAT WITH ALL RESPECT TO THE POINTS YOU

8    RAISED, MS. CLARKE.

9            SO HOW LONG, MR. KLEINDIENST, DO YOU THINK IT'LL

10   TAKE, WHETHER WE DO NEED TO RESCHEDULE FOR THE ACTUAL HEARING

11   ON THIS?

12           MR. KLEINDIENST:  WE WILL BE HAVING AN EXAMINATION?

13           THE COURT:  YES.

14           MR. KLEINDIENST:  I WOULD DO IT FORTHWITH.

15           THE COURT:  I AM TALKING ABOUT SETTING A DATE.  THE

16   SECTION TALKS ABOUT ME SETTING A DATE FOR COMPETENCY HEARING.

17   I KNOW WHAT HAS TO TAKE PLACE IN THE INTERIM.  I AM JUST

18   ASKING HOW FAR OFF YOU THINK WE NEED TO SET THAT DATE.

19           MR. KLEINDIENST:  AFTER THE EXAMINATION?

20           THE COURT:  YES.  WHEN?

21           MR. KLEINDIENST:  30 DAYS.

22           THE COURT:  MS. CLARKE, YOU HAVE INPUT ON THAT?

23           MS. CLARKE:  WELL, YOUR HONOR, I THINK THERE IS SOME

24   STEPS TO DEAL WITH.  IT MAY TAKE THE PARTIES A FEW DAYS TO GET

25   BACK TO THE COURT, AND WE'LL HAVE SOME ISSUES ON THE LOCATION.

1    THE DESIGNATION OF THE EXAMINER THAT THE COURT MUST DO UNDER

2    4247(B), THE SCHEDULE OF THE EXAMINER, OBVIOUSLY GETTING

3    MATERIALS TO THE EXAMINER.

4            THE COURT:  HOW ABOUT MAY 25TH?  THAT'S A WEDNESDAY.

5    IT IS A WEEK BEFORE MEMORIAL DAY.  IT IS TWO MONTHS HENCE.  IT

6    GIVES PLENTY OF TIME FOR THE LOGISTICS TO BE WORKED OUT.

7    THERE IS PLENTY OF TIME WITH RESPECT TO THE SCHEDULE OF

8    DOCTORS TO COME AND VISIT WITH THE DEFENDANT, TALK TO HIM, GET

9    INPUT FROM COUNSEL.

10           OBVIOUSLY, MS. CLARKE, IF YOU WANT TO HAVE A DOCTOR

11   APPOINTED, I AM AMENABLE TO THAT.  IT'S A CONTESTED HEARING.

12   YOU HAVE A RIGHT TO HAVE THE EVIDENCE PRESENTED, TOO.  THAT

13   GIVES US PLENTY OF LATITUDE.  MAY 25TH, AS I RECALL, IS A

14   WEDNESDAY.

15           MR. KLEINDIENST:  WE WILL MAKE THAT WORK, JUDGE.

16           MS. CLARKE:  WE CAN CERTAINLY COME BACK IF IT'S NOT

17   GOING.

18           THE COURT:  I AM GOING TO SET IT TODAY FOR A HEARING

19   ON COMPETENCY.  IF THINGS DEVELOP IN THE MEANTIME THAT MAKE IT

20   IMPRACTICAL AND WE HAVE TO CONTINUE THE DATE, THEN YOU CAN

21   CERTAINLY BRING THOSE UP.

22           THAT'S A GO-FORWARD DATE WHERE I EXPECT TO COME BACK

23   AND HAVE REPORTS SUBMITTED TO ME IN ADVANCE AND TAKE TESTIMONY

24   OR WHATEVER WE ARE GOING TO DO REGARDING THE ISSUE OF

25   COMPETENCY.  I INTEND TO SETTLE IT THAT DAY IF THAT'S

 1    POSSIBLE.

 2              MS. CLARKE:  WE WILL CERTAINLY AIM FOR THAT, BUT I

 3    THINK THERE ARE SOME ISSUES WE ARE GOING TO NEED THE COURT TO

 4    ADDRESS.  PERHAPS WE NEED TO GET EITHER -- SEE IF WE CAN REACH

 5    AGREEMENT OR GET A PLEADING BEFORE THE COURT SO THE COURT CAN

 6    RULE ON IT, AND IT WOULD INCLUDE LOCATION AND CONDITIONS AND

 7    THE ACTUAL REFERRAL QUESTION, AS I AM UNDERSTANDING, THE COURT

