# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                               Plaintiff,<br>  vs.<br><br>Jared Lee Loughner,<br><br>                              Defendant. | CASE NO. 11cr0187 TUC LAB<br><br>**ORDER RE: COMPETENCY EXAM** |

On March 9, 2011, the Court granted the Government's motion under 18 U.S.C. § 4241 for a psychiatric examination to determine whether the defendant, Jared Lee Loughner, is competent to stand trial. Rather than directing the logistics of the examination itself - namely, where the examination should take place and who the examiner should be - the Court asked counsel to try to agree on them and then propose a plan for conducting the examination.

Counsel have been unable to reach an agreement. The Government's position, driven by the advice of the Chief of Psychiatry for the Federal Bureau of Prisons ("BOP") and a distinguished independent forensic psychiatrist with whom it consulted, is that Mr. Loughner should be examined at a so-called "Medical Referral Center" ("MRC") within the BOP. MRCs are staffed by medical personnel employed by the BOP. According to the Government, BOP psychiatrists and psychologists have extensive training in forensic

- 1 -

psychiatry and vast experience in evaluating whether defendants are competent to stand trial. The closest MRC to Tucson, where the defendant is presently housed, is in Springfield, Missouri.

The defense's position is that the competency examination should be conducted in Tucson by an outside psychiatrist or psychologist, not one employed by the BOP. Defense counsel are concerned that Mr. Loughner is "seriously ill," and that physically transferring him from Tucson could worsen his mental state and disrupt counsel's relationship with him. They also fear that transferring the defendant to Springfield will impede their work and prevent them from seeing their client for an extended period of time.

Competency examinations ordered under § 4241 are to be conducted according to the provisions of 18 U.S.C. § 4247. The latter section does not *require* that a criminal defendant be relocated to undergo a competency examination. Rather, if the defendant's current institution is inadequate for some reason, "the court *may* commit the person to be examined . . . to the custody of the Attorney General for placement in a suitable facility." 18 U.S.C. § 4247(b) (emphasis added). "Unless impracticable, the psychiatric or psychological examination shall be conducted in the suitable facility closest to the court." Id. A "suitable facility" is one "that is suitable to provide care or treatment given the nature of the offense and the characteristics of the defendant." 18 U.S.C. § 4247(a)(2). Although § 4247 does not require a competency exam to take place in the *most* suitable facility, the Court nonetheless has a heightened interest in facilitating the most thorough, scientific, and reliable examination possible in this case.

The Government argues that the Springfield MRC is best suited to this objective. Springfield has a team of medical personnel on staff who are uniquely skilled and experienced at conducting mental competency examinations in criminal cases. Dr. Donald Lewis, the BOP's Chief of Psychiatry, has provided a memorandum that advises the Springfield facility "is best suited for this competency study" because it "has medical staff available for neurology and other organic testing, and has far more forensic staff and full time psychiatrists available to provide round the clock assistance." At the same time, Dr. Lewis

opines that the United States Penitentiary in Tucson "presents as an extraordinary, atypical and inappropriate location for a competency study." Because the Tucson prison is a high security facility, Mr. Loughner would have to remain in the Special Housing Unit during the examination period, and his movements would be controlled at all times. The necessary precautions that must be employed at the Tucson prison would be disruptive and would likely prevent the examiner from conducting a thorough examination.

The Government also consulted with Dr. Saul J. Faerstein, an experienced and independent forensic psychiatrist. Dr. Faerstein strongly agrees with Dr. Lewis's recommendation. Dr. Faerstein points out an advantage of the Springfield MRC is "the experience of the professional staff and the ability to administer objective competency assessment instruments to supplement the clinical evaluation." He also observes that "[i]n a high profile case such as this one, the reliability and validity of testing methodology is important to secure the public's confidence in the justice system."

The Government's position - and Dr. Lewis's and Dr. Faerstein's advice - do not appear to the Court to be self-serving, nor designed to gain any tactical advantage. Indeed, having requested the competency exam in the first place, the Government would seem to have as much interest as the defense and the Court in obtaining the most valid and reliable examination available. Meeting that objective requires selecting the best place to conduct the examination.

The defense insinuates that the Government has a "preference for a lengthy commitment to an MRC," but that's a misrepresentation of its position. Dr. Faerstein advises, and the Court accepts, that "comprehensive testing" of Mr. Loughner could take "several days" or longer to complete. As the Government acknowledges, however, under § 4247(b) Mr. Loughner cannot be committed to the MRC for more than 30 days. In view of the nature and seriousness of the charges the defendant faces and questions that have arisen regarding his recent mental history, several days or even several weeks is not an unwarranted amount of time for conducting the competency exam.

