```
 1                     UNITED STATES DISTRICT COURT
                          DISTRICT OF ARIZONA
 2                    HELD AT SAN DIEGO, CALIFORNIA

 3           HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING

 4
     UNITED STATES OF AMERICA,     )
 5                                 )
                     PLAINTIFF,    ) CASE NO. 4:11CR187-TUC LAB
 6                                 )
            VS.                    )
 7                                 ) SAN DIEGO, CALIFORNIA
     JARED LEE LOUGHNER,           ) MARCH 2, 2011
 8                                 ) 3:15 P.M.
                     DEFENDANT.    )
 9   _____)

10                       REPORTER'S TRANSCRIPT
                       EX PARTE MOTION HEARING
11

12                       **SEALED PROCEEDING**

13
     APPEARANCES:
14
     FOR THE GOVERNMENT:           DENNIS K. BURKE, U.S. ATTORNEY
15                                 BY: WALLACE KLEINDIENST, ESQ.
                                       MARY SUE FELDMEIER, ESQ.
16                                     BEVERLY ANDERSON, ESQ.
                                   ASSISTANT U.S. ATTORNEYS
17                                 405 W. CONGRESS ST., STE. 4800
                                   TUCSON, ARIZONA 85701
18
     FOR THE DEFENDANT:            FEDERAL DEFENDERS, INC.
19                                 BY: JUDY CLARKE, ESQ.
                                       REUBEN CAHN, ESQ.
20                                 220 BROADWAY, STE. 900
                                   SAN DIEGO, CA 92101
21

22   COURT REPORTER:               OFFICIAL COURT REPORTER
                                   UNITED STATES COURTHOUSE
23                                 940 FRONT STREET, STE. 2190
                                   SAN DIEGO, CA 92101
24                                 TEL: (619) 615-3103

25
```

2

**SAN DIEGO, CALIFORNIA – WEDNESDAY, MARCH 2, 2011 – 3:15 P.M.**

**SEALED PROCEEDING**

THE CLERK: NO. 1, 4:11CR187, UNITED STATES OF AMERICA VERSUS JARED LEE LOUGHNER; EX PARTE MOTION HEARING.

COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

MR. KLEINDIENST: GOOD AFTERNOON, YOUR HONOR.

WALLACE KLEINDIENST, BEVERLY ANDERSON AND MARY SUE FELDMEIER FOR THE UNITED STATES IN TUCSON.

MR. CAHN: REUBEN CAHN AND JUDY CLARKE ON BEHALF OF MR. LOUGHNER HERE IN SAN DIEGO.

THE COURT: GOOD AFTERNOON.

MR. CAHN: AND WE ARE WAIVING MR. LOUGHNER'S PRESENCE.

THE COURT: THE COURTROOM IS CLOSED AND LOCKED. THIS IS A SEALED PROCEEDING PURSUANT TO RULE 6(E) OF THE FEDERAL RULES OF CRIMINAL PROCEDURE. IT HAS TO DO WITH A CHALLENGE TO A GRAND JURY SUBPOENA THAT HAS ISSUED.

MR. KLEINDIENST, I AM INFORMED THAT YOU HAVE RECEIVED A COPY OF THE EMERGENCY MOTION FILED BY THE DEFENSE.

MR. KLEINDIENST: I HAVE BEEN LOOKING AT IT. WE DID GET IT.

THE COURT: WELL, THE GIST OF IT IS, THE ALLEGATION IS THAT A SUBPOENA HAS BEEN ISSUED APPARENTLY SEEKING COMPLIANCE TOMORROW FOR A PERSON ALLEGED TO BE MR. LOUGHNER'S

1  PEDIATRICIAN.  THE REAL NUT OF THE OBJECTION, I THINK, GOES TO
2  THE SCOPE OF THE SUBPOENA.
3           AS I UNDERSTAND IT, COPIES ATTACHED HERE, IT ASKS
4  FOR ALL OF HIS MEDICAL RECORDS GOING BACK TO 1988.  I AM
5  INFORMED IN THE MOTION THAT HE IS NOW 24 YEARS OLD.
6           MR. CAHN:  22, YOUR HONOR.
7           THE COURT:  22.  SO THIS WOULD BE A SUBPOENA THAT
8  SEEKS PEDIATRIC AND MEDICAL RECORDS BACK TO THE TIME OF HIS
9  BIRTH.
10          MR. KLEINDIENST:  THAT'S CORRECT, YOUR HONOR.
11          THE COURT:  I HAVE REVIEWED AGAIN THE R ENTERPRISES
12 CASE.  THE COURT IS AWARE THAT MINI TRIALS ARE DISFAVORED IN
13 THE CONTEXT OF THE GRAND JURY AND THAT THE GRAND JURY IS
14 SUPPOSED TO OPERATE EX PARTE.
15          HOWEVER, THAT DOESN'T MEAN THAT THERE ARE NO
16 LIMITATIONS ON THE SCOPE OF GRAND JURY SUBPOENAS.  INDEED,
17 R ENTERPRISES IS A CASE WHERE THERE WAS AN ATTEMPT TO QUASH A
18 GRAND JURY SUBPOENA.
19          THE GOVERNMENT OPERATES UNDER A PRESUMTION OF
20 REGULARITY WHICH MEANS THE BURDEN IS ON THE PARTIES
21 CHALLENGING A GRAND JURY SUBPOENA TO PROVE THAT IT'S IRREGULAR
22 OR THAT IT MAY NOT COMPLY WITH THE RULES AND PURPOSES OF GRAND
23 JURY INVESTIGATIONS.
24          SO I HAVE APPLIED THAT PRESUMPTION HERE BUT I FIND,
25 MR. KLEINDIENST, GIVEN THE ALLEGATIONS IN THE MOTION THAT

