Judy Clarke
Clarke and Rice, APC
1010 2nd Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

Mark Fleming
Law Office of Mark Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 794-0220

Reuben Camper Cahn
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Defendant Jared Lee Loughner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 11-0187-TUC LAB |
| Plaintiff, | |
| v. | **DEFENDANT'S EMERGENCY MOTION FOR STAY OF ORDER RE: COMPETENCY EXAM AND MOTION FOR RECONSIDERATION OF ORDER** |
| JARED LEE LOUGHNER, | |
| Defendant. | |

**MOTION**

Defendant Jared Loughner, by and through his counsel, hereby moves for an emergency stay of the Court's order of March 21, 2011, pending reconsideration by this Court and/or pending review by the Ninth Circuit Court of Appeals. (Doc. 165; "Order re: Competency Exam").

The motion for stay asks that the Court suspend enforcement of the Order to avoid irreparable injury to Mr. Loughner's statutory and constitutional rights pending appellate review. The motion for reconsideration asks the Court to reconsider the following provisions of its

order[1]: (1) the unprecedented restrictions imposed on an independent examination conducted by the defense, which include mandatory videotaping and provision of the videotapes to the prosecution; (2) the required provision, without any restrictions on use, of the videotape of the court-ordered competency examination to the government; and (3) the transfer of Mr. Loughner to a BOP facility in Springfield, Missouri, for the competency examination despite the likely interference with his "free access" to counsel under 18 U.S.C. § 3005 and the statutory directive in 18 U.S.C. § 4247(b) that the examination occur in the suitable facility "closest" to the Court, which would be USP Tucson.

The motions are based on the instant document, the materials already on file, including the Defendant's Requests Re: Competency Procedures, and any and all relevant materials that might come to the Court's attention at the time of the hearing of this matter.

## **PROCEDURAL BACKGROUND**

At issue here are the commitment order and procedures designated by the Court for holding a competency examination. The competency evaluation was ordered by the Court on March 9, 2011, granting the government's motion for a competency hearing under 18 U.S.C. § 4241, over defense objections to the competency proceedings as premature and as potentially unduly interfering with the development of the attorney-client relationship. The Court indicated that, prior to the competency hearing, it would exercise its authority under §§ 4241(b) and 4247(b) to order a psychiatric or psychological examination of Mr. Loughner. The logistics of the examination, however, were not resolved on March 9.

There was some discussion at the March 9 hearing about the location for the examination. The Court indicated its concern that the disruption to Mr. Loughner and his ability to consult with counsel be kept to a minimum. The government indicated that a psychiatric visit likely could be conducted at USP Tucson:

THE COURT:             Can it be done here?

---

[1] The defense reasserts its requests for other procedural protections set forth in its prior filing proposing logistics for a competency hearing.

| | | |
|---|---|---|
| 1 | MR. KLEINDIENST: | In Tucson? |
| 2 | THE COURT: | Can it be done here so that he is not disrupted from his cell and that counsel can continue to see him? |
| 3 | | |
| 4 | MR. KLEINDIENST: | B.O.P. here doesn't have that capacity, but I suspect we can get a psychiatrist to examine him, judge. |
| 5 | THE COURT: | I don't know what the practice is here, but in the district where I am from, we frequently bring in an outside psychiatrist on competency issues who go to the jail where the defendant is and do a clinical examination, and then do a report and report back to the Court. I think that would be less disruptive than pulling him away. |
| 6 | | |
| 7 | | |

Transcript of March 9, 2011 hearing at 34-35. The government also conceded that the examination could be conducted in San Diego, which "would be more conducive where his lawyers reside than even Tucson and doing it through a local doctor." Transcript at 35; see also Transcript at 42 ("Mr. Kleindienst: . . . . San Diego has told us that they are more than happy to do it. We are not talking about Minnesota or North Carolina. We are talking about San Diego.")

Subsequently, following the Court's direction, the parties met, attempting to reach agreement, but ultimately submitted separate proposals for the logistics and procedures to apply to the § 4241(b) examination. The defense urged that Mr. Loughner be allowed to remain at USP Tucson, and that an independent examiner be appointed by the Court to conduct the evaluation. (Doc. 159 at 2-4.) The government, in an about-face, urged that Mr. Loughner be transferred to Springfield, Missouri, because in its view the Medical Referral Center there is the "most suitable facility" for BOP examiners to conduct an evaluation. (Doc. 156 at 2.)

