DENNIS K. BURKE
United States Attorney
District of Arizona
WALLACE H. KLEINDIENST
BEVERLY K. ANDERSON
CHRISTINA M. CABANILLAS
MARY SUE FELDMEIER
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress St., Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Wallace.Kleindienst@usdoj.gov
Bev.Anderson@usdoj.gov
Christina.Cabanillas@usdoj.gov
Mary.Sue.Feldmeier@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, ) | NO. CR 11-0187-TUC-LAB |
| ) | |
| Plaintiff, ) | **GOVERNMENT'S RESPONSE TO THE "DEFENDANT'S EMERGENCY MOTION TO STAY OF ORDER RE: COMPETENCY EXAM AND MOTION FOR RECONSIDERATION OF ORDER** |
| v. ) | |
| Jared Lee Loughner, ) | |
| Defendant. ) | |

Now comes the United States of America, by its attorneys undersigned, and hereby responds to the defendant's Motion for Reconsider and Motion for Stay of this Court's Competency Order, for the reasons set forth below.

**Facts:**

Last night, the defense filed a motion to reconsider this Court's order and a request to stay the imposition of that order pending resolution of the motion to reconsider. (CR 168.) For the reasons set forth below, the government respectfully asks this Court to deny the motion for stay. The government also asks this Court to deny the defendant's motion to reconsider, with the exception of modifying its order to preclude videotaping of any of the competency evaluations, as the defendant now suggests. (CR 168 at 12.) Contrary to the defendant's suggestion (CR 168 at 12 n. 8), no further hearing is needed.

**Law/Argument**[1]

The defendant is not entitled to stay this Court's order. He has offered no basis in law for his request. To prevail on a request for stay pending appeal, for example, courts consider several factors, including the likelihood of success on the merits, irreparable injury absent a stay, and where the public interest lies. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The defendant cannot establish that a stay is warranted, particularly because he cannot show irreparable injury and a likelihood of success on the merits with his motion to reconsider.

<u>First</u>, after specifically requesting videotaping of the competency evaluation (CR 159 at 5-6), the defendant now has buyer's remorse about this request. In granting the defendant's videotaping request, this Court quite logically ruled that *all* evaluations be videotaped (both the BOP evaluation and any independent evaluator's examination), and that copies of the videotapes be provided to the defense and the government. The defense now claims that this Court erred by ordering videotaping of their expert's evaluation, rather than just the BOP evaluation, and by ordering that the government could receive a copy of any videotapes. (CR 168 at 5-7, 8-9.) The defendant appears to propose as an alternative solution that this Court should order no recording at all. (CR 168 at 12) (asking this Court to "order any recordings of the court-ordered evaluation be made available only to defense counsel, *or that no recording be made at all*") (emphasis added). The government agrees that this would be well within the Court's discretion to order no recording of the competency evaluations.

Indeed, the out-of-circuit cases upon which the defendant relied, *United States v. Johnson,* 362 F.Supp.2d 1043, 1085-91 (N.D. Iowa 2005), and *United States v. Fell,* 372 F.Supp.2d 753, 761 (D. Vt. 2005), did not concern videotaping of competency evaluations.

---

[1] The government hereby advises this Court that, based on consultation with the U.S. Marshal, the defendant was transported to MRC Springfield on this date and is currently at that location.

(CR 159 at 5.) Instead, they dealt with videotaping of the government's psychiatric testing of the defendants under Rule 12.2 (c)(1)(B) after the defendants noticed their intent to present expert evidence of a mental disease or defect for capital sentencing purposes under Rule 12.2(a) or (b). *See Johnson*, 362 F.Supp.2d at 1076; *Fell*, 372 F.Supp.2d at 758, 760. Thus, those decisions were crafted in a different context, for a different purpose, and based on different authority. The defendant has provided no such notice. Indeed, the videotaping order in those cases was predicated on Rule 12.2 (c)(1)(B), which provides that if the defendant provides notice under Rule 12.2(b), then the court "may, upon the government's motion, order the defendant to be examined *under procedures ordered by the court*." Fed. R. Crim. P. 12.2 (c)(1)(B) (emphasis added); *see also Johnson*, 362 F.Supp.2d at 1082 (making same observation); *Fell*, 372 F.Supp.2d at 761 (same). In the circumstances above, a defendant's Rule 12.2 notice triggered the mandatory evaluation of the defendant by BOP on the government's motion under Rule 12.2 (c)(1)(B), so it was conducted because the defendant noticed the issue for trial or sentencing.

