# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| United States of America, | CASE NO. 11cr0187 TUC LAB |
|---|---|
| Plaintiff, | **ORDER DENYING MOTION FOR STAY AND RECONSIDERATION** |
| vs. | |
| Jared Lee Loughner, | |
| Defendant. | |

The defense has filed an emergency motion asking the Court to reconsider its March 21, 2011 order directing that Mr. Loughner undergo a competency examination at a BOP facility in Springfield, Missouri. (Doc. No. 165.) It also asks for a stay of the order pending reconsideration, or appeal to the Ninth Circuit.[1] Both requests are **DENIED**.

The emergency motion takes issue with three aspects of the Court's original order: (1) that video recordings of the court-ordered competency examination should be provided to the Government, in the defense's words, "without any restriction on use"; (2) that video recordings of the defense's own, independent examination should be provided to the Government; and (3) that the competency examination should be conducted at a Bureau of Prisons "Medical

///

---

[1] The defense filed the motion at 6:54 p.m. on March 22. The Government informed the Court the next morning that it would be filing an opposition by 3:00 p.m. on March 23, which it did. One minute after the Government filed its opposition, and before the Court had the opportunity to consider the Government's response and finalize this Order, the defense filed a notice of appeal with the Ninth Circuit. The Court enters this Order, in part, to inform the Ninth Circuit's review.

Referral Center" in Springfield, Missouri.  The Court will address the defense's grievances in sequence.

## I.     Access to Video Recordings of the Court-Ordered Competency Examination

The Government never asked that the competency examination it requested be video recorded.  The *defense* made this request: "In order to safeguard Mr. Loughner's Sixth Amendment rights, as well as to create a full and reliable record of the basis of the evaluator's opinion, counsel requests that provision be made for observation by defense counsel of the examination by live video feed, *that the examination be videotaped, that the videotape be secured, and be disclosed only to defense counsel.*"  (Doc. No. 159 at 5 (emphasis added).) Given that the request to record the examination(s) was made by the defense, and accommodated by the Court, it is only equitable that the Government also have access to the video recordings.

Even though a competency hearing has a non-adversarial objective — the determination of whether the accused is presently competent to stand trial — 18 U.S.C. § 4247(d) contemplates that a hearing to determine competency may be adversarial. The parties have the right to know the opinions of the examiners and the basis for their opinions, to contest those opinions, to subpoena witnesses, and to present testimony and evidence in support of their respective positions.  The defendant, in particular, has the right to testify and to confront and cross-examine witnesses.  Despite the enumeration of these various adversarial rights in § 4247(d), the defense maintains the Court should prevent the prosecutors from knowing or understanding the reasons for the examiners' opinions by denying them access to the video recordings of the clinical interviews — very likely the primary source of information on which the examiners' opinions will be based.  In essence, the defense seeks one-sided access to what may be critical and potentially dispositive evidence on the issue of the defendant's  competency.  The effect of granting the defense request, of course, is to virtually obliterate as to one party all of the basic and fundamental rights inherent in the concept of a fair hearing: the right to be made aware of and have access to relevant evidence; the right to effective cross-examination; the right to present rebuttal

evidence; and the right to be heard in meaningful argument. Validating the defense request would sharply and unfairly tip the adversarial balance in this case, and there is no legal justification for it.

Additionally, the Court doesn't need to restrict the Government's use of the clinical interview recordings because the law already does. If the defendant is found competent to stand trial, 18 U.S.C. § 4241(f) forbids the use of that finding against him at trial. In the statute's words, such a finding "shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged." Moreover, Federal Rule of Criminal Procedure 12.2(c)(4) also provides that no statement made by the defendant in the course of a competency exam, and no other fruits of the statement, may be admitted into evidence against the defendant, unless he relies on an insanity defense at trial or introduces expert evidence regarding his mental state in a capital sentencing hearing. *See* Fed. R. Crim. P. 12(c)(4)(A)(B). In combination, these provisions protect the defendant from the adverse use of what he says to an examiner during a clinical interview.

