1
2
3
4
5
6

# UNITED STATES DISTRICT COURT

7

## DISTRICT OF ARIZONA

8

9   United States of America,

10                                    Plaintiff,

11          vs.

12   Jared Lee Loughner,

13                                    Defendant.

CASE NO. 11cr0187 TUC LAB

**ORDER RE: RELEASE OF BOP RECORDS**

14

15          Defendant Jared Lee Loughner filed a motion on March 2 asking the Court to bar the

16   Bureau of Prisons from releasing to the Government records and observations relating to

17   the defendant that he believes are non-discoverable, confidential, and privileged. (Doc. No.

18   122.[1])  He seeks "a protective order barring any BOP employee from disclosing non-public

19   information about him to any outside agency, including the FBI and United States Attorneys

20   Office, or any other person, with the exception of his counsel." (Mot. at 9.)  The Court was

21   prepared to rule on the motion at the hearing in Tucson on March 9, but allowed the

22   defendant additional time to file a reply to the Government's opposition.  The Court stressed,

23   however, the importance of resolving the issue before the upcoming competency hearing on

24   May 25.  (Doc. No. 163 at 52:23–24.)

25   / / /

26

_____

27          [1] The defendant first filed this motion, under seal, on January 31, 2011, and the Court
found no good cause for sealing it.  (Doc. No. 62.)  The motion was filed for a second time,
28   and again under seal, on February 17, 2011. (Doc. No. 106.)  It is the March 2, 2011 version
of the motion that is live, and that has been fully briefed.  (Doc. No. 122.)

1    The stated bases for the defendant's motion are the Fifth, Sixth, Eighth, and

2  Fourteenth Amendments to the Constitution, as well as Rule 16 of the Federal Rules of

3  Criminal Procedure.  The body of the motion isn't nearly so ambitious; the defendant offers

4  little argument or case support for any constitutional claims, and instead focuses mostly on

5  BOP's own confidentiality regulations and the psychotherapist-patient privilege.

6    The defendant first argues that BOP's Program Statement § 5840.04 prohibits the

7  release  of information regarding his behavior while in custody.  That argument is a miss.

8  Program Statement § 5840.04 "outline[s] procedures for staff recommendations and

9  correspondence to agencies and persons about Bureau inmates." (Mot., Ex. C.) It sets forth

10  procedures for BOP staff "when preparing inmate evaluations and/or letters of

11  recommendation to outside agencies and persons." (*Id.*)  It has nothing to do, in the Court's

12  judgment, with the right of the Government to receive information about the defendant from

13  BOP that it may use for law enforcement and prosecutorial purposes.  In fact, a separate

14  BOP Program Statement pertaining to "Release of Information," § 1351.05, explicitly

15  contemplates that records about an inmate may be made available for these purposes:

16         Staff may disclose information from a Bureau system of records
           only if one or more of the following criteria apply:
17
           (1) With the written consent of the individual to whom the record
18         pertains . . .

19         (2) To employees of the DOJ who have a need for the record in
           the performance of their duties . . .
20
           (4) For a routine use . . .
21
           Routine uses for Bureau systems of records may include the
22         following:

23         (a) To Federal, state, local and foreign law enforcement officials
           for law enforcement purposes such as investigations, possible
24         criminal prosecutions, civil court actions, or administrative and
           regulatory proceedings.
25

26  (Opp'n Br., Ex. 1.)  In any event, section 1351.05 specifically addresses the subject of the

27  dispute here, and, as such, controls over the more general language of § 5840.04.

28  / / /

1    Even assuming Program Statement § 5840.04 has the meaning the defendant
2    attributes to it, "the violation of a BOP Program Statement is not a violation of federal law.
3    Program Statements are 'internal agency guidelines [that] may be altered by the Bureau at
4    will' and that are not 'subject to the rigors of the Administrative Procedures Act, including
5    public notice and comment.'" *Thompson v. Smith*, 2008 WL 1734495 at *4 n.1 (E.D. Cal.
6    Apr. 11, 2008) (quoting *Jacks v. Crabtree*, 114 F.3d 983, 985 n.1 (9th Cir. 1997)).  The
7    defendant relies on *Wright v. Enomoto* for the opposite position, but that case involved a
8    liberty interest protected by due process — that of a prisoner to be housed in the general
9    prison population rather than a segregated, maximum security unit, unless a certain standard
10   is met — and is inapplicable here.  462 F.Supp. 397, 402–03 (N.D. Cal. 1976).  Program
11   Statement § 5840.04 simply does not prevent BOP from sharing its records of the defendant
12   with the Government.[2]

13   The defendant's next argument is that to the extent the BOP's records include reports
14   from psychiatrists or psychologists who have visited with him in custody, those reports are
15   protected from disclosure by the psychotherapist-patient privilege.   The Psychology
16   Services Manual observes that "there are no federal statutes specifically defining any
17   privileged relationship between an inmate and his or her therapist"; it further observes that
18   "federal courts have looked to common law and state statutes to define the degree of
19   confidentiality inherent in the therapist/patient relationship."  (Opp'n Br., Ex. 2.)  The
20   Government represents that two psychologists performed "intake assessments" of the
21   defendant — Dr. Pujol in Tucson and Dr. Park in Phoenix.  Both psychologists informed the
22   defendant that their conversation was *not* confidential, although Dr. Pujol waited until their
23   conversation was underway before doing so.

24   / / /

25

---

26       [2] The defendant also relies on Program Statement § 5310.12, which references a
27   Psychology Services Manual.  Here, again, the defendant points to no language in the
     Program Statement that prohibits disclosure of records for law enforcement purposes, and
     the Court refuses to read any such prohibition into it.  (Opp'n Br., Ex. 2.)  Moreover, this
28   assumes, again, that the Program Statement gives rise to positive rights that the defendant
     can assert, an assumption refuted by the case law.

In arguing against disclosure, the defendant relies on the Supreme Court's holding in *Jaffee v. Redmond* that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 15 (1996). This reliance on *Jaffee* is misplaced. First, unlike the conversations with BOP psychologists that took place here as part of an "intake assessment," the conversations at issue in *Jaffee* were presumptively confidential. Second, there was no doubt in *Jaffee* that the conversations took place in the course of diagnosis or treatment. The patient was a police officer who had sought counseling from a licensed clinical social worker after a traumatic incident in which she shot and killed a man; the family of the man had initiated a civil action against her and sought her counseling records.

Whether an interaction with a psychotherapist was "for the purpose of diagnosis or treatment" calls for a fact-intensive analysis, but the Ninth Circuit has held in at least one case that a defendant's confession to a prison counselor was not protected by the psychotherapist-patient privilege. *United States v. Romo*, 413 F.3d 1044 (9th Cir. 2005). Relevant factors "may include the historical nature of the relationship between the individual and his confidante; the patient's purpose in making the communication; the nature of the contact; the timing and location of the communication; objective data, such as medical records, which corroborate the counseling contact; and whether mental health services were provided or requested during the communication." *Id.* at 1047. Courts forced to determine whether the privilege applies must "pay special attention to the particulars of the meeting during which the allegedly privileged information was exchanged." *Id.* Applying and analyzing the relevant factors here, the Court concludes that the intake assessments with the defendant conducted by the two BOP psychologists, along with their continued monitoring of the defendant, were not intended for diagnosis or treatment, and that the psychotherapist-patient privilege articulated in *Jaffee* does not apply.

The defendant makes two more arguments that can be addressed in short order. The first is that Rule 12.2 of the Federal Rules of Criminal Procedure exclusively governs the

1    disclosure of mental health information in a criminal case.  It does nothing of the sort.  That

2    rule requires only that the defendant notify the Government if he intends to assert an insanity

3    defense or introduce expert evidence of a mental disease or defect at trial or during the

4    sentencing phase of a capital case, *and* turn over to the Government any reports that form

5    the basis of expert testimony that he will present during the sentencing phase of a capital

6    case.  It also allows for the Government to review the reports of a court-ordered mental

7    examination once a capital defendant confirms an intent to offer evidence of his mental

8    condition during sentencing proceedings.  Fed. R. Crim. P. 12.2(c)(2)-(3).  Rule 12.2 says

9    nothing, however, about the Government's right of access to the BOP records now at issue,

10   and the Court rejects the argument that because Rule 12.2 regulates disclosure of *some*

11   mental state evidence, it regulates disclosure of *all* such evidence.

12          The second argument is that the defendant's statements in the BOP records were

13   obtained in violation of his Fifth and Sixth Amendment rights: "The statements attributed to

14   Mr. Loughner in the BOP material reviewed thus far, appear to have been made after the

15   appointment of counsel, and without a re-admonishment of *Miranda* warnings."  (Mot. at 8.)

16   This argument is also a non-starter.  *Miranda* applies to custodial interrogations — those

17   situations in which questioning of a criminal defendant is designed or reasonably likely to

18   elicit an incriminating response.  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

19   Questioning that is "normally attendant to . . . custody" is not covered by *Miranda* and does

20   not implicate the defendant's Fifth and Sixth Amendment rights.  *Kemp v. Ryan*, No. 08-

21   99030, 2011 WL 1585598 at *9 (9th Cir. Apr. 28, 2011).  The BOP records contain routine,

22   day-to-day statements of the defendant of the type normally attendant to being in custody.

23   There is no indication that the defendant has been "interrogated" in the *Miranda* sense, nor

24   any hint that jailers have attempted to illegally communicate with him on matters of

25   substance behind his lawyers' backs.  *Edwards v. Arizona*, which the defendant cites, is

26   simply not on point.  451 U.S. 477 (1981).

27          A final point on the subject of privilege.  The Court approves the Government's use

28   of a filter team to screen BOP's records for possible privilege issues.  The Court has

reviewed the records submitted *in camera*, and finds that even those flagged by the filter team as "Potentially Privileged" are not, in fact, privileged. They consist of psychological records and reports that were generated pursuant to routine custodial protocols, as well as observations of the defendant's behavior and demeanor in custody that are not private, and as to which there is no reasonable expectation of privacy. *Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("The recognition of privacy rights for prisoners in their individual cells simply cannot be reconciled with the concept of incarceration and the needs and objectives of penal institutions."). The Court finds that neither the psychotherapist-patient privilege nor the Fifth and Sixth Amendments bar the disclosure of this information to the Government. The Court makes this finding without prejudice, however. If or when the Government attempts to introduce information from the BOP records at trial, the defendant may renew his objection. The defendant's motion to prevent release of BOP records to the Government is otherwise **DENIED**. The Government's filter team may provide the Government with all of the materials that were submitted for *in camera* review.

**IT IS SO ORDERED.**

DATED this 4th day of May, 2011.

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge