1   STEPTOE & JOHNSON LLP
    201 East Washington Street, Suite 1600
2   Phoenix, Arizona 85004-2382
    Telephone: (602) 257-5200
3   Facsimile:  (602) 257-5299

4   David J. Bodney (06065)
    dbodney@steptoe.com
5   Peter S. Kozinets (019856)
    pkozinets@steptoe.com
6
    Attorneys for The Washington Post,
7   Phoenix Newspapers, Inc. and KPNX Broadcasting Co.

8              UNITED STATES DISTRICT COURT

9                  DISTRICT OF ARIZONA

10  UNITED STATES OF AMERICA,        )   No. 11cr0187 TUC LAB
                                     )
11              Plaintiff,           )   **REPLY IN SUPPORT OF MOTION
                                     )   OF THE WASHINGTON POST,
12      vs.                          )   PHOENIX NEWSPAPERS, INC.
                                     )   AND KPNX BROADCASTING CO.
13  JARED LEE LOUGHNER,              )   TO INTERVENE FOR THE
                                     )   LIMITED PURPOSE OF MOVING
14              Defendant.           )   TO MODIFY THE MARCH 23,
                                     )   2011 ORDER GRANTING
15                                   )   PROTECTIVE ORDER**
                                     )
16                                   )   **Hearing:
                                     )   May 25, 2011, 9:30 a.m.**
17  _____ )

18

19

20

21

22

23

24

25

26

27

28

1    <u>Preliminary Statement</u>

2           In its Motion for Protective Order, the Government admitted that releasing

3    certain public records from the files of the Pima County Sheriff's Office ("PCSO") "will

4    not trigger" fair-trial or privacy concerns, and agreed to review PCSO's files "to

5    determine which materials may be excluded from" the Protective Order.  [ECF No. 157

6    at 10-11]  The Government now asserts, however, that *all* of PCSO's records related to

7    the Loughner investigation (the "Records") must be concealed from the public – even

8    though the Government has failed to demonstrate any need for *wholesale* closure of

9    these public records.  The Government's 180-degree reversal contravenes settled law

10   that forbids blanket concealment of such public records.  It also improperly prohibits a

11   county law enforcement agency from complying with state law governing public access

12   to PCSO's records.  To restore public access to Records reflecting how *PCSO* responded

13   to the January 8 shootings – a matter of acute public interest, involving an investigation

14   that has concluded – the Protective Order should be modified to allow PCSO, with input

15   from the Government as needed, to review, redact and release as many of the Records as

16   possible, as the law requires.

17          Incredibly, the Government also asserts that the law bars intervention by The

18   Washington Post ("The Post"), Phoenix Newspapers, Inc. ("PNI") and KPNX

19   Broadcasting Co. ("KPNX") (collectively, "Intervenors") to seek modification of the

20   Protective Order, even though the Order enjoins PCSO from releasing the Records to

21   these Intervenors.  Indeed, it was The Post's public records request that prompted the

22   Government to request a sealing order.  In a Kafkaesque turn, the Government argues

23   that Intervenors should instead file a FOIA request, but simultaneously alleges that the

24   Protective Order eliminates any right of access under FOIA.  In essence, the

25   Government is asserting that Intervenors' rights under two statutes – the Arizona Public

26   Records Law and federal FOIA – can be wholly displaced by a court order that the

27   Intervenors have no standing to challenge.  The Government's position represents an

28

unprecedented attempt to conceal basic information about PCSO's official activities. For the reasons set forth below, Intervenors' Motion should be granted.

<u>Argument</u>

## I.     INTERVENTION IS APPROPRIATE AND LEGALLY AUTHORIZED.

The Government asserts that Intervenors have no right to petition this Court for relief from the Protective Order. [ECF No. 201 at 2-7] In other words, the Government asks the Court to find that Intervenors have no effective means of seeking legal recourse from the Order. [*Id*. at 10] For several reasons, that is not, and cannot be, the law – and Intervenors clearly have the right to seek leave to intervene for the limited purposes set forth in their Motion.

First, the Government wrongly argues that Intervenors have a legal basis for intervention only if they seek "*sealed court records*." [ECF No. 201 at 5] To the contrary, courts routinely permit intervention in criminal cases for other purposes, such as to challenge gag orders entered pursuant to rules analogous to LRCrim 57.2(f). *See, e.g.*, *United States v. Wecht*, 484 F.3d 194, 199, 202 (3d Cir. 2007) (media-intervenors challenge to local rule that acted as gag order on counsel); *United States v. Davis*, 902 F. Supp. 98, 101 (E.D. La. 1995) (same). Intervention is permitted in criminal cases for still other reasons. *See, e.g.*, *United States v. Blagojevich*, 612 F.3d 558, 561 (7th Cir. 2010) (intervention seeking access to juror names); *United States v. White*, 2004 WL 2399731, *6 (E.D. Pa. Sept. 22, 2004) (intervention challenging order prohibiting the defense from disclosing discovery documents); *United States v. Cleveland*, 1997 WL 412466, *2 (E.D. La. July 22, 1997) (intervention regarding juror interview restrictions).

Second, the Government's "best" case on intervention, *United States v. Finneran*, 05-CR-10140 (D. Mass. Sept. 6, 2005), is not only unpersuasive (and unpublished), but wrong. [ECF No. 201 at 5] *Finneran* asserts that "a third party has no right . . . to intervene in a federal criminal case" [*id*. Ex. 1 at 1], but even the Government's own brief recognizes the inaccuracy of this statement. [*Id*. at 4] Importantly, unlike *Finneran*, Intervenors do not seek grand jury materials. The Government likewise

admits that *Bond v. Utreras* "is not on all-fours." [*Id.* at 7 n.3] Unlike here, the journalist in *Bond* never requested access under state law, and nothing "prohibit[ed] the City from disclosing any of its police department records to the public upon request." 585 F.3d 1061, 1076 n.10 (7th Cir. 2009).

Third, the Government's insistence that Intervenors forego intervention and seek a writ of mandamus is also misplaced. In the interests of judicial economy and efficiency, Intervenors should be able to seek reconsideration of an Order that was entered before The Post could respond to the Government's Motion. *See, e.g.*, *In re The Express-News Corp.*, 695 F.2d 807, 808 (5th Cir. 1982) (newspaper moved to vacate order limiting post-trial juror interviews before seeking writ).

## II.    FOR AMPLE GOOD CAUSE, THE ORDER SHOULD BE MODIFIED.

For several reasons, Intervenors respectfully submit that the Protective Order is overbroad and should be modified. First, the Protective Order prohibits *all* public access to public records of how *PCSO* responded to Loughner's conduct, and was entered before anyone reviewed the Records to determine whether their release would pose a substantial risk of harm to Defendant's rights or cause an unwarranted invasion of personal privacy. [ECF No. 169 at 5; *see also* ECF No. 157 at 10-11] Indeed, the Order was entered despite the Government's *admission* that disclosing certain Records "will *not* trigger" fair-trial and privacy concerns. [ECF No. 157 at 10-11 (emphasis added)] Accordingly, the blanket order sweeps far more broadly than necessary to avert any alleged harm to fair-trial or privacy rights, and is *not* necessary "to safeguard the integrity of" this case. [*Cf.* ECF No. 201 at 9]

Second, the Order's broad scope is contrary to state and federal open records laws that should inform the Court's exercise of discretion. As the Third Circuit held in *Pansy v. Borough of Stroudsberg*, where the information sought is subject to federal or state public records laws, "a *strong presumption* exists *against* granting or maintaining an order of confidentiality whose scope would prevent disclosure of that information. [T]his strong presumption tilts the scales *heavily against* entering or maintaining an

order of confidentiality." 23 F.3d 772, 791 (3d Cir. 1994) (emphasis added). Similarly, in *City of Hartford v. Chase*, which the Government cites [ECF No. 201 at 9], the Second Circuit recognized that a federal court may not seal otherwise open government records "without *a compelling reason*" and without "*careful* scrutiny and *particularized* scrutiny." 942 F.2d 130, 135-36 (2d Cir. 1991) (emphasis added).

Third, these presumptions are fully consistent with the Arizona Public Records Law and the federal Freedom of Information Act – which both prohibit *blanket* closures of public records. The Arizona Public Records Law, for example, creates a strong presumptive right of access to public records, which can be overcome only if the Government "specifically demonstrate[s] how producing the documents would violate rights of privacy or confidentiality, or would be 'detrimental to the best interests of the state.'" *Cox Ariz. Publ'ns, Inc. v. Collins*, 175 Ariz. 11, 14, 852 P.2d 1194, 1198 (1993). FOIA likewise creates a broad presumption in favor of disclosure, and commands that the agency may redact only those portions that must be withheld and *shall* release the remainder. 5 U.S.C. § 552(b).

Here, the Government has not conducted its promised review of the Records for redaction and disclosure, let alone provided any specific, concrete facts sufficient to support withholding them. Nor are the Government's assertions of harm tethered to any particular Records. [*Cf.* ECF No. 157 at 6-8] The Government even acknowledges that many Records, including CAD reports and property release forms, do *not* raise fair trial or privacy concerns. [*Id.* at 11] Moreover, unlike in *Cox*, The Post's request does not involve an *ongoing* investigation. The investigation is over, as the Court has already found. [ECF No. 150 at 3]. The Government cannot justify wholesale closure.

Intervenors respectfully submit that the Protective Order similarly lacks specific findings regarding how public access to the Records would "pose[ ] a substantial threat" to Defendant's fair trial rights [ECF No. 169 at 4], especially given that (a) trial is not expected for many months, and (b) the Court has ample tools to screen jurors for possible prejudice. [*See* ECF No. 150 at 13; ECF No. 179 at 11-12]

Fourth, *McVeigh* does not require a contrary result. The order in that case was directed at counsel who had made extrajudicial statements, and did not purport to bar the release of local law enforcement records. It was limited, moreover, to "the release of information . . . [where] there is a reasonable likelihood that such disclosure will interfere with a fair trial of the pending charges or otherwise prejudice the due administration of justice." 931 F. Supp. 756, 760 (D. Colo. 1996). The Protective Order here goes far beyond of the scope of that order. In addition, *McVeigh* does not analyze the impact of state or federal public records statutes.

Finally, the Government's suggestions that The Post's request was an attempted "end-run" around FOIA, or that Intervenors attempted to persuade the Government to violate the Protective Order, lack merit. Until the Court entered the Protective Order, the requested Records were freely available under the Arizona Public Records Law, subject to PCSO's duty to review and redact them to the extent justified by state law. After the Court entered the Order, a wide array of Arizona public records were enjoined from public view, which prompted The Post to ask the Government if it would stipulate to review, redact and release the Records, as the Government suggested in its Motion. That invitation was *not* a request to violate a court order.

The Government's Response – both on the issue of intervention, and on the merits – suggests a strong desire to sideline the press and forestall public access to basic public records regarding how PCSO responded to one of the worst acts of public violence in Arizona history. The Records sought are presumptively open to public inspection and copying under settled Arizona law, *Cox*, 175 Ariz. at 14, 852 P.2d at 1198, and the Government has failed to demonstrate, under state *or* federal law, that total, ongoing censorship of PCSO's investigative file – in a case involving a closed investigation – is justified.

## Conclusion

For the foregoing reasons, Intervenors' Application should be granted, and the Court should enter the Proposed Order submitted with the Application.

1        RESPECTFULLY SUBMITTED this 10th day of May, 2011.

2                    STEPTOE & JOHNSON LLP

3

4                     /s/ David J. Bodney
                     David J. Bodney

5                    Peter S. Kozinets
                     Collier Center

6                    201 East Washington Street, Suite 1600
                     Phoenix, Arizona 85004

7                    Attorneys for The Washington Post,
                     Phoenix Newspapers, Inc. and KPNX

8                    Broadcasting Co.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CERTIFICATE OF SERVICE

1

2          I hereby certify that on May 10, 2011, I caused the attached document to be

3   electronically transmitted to the Clerk's Office using the CM/ECF System for filing and

4   transmittal of a Notice of Electronic Filing to the following CM/ECF Registrants:

5                    Wallace H. Kleindienst
                     Wallace.Kleindienst@usdoj.gov
6                    Beverly K. Anderson
                     Bev.Anderson@usdoj.gov
7                    Christina M. Cabanillas
                     Christina.Cabanillas@usdoj.gov
8                    Mary Sue Feldmeier
                     Mary.Sue.Feldmeier@usdoj.gov
9
                     Dominic Lanza
10                   Dominic.Lanza@usdoj.gov

11                   Attorneys for Plaintiff

12                   Judy C. Clarke
                     judyclarke@jcsrlaw.net
13                   Reuben Camper Cahn
                     Reuben_Cahn@fd.org
14                   Mark Francis Fleming
                     mfflaw@cox.net
15
                     Attorneys for Defendant
16

17         I hereby certify that on May 10, 2011, I caused the attached document to be

18  mailed to the following:

19                   The Honorable Larry Alan Burns
                     United States District Court
20                   Southern District of California
                     940 Front Street, Suite 2190
21                   San Diego, CA 92101

22

23
                              /s/ Monica Medlin
24                            Legal Secretary

25

26

27

28

                                      - 7 -