 8    FOCUSING ON THE UNDERSTANDING OF THE NATURE OF THE

 9    PROCEEDING.

10              THE COURT:  I WOULD HAVE THEM DO BOTH.  YOU KNOW

11    WHAT MY VIEW IS ON THE FIRST PRONG.  I THINK THE SECTION

12    REQUIRES THAT A PSYCHIATRIST OR PSYCHOLOGIST SPEAK TO BOTH OF

13    THOSE PRONGS.

14              I AM DEFERENTIAL TO YOU ON THE FIRST PRONG, I AM.

15    AND NECESSARILY SO.  WHETHER HE IS COOPERATING WITH YOU IN THE

16    FIRST INSTANCE IS BEST ANSWERED BY YOU AND HIS OTHER COUNSEL.

17    BUT I AM NOT GOING TO TRY TO LIMIT THE PSYCHIATRIST TO ONE OR

18    TWO PRONGS THAT ARE AT ISSUE IN THE CASE.

19              MS. CLARKE:  WELL, WE'LL WANT AT LEAST ADDRESS THAT

20    QUESTION AND THE USE THAT CAN BE MADE OF THE EVALUATION NEEDS

21    TO BE CLARIFIED.  THERE ARE JUST SOME ISSUES THAT I'D LIKE THE

22    COURT TO RULE ON.  PERHAPS WE COULD FILE SOMETHING BY

23    WEDNESDAY OF NEXT WEEK, IF THAT'S AGREEABLE TO THE COURT.

24              THE COURT:  THAT'S FINE.  I THINK THAT DATE I HAVE

25    SET, USUALLY THESE HEARINGS ARE SET 30 DAYS OUT.  I HAVE SET

1   THIS ONE 60 DAYS OUT WHICH GIVES US PLENTY OF TIME IN THE

2   INTERIM TO WORK OUT THE LOGISTICS AND HAVE THE EXAMINATIONS

3   THAT ARE GOING TO BE DONE DONE, AND WE COME BACK AT -- I'LL

4   SET THE HEARING --

5           MR. CAHN:  YOU DO HAVE TO COME THE NIGHT BEFORE IF

6   YOU WANT TO START IN THE MORNING.  THE EARLIEST FLIGHT GETS

7   HERE ABOUT 10:00 IN THE MORNING.

8           THE COURT:  WELL, WE'LL SET IT THEN FOR 9:30 IN THE

9   MORNING ON MAY 25TH.

10          IS THAT A CONVENIENT TIME FOR YOU, MR. KLEINDIENST?

11          MR. KLEINDIENST:  I CAN GET OUT OF BED AND DRIVE THE

12  20 MILES.  SO I TAKE IT, THE COURT IS GOING TO ORDER THAT SAN

13  DIEGO DEAL --

14          THE COURT:  I AM LEAVING THE PARTICULAR LOGISTICS

15  FIRST TO COUNSEL.  IF THEY CAN BE WORKED OUT BETWEEN COUNSEL,

16  I'LL SIGN OFF.  IF YOU WANT TO PRESENT A STIPULATION ON WHERE

17  HE GOES, AND SO ON.  IN THE ABSENCE OF ANY AGREEMENT, THEN

18  I'LL LET YOU SUBMIT ARGUMENTS AND MAKE A DECISION.

19          ALL I AM DOING AT THIS POINT IS GRANTING THE MOTION

20  FOR A COMPETENCY HEARING WHICH IS WHAT 4241 SPEAKS TO.  I AM

21  SETTING IT FOR MAY 25TH AT 9:30 FOR THE DETERMINATION OF THAT

22  ISSUE.

23          MR. KLEINDIENST:  DID YOU WANT A STIPULATION AS TO

24  HOW THAT'S TO WORK OUT?

25          THE COURT:  YES, STIPULATION OR A MOTION ASKING ME

1    TO TAKE ACTION ONE WAY OR THE OTHER IN THE ABSENCE OF A

2    STIPULATION.  AND TO EXTENT THAT EITHER SIDE WANTS TO HIRE A

3    PSYCHIATRIST OR PSYCHOLOGIST, I'D WANT TO HAVE A REPORT FROM

4    THAT PERSON SEVEN DAYS BEFORE THE MAY 25TH HEARING.

5            MS. CLARKE:  YOUR HONOR, 4247 ADDRESSES HOW THE

6    EXAMINERS ARE APPOINTED, AND WE'LL ADDRESS EITHER BY

7    STIPULATION OR BY MOTION.

8            THE COURT:  ALL RIGHT.

9            WELL, THAT ISSUE HAVING BEEN DECIDED, AS I SAID, I

10   THINK WE CAN STILL GET TO THE OTHER ISSUES, THE ISSUES OF THE

11   LAW.

12           MS. CLARKE, I AM HAPPY TO HEAR FROM YOU ON THE

13   HANDWRITING EXEMPLAR ISSUE.  I UNDERSTAND YOU ARE WILLING TO

14   STIPULATE TO CERTAIN THINGS.  THEY DON'T WANT TO ACCEPT THAT

15   AND THEY ARE NOT REQUIRED TO.  THIS ISN'T AN OVERACHIEVE ISSUE

16   WHERE THEY ASKING THE COURT TO PUT ON EVIDENCE THAT'S HIGHLY

17   INFLAMMATORY LIKE A PRIOR CONVICTION OR SOMETHING.  THEY JUST

18   WANT A SAMPLE OF HIS HANDWRITING.

19           I HAVE LOOKED AT THE CASE THAT YOU CITED.  THEY ARE

20   NOT -- I DON'T THINK THEY ARE ASKING THAT THEY NARRATE AND HE

21   WRITE A PARTICULAR WORD.  IT JUST DOESN'T HAVE THAT KIND OF

22   TESTIMONIAL OR POTENTIAL INCRIMINATION.  THEY ARE COMMON.

23   FINGERPRINTS THAT ARE LIKE REQUIRING SOMEBODY TO STAND IN A

24   LINEUP OR A VOICE EXEMPLAR.

25           MS. CLARKE:  YOUR HONOR, MR. CAHN ACTUALLY IS GOING

1    TO ADDRESS THAT ISSUE.  BUT I'D LIKE TO ASK THE COURT NOT TO

2    GO FORWARD WITH ANY OTHER PROCEEDINGS AT THIS POINT, LEGAL OR

3    FACTUAL OR ANY.  ONCE THE COURT HAS MADE A FINDING OF

4    REASONABLE CAUSE TO BELIEVE THAT THE DEFENDANT DOESN'T

5    UNDERSTAND THE NATURE OF THE PROCEEDINGS, I THINK THEY COME TO

6    A HALT.

7              THE COURT:  I AM GOING TO DEFER ON THAT ISSUE.  I

8    DON'T THINK IT'S A BURNING NEED.

9              WHAT ABOUT THE OTHER ISSUE?  THE OTHER ISSUE IS MORE

10   IN THE FORM OF THE DEFENSE SEEKING SOME KIND OF INJUNCTION

11   FROM ME ON ONGOING OBSERVATIONS.

12             MS. CLARKE:  THAT'S CORRECT.  WITH REGARD TO THAT

13   MOTION, YOUR HONOR, THE GOVERNMENT REPLY TO US BROUGHT NEW

14   INFORMATION THAT THE GOVERNMENT HAD NOT TOLD US ABOUT.  WE

15   ACTUALLY SAT DOWN AND MET WITH THEM ON VARIOUS ISSUES.

16             SO THEIR PLEADINGS PROVIDED US WITH INFORMATION WE

17   THINK WE CAN RESPOND AND WE CAN GO FORWARD WITH A RESPONSE.

18   THE QUESTION IS WHETHER WE GO FORWARD WITH THE HEARING.  THE

19   COURT CAN DECIDE THAT AFTER SEEING THE RESPONSE.

20             THE COURT:  ARE YOU PREPARED TO RESPOND ORALLY?  I

21   AM ON TOP OF THE ISSUE.  I HAVE LOOKED AT ALL THE REGULATIONS.

22   I HAVE LOOKED AT --

23             MS. CLARKE:  NO.  WE WOULD LIKE TO RESPOND IN

24   WRITING, BECAUSE THERE IS A STRATEGIC CALL THAT THE GOVERNMENT

25   HAS ALREADY JUMPED, AND WE'D LIKE TO ADDRESS THAT.  THAT IS

 1    THE USE BY THE UNITED STATES OF A TANK TEAM.  WE THINK THAT

 2    MERITS OUR THOUGHT AND OUR BRIEFING.

 3         THE COURT:  MR. KLEINDIENST, YOU HAVE A POSITION ON

 4    THAT?  I AM INCLINED TO GIVE HER THE TIME.  I AM NOT PREPARED

 5    TODAY TO ISSUE ANY INJUNCTION.  I AM NOT GOING TO.  IT'LL BE

 6    STATUS QUO.  I AM SURE MS. CLARKE KNOWS THAT WHEN SHE SAID SHE

 7    WANTS MORE TIME.

 8         MR. KLEINDIENST:  ONE MOMENT.

 9         I THINK, YOUR HONOR, WHAT THE GOVERNMENT ASKS FOR IN

10    THAT MATTER AND IF IT'S AVAILABLE AND DOESN'T VIOLATE THE

11    PRIVILEGE, THAT WOULD BE INFORMATION THAT MIGHT BE HELPFUL TO

12    THE ISSUE OF COMPETENCY, BECAUSE THAT INFORMATION WAS TAKEN

13    DOWN BY THE PSYCHOLOGIST IN THE FEDERAL INSTITUTION WHEN HE

14    ARRIVED, AND THAT MAY BE SOMETHING THAT'S NOT PRIVILEGED THAT

15    SHOULD BE AVAILABLE.  I UNDERSTAND THAT SHE MAY NEED MORE TIME

16    TO RESPOND TO OUR ARGUMENT, BUT I WOULD ASK WE PROCEED WITH

17    THAT AND MAKE A DECISION.

18         THE COURT:  HOW LONG, MS. CLARKE, YOU THINK YOU'LL

19    NEED TO RESPOND TO THE LAST PORTION OF -- I WANT TO MAKE SURE

20    THAT I AM ON THE SAME PAGE WITH THE TWO OF YOU.

21         THE GOVERNMENT HAS REVEALED THAT THEY HAVE HAD A

22    SO-CALLED GATEKEEPER, A FILTER TEAM THAT HAS BEEN LOOKING AT

23    MATERIALS GENERATED BY THE BUREAU OF PRISONS.  IT'S TWO

24    ASSISTANT UNITED STATES ATTORNEYS WHO ARE NOT INVOLVED IN THIS

25    CASE, AND THEIR TEAM ISN'T MEETING BETWEEN THE INVOLVED

1    PROSECUTORS AND THESE FOLKS.  THESE TWO ASSIGNED PROSECUTORS

2    ARE LOOKING AT MATERIALS AND MAKE SURE NONE OF IT IS

3    PRIVILEGED AND NONE OF IT IS SEEN BY THE PROSECUTORS WHO ARE

4    WERE ACTUALLY PURSUING THIS CASE.

5              THAT'S THE GIST OF THIS, MR. KLEINDIENST?

6              MR. KLEINDIENST:  IT IS, YOUR HONOR.

7              THE COURT:  THAT THAT'S SOMETHING YOU DIDN'T KNOW

8    BEFORE YOU GOT THEIR RESPONSE?

9              MS. CLARKE:  YES.

10             THE COURT:  THAT'S WHAT YOU WANT TO RESPOND TO?

11             MS. CLARKE:  THAT'S RIGHT.

12             THE COURT:  HOW LONG DO YOU NEED?

13             MS. CLARKE:  SINCE WE ARE GOING TO MEETING WITH THE

14   PROSECUTION TEAM TO ADDRESS THOSE LOGISTICAL ISSUES ON THE

15   EVALUATION, PERHAPS WE COULD FILE THAT ON WEDNESDAY AS WELL.

16             THE COURT:  THAT'S FINE.

17             I WOULD BE INCLINED, MR. KLEINDIENST, I AM HAPPY TO

18   COME BACK AND MAKE ANOTHER PERSONAL APPEARANCE, BUT I AGREE

19   WITH YOU THAT THAT MAY BE SOMETHING THAT WOULD INFORM THE

20   COMPETENCY EVALUATION AND THE COMPETENCY DETERMINATION; AND

21   THEREFORE, I SHOULD MAKE A DECISION ON WHETHER THESE MATERIALS

22   ARE PRIVILEGED OR NOT PRIVILEGED AT SOME POINT SOON.

23             THAT SAID, DEFENSE COUNSEL ARE IN SAN DIEGO.  WE

24   HELD A COUPLE OF OPEN HEARINGS WHERE YOU APPEARED BY

25   TELEPHONE.  IF THEY ARE WILLING TO WAIVE THE DEFENDANT'S

1    PRESENCE, THEN I WOULD PROPOSE LET THEM FILE THEIR MATERIALS

2    AND WE WILL SET AN INTERIM DATE BETWEEN NOW AND THE 25TH OF

3    MAY FOR RESOLUTION OF THAT ISSUE.  I AM PREPARED ON IT.  I

4    HAVE READ ALL THE REGULATIONS.

5            BORING THING TO DO TO READ PRISON REGULATIONS, BUT I

6    HAVE DONE THAT.

7            MR. KLEINDIENST:  THE COURT GET THE SUBMISSIONS

8    TODAY.

9            MS. CLARKE:  WE DID NOT.

10           THE COURT:  I DO HAVE A QUESTION, AND THIS IS

11   NEITHER HERE NOR THERE.

12           I AM ASSUMING THAT THE MATERIAL THAT YOU DON'T GET

13   TO SEE THAT YOUR FILTERS DON'T GET TO YOU WILL BE TURNED OVER

14   TO THE DEFENSE; RIGHT?

15           MR. KLEINDIENST:  THE INTENT WAS, AS STATED IN OUR

16   MOTION, THAT THEY RECEIVE A COPY SIMULTANEOUSLY.  IF THEY HAVE

17   NOT RECEIVED IT, I'LL MAKE SURE THAT THEY GET IT.  BUT THE

18   INTENT IS WE WILL NOT LOOK AT THAT OPTION UNTIL THE COURT

19   DETERMINES THAT PRIVILEGE DOES OR DOES NOT EXIST.

20           THE COURT:  YOUR INTENTION IS TO MAKE SURE THEY GET

21   WHAT HAS BEEN FILTERED FROM YOU; RIGHT?

22           MR. KLEINDIENST:  THEY ARE GETTING EVERYTHING THAT

23   THE FBI GAVE THE FILTER TEAM WHICH WE HAVE NOT SEEN.  THEY ARE

24   GETTING ALL THAT.

25           THE COURT:  THAT ANSWERS IT.  THEY HAVE

1    COMPREHENSIVELY ALL THE INFORMATION THAT'S IN QUESTION.

2              MR. KLEINDIENST:  WHATEVER IS OUT THERE, THEY HAVE.

3              MS. CLARKE:  WE DON'T YET, BUT WE WILL RECEIVE IT

4    SOUNDS LIKE.

5              THE COURT:  YES, I AM SURPRISED THAT YOU DON'T HAVE

6    IT.

7              MR. KLEINDIENST, LET ME CHECK ON THAT WHILE WE ARE

8    ON IT.  THIS IS STILL PROBABLY -- I USE THE TERM "OPEN

9    DISCOVERY."  YOU ARE STILL CONTINUING TO PROVIDE DISCOVERY AND

10   NOT WITHHOLD ANYTHING IN THIS CASE; CORRECT?

11             MR. KLEINDIENST:  THAT'S CORRECT, YOUR HONOR.

12             MS. CLARKE:  ONE POINT OF CLARIFICATION.  I THINK I

13   HEARD MR. KLEINDIENST SAY THAT THE PROSECUTION TEAM HAS

14   RECEIVED NOTHING FROM THE BUREAU OF PRISONS; THAT ANYTHING

15   FROM A BUREAU OF PRISONS HAS GONE TO A FILTER TEAM.

16             THE COURT:  IS THAT RIGHT, MR. KLEINDIENST?

17             MR. KLEINDIENST:  YES.

18             THE COURT:  YOU HAVEN'T EVEN SEEN WHAT I HAVE SEEN?

19             MR. KLEINDIENST:  NO.

20             MS. CLARKE:  THANK YOU, YOUR HONOR.

21             THE COURT:  SO THE ISSUE IS FOR DECISION, I THINK.

22   IF YOU WANT TO FILE SOMETHING BY WEDNESDAY, WE'LL SET A

23   FURTHER HEARING ON THAT.  I DO THINK IT'S IMPORTANT THAT WE

24   RESOLVE IT AT SOME POINT BEFORE THE COMPETENCY HEARING.

25             MS. CLARKE:  THANK YOU, YOUR HONOR.

1          THE COURT:  OKAY.  I THINK THAT EXHAUSTS THE THINGS

2     THAT WERE BEFORE ME TODAY.  I'LL DEFER AND KEEP PENDING THE

3     HANDWRITING MOTION WHICH, OF COURSE, TOLLS TIME ON THE SPEEDY

4     TRIAL ACT.

5          THE COURT ALSO FINDS GIVEN THE QUESTION ABOUT THE

6     DEFENDANT'S COMPETENCY THAT TIME IS TOLLED ON THE SPEEDY TRIAL

7     ON THAT BASIS AS WELL STARTING TODAY AND GOING FORWARD UNTIL

8     MAY 25TH.

9          MS. CLARKE:  YOUR HONOR, THERE WAS ONE OTHER MATTER.

10    THIS GOVERNMENT FILED A MOTION REGARDING THE RELEASE OF GRAND

11    JURY MATERIALS, AND THE COURT GRANTED THAT.  THERE IS AN ISSUE

12    IN THAT WE WEREN'T ABLE -- DIDN'T HAVE TIME TO DISCUSS, AND

13    THAT WAS THE USE THAT THE DEFENSE CAN MAKE OF THE MATERIALS.

14    THE ORDER COULD BE CONSTRUED AS A LITTLE VAGUE.  IT SAYS NO

15    DISSEMINATION OF THE MATERIALS, AND WE DO BELIEVE THAT WE

16    SHOULD HAVE THE RIGHT TO REVIEW MATERIALS WITH WITNESSES AND

17    EXPERTS AND --

18          THE COURT:  WITNESSES IS TRICKY.  THE EXPERTS I AM

19    WITH YOU.

20          MR. KLEINDIENST, DO YOU HAVE A POSITION ON THAT?

21          MR. KLEINDIENST:  AS TO THE EXPERTS, NO PROBLEM.  AS

22    TO OTHER WITNESSES, I DON'T KNOW IF IT BE APPROPRIATE.

23          MS. CLARKE:  I HAVEN'T SEEN THE MATERIALS TO KNOW

24    THAT WHAT IT IS.  BUT I UNDERSTAND THAT THE GRAND JURY DID A

25    RATHER MASSIVE -- THE UNITED STATES DID A RATHER MASSIVE

1    ISSUANCE OF SUBPOENAS FOR THE RECORDS.  I THINK GIVING THEM

2    THE PROTECTION OF GRAND JURY MATERIALS UNDER THAT ORDER WOULD

3    BE HINDERING US.

4            THE COURT:  LET'S DO THIS.  WE MAY NOT HAVE A

5    PROBLEM WITH THIS, MS. CLARKE.

6            MR. KLEINDIENST:  I HAVE NO OBJECTION FOR MAKING USE

7    OF ANY SUBPOENAED MATERIAL.  OBVIOUSLY, IT IS AN APPROPRIATE

8    USE.  THE TESTIMONY OF THE GRAND JURY WITNESSES WE WOULD LIKE

9    TO KEEP OBVIOUSLY INSULATED.  SO WITH THEIR EXPERTS, BUT

10   THAT'S THE GOVERNMENT'S CONCERN.

11           THE COURT:  WHAT IF SHE WANTS TO INTERVIEW, FOR

12   EXAMPLE -- I DON'T KNOW FROM THE GRAND JURY, BUT LET'S ASSUME

13   THERE WERE LAY WITNESSES CALLED, FACT WITNESSES, AND THEY WANT

14   TO INTERVIEW SOME FACT WITNESSES AND GO OVER THE PORTION OF

15   THE TRANSCRIPT.

16           MR. KLEINDIENST:  THAT'S FINE.

17           MS. CLARKE:  IT SEEMS LIKE WE OUGHT TO BE ABLE TO

18   SHOW THEM THEIR TESTIMONY, THE INDIVIDUALS' TESTIMONY.

19           THE COURT:  YOU DON'T HAVE A PROBLEM WITH THAT?

20           MR. KLEINDIENST:  NO.

21           THE COURT:  PROBABLY NOT A PROBLEM.  YOU MAY USE IT

22   FOR THAT PURPOSE WITH THAT QUALIFICATION HERE IN OPEN COURT.

23           MS. CLARKE:  THANK YOU, YOUR HONOR.

24           THE COURT:  IF IT'S NOT OUTSIDE OF YOUR OWN

25   INVESTIGATION OR INTERVIEWS WITH WITNESSES OR EXPERTS.

1           MS. CLARKE:  WE HADN'T PLANNED TO SEND IT TO THE NEW

2     YORK TIMES.

3           MR. KLEINDIENST:  I ASSUME WHAT SHE IS SAYING THAT

4     AS TO THE WITNESSES WHO TESTIFIED SHOW THE GRAND JURY

5     TESTIMONY, BUT NOT GRAND JURY TESTIMONY TO SOMEBODY ELSE.

6     THIS TESTIMONY PERTAINS TO ANOTHER WITNESS.  WE WOULD OBJECT

7     TO THAT.

8           THE COURT:  THAT'S A FAIR RESTRICTION, MS. CLARKE.

9     IF YOU ARE INTERVIEWING ONE OF THE WITNESSES AND YOU HAVE A

10    WITNESS'S GRAND JURY TRANSCRIPT AND YOU ARE GOING OVER LINE BY

11    LINE AND YOU SAID THIS AND DID YOU REALLY MEAN THAT, IS THERE

12    SOME EXPLANATION, THAT'S FINE.

13          I AM A LITTLE MORE SKEPTICAL ABOUT SHOWING THE GRAND

14    JURY TESTIMONY OF WITNESS A TO WITNESS B.  ASSUMING WE ARE NOT

15    TALKING ABOUT EXPERTS HERE.  WE ARE TALKING ABOUT LAY OR FACT

16    WITNESSES.

17          MS. CLARKE:  SOUNDS LIKE TO ME EXPERTS ARE FAIR

18    GAME.

19          THE COURT:  YOU AGREE WITH THAT, MR. KLEINDIENST?

20          MR. KLEINDIENST:  YES.  OBVIOUSLY, IF IT'S

21    REASONABLE AND NECESSARY, WE HAVE NO OBJECTION.

22          MS. CLARKE:  AND THAT THE INDIVIDUAL WHO TESTIFIES

23    CAN REVIEW THEIR TRANSCRIPT AND THAT WE CAN INTERVIEW OTHER

24    WITNESSES ABOUT THE TRANSCRIPT, THE INFORMATION OF TRANSCRIPTS

25    THAT WE HAVE.

1            THE COURT:  OF COURSE, THAT GOES WITHOUT SAYING. I

2    WOULDN'T TIE YOUR HANDS THAT WAY SO YOU NOT SPEAK OF IT EXCEPT

3    WITH THE PERSON WHO UTTERED THE WORDS.  THAT'S NEVER BEEN A

4    RESTRICTION ON THAT.

5            I THINK ALL HE IS SAYING IS HE DOESN'T WANT YOU TO

6    HAND WITNESS A'S TRANSCRIPT TO WITNESS B WHEN YOU ARE TALKING

7    TO WITNESS B, IF THEY ARE NOT EXPERT WITNESSES.

8            MS. CLARKE:  AFTER WE SEE THE TRANSCRIPTS, IF THAT'S

9    A PROBLEM, I'LL LET YOU KNOW.  THANK YOU, YOUR HONOR.

10           THE COURT:  IS THERE ANYTHING ELSE?

11           MR. KLEINDIENST:  NOT FROM THE GOVERNMENT.

12           THE COURT:  ANYTHING ELSE FROM THE DEFENSE?

13           MS. CLARKE:  NO, YOUR HONOR.

14           THE COURT:  MS. CLARKE, I DID MENTION TO MR. BODNEY

15   THAT I INTENDED TO GO OVER THE REDACTIONS THAT I MADE AND THE

16   WARRANT MATERIALS IN AN IN CAMERA PROCEEDING.  I'D LIKE TO

17   HAVE YOU AND MR. KLEINDIENST PARTICIPATE IN THAT.  YOU CAN

18   REGISTER WHATEVER ADDITIONAL OBJECTIONS YOU WANT.  THAT

19   HEARING WILL BE HELD IN CHAMBERS BACK HERE AND WILL BE SEALED.

20   IT IS MY INTENTION TO FORTHWITH RELEASE THE MATERIALS ALONG

21   WITH THE COURT'S ORDER ON THOSE.

22           MS. CLARKE:  THANK YOU, YOUR HONOR.

23           THE COURT:  WE ARE IN RECESS.

24                          --O0O--

25

1

2          I HEREBY CERTIFY THAT THE TESTIMONY

3          ADDUCED IN THE FOREGOING MATTER IS

4          A TRUE RECORD OF SAID PROCEEDINGS.

5

6          S/EVA OEMICK              3-11-2011

7          EVA OEMICK                  DATE

8          OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25