/ / /

The defense argues the Government's preference for Springfield is based on only the hypothetical possibility that a competency examination would be difficult to complete in Tucson. But the Government's preference for Springfield is hardly hypothetical. Rather, it is based on the opinion of trusted mental health authorities that an MRC is, in all respects, better suited for the kind of thorough competency examination that must be performed in this case. As the defense acknowledges, the Government was initially open to the idea of moving the defendant to the Metropolitan Correctional Center in San Diego, or having a psychiatrist visit him in the Tucson penitentiary. That the Government's position is different now isn't a cynical shift in course, as the defense suggests, but rather the result of a conscientious effort to consult with knowledgeable authorities in the field and recommend to the Court the best available competency exam.

The Court acknowledges that moving the defendant to Springfield for a relatively short period of time will be temporarily inconvenient for the defense team. But the inconvenience is unavoidable in light of the need to reliably and definitively resolve the question of the defendant's present competency. Defense counsel will be able to visit and consult with Mr. Loughner during his commitment to Springfield.

Having considered the arguments and proposals made by both parties, the Court **GRANTS** the Government's motion to conduct the competency examination of the defendant at the MRC in Springfield, Missouri. The Court exercises its authority under § 4247 to authorize a separate competency examination of the defendant by an independent psychiatrist or psychologist, if requested by defense counsel. This should help to assuage any concern the defense team has about the impartiality of the Springfield medical staff[1]. If defense counsel chooses to conduct an independent competency examination of the defendant, the examination shall be conducted at the Springfield MRC, with the full cooperation of the BOP staff, **by no later than April 29, 2011**.

---

[1] The Court emphasizes that no reason has been shown at this point to question the objectivity of the medical staff at the Springfield MRC. However, given the nature and scope of the charges, and the public interest and corresponding need for public confidence in decisions that may influence the outcome of this case, the Court finds it appropriate to authorize an independent competency exam.

Defense counsel has requested that any formal, clinical interviews of the defendant conducted by the Springfield medical staff be recorded and preserved. The request is **GRANTED**. The BOP shall arrange to video record all formal clinical interviews of the defendant, and shall promptly provide all counsel with copies of the video recordings. The numerous other requests made on behalf of the defendant concerning the manner and protocol for conducting the competency examination have been considered by the Court and found wanting, and are **DENIED**.

The Court **ORDERS**:

(1) The defendant shall, forthwith, be transferred to the Springfield, Missouri MRC for the purpose of conducting a mental competency examination;

(2) The examination shall be conducted by the MRC staff. **Time is of the essence**, and the examination shall be completed as soon as possible, but in all events, within the time limitations of 18 USC § 4247;

(3) The question at issue is whether the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense. See 18 U.S.C. § 4241(a). The scope of the examination shall accordingly be limited to whether Mr. Loughner is presently competent to stand trial; the examination shall not focus on the defendant's sanity at the time of the alleged offense, nor shall the examination purposefully attempt to explore potential aggravating or mitigating sentencing factors in this case;

(4) All formal clinical interviews of the defendant shall be video recorded, and copies of the video recordings shall be provided promptly to both counsel. There shall be no live video feed of the formal, clinical interviews;

(5) In advance of the examination, the Government shall provide the MRC staff with all information in its possession that it deems relevant to the question of Mr. Loughner's competency including, but not limited to, the evidence offered in support of the motion for
/ / /

1    a competency examination. Counsel for the defendant may also supply the MRC staff with

2    relevant information in their possession informing the issue of the defendant's competency;

3         (6)     Defense counsel may retain an independent medical expert to conduct a

4    separate mental competency examination of the defendant. If an independent examination

5    of the defendant is performed, it shall be conducted and completed at the Springfield MRC

6    **by no later than April 29, 2011**[2]. Any independent competency examination of the

7    defendant shall be conducted in full compliance with the required protocols set forth in

8    sections (3) and (4) of this order; and

9         (7)     A formal written report of the opinions and conclusions of the examiner(s),

10    including the reasons for the opinions and conclusions, shall be lodged with this Court and

11    provided to counsel for both parties **by no later than May 11, 2011**.

12        **IT IS SO ORDERED.**

14    DATED this 21st day of March, 2011.

*[signature: Larry A. Burns]*

16         **HONORABLE LARRY ALAN BURNS**
                 United States District Judge

---

[2] If the defense chooses to pursue an independent competency examination, defense counsel shall promptly make arrangements for conducting the examination with the staff at the Springfield MRC. The Government shall cooperate in facilitating those arrangements. The Court directs that any independent competency examination shall be conducted within the statutory time limits of § 4247, so as to minimize the length of the defendant's stay at Springfield. In all events, however, any independent exam of Mr. Loughner shall be completed by no later than the April 29 deadline set forth above.