1  THERE IS A PROBLEM WITH THIS.  I AM HAPPY TO HAVE YOU SPEAK TO
2  IT.
3  　　　　　THE JOHNSON CASE, WHICH WAS CITED -- I AM SORRY --
4  THE WILLIAMS CASE, WHICH WAS CITED INITIALLY IN OUR FIRST
5  GRAND JURY CHALLENGE AND HAS BEEN CITED AGAIN IN THE MOVING
6  PAPERS OF THE DEFENDANT IN THIS CASE, PROVIDES THAT IT IS NOT
7  THE FUNCTION OF THE GRAND JURY TO INQUIRE ON WHAT FOUNDATION
8  THE CHARGE MAY BE DENIED OR TO OTHERWISE TRY THE SUSPECT'S
9  DEFENSES BUT ONLY TO EXAMINE A FOUNDATION ON WHICH THE CHARGE
10 MAY BE MADE.
11 　　　　　SO WITH THAT IN MIND, IN VIEW OF SOME OF MY PRIOR
12 COMMENTS AT THE TIME THE ORIGINAL CHALLENGE WAS MADE, I AM
13 DUBIOUS THAT A SUBPOENA THAT WOULD SEEK TO CAPTURE INFORMATION
14 GOING BACK TO THE DEFENDANT'S BIRTH WOULD HAVE ANYTHING TO DO
15 WITH THE CHARGES.
16 　　　　　I THINK THE DEFENSE AND I ARE CONTEMPLATING THAT THE
17 CHARGES THAT ARE UNDER INVESTIGATION ARE HOMICIDE CHARGES,
18 MURDER CHARGES.  AND EVEN WITH THAT IN MIND AND MINDFUL OF THE
19 DISCUSSION THAT WE HAD LAST TIME AND MY OWN COMMENTS ABOUT
20 MENS REA, I THINK IT APPEARS TO ME AT LEAST ON THE SURFACE
21 THAT A SUBPOENA LIKE THIS IS OVERBROAD AND IMPROPER EVEN IN
22 THE GRAND JURY CONTEXT, BUT I AM HAPPY TO HEAR FROM YOU.
23 　　　　　MR. KLEINDIENST:  AS I UNDERSTAND THEIR COMPLAINT IS
24 THAT IT GOES TOWARD THE POTENTIAL MITIGATING EVIDENCE LIKE THE
25 EARLIER OBJECTION TO THE SUBPOENAS ISSUED TO HIS MOTHER AND

5

1  FATHER, THAT THIS SUBPOENA IS DESIGNED TO JUST SEEK EVIDENCE
2  ABOUT -- EVIDENCE THAT WOULD BE MITIGATING TOWARD THEIR
3  CLIENT.  THAT'S WHAT I UNDERSTAND THEIR OBJECTION TO BE IN
4  THIS MOTION.
5         I WILL SAY THAT OBVIOUSLY THE GRAND JURY, AS THE
6  COURT HAS NOTED, HAS HOURS TO INVESTIGATE INTO ALL KINDS OF
7  MATTERS AND THERE IS NO TIME PERIOD THAT CAN BE PLACED
8  NORMALLY ON THE GRAND JURY INVESTIGATION.
9         WE EXPECT THE GRAND JURY TO BE CONSIDERING CHARGES
10 THAT REQUIRE A SHOWING OF PREMEDITATION TO COMMIT MURDER.
11 OTHER CHARGES THAT REQUIRE SPECIFIC INTENT TO ATTEMPT TO KILL
12 SOMEBODY.  THAT'S AN OBLIGATION THE GOVERNMENT, WERE THOSE
13 CHARGES TO BE BROUGHT -- WELL, FOR ONE, THE GRAND JURY TO
14 CONSIDER WHETHER OR NOT THERE IS SUFFICIENT EVIDENCE OF
15 PREMEDITATION AND SPECIFIC INTENT TO KILL THAT GOES TO THE
16 ELEMENTS OF THE OFFENSE OF PREMEDITATED MURDER, THE ELEMENTS
17 OF THE OFFENSE INVOLVED OF ANY ATTEMPT TO MURDER THE
18 CONGRESSWOMAN.  THERE MAY BE OTHER CHARGES DEALING WITH THE
19 ATTEMPT TO MURDER OTHER INDIVIDUALS WHO WERE THERE AT THE
20 SAFEWAY.
21        SO THE GOVERNMENT HAS AN OBLIGATION TO PROVE HIS
22 SPECIFIC INTENT TO DO THOSE ACTS, AND WE EXPECT THAT AT TRIAL,
23 OBVIOUSLY, THE DEFENDANT IS GOING TO CONTEST THAT AND SAY THAT
24 HE DIDN'T HAVE THE ABILITY TO FORM THE INTENT TO KILL.  HIS
25 HISTORY, HIS MEDICAL HISTORY MAY VERY WELL SHED LIGHT ON

1  WHETHER OR NOT HE DOES HAVE THE INTENT TO KILL AND WHETHER OR
2  NOT HE HAS THE ABILITY TO COMMIT PREMEDITATED MURDER.
3          WE EXPECT OUR EXPERT WITNESSES TO BE IN A POSITION
4  BASED ON MR. LOUGHNER'S HISTORY, HIS MEDICAL HISTORY TO BE
5  ABLE TO SHED LIGHT ON WHETHER OR NOT ON JANUARY 8 OF 2011,
6  MR. LOUGHNER DID NOT HAVE ANYTHING THAT HINDERS HIS ABILITY TO
7  COMMIT THE CRIME OF PREMEDITATED INTENT.
8          SO THE MEDICAL HISTORY OF MR. LOUGHNER, OBVIOUSLY AS
9  THE COURT KNOWS, THIS IS NOT A CASE -- THIS IS A CASE WHERE
10 HIS SANITY IS GOING TO BE AN ISSUE.  WE FULLY EXPECT THAT
11 THAT'S WHAT THEY'LL RAISE AS A DEFENSE.
12         THAT BEING THE CASE, IT'S IMPORTANT FOR THE GRAND
13 JURY AT THE OUTSET TO RECEIVE RECORDS THAT WOULD INDICATE
14 THERE WAS SOME TYPE OF MEDICAL PROBLEM DATING BACK TO HIS
15 BIRTH TO THE PRESENT TIME THAT WOULD INTERFERE WITH HIS
16 ABILITY TO COMMIT INTENTIONAL MURDER.
17         WE EXPECT THAT THERE WOULD NOT BE ANY EVIDENCE BUT
18 THAT'S RELEVANT EVIDENCE ON THOSE ISSUES, AND IT WILL BE
19 RELEVANT TESTIMONY AT A TRIAL WHERE THE GOVERNMENT HAS THAT
20 BURDEN TO PROVE PREMEDITATION.  THESE RECORDS ARE NOT SOUGHT
21 TO TRY TO GET INTO MITIGATING CIRCUMSTANCES PERTAINING TO THE
22 DEFENDANT IN TERMS OF A PENALTY PHASE.  THAT'S NOT THE INTENT.
23 AND QUITE FRANKLY, I AM NOT SURE WHY THAT WOULD OCCUR FROM THE
24 PRODUCTION OF THOSE RECORDS, HOW THAT MIGHT BE MITIGATING
25 EVIDENCE.

1            BUT IN ANY EVENT, WE BELIEVE THAT THE GRAND JURY
2   OBVIOUSLY HAS LIFE HOURS TO LOOK INTO ALL RELEVANT MATTERS AND
3   BY THE NATURE OF THE CRIMES ALLEGED HERE AND BY THE APPARENT
4   DEFENSE THAT THIS SUBPOENA IS APPROPRIATE AND IT IS NOT AN
5   ABUSE OF THE GRAND JURY'S POWER.
6            AND WE, FOR THAT REASON, OBVIOUSLY WOULD ASK THE
7   COURT TO DENY THE MOTION AND TO ALLOW THE GRAND JURY TO
8   RECEIVE THAT EVIDENCE TO THE EXTENT IT EXISTS.
9            THE COURT:  DO YOU THINK IT IS A PROPER FUNCTION OF
10  THE GRAND JURY FOR IT TO INQUIRE INTO OR GATHER EVIDENCE THAT
11  MIGHT REBUT AN EXPECTED INSANITY DEFENSE?
12           MR. KLEINDIENST:  I THINK IT'S PROPER FOR THE GRAND
13  JURY IF THERE IS AN ISSUE AS TO HIS MENTAL COMPETENCY TO
14  OBTAIN THOSE RECORDS.
15           THE COURT:  WELL, I ACKNOWLEDGE, MR. KLEINDIENST,
16  THERE IS A LINE HERE.  THERE IS A LINE BETWEEN YOUR
17  AFFIRMATIVE AND ULTIMATELY YOUR RESPONSIBILITY TO PROVE BEYOND
18  A REASONABLE DOUBT THE SPECIAL MENS REA THAT YOU TALKED ABOUT:
19  PREMEDITATION, DELIBERATION, WILLFULNESS.  I UNDERSTAND THAT,
20  AND I UNDERSTAND THE RELEVANCE OF EVIDENCE GOING TO THAT.
21           BUT IT STRIKES ME MEDICAL RECORDS GOING BACK TO THE
22  TIME THAT MR. LOUGHNER WAS BORN OR A CHILD, AN EARLY CHILD,
23  DON'T INFORM THAT.  AND I WOULD HAVE A VERY DIFFICULT TIME
24  EVEN APPLYING THE R ENTERPRISES STANDARDS OF FINDING A
25  REASONABLE POSSIBILITY THAT THE MATERIALS WILL PRODUCE

1   INFORMATION RELEVANT TO THE SUBJECT MATTER OF THOSE CHARGES.
2           IT SOUNDS TO ME MORE LIKE IT GOES TO EITHER AN
3   INSANITY DEFENSE OR, AS YOU HAVE IDENTIFIED AND DISAVOWED,
4   TOWARD CONFRONTING MITIGATION EVIDENCE IF THERE IS A PENALTY
5   PHASE.
6           THE PROBLEM I HAVE WITH THAT IS THE LANGUAGE THAT I
7   ORIGINALLY READ FROM WILLIAMS WHICH SAYS "ON THE ONE HAND YOU
8   HAVE VERY BROAD POWERS TO LOOK INTO EVERYTHING RELEVANT TO THE
9   PROPOSED CHARGE.  IT IS NOT THE PROPER FUNCTION OF THE GRAND
10  JURY TO TRY THE SUSPECT'S DEFENSES."  OF COURSE, IN THE
11  CONTEXT OF THIS CASE, THAT WOULD INCLUDE A DEFENSE TO A
12  PENALTY PHASE AS WELL.
13          AS I LOOK AT THESE THINGS AND APPLY COMMON SENSE,
14  MR. KLEINDIENST, I HAVE TO TELL YOU THE SUBPOENA LOOKS LIKE
15  IT'S GOING MORE TOWARD REBUTTING DEFENSES THAN IT IS TOWARDS
16  PROVING THE MENTAL ELEMENTS REQUIRED FOR THE PROPOSED CHARGES.
17  THAT'S WHAT IT SEEMS LIKE TO ME.
18          MR. KLEINDIENST:  WELL, IT'S -- OBVIOUSLY, THERE ARE
19  TWO SIDES PRETTY MUCH TO THE SAME POINT.  THE GOVERNMENT,
20  NONETHELESS, IF THERE IS AN ELEMENT OF THE OFFENSE THAT NEEDS
21  TO BE PROVEN AND THERE ARE RECORDS THAT MAY SHED LIGHT ON THAT
22  ELEMENT, IT IS NOT AN ABUSE OF THE GRAND JURY PROCESS TO
23  OBTAIN THOSE RECORDS.  AND IT WOULD BE IMPORTANT FOR THE
24  GOVERNMENT'S PRESENTATION OF ITS CASE FOR, LET'S SAY
25  HYPOTHETICALLY, A FORENSIC PSYCHIATRIST TESTIFY BASED ON

1   RECORDS PERTAINING TO THE DEFENDANT THAT HE HAS, HE WAS
2   CAPABLE OF FORMING THE INTENT TO KILL AND THERE IS NOTHING IN
3   HIS BACKGROUND THAT WOULD HAVE DETRACTED FROM THE ABILITY.
4          THE COURT:  ARE YOU SUGGESTING THAT YOU CALL A
5   FORENSIC PSYCHIATRIST IN YOUR CASE-IN-CHIEF AND OFFER THAT
6   AFFIRMATIVELY BEFORE ANY DEFENSE ON THE BASIS OF HIS INABILITY
7   TO FORM THE REQUIRED INTENT IS OFFERED?
8          MR. KLEINDIENST:  IT MAY BE AN ISSUE RAISED ON THE
9   DEFENSE DURING THE GOVERNMENT'S PRESENTATION OF ITS CASE.
10         THE COURT:  IT MAY BE, BUT USUALLY THE WAY IT WORKS,
11  IN MY EXPERIENCE, IS THE GOVERNMENT PUTS ON ITS CASE.  AND
12  HERE THERE HAS BEEN NO EVIDENCE PRESENTED IN FRONT OF ME.  I
13  HAVE JUST SUPERFICIAL KNOWLEDGE OF WHAT HAPPENED.
14         I AM ASSUMING YOU HAVE WITNESSES THAT PUT A GUN IN
15  THE DEFENDANT'S HAND AND SAY THAT HE PULLED THE GUN, POINTED
16  IT AT PEOPLE.  I WOULD THINK THAT THAT'S THE KIND OF EVIDENCE
17  THAT WILL CHARACTERIZE THE GOVERNMENT'S CASE-IN-CHIEF.  IF YOU
18  HAVE A FORENSIC PSYCHIATRIST, IT WOULD BE SOMEONE YOU HOLD
19  BACK AND WAIT TO USE IN REBUTTAL PRESUMING THAT THERE MIGHT BE
20  SOME DEFENSE OR ATTACK ON THE DEFENDANT'S ABILITY TO FORM THE
21  REQUIRED MENTAL STATE AND THEN YOU PUT THAT ON IN REBUTTAL.
22         I AM NOT TRYING TO TRY YOUR CASE FOR YOU, BUT I HAVE
23  SOME ANECDOTAL EXPERIENCE ON THAT.  I CAN'T THINK OF A CASE
24  WHERE THE PROSECUTION HAS OFFERED IN ITS CASE-IN-CHIEF AS
25  OPPOSED TO A REBUTTAL CASE, A FORENSIC PSYCHIATRIST OPINING ON

10

1  THE DEFENDANT'S ABILITY TO FORM THE REQUIRED MENTAL STATE,
2  PARTICULARLY WHEN THE EVIDENCE AT LEAST BEFORE IT'S CHALLENGED
3  IS PRETTY SELF-EVIDENT THE PERSON SEEMED TO KNOW WHAT HE WAS
4  DOING.
5          SO THAT'S THE DIFFICULTY I AM HAVING HERE.  IF IT
6  GOES TO REBUTTAL, THEN NECESSARILY IT IS MORE FOCUSED ON
7  REBUTTING A DEFENSE THAN IT IS PROVING YOUR CASE-IN-CHIEF.
8  THAT'S WHERE YOU RUN INTO TROUBLE UNDER THESE CASES THAT TALK
9  ABOUT THE SCOPE OF THE GRAND JURY INVESTIGATION.
10         I AM NOT TRYING TO BE DIFFICULT OR ARGUMENTATIVE
11 WITH YOU, BUT THERE IS A MINIMAL STANDARD HERE, AND I THINK --
12 LET ME BE MORE SPECIFIC IN THE CONTEXT OF THIS SUBPOENA.
13         LET'S SAY YOU GET PEDIATRIC MEDICAL RECORDS FROM
14 1990 WHEN MR. LOUGHNER WAS TWO.  HOW WOULD THAT POSSIBLY
15 INFORM THE ISSUE OF WHETHER HE HAD THE SPECIFIC INTENT TO KILL
16 OR HE COULD PREMEDITATE 20 YEARS LATER?
17         MR. KLEINDIENST:  EITHER COMPLICATIONS FROM THE
18 DELIVERY THAT MIGHT DO DAMAGE TO HIS HEAD BY PROCEDURES USED,
19 FALLS THAT MIGHT HAPPEN AS A CHILD THAT WOULD GO TOWARDS
20 DAMAGE OR INJURY TO HIS HEAD.
21         THE COURT:  CAN'T YOU THEN NARROW THIS SUBPOENA
22 INSTEAD OF CASTING A WIDE NET AND SAYING "GIVE US EVERYTHING,"
23 WHY CAN'T YOU NARROW THE SUBPOENA TO SAY "WE WANT ANY MEDICAL
24 EVIDENCE THAT SUGGESTS A CONGENITAL BRAIN DEFECT OR TRAUMA TO
25 THE BRAIN."

Case 4:11-cr-00187-LABU   Document 167   Filed 03/22/11   Page 11 of 17

11

```
 1              IF THAT WERE THE CASE, THEN I AM STILL NOT
 2   COMPLETELY COMFORTABLE WITH IT, BUT AT LEAST THAT NARROWS IT
 3   AND GOES TOWARD THE PUNITIVE PURPOSE THAT YOU HAVE IDENTIFIED.
 4              MR. KLEINDIENST:  RIGHT.
 5              THE COURT:  LET ME HEAR FROM EITHER MR. CAHN OR
 6   MS. CLARKE ON THIS.
 7              MR. CAHN:  JUDGE, LET ME MAKE -- IS IT BETTER IF I
 8   GO TO THE PODIUM?
 9              THE COURT:  PROBABLY IS.
10              MR. CAHN:  LET ME MAKE A COUPLE OF POINTS BRIEFLY.
11   I DIDN'T HEAR THE GOVERNMENT IN ANY WAY DISPUTE THAT WE ARE
12   MISREADING OR MISAPPLYING WILLIAMS.  BUT THE FUNDAMENTAL RULE
13   OF WILLIAMS IS THAT IT'S NOT THE GRAND JURY'S FUNCTION TO
14   INVESTIGATE DEFENSES, TO INVESTIGATE THE BASIS ON WHICH A
15   CHARGE MIGHT BE DENIED, AND THAT THE GRAND JURY IS NOT
16   AVAILABLE AS A TOOL FOR DISCOVERY, EITHER FOR TRIAL
17   PREPARATION OR SENTENCING PREPARATION, TO REBUT A DEFENSE.
18              HAVING SAID THAT, IT SEEMS TO ME EVERYTHING
19   MR. KLEINDIENST SAID ABOUT THE PURPOSE OF THIS SUBPOENA
20   ESSENTIALLY CONFIRMS THAT ITS PURPOSE IS TO OBTAIN INFORMATION
21   TO REBUT A POSSIBLE INSANITY DEFENSE.  I BELIEVE HE SAID THAT
22   AT LEAST THREE TIMES DURING THE COURSE OF HIS EXPLANATION AS
23   TO WHY THEY WANT THESE PARTICULAR MATERIALS.
24              THE ONLY OTHER THING I WANT TO SAY ABOUT THIS, IN
25   LIGHT OF THE GOVERNMENT'S ARGUMENT, THERE REALLY WOULD BE NO
```

1   LIMITATION TO THE BREADTH OF MATERIALS THAT THEY COULD
2   SUBPOENA.  AND, IN FACT, IF THE RULE THAT THE GOVERNMENT
3   APPEARS TO BE URGING WERE TO BE APPLIED, THE GOVERNMENT COULD
4   USE THE GRAND JURY TO COMPLETELY DISCOVER THE ENTIRE DEFENSE
5   IN MITIGATION CASE IN EVERY SINGLE CAPITAL CASE, OR INDEED, IN
6   ANY CASE IN WHICH ANY PARTICULAR SPECIAL MENS REA ELEMENT IS
7   INVOLVED, ANYTHING BEYOND MERE INTENTIONALITY.
8           THE COURT:  MR. KLEINDIENST, ANYTHING MORE?
9           MR. KLEINDIENST:  WELL, I WOULD SAY IN ADDITION --
10  AND THIS CAN BE LOOKED AT FROM MANY DIFFERENT ANGLES.  BUT IN
11  THIS CASE, I THINK IT WOULD BE CLEAR THAT THE GOVERNMENT IN
12  PROVING ITS CASE-IN-CHIEF NECESSARILY MAY HAVE TO PUT ON
13  EVIDENCE TO A JUROR, TO MAKE IT CLEAR THAT THIS PERSON IS NOT
14  OF SOUND MIND JUST BECAUSE THE THINGS THAT HE SAID OR HE WROTE
15  OR HE POSTED ON HIS "MY SPACE" OR WHATEVER, AND THAT SETTING
16  ASIDE EVEN GIVING THE DEFENSE'S CASE, THE PROSECUTION MAY HAVE
17  THAT THEY'LL BE FACED WITH THE DILEMMA OF HAVING THIS EVIDENCE
18  OUT THERE AND HAVING THE JURORS THEMSELVES QUESTION IN THE
19  GOVERNMENT'S CASE IS THIS PERSON SANE.  AND IT IS BECAUSE I
20  THINK THAT HIS CONDUCT ON JANUARY 11 IS INTERTWINED WITH HIS
21  MENTAL HISTORY.  AND SETTING ASIDE SOME TYPE OF INSANE DEFENSE
22  IS THAT THE GOVERNMENT MAY VERY WELL FIND THEMSELVES THOUGHT
23  TO POSTURE OF HAVING TO PUT ON SOME EVIDENCE IN ITS
24  CASE-IN-CHIEF THAT THIS PERSON, JUST BECAUSE OF THINGS THAT
25  THIS JURY HEARD, WAS CAPABLE OF FORMING THE PREMEDITATED

1  ATTEMPT TO KILL.  I THINK THAT'S ONE WAY THAT THE COURT SHOULD
2  LOOK AT THIS AS TO WHY IT IS POTENTIALLY RELEVANT.
3           SECONDLY, YOUR HONOR, OBVIOUSLY THE DEFENDANTS WILL
4  GET COPIES OF WHATEVER IS PRODUCED, AS THEY WILL WITH ALL THE
5  OTHER RECORDS THAT HAVE BEEN OBTAINED, SCHOOL RECORDS,
6  ACADEMIC RECORDS.  AND SO IT IS NOT AS IF THE DEFENSE IS GOING
7  TO BE PREJUDICED.  THE RECORDS WILL JUST BE AS HELPFUL TO THEM
8  AS IT MAY BE TO US.  THAT'S OBVIOUSLY NOT THE ANSWER TO THE
9  PRECISE ISSUE.
10          BUT I DON'T SEE BECAUSE OF THIS CONTEXT, THIS IS AN
11 ABUSE OF THE GRAND JURY PROCESS WHERE THE DEFENDANT'S MENTAL
12 STATE IS WRAPPED UP IN THE GOVERNMENT'S CASE-IN-CHIEF AND
13 THERE ARE DIFFERENT QUESTIONS WE MAY HAVE TO PUT ON BEFORE WE
14 EVEN GET TO THE DEFENSE CASE.
15          THE COURT:  WHY AREN'T YOU PROTECTED BY THE
16 PROVISIONS OF RULE 12.2?  IF THE DEFENDANT RAISES A STANDING
17 DEFENSE, HE IS REQUIRED TO GIVE NOTICE PRIOR TO TRIAL.  THAT
18 INVOKES THE RIGHT ON YOUR PART TO HAVE HIM EXAMINED AND TO --
19 PRESUMABLY TO AT THAT POINT ISSUE RULE 17(C) SUBPOENAS FOR
20 INFORMATION THAT MIGHT REBUT AN INSANITY DEFENSE BUT IT'S A
21 TIMING PROVISION THAT'S DOWN THE ROAD HERE.  IT'S NOT AT THIS
22 POINT.
23          MR. KLEINDIENST:  THAT IS THE PROBLEM, JUDGE,
24 PRACTICALLY SPEAKING.  THAT NOTICE MAY NOT BE FILED FOR MONTHS
25 AND MONTHS AND MONTHS.  AND WE HAVE TO OBVIOUSLY PREPARE OUR

1   CASE.
2            THE COURT:  NO, I UNDERSTAND THAT.  BUT WE ARE GOING
3   TO SET DATES ON WEDNESDAY.  I HAVE ASKED THE PARTIES TO GET
4   TOGETHER AND DISCUSS DATES.
5            RULE 12.2 PROVIDES THAT THE DEFENDANT MUST FILE THE
6   NOTICE AT THE TIME OF PRE-TRIAL MOTIONS.  SO YOU WOULD HAVE
7   PLENTY OF TIME, I THINK, TO SUBPOENA RELEVANT RECORDS TO HAVE
8   THEM REVIEWED BY ANY PSYCHIATRIST OR MENTAL HEALTH EXPERT THAT
9   YOU WOULD RETAIN AND TO HAVE AN IDEA OF HOW YOU ARE GOING TO
10  CONFRONT THAT.  BUT IT'S TRIGGERED BY THE DEFENDANT FILING
11  THAT NOTICE.
12           TO THE EXTENT YOU ARE SAYING, "WELL, NOTWITHSTANDING
13  A TENDER OF AN INSANITY DEFENSE, I STILL HAVE TO PROVE UP THAT
14  HE PREMEDITATED THAT HE HAD THE SPECIFIC INTENT," I AM JUST AT
15  A LOSS TO SEE HOW RECORDS THAT SPAN 22 YEARS AND GO BACK TO
16  1988 WOULD BE RELEVANT TO THAT.
17           I CAN CONCEIVE IF THE SUBPOENA WERE NARROWLY DRAWN
18  AND SAID "I WANT ANY EVIDENCE THAT YOU HAVE IN HIS MEDICAL
19  RECORDS SHOWING CONGENITAL BRAIN DEFECT OR BRAIN TRAUMA
20  ARISING OUT OF AN INJURY," THEN I COULD SEE IT.  THEN I COULD
21  SEE YOU'D SAY, WELL, LOOK, HE HAS GOT THIS ORGANIC PROBLEM
22  THAT PREVENTS HIM FROM FORMING THESE, AND THE GRAND JURY WOULD
23  NEED TO KNOW ABOUT THAT.  AND THAT WOULD GO TO THE DECISION
24  WHETHER TO CHARGE HIM WITH FIRST DEGREE MURDER, FOR EXAMPLE,
25  OR ALLEGE THAT.  I GET THAT.  AND EVEN SOME TEMPORAL

| | |
|---|---|
| 1 | LIMITATION ON THE MEDICAL RECORDS OF HIS DOCTOR I WOULD |
| 2 | UNDERSTAND.  THE DEFENSE HAS SAID, WELL, I MENTIONED A MONTH. |
| 3 | I MENTIONED THAT, MR. CAHN, AS A MATTER OF ILLUSTRATION NOT |
| 4 | LIMITATION. |
| 5 | I WOULD THINK THE PERIOD WOULD BE LONGER THAN A |
| 6 | MONTH, BUT I DON'T THINK IT'S 22 YEARS.  SO THE ONLY THING |
| 7 | PRESENTED TO ME NOW IS A SUBPOENA THAT ASKS FOR MEDICAL |
| 8 | RECORDS GOING BACK 22 YEARS. |
| 9 | THE COURT FINDS UNDER THE STANDARD OF R ENTERPRISES |
| 10 | THAT THAT'S TOO BROAD.  AND HAVING GIVEN THE GOVERNMENT AN |
| 11 | OPPORTUNITY TO EXPLAIN AND PUT THIS IN CONTEXT FOR ME, I AM |
| 12 | STILL NOT PERSUADED THAT UNDER THE STANDARD THAT APPLIES HERE |
| 13 | THAT THERE IS A REASONABLE POSSIBILITY THAT THE MATERIAL |
| 14 | SOUGHT IN THAT SUBPOENA OR AT LEAST SOME OF IT, WILL PRODUCE |
| 15 | EVIDENCE RELEVANT TO THE GENERAL SUBJECT MATTER OF THE GRAND |
| 16 | JURY'S INVESTIGATION.  SO I GRANT THE MOTION TO QUASH THE |
| 17 | SUBPOENA. |
| 18 | I DON'T WANT TO INTERFERE WITH THE INVESTIGATION. |
| 19 | THAT'S NOT MY ROLE.  I DON'T HAVE ANY COMMISSION TO DO THAT, |
| 20 | MR. KLEINDIENST.  IF YOU WANTED TO DRAW THE SUBPOENA MORE |
| 21 | NARROWLY SO IT WAS REASONABLE AND IT WENT TO THE ISSUES THAT |
| 22 | YOU SAY YOU ARE CONCERNED WITH, THEN I WOULD RECONSIDER.  BUT |
| 23 | IN THIS FORM, THE SUBPOENA IS TOO BROAD AND THE COURT ORDERS |
| 24 | IT QUASHED. |
| 25 | MR. KLEINDIENST:  I APPRECIATE THAT, YOUR HONOR.  I |

1  UNDERSTAND YOUR POSITION.  WITH THAT IN MIND, WE WOULD THEN
2  ISSUE A NEW SUBPOENA TODAY THAT WOULD HAVE LIMITATIONS THAT I
3  UNDERSTAND THAT YOU CAN LIVE WITH.  AND THAT'S WHAT WE WOULD
4  INTEND TO DO.
5              THE COURT:  I THINK IT WOULD BE RELEVANT TO THE
6  SPECIAL MENS REA HERE FOR YOU TO INQUIRE FROM A PHYSICIAN WHO
7  HAS TREATED MR. LOUGHNER WHETHER THERE IS ANY ORGANIC BRAIN
8  DAMAGE, ANY EVIDENCE OF THAT IN THE MEDICAL FILE.  I THINK
9  THAT'S FINE.  THAT DOES GO TO THE MENS REA.
10             MR. KLEINDIENST:  OR FALLS TO THE HEAD IF HE HAD A
11 HEAD INJURY.
12             THE COURT:  YES, OR SOME KIND OF BRAIN INJURY.  SOME
13 KIND OF BRAIN INJURY THAT WOULD AFFECT THE COGNITIVE PROCESS.
14 IF YOU WANT TO DRAW THE SUBPOENA NARROWLY, THAT WOULD BE A
15 DIFFERENT STORY IN MY VIEW.
16             BUT AT THIS POINT IT IS LIKE THE PROVERBIAL FISHING
17 EXPEDITION.  I DON'T KNOW HOW BIG THIS FILE IS OR HOW SMALL IT
18 IS.  I JUST DON'T THINK THAT THERE IS A COMMISSION ON THE PART
19 OF THE UNITED STATES TO GO THROUGH THAT AT THIS POINT UNDER
20 THE AUSPICES OF SAYING "WE ARE GOING TO TRY THIS FELLOW FOR
21 FIRST DEGREE MURDERS THAT OCCURRED IN 2011."  SO THAT'S THE
22 PROBLEM I HAVE WITH IT.
23             MR. KLEINDIENST:  I UNDERSTAND.
24             THE COURT:  ANYTHING ELSE FROM THE DEFENSE?
25             MR. KLEINDIENST:  I THINK THAT IT WOULD BE OUR

```
 1    INTENTION FORTHWITH TO ISSUE A NEW ONE THAT IS TAILORED TO
 2    WHAT I UNDERSTAND THE COURT'S LIMITATIONS ARE.
 3              THE COURT:  OKAY.  WE ARE IN RECESS.
 4              MR. KLEINDIENST:  THANK YOU, YOUR HONOR.
 5              MR. CAHN:  THANK YOU, YOUR HONOR.
 6              THE COURT:  THIS RECORD IS ORDERED SEALED PURSUANT
 7    TO RULE 6(E).
 8              MR. CAHN:  WE ARE ALLOWED TO ORDER A COPY?
 9              THE COURT:  YES, YOU ARE.
10                            --oOo--
11
12
13                   I HEREBY CERTIFY THAT THE TESTIMONY
14                   ADDUCED IN THE FOREGOING MATTER IS
15                   A TRUE RECORD OF SAID PROCEEDINGS.
16
17                   S/EVA OEMICK              3-17-2011
18                   EVA OEMICK                DATE
19                   OFFICIAL COURT REPORTER
20
21
22
23
24
25
```