The defense also requested:

- Fifth Amendment protection of any statements obtained during the examination, pursuant to Estelle v. Smith, 451 U.S. 454 (1981);
- advance notice of any proposed testing instruments; and
- a videotape recording of court-appointed experts that would be provided only to defense counsel. (Doc. 159 at 4-6.)

These requests were made in order to safeguard Mr. Loughner's constitutional rights—which could otherwise be irretrievably lost were this case to proceed beyond competency proceedings.

On March 21, the Court rejected the defense requests and issued an order providing the government with much more than even it had asked for. In an unprecedented infringement on the Fifth and Sixth Amendment rights of an individual charged with capital crimes, the Court ordered that (1) videotaped recordings of the compelled psychiatric examination of Jared Loughner *be provided to government counsel*; (2) any defense psychiatric examination conducted to determine competency to stand trial be conducted at the Springfield BOP facility, be videotaped and that those *videotapes be provided to government counsel*; and (3) that Mr. Loughner be committed to MRC Springfield, Missouri, so that the Department of Justice, through its Bureau of Prisons, rather than an independent, court-appointed examiner. *See* Order Re: Competency Exam, filed March 21, 2001, pp. 5-6, ¶4, and 6.[2] The court rejected the defense request for an order protecting the use of the examination, and limiting access to video recordings to defense counsel. *See* Order at p. 5 ("The numerous other requests made on behalf of the defendant concerning the manner and protocol for conducting the competency examination have been considered by the Court and found wanting, and are DENIED.") The court's order, providing unlimited prosecutorial access to the examinations by the defense as well as by the BOP of this seriously mentally ill young man and imposing unprecedented limitations on the work of the defense, violates the Fifth and Sixth Amendments.

### THE COURT SHOULD GRANT A STAY PENDING RECONSIDERATION AND/OR APPELLATE REVIEW.

The defense now seeks a stay of the Court's March 21 order pending reconsideration of its order and/or appellate review. Such a stay is necessary to preserve the status quo and prevent irreparable harm to Mr. Loughner. The defense interests at stake include the ability to maintain the attorney-client relationship and ensure access to counsel, the privilege against compelled self-incrimination, and the right to maintain the confidentiality of defense work-product (which would normally protect an independent defense competency examination). These interests

---

[2] The court also apparently directed the defense evaluator to provide a written report, lodged with the court by May 11, 2011.

4

would be irreparably harmed if the order is allowed to be implemented. Specifically, Mr. Loughner would be transferred 1,500 miles away from his attorneys to be subjected to competency evaluations conducted in an unlawful manner, and confidential material to which the government has no right would be revealed to the prosecution.[3] These are bells that cannot be unrung. Preservation of the status quo, moreover, would be achieved by a stay.

## **THE COURT SHOULD RECONSIDER ITS COMPETENCY EXAM ORDER**

The March 21 order should be reconsidered. Three aspects are particularly inappropriate: (1) the directions that any defense psychiatric examination be conducted at MRC Springfield, be videotaped, and that *videotapes of the defense examination be provided to government counsel*; (2) that videotaped recordings of the compelled court-ordered psychiatric examination of Jared Loughner *be provided to government counsel* without limitation on its use or any opportunity by defense counsel to seek redactions or otherwise avoid unfair prejudice; and (3) that Mr. Loughner be committed to MRC Springfield and that he be examined by individuals employed by the Bureau of Prisons rather than an independent, court-appointed evaluator.

### **A. Restrictions on the Work of the Defense**

First, the Court should revisit its decision to impose unprecedented limitations on defense investigation and work product. The court directed that any defense evaluation for current competency take place under the same conditions as the court-compelled evaluation, and directed that any such evaluation be videotaped, and the recording provided to government counsel. The order provides:

> Defense counsel may retain an independent medical expert to conduct a separate mental competency examination of the defendant. If an independent examination of the defendant is performed, it shall be conducted and completed at the Springfield MRC by no later than April 29, 2011. Any independent competency examination of the defendant shall be conducted in full compliance with the required protocols set forth in sections (3) [limiting the scope of the examination to competency to stand trial] and (4) of this order [requiring all formal clinical interviews to be video recorded and "copies of the video recordings shall be provided promptly to both counsel"] . . . .

---

[3] The defense arguments are presented in greater detail below.

5

Order at 5-6.

The defense is unaware of any precedent for such an extraordinary intrusion into defense work product. The conditions imposed plainly violate the Fifth and Sixth Amendments, and also impermissibly intrude into the most basic interaction between defense counsel and their client. This Court is without authority to direct how the defense conducts its investigation or force upon it any particular strategy—let alone force the defense to record its investigation and to provide an exact record of that investigation to the prosecution. Yet the Court's order does just that. It forces the defense to make an impossible and unconstitutional choice: either relinquish the Sixth Amendment right to conduct an independent, unfettered examination into the question of the defendant's competency to stand trial, or choose to conduct the examination knowing that it would automatically be provided to the government and likely used in an effort to secure a sentence of death.[4]

Counsel are unaware of any other case in which a federal, or state, court has ordered the defense to videotape its own evaluation of a capital defendant or any court imposed requirement that the work product of the defense be so openly provided to those who seek to prosecute, convict, and sentence an individual to death. That the government did not itself ask for such restrictions demonstrates how beyond the pale they are. The Court should reconsider these provisions. Specifically, the court should direct staff at any examination facility to permit reasonable access by counsel, and experts retained by the defense to proceed without such conditions, and to keep under seal the identity of defense experts who have contact with the

---

[4] Counsel realizes, of course, that the Government may not directly use the defendant's statements from a competency evaluation to prove his guilt, or in its sentencing case in chief. However, given the very high likelihood that Mr. Loughner's mental condition will be a central issue in any trial (or in any capital sentencing hearing that might follow) it is highly likely that statements and conclusions derived from his competency determination will find their way into the process by which his guilt or innocence and his punishment are determined. *See Buchanan v. Kentucky*, 483 U.S. 402 (1987). For this reason, it is essential that the Court not require this gravely mentally ill man to become "the deluded instrument" of his own conviction and execution. *Estelle v. Smith*, *supra*, 451 U.S. at 463 (quoting *Culombe v. Connecticut*, 367 U.S. 568, 581 (1961)).

defendant, as well as other logistical facts related to the evaluation process, such as dates, times, location, and nature of the assessment. *See Ex Parte, Sealed Order*, January 14, 2011.

**B.     Protection of Statements and Materials**

Second, the Court should revise its order to prohibit disclosure of videotapes of the court-ordered examination to the government, or, in the alternative, place use restrictions on the tapes should they be disclosed to the government.

As noted in the defendant's Request Re: Competency Procedures, *see* DE 159, filed March 16, 2011, the competency evaluation and hearing have been ordered over defense objection and are thus compelled. Thus, adverse use of statements made by Mr. Loughner during that examination in his prosecution – including his responses to test questions – would violate the Fifth Amendment. *See Estelle v. Smith*, 451 U.S. 454 (1981) (prosecution use at capital sentencing hearing of statements obtained during compelled competency examination violates Fifth Amendment.). However, to be clear on the limitations of the use of the evaluation, we requested that the Court enter an order directing that any and all statements, and fruits of statements, made by Mr. Loughner during this court ordered competency evaluation be protected from use during any proceedings against Mr. Loughner. *See Estelle*, at 469 ("If, upon being adequately warned, respondent had indicated that he would not answer [the doctor's] questions, the validly ordered competency examination nevertheless could have proceeded upon the condition that the results would be applied solely for that purpose.").

Furthermore, because of the potential significance of information gathered to date by defense counsel, we sought protection of the use of that information or materials before providing it to a court appointed evaluator. The court has denied this request as well. Defense counsel cannot be put in the position of assisting in an evaluation in which communications and other work product are not protected from access by the government.

Accordingly, counsel again request that (1) all statements and fruits of statements made by Mr. Loughner during the course of the competency evaluation procedures be protected from future use against Mr. Loughner; and (2) all information and materials provided by defense

7

counsel to the evaluator remain privileged and confidential and that the examiner's report be disclosed first to the defense and court only, so that counsel may propose those redactions necessary to protect Mr. Loughner's Fifth and Sixth Amendment rights and matters of attorney client privilege.[5]

In order to safeguard Mr. Loughner's Sixth Amendment rights, we renew our requests that provision be made for observation by defense counsel of the examination by live video feed,[6] that the examination be videotaped, that the videotape be secured, and be disclosed only to defense counsel.

Videotaping is for the <u>protection</u> of the defendant faced with a compelled psychiatric evaluation in a criminal case. It is not a tool for use by the government in seeking a capital conviction and sentence of death. The ABA Standards governing mental health issues in criminal cases make this clear:

> All court-ordered evaluations of defendant initiated by the prosecution should be recorded . . . if possible, on videotape, and a copy of the recording should be provided promptly *to the defense attorney. The defense may use* the recording for any evidentiary purpose permitted by the jurisdiction. If the defense intends to use the recording at trial, it should notify the court. Upon receiving notice, the court should promptly provide to the prosecution a copy of the recording. Upon defense motion, the court may enter a protective order redacting portions of the recording before it is forwarded to the prosecution.

<u>ABA Standards for Criminal Justice: Mental Health</u>, Standard 7-3.6(d), at 100 (1986). What the ABA standards recognize is that the competency proceedings exist for the protection of the defendant—not for the prosecution to gather information out of the defendant's own mouth,

---

[5] The court's order did not address the use of FCI Phoenix and USP Tucson records (which are at issue in a motion currently pending before the Court). It is again requested that these materials also be protected from further use in proceedings against Mr. Loughner.

[6] Live video feed strikes the right balance between protecting the right to counsel's presence at the evaluation while permitting the evaluation to proceed without undue interference. See <u>ABA Standards for Criminal Justice: Mental Health</u>, Standard 7-3.6(c)(i) (1986) ("When the scope of the evaluation is limited to defendant's present mental competency, the defense attorney is entitled to be present at the evaluation but may actively participate only if requested to do so by the evaluator."); <u>see also</u> <u>id.</u> at 106 (commentary to paragraph (c)).

deposition-style, to use in advocating for a conviction or sentence of death. As the standards provide, only the defense should receive a copy of the examination videotape; the government should receive a redacted version *only* "[i]f the defense intends to use the recording at trial" and when the defense provides such notice to the court. See also id. at Standard 7-3.6(c)(iii) ("The prosecutor may not be present at any mental evaluation of the defendant."). The commentary explains that:

> The sixth amendment right to adequate representation by an attorney is protected under the standard by the requirement that all court-ordered evaluations initiated by the prosecution be recorded, preferably through videotaping, and by the further requirement that a copy of the recording be supplied to defense counsel.

Id. at 107 (commentary to paragraph (c)).

**C.  Location of the Examination**

Finally, the Court should reconsider its decision to order Mr. Loughner's commitment to Springfield, Missouri for the § 4241(b) examination. The transfer is inappropriate under the plain text of § 4247(b), and also unduly infringes on the right of a capital defendant to access to counsel under 18 U.S.C. § 3005.

The Court's discretion to order Mr. Loughner's transfer for a competency examination is controlled by the plain language of 18 U.S.C. § 4247(b). That section permits placement in government custody, but requires the following location:

> Unless impracticable, the psychiatric or psychological examination shall be conducted in *the suitable facility closest to the court*.

18 U.S.C. § 4247(b) (emphasis added). In other words, the Court must designate *the* suitable facility *closest* to it—which, in this case, is USP Tucson. The statutory language is mandatory; the examination "*shall* be conducted" in that facility. The only way the Court can reject the closest facility, USP Tucson, is by finding it to be unsuitable or impracticable. It has done neither here, nor would such findings be justified. The government has never argued either point; it has claimed only that MRC Springfield is the "most" suitable facility—not that USP Tucson is *un*suitable. Indeed, the government conceded at the March 9 hearing that USP Tucson

9

likely is "suitable" and that an exam there is likely "practicable": " . . . . I suspect we can get a psychiatrist to examine him, Judge." Transcript at 35. The government has also conceded that MCC San Diego is a suitable facility and that evaluation there is practicable. *Id.*

Neither do the declarations submitted by the government alter the analysis. The Lewis declaration states that USP Tucson, "as a high security facility, presents an extraordinary, atypical, and inappropriate location for a competency study." The reason for this, according to Lewis, is because the "mission" of USP Tucson is "inconsistent with a competency study, when another BOP facility is more suited." Lewis also states that the USP's restrictions "*could* prove disruptive" and that its "resources would be strained." Doc . 156-1 at 1 (emphasis added). These concerns, however, say only that there exist more convenient places for the examination—not that USP Tuscon is not suitable.

The Faerstein declaration is no different. It "recommend[s]" another facility on the ground that a Federal Medical Center would be "more experienced and better equipped"—not because it cannot be done at USP Tucson. Faerstein certainly does not assert that competency examinations may *only* be validly conducted at FMCs; as he admits, he has himself conducted examinations at the Los Angeles pretrial detention facility. Doc. 156-2 at 1-2. In fact, as Faerstein explains it, there is no reason to believe that USP Tucson would be inadequate in this case:

> The evaluation of competency usually consists of a forensic psychiatric interview to assess whether the defendant has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and whether he has a rational as well as a factual understanding of the proceedings against him. *In most cases, the interview alone is sufficient to reach a credible opinion.*

Doc. 156-2 at 2 (emphasis added). Although Faerstein goes on to describe a minority of cases where more might be needed, there is no indication that this case falls within that small subset where "the defendant may be uncooperative" or feign "mutism." Faerstein concedes: "I do not know whether this is such a case." *Id.* Neither Faerstein nor the government has provided any evidence to show any such impediments to an evaluation are likely to arise.

Additionally, although both the Lewis and Faerstein declarations opine that the "conditions" of the FMC are optimal for evaluation, they fail to explain how an evaluation in a hospital-like setting—with its significantly increased psychiatric and other support features—is apt to give a more accurate assessment of Mr. Loughner's competency to stand trial than one conducted under the exact circumstances he would endure during trial—confinement at USP Tucson, the FCI Tucson (which houses pretrial inmates, or another pretrial facility in Tucson or elsewhere in the Southwest region.

This simply does not meet the statutory standard. Without an "unsuitability" finding, the Court lacks the authority to designate anything other than the "closest" facility, USP Tucson. See 18 U.S.C. § 4247(b). Moreover, even if Tucson is deemed unsuitable, the Court would have to make a finding that other closer facilities are unsuitable, or evaluation there is impracticable, before it could lawfully designate a facility located in Missouri.

Additionally, the Court's order infringes on Mr. Loughner's right under 18 U.S.C. § 3005, which requires that counsel appointed in a capital case "shall have free access to the accused at all reasonable hours." This entitlement to "free access" in capital cases is as old as the nation, having been enacted in 1790 by the First Congress--the body that also framed the Bill of Rights-- and may fairly be regarded as a fundamental attribute of the right to counsel in the federal courts. Confinement in Tucson satisfies that venerable standard; confinement in Springfield, Missouri, does not. Counsel, though located in San Diego rather than Tucson, are within an easy one-and-a-half hour flight from Tucson, and can visit Mr. Loughner within the course of a day. Springfield, Missouri, by contrast, is 1,500 miles and two time zones away. Counsel contacted MRC Springfield and was informed that visiting hours are limited to Friday through Monday, between 8 A.M. to 3 P.M. Moreover, defense counsel have been advised by counsel in another federal capital case where the defendant is housed at MRC Springfield of additional extraordinary visiting limitations.[7] Title 18 U.S.C. § 3005, enacted by our very first Congress,

---

[7] Counsel were advised that, at the Springfield facility, face-to-face, contact visits are denied, and counsel must meet, interview, and observe the defendant behind a glass window with

11

ensures that, in a capital case, counsel "shall have free access to the accused at all reasonable hours." Conditions at MRC Springfield do not meet § 3005's standard, which applies "*at all reasonable hours*"—not just during periods of time when no competency hearing is pending.[8]

## Conclusion

For reasons stated at the hearing on March 9, 2011, and those set forth in the March 16, 2011 defense filing regarding competency procedures, we again request that this court direct that the compelled psychiatric examination of Mr. Loughner occur at the USP Tucson facility where he is currently located, and under the conditions sought by defense counsel. Barring that, the court should, at the very least (1) strike the requirement that a videorecording be made of all defense examinations; (2) order protection of all statements, and fruits of the statements made by Mr. Loughner, or alternatively that defense counsel be present during all contacts by court designated evaluators; (3) order any recordings of the court-ordered evaluation be made available only to defense counsel, or that no recording be made at all, (4) that the defense have reasonable access during Mr. Loughner's commitment, and (5) that the work and identity of defense experts be kept under seal and not provided to government counsel.

The defense requests a hearing on whether USP Tucson satisfies the "suitable" and not "impracticable" prongs of § 4247, as well as on the question of visiting restrictions at MRC Springfield.

---

a limited field of vision. All verbal communication is through a wall telephone that operates poorly and impedes group discussions and spontaneous conversation. Partitioned visiting rooms do not allow counsel to interact with the client during their review of video and audio tapes, written reports, photographs, and demonstrative evidence.

[8] The defense requests a hearing at which the Court can consider evidence whether USP Tucson is a suitable facility and whether an evaluation there is practicable.

Finally, the defense also requests that the Court stay the imposition of the March 21 order pending reconsideration pursuant to this motion and/or pending appellate review.

Respectfully submitted,

DATED: March 22, 2011

*/s/ Judy Clarke*

JUDY CLARKE
MARK FLEMING
REUBEN CAMPER CAHN
Attorneys for Jared Lee Loughner

Copies of the foregoing served electronically to:
Wallace H. Kleindienst, Beverly K. Anderson
Christina M. Cabanillas, Mary Sue Feldmeier,
Dominic Lanza