By contrast, the defendant here has provided no such notice under Rule 12.2(a) or (b), so this is not an evaluation that is being conducted for trial or sentencing purposes pursuant to Rule 12.2(c)(1)(B) or 18 U.S.C. § 4242. Rather, as this Court's order states, this case concerns a *pre-trial evaluation to determine his competency to stand trial*. (CR 165 at 5, ¶ 3.) *See* Rule 12.2(c)(1)(A) and 18 U.S.C. §§ 4241 and 4247 (b) and (c). The defendant has not cited, and the government has not found, any authority (much less controlling authority) requiring live feed or videotaping of a *competency* evaluation. *See also United States v. Byers*, 740 F.2d 1104, 1115, 1120 (D.C. Cir. 1984) (Scalia for plurality) (no requirement under Fifth or Sixth Amendments that psychiatric exam be recorded). The absence of case law in the defendant's motion to reconsider also speaks volumes about the lack of support in his original request. Moreover, the non-controlling ABA Standards he cites do not appear to concern competency evaluations, but situations where the defense has noticed a mental

health defense. *Compare* Part III of ABA Standards pertaining to mental health issues (discussing mental evaluations for mental condition at time of alleged crime), with Part IV (dealing with competence to stand trial). This Court properly denied the defendant's request for a live video feed of the competency evaluation, and he is simply not entitled to videotaping of his competency evaluation.[2]

Thus, in light of all of the objections the defendant is now making to the videotaping portion of this Court's order – i.e. that it is "beyond the pale" (CR 168 at 6) and that a variety of ills will result if the government receives copies of any videotapes (*id*. at 7-8) – the government believes that this Court's order should be modified to state that "no recording be made at all" of any of the competency evaluations, as the defendant alternatively suggests. (CR 168 at 12.)[3]

---

[2] The defendant's original motion stated that the "competency evaluation is a critical proceeding *at which* the defendant has the right to counsel." (CR 159 at 5) (citing *Estelle*, 451 U.S. at 469-71) (emphasis added). However, *Estelle* did not state that the defendant has a right to have his attorney present *at the evaluation*. Indeed, it actually disavowed that suggestion. *Estelle*, 451 U.S. at 471 n. 14 ("In fact, the Court of Appeals recognized that 'an attorney present during the psychiatric interview could contribute little and might seriously disrupt the proceedings.'") *See also United States v. Mattson*, 469 F.2d 1234 (9th Cir. 1972) ("an accused, ordered to have an examination by a court appointed expert, is not entitled to have present his own expert or his own counsel"). (*See also* CR 168 at 8 n. 6) (defendant cites ABA Standard that contradicts the above authority by stating that defense counsel has a right to be present at the evaluation). A competency evaluation also includes periods of observation in addition to the clinical meetings.

[3] If this Court does not modify its order to preclude recording, then the order should remain unchanged. It would be unfair if only the BOP evaluations were recorded while the independent examiner's evaluations were not. The government is also entitled to copies of videotapes because the defendant's statements are admissible in his competency hearing, *Nguyen, supra*, although it plans to use a taint attorney to review any tapes in advance. To avoid any possible issues that the defendant has articulated, however, and because he has not shown he is entitled to videotape pre-trial competency evaluations, this Court can simply order that no recording will occur.

Second, relying on *Estelle v. Smith*, 451 U.S. 454 (1981), the defendant renews his request that this Court "enter an order directing that any and all statements, made by Mr. Loughner during this court ordered competency evaluation be protected from use during *any proceedings* against Mr. Loughner." (CR 168 at 7; CR 159 at 4) (emphasis added). However, this request is overbroad and was properly denied by this Court.

For example, the defendant's statements are admissible in competency proceedings and may be admissible in other proceedings under Rule 12.2(c)(4). The defendant's statements are admissible in his competency proceedings because "*Estelle*'s holding simply does not extend to statements used solely at such a [competency] hearing." *Nguyen v. Garcia*, 477 F.3d 716, 726 (9th Cir. 2007); *id.* at n. 12 (quoting *Estelle*: "Indeed, if the application of [the psychiatrist's] findings had been confined to [a competency hearing], no Fifth Amendment issue would have arisen.").[4]

Moreover, the defendant's statements may be admissible in other proceedings under Rule 12.2(c)(4) if the defendant were to provide certain notice. Rule 12.2(c)(1) provides that a court "may order the defendant to submit to a competency examination under 18 U.S.C. § 4241." Rule 12.2 (c)(4) provides limited circumstances where the defendant's statements during a competency evaluation can be admitted into evidence, "whether conducted with or without the defendant's consent," specifically "on an issue regarding mental condition on

---

[4] "Unlike guilt or punishment, incompetency can rarely be determined without the participation of the person claimed to be incompetent." *Nguyen,* 477 F.3d at 726. This Court properly ordered the defendant to participate in the evaluation to determine his competency, because *Estelle* is inapplicable and his responses are admissible in a competency hearing. *Nguyen,* 477 F.3d at 725 ("Not only are competency hearings entirely distinct in purpose from the guilt phase of trial, but competency hearings do not invoke the same concerns of self-incrimination – the right *Miranda* is designed to protect – that are relevant during the guilt and penalty phases of trial. The Fifth Amendment privilege against self-incrimination exists to prohibit the government from forcing the defendant to talk and then using the defendant's own statements to satisfy its burden of establishing guilt. These concerns have no place at a competency hearing.") (internal citations omitted).

which the defendant: (A) has introduced evidence of incompetency or evidence requiring notice under Rule 12.2(a) or (b)(1), or (B) has introduced expert evidence in a capital sentencing proceeding requiring notice under Rule 12.2 (b)(2)." Fed. R. Crim P. 12.2 (c)(4). Thus, under the Federal Rules of Criminal Procedure, the defendant's statements would be admissible in other proceedings besides competency hearings, even if the examination is conducted over his objection, if he later introduces evidence of insanity or expert evidence of a mental condition related to guilt or capital sentencing.[5] *See also* Fed. R. Crim. P. 12.2 (Advisory Committee Note to 2002 Amendments) (discussing *Estelle* and noting that "subsequent cases have indicated that the defendant waives the privilege [against self-incrimination] if the defendant introduces expert testimony on his or her mental condition") (citing *Powell v. Texas*, 492 U.S. 680, 683-84 (1989); *Buchanan v. Kentucky*, 483 U.S. 402, 421-24 (1987)); *id*. (defendant's statements may be used against him after he has introduced testimony on his mental condition). Thus, this Court properly denied the defendant's request to preclude use of his competency examination statements during "any proceedings" against him because his statements are, in fact, admissible in other proceedings, at a minimum, in a competency hearing, regardless of whether he consented to the competency evaluation. (CR 159 at 4.)

---

[5] In *Estelle,* the Supreme Court held that "[a] criminal defendant, who neither initiates a psychiatric evaluation *nor attempts to introduce any psychiatric evidence,* may not be compelled to respond to a psychiatrist if his statements can be used against him at a capital sentencing proceeding." 451 U.S. at 468 (emphasis added). Thus, if the defendant presents an insanity defense and introduces psychiatric testimony in support of that defense, his statements in the competency evaluation should be admissible. *See id.* at 465 (*Estelle* Court expressly stated that its holding would be different if the defendant had asserted an insanity defense and the government introduced a psychiatric examination to rebut the defendant's psychiatric evidence). *See also* Rule 12.2 (c)(4); *Leiva v. Cate*, 2009 WL 4885025 (9th Cir. 2009) (same) (unpublished).

Third, the defendant has failed to show that this Court's discretionary decision to have the defendant evaluated for competency at the BOP facility in Springfield constituted an abuse of discretion or clear error. *See, e.g.*, *United States v. Brown,* 770 F.2d 768 (9th Cir. 1985) (reviewing for abuse of discretion the district court's decision declining to order psychiatric examination of witnesses to determine competency); *United States v. Warren,* 984 F.2d 325, 328 (9th Cir.1993) (district court's decision whether to hold competency hearing reviewed for clear error). Rather, the Court's order determining that MRC Springfield was the "best place to conduct the examination" is fully supported by the record and applicable law. (CR 165 at 3; *see also* CR 156; Exh. 1 & 2.) This Court also correctly ordered that the examination be conducted by Springfield medical personnel (CR 165 at 2, 4-5; CR 156; Exh. 1 & 2), and is giving the defendant the opportunity to obtain an independent clinical evaluation, if the defense so requests, in light of the defendant's stated concern about the impartiality of BOP medical staff. (CR 165 at 4 & 6, ¶ 6.)[6]

The defendant argues that a "transfer [to Springfield] is inappropriate under the plain text of § 4247(b), and also unduly infringes on the right of a capital defendant to access to counsel under 18 U.S.C. § 3005." He is incorrect on both counts.

The defendant misreads 18 U.S.C. § 4247(b) and contends that unless this Court specifically finds USP-Tucson "unsuitable" or "impracticable," then this Court "lacks

---

[6] As this Court also accurately "emphasize[d]," there is no reason to believe the medical staff at the Springfield MRC cannot be impartial. (CR 165 at 4 n.1.) Indeed, they have a duty of impartiality. As the Second Circuit observed when the defense made similar claims: "It goes without saying, of course, that psychologists employed by the BOP, despite their affiliation with the Government, are bound by the same ethical and professional canons as their non-Government-affiliated colleagues." *United States v. Zhou*, 428 F.3d 361, 380 (2d Cir. 2005); *see also Kiltinivichious v. United States*, 2010 WL 3632204, at *8 (S.D.N.Y. 2010) ("The Court rejects . . . Petitioner's argument that [the competency] experts' opinions were improperly affected by bias given their affiliations with BOP.") (citing *Zhou*, 428 F.3d at 380.)

7

authority" to designate any other facility besides USP-Tucson. Unfortunately, the defendant fails to quote an important part of the provision at issue, which the government quoted in its pleading and this Court quoted in its order. (*See* CR 156 at 2-3; CR 165 at 2.) For purposes of an examination under § 4241, "the court may commit the defendant to be examined for a reasonable period . . . *to the custody of the Attorney General for placement in a suitable facility*." 18 U.S.C. § 4247(b) (emphasis added). The BOP has determined that MRC Springfield is the "suitable facility" that is "closest to the court" for this particular defendant's evaluation, and this Court has properly credited the opinion of Dr. Lewis, bolstered by that of Dr. Faerstein. (CR 165 at 2-4; CR 156, Exh. 1 and 2.) Contrary to the defendant's argument, there was sufficient information for this Court to conclude that USP-Tucson was not the suitable facility closest to the court, and that MRC Springfield was. (*See* CR 165 at 2-3; CR 156.)

The defendant also is incorrect that the order "infringes" on his right to have access to his attorney "at all reasonable hours" under 18 U.S.C. § 3005. (CR 168 at 11-12.) This Court did not err, much less clearly err, when it determined that "[d]efense counsel will be able to visit and consult with Mr. Loughner during his commitment to Springfield" (CR 165 at 4), a conclusion fully supported by the record (CR 156; Exh. 1), and that any temporary inconvenience to the defense team "is unavoidable in light of the need to reliably and definitively resolve the question of the defendant's competency." (CR 165 at 4.) Such an examination is warranted in "view of the nature and seriousness of the charges the defendant faces and questions that have arisen regarding his recent mental history . . ." (CR 165 at 3); Indeed, the defense notes that it can visit the defendant from 8:00 a.m. to 3:00 p.m. during

the weekdays, which is clearly sufficient to permit the defense to meet with him regularly and maintain their attorney-client relationship.[7]

      <u>Fourth</u>, defense counsel stated that it will provide the evaluators with information concerning whether the defendant can assist counsel in his defense, only if assured that such matters will not be disclosed to the government. (CR 159 at 5; CR 168 at 7.) It wants "all information and materials provided by defense counsel to the evaluator remain privileged and confidential and that the examiner's report be disclosed first to the defense and court only, so that counsel may propose those redactions necessary to protect [the defendant's] Fifth and Sixth Amendment rights and matters of attorney client privilege." (CR 159 at 5; CR 168 at 8.) It is the government's understanding from BOP that communications from defense counsel to the examiner are not ordinarily recited in the BOP competency evaluation report. However, out of an abundance of caution, the government does not object if this Court orders that any competency evaluations be provided only to the Court in the first instance, so this Court can verify that the report contains no specific privileged communications from defense counsel to the examiner, or if it does, to redact that information before providing the report to the government. (Thus, this Court's order at page 6, ¶ 7 could be modified to delete the phrase "and provided to counsel for both parties," and simply state: "A formal written report

---

[7] The defense has made certain assertions about the inconvenience of visiting the defendant at Springfield MRC. (CR 168 at 11 n. 7.) The government contacted the warden at Springfield MRC and he is willing to allow legal visits with the defendant and his defense team seven days a week, from 8:30 a.m. to 3:00 p.m. In addition, if an attorney requests a face-to-face meeting with his or her client, it is provided. There is a private room for this purpose. However, the warden reported that most attorneys choose to have the glass partition between themselves and their clients.

1  of the opinions and conclusions of the examiner(s), including the reasons for the opinions
2  and conclusions, shall be lodged with this Court by no later than May 11, 2011.")[8]
3      In short, the government respectfully asks this Court to deny the request for stay, and
4  deny the motion for reconsideration, with the exception of modifying the order to state that:
5  1) no videotaping of the competency evaluations will occur, and 2) that all competency
6  evaluation reports will be provided to the Court in the first instance.
7      Respectfully submitted this 23rd day of March, 2011.

DENNIS K. BURKE
United States Attorney
District of Arizona

*s/Beverly K. Anderson*

BEVERLY K. ANDERSON
Assistant U.S. Attorney

*s/Christina M. Cabanillas*

CHRISTINA M. CABANILLAS
Assistant U.S. Attorney

Copy of the foregoing served electronically
or by other means this 23rd day of March, 2011, to:

Judy C. Clarke, Esq.
Mark F. Fleming, Esq.
Reuben Camper Cahn, Esq.

---

[8] The defendant also asks this Court to rule that the identity of "defense experts who have contact with the defendant, as well as other logistical facts related to the evaluation..." be kept "under seal," referring to an ex parte sealed order. (CR 168 at 6-7.) Because this request appears to be based on an ex parte order, the government does not have the information to allow it to respond.