As the defense notes, *Estelle v. Smith* prohibits the content of a competency examination from being used for a "much broader objective" than determining competency to stand trial, and explicitly cautions against uses that are "adverse" to the subject. 451 U.S. 464, 465 (1981). *Estelle* sustained Fifth and Sixth Amendment challenges to a psychiatrist's testimony in the sentencing phase of a capital case based on that psychiatrist's pre-trial examination of the defendant to determine competency. But *Estelle* explicitly said "no Fifth Amendment issue . . . arise[s]" if the examiner's function is limited to assessing a defendant's competency. *Id.* That is the precise and singular purpose of the examination the Court has authorized in this case.[2] There is no basis for invoking *Estelle* before a competency exam

---

[2] The existence of a Fifth Amendment privilege turns on "the nature of the statement . . . and the exposure which it invites." *In re Gault*, 387 U.S. 1, 49 (1967). The goal, of course, is to protect a person from incriminating himself in any pending or future criminal proceeding. *See Allen v. Illinois*, 478 U.S. 364, 368 (1986). While a determination of competency has implications for whether criminal proceedings may move forward, it serves only a limited and neutral purpose unconnected to the determination of guilt. *See United States v. Byers*, 740 F.2d 1104, 1119 (D.C. Cir. 1984) (competency examination is not an adversarial stage of criminal proceedings). Here, questions put

has even taken place, or for charging that the Court's March 21 order violates the defendant's constitutional rights.[3]

Finally, there is no room for doubt about the purpose of the examination of Mr. Loughner at this stage because the Court's order to the examiners was clear and explicit:

> The question at issue is whether the defendant is presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him, or to assist properly in his defense. The scope of the examination shall accordingly be limited to whether Mr. Loughner is **presently** competent to stand trial; the examination shall not focus on the defendant's sanity at the time of the alleged offense, nor shall the examination purposefully attempt to explore potential aggravating or mitigating sentencing factors in this case . . .

(Doc. No. 165 at 5.) At this point, the Court has no reason to doubt that its order will be followed, and that the examiners will focus only on the question of the defendant's **present competency**. The Court does not share the defense's apparent cynicism of the medical staff at the Springfield MRC, and at this point will defer to their professionalism and experience. *See United States v. Zhou*, 428 F.3d 361, 380 (2d Cir. 2005) ("It goes without saying, of course, that psychologists employed by the BOP, despite their affiliation with the Government, are bound by the same ethical and professional canons as their non-Government-affiliated colleagues.").

## II.   Defense Option for Independent Competency Examination

In its March 21, 2011 order, the Court exercised its discretion to allow for the defense to "retain an independent medical expert to conduct a separate mental competency

---

to the defendant and designed to elicit his present competency are unlikely to elicit incriminating responses or perhaps even be relevant to the issues at trial. In any event, the Constitution, § 4241(f), and Rule 12.2(c)(4) all protect the defendant against the adverse use of even inadvertent incriminations.

[3] The defense asks that "any and all statements, and fruits of statements, made by Mr. Loughner during this court-ordered competency evaluation be protected from use during any proceedings against Mr. Loughner." However, there is no indication the Government intends for the competency hearing to illuminate anything other than Mr. Loughner's present competency. Moreover, if any attempt is made to use Mr. Loughner's statements against him at trial in a manner the law forbids, Rule 12.2 gives the defense the right to object and to have the evidence (including evidence derivatively obtained) excluded. *See* Fed. R. Crim. P. 12.2(c)(4).

examination of the defendant."[4]  It also directed that any independent examination should be conducted in the same manner as the court-ordered examination — namely, that it should be recorded and that the video recordings should be provided to both parties. (Doc. No. 165 at 5–6.)  The defense asks the Court to reconsider this directive, which it labels an "unprecedented limitation on defense investigation and work product" and a plain violation of the Fifth and Sixth Amendments.  In fact, it is none of these.

*Estelle* forecloses the defense argument that a properly noticed and appropriately circumscribed competency examination violates the defendant's Fifth and Sixth Amendment rights.  Thus, the short answer to the defense's hyperbole that its own examination is "likely" to be used by the Government "to secure a sentence of death" is that the Constitution, § 4241(f), and Rule 12.2(c)(4) all forbid that.  *See Nguyen v. Garcia*, 477 F.3d 716, 726 (9th Cir. 2007) ("Not only are competency hearings entirely distinct in purpose from the guilt phase of trial, but competency hearings do not invoke the same concerns of self-incrimination . . . that are relevant during the guilt and penalty phases of trial.").  As to the further claim that the Court's order places "an unprecedented limitation of defense investigation and work product," that too is untrue.

Several points are important here.  First, it is altogether common for an examining psychiatrist or psychologist to prepare a report of his or her findings and provide copies to the Court and to both parties before the competency hearing.[5]  Permitting the parties to have access to the underlying data on which the report is based — including a video recording of the formal clinical interview — is consistent with that standard practice, in that it provides each side a meaningful opportunity to test the quality of the examination and to challenge the examiner's conclusions.  Second, it is worth reiterating that *defense counsel* requested a competency exam by an independent psychiatrist, and the Court's order accommodated that

---

[4] There is no automatic right to a competency examination by an independent examiner under § 4247(b). Rather, the Court has discretion to designate a separate exam.

[5] *See* § 4241(b) (authorizing report) and § 4247(c) (requiring that the report include, among other things, "a description of the psychiatric, psychological, and medical tests that were employed and their results" and "the examiner's findings").

request. But the defense is under no obligation to conduct a separate exam, nor to share its work product or to disclose its investigation to anyone. Third, if the defense decides to press forward with a separate examination, the Court's order is clear that counsel "may," but are not required to, "supply the examiner with relevant information in their possession informing the issue of the defendant's competency." (Doc. No. 165 at 6–7.) The same is true of the Court-ordered competency exam. This provision gives defense counsel complete discretion to determine what information to supply, and counsel are free to redact specific information or to speak in only general terms about their impressions of the defendant's competency. Keeping in mind the need to balance the fair trial rights of both sides, affording defense counsel this degree of latitude hardly hamstrings them. Under these conditions, the Court finds no justification for establishing different protocols for the court-ordered exam and any independent exam the defense may seek.

### III.     Examination Location and Protocol

The Court considered all of the defense's arguments against moving Mr. Loughner to Springfield, Missouri before issuing its March 21 order. Those arguments were not convincing then, and they are not convincing now. The Springfield MRC is *the* closest suitable facility for the kind of competency exam that is appropriate in this case. Mr. Loughner's placement there will not impair his right to counsel under 18 U.S.C. § 3005.

Finally, the defense renews its request for a live video feed of the court-ordered examination. If that were legally required, the defense would surely have cited some authority besides the ABA Standards for Criminal Justice on which it relies. *See Byers*, 740 F.2d at 1115 (no requirement under 5th or 6th Amendments that competency exams be video recorded). While the defendant certainly has the right to counsel during a competency *hearing*, *United States v. Johnson*, 376 Fed.Appx. 858, 860 (10th Cir. 2010), the defense offers no case authority for the proposition that this right extends to a competency *exam*. In fact, the case law cuts in the opposite direction. The Sixth Amendment right to counsel extends only to "critical stages" of a criminal proceeding. *United States v. Cronic*, 466 U.S. 648, 659 (1984). A competency exam may be critical in the generic sense of the word

because it is "important," but the exam itself is not a "critical stage" of proceedings under *Cronic*. *See United States v. Mattson*, 469 F.2d 1234, 1236 (9th Cir. 1972) (no right to have counsel present during competency exam). The Court of Appeals in *Estelle* even recognized that "an attorney present during the psychiatric interview could contribute little and might seriously disrupt the examination." *Smith v. Estelle*, 602 F.2d 694, 708 (5th Cir. 1979).

Here, the Court finds that requiring the BOP to arrange a live video feed of the clinical interviews is not legally mandated, and would impair the process of completing the competency examinations in an efficient and timely manner. At a minimum, it would necessitate BOP personnel attempting to coordinate the timing of the interviews with all counsel, which would impose an undue burden on the staff at the Springfield MRC. The Court finds that preserving the formal clinical interviews by requiring that they be video recorded and produced to counsel is sufficient to preserve the rights of all parties at this stage.

**IV. Conclusion**

For the above reasons, the defense's motion for reconsideration is **DENIED**. The examination of Mr. Loughner's competency to stand trial shall proceed in Springfield, Missouri as ordered by the Court on March 21.

**IT IS SO ORDERED.**

DATED this 24th day of March, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge