DENNIS K. BURKE
United States Attorney
District of Arizona
WALLACE H. KLEINDIENST
BEVERLY K. ANDERSON
CHRISTINA M. CABANILLAS
MARY SUE FELDMEIER
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress St., Suite 4800
Tucson, Arizona 85701
Telephone:  (520) 620-7300
Wallace.Kleindienst@usdoj.gov
Christina.Cabanillas@usdoj.gov
Bev.Anderson@usdoj.gov
Mary.Sue.Feldmeier@usdoj.gov
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

United States of America,

Plaintiff,

v.

Jared Lee Loughner,

Defendant.

CR 11-0187-TUC-LAB

**GOVERNMENT'S RESPONSE TO DEFENDANT'S EMERGENCY MOTION TO IMMEDIATELY ENJOIN FORCIBLE MEDICATION**

Now comes the United States of America, by and through its undersigned counsel, and hereby opposes the Defendant's Emergency Motion to Immediately Enjoin Forcible Medication, for the reasons set forth in the accompanying Memorandum of Points and Authorities.

Respectfully submitted this 28th day of June, 2011.

DENNIS K. BURKE

United States Attorney
District of Arizona

*s/Wallace H. Kleindienst*

WALLACE H. KLEINDIENST
Assistant U.S. Attorney

*s/Christina M. Cabanillas*

CHRISTINA M. CABANILLAS
Assistant U.S. Attorney

1    **FACTS:**

2        On May 25, 2011, after receiving the competency reports of Bureau of Prisons (BOP)

3    psychologist Dr. Pietz and court-appointed psychiatrist Dr. Carroll, and after conducting a

4    hearing, this Court determined that the defendant was currently incompetent to stand trial and

5    ordered the defendant committed to BOP custody at FMC-Springfield, pursuant to 18 U.S.C.

6    § 4241(d).  (CR 221.)

7        The defendant later filed a motion seeking notice, and a supplemental request after the

8    initial motion was denied, which in part asked this Court to require BOP to give the defense

9    advance notice before conducting an administrative proceeding under 28 C.F.R. § 549.43,

10   if the defendant did not consent to medication. (CR 222, 227, 232.)  The government filed

11   a response.  (CR 235.)  On June 17, 2011, this Court denied the defense's supplemental

12   motion.  (CR 236.)

13       On June 14, 2011, after the defendant had declined to take medication, the Bureau of

14   Prisons conducted an administrative hearing pursuant to 28 C.F.R. § 549.43 and *Washington*

15   *v. Harper*, 494 U.S. 210 (1990), to determine whether the defendant should be involuntarily

16   medicated as a danger.  28 C.F.R. § 549.43 (a)(5).  (Exhibit C.)  The defendant was given

17   notice of this hearing, and on June 13, 2011, the day before the hearing, his staff

18   representative, Mr. Getchell, met with the defendant and explained the reason for the

19   involuntary medication review hearing, explained his rights, and stated he would answer any

20   questions the defendant may have about the process.   (Govt's Exhibit 1, pp. 8, 13). [1/]   As

21   explained later in this response, the defendant was afforded all of his procedural rights under

22   28 C.F.R. § 549.43.

23       In the June 14, 2011 Involuntary Medication Report concerning the *Harper* hearing, Dr.

24   Tomelleri, the psychiatrist presiding at the hearing, wrote that on March 28, 2011, while

25   being  interviewed by Dr. Pietz, the defendant suddenly became enraged.  He said "Fuck

27       [1/]  The government has submitted this exhibit under seal with this Court.

you," threw a plastic chair twice towards Dr. Pietz, wet a roll of toilet paper attempting to throw it at the camera, and again threw the chair twice.  The chair hit the grill between the defendant and Dr. Pietz.  In addition, on April 4, 2011, the defendant spat on his attorney, lunged at her, and had to be restrained by staff.  (Exhibit C; Gov't's Exhibit 1, p. 10.)  He also threw chairs in his cell after being readmitted on May 28, 2011.  (Exhibit C; Gov't's Exhibit 1, p. 10.) [2/]

The report also noted that the defendant had been diagnosed as a schizophrenic by Dr. Pietz and Dr. Carroll, and he had declined to take medication, even after being advised that it would be expected to produce a significant improvement in his condition.  He was afforded the opportunity to be present at his hearing.  When he would not participate in the hearing and instead barricaded himself, lying down behind his bed, Dr. Pietz, Dr. Serrazin and Mr. Getchell, his staff representative, repeatedly encouraged him to participate in the hearing.  (Exhibit C; Gov't's Exhibit 1, pp. 10-11.)

The psychiatrist's findings at the hearing included that treatment with psychotropic medication is universally accepted as the choice of treatment for people with the defendant's mental illness.  It noted that other measures, such as psychotherapy, are not practicable and do not address the defendant's fundamental problem.  He also noted that minor tranquilizers are useful in reducing agitation, but have no direct effect on the mental disease, and seclusion and restraints are merely temporary protective measures with no direct effect on mental disease.  (Exhibit C; Gov't's Exhibit 1, p. 11.)

The psychiatrist determined that "involuntary medication is approved as in the patient's best medical interest" and "as a result of a mental disease or defect, and within the correctional setting, . . . [t]he patient is dangerous to others by actively engaging, or is likely

---

[2/]  The defendant was speaking with Dr. Brandt on June 6, 2011, when the defendant "quickly appeared angry," stood up and "threw his chair full force against the back wall."  On June 8, 2011, Dr. Pietz states that the defendant threw his chair when they were speaking, and correctional staff reported to her that his conduct has been "escalating."  (Gov't's Exhibit 1, pp. 15 and 16.)  Since the time of the *Harper* hearing, the defendant was witnessed throwing his chair around his cell the weekend of June 24, 25, and 26, 2011.  (Gov't's Exhibit 1, p. 17.)

to engage, in conduct which is either intended or reasonably likely to cause physical harm to another . . ..."  (Exhibit C; Govt's Exhibit 1, p. 9 )  The defendant was informed that "on the basis of a diagnosis of mental illness and of actions on his part [showing] dangerousness to others within the correctional setting," the psychiatrist would "authorize treatment with psychotropic medication on an involuntary basis."  (Exhibit C; Govt's Exhibit 1, p. 11.)

The defendant was also advised that if he disagreed with this decision, he could appeal to the Associate Warden of Health Services within 24 hours of the decision.  (Exhibit C; Govt's Exhibit 1, p. 11.)  The defendant submitted a written appeal, which contained some profanities. (Govt's Exhibit 1, p. 5.)  The Associate Warden of Health Services addressed the appeal, restating evidence of the defendant's dangerousness and his mental condition. In his "Due Process Hearing Response," the Associate Warden found that, based on independent evidence and examination, involuntary medication was justified because it is in the defendant's "medical interest" and because "[w]ithout psychiatric medication, [he is] dangerous to others. . . ."  The Associate Warden upheld the hearing psychiatrist's findings. (Exhibit E; Govt's Exhibit 1, pp. 3-4.)

The defendant has now filed an emergency motion asking this Court to enjoin FMC-Springfield from involuntarily medicating the defendant in the wake of its administrative determination under *Harper* that the defendant is dangerous.  That motion should be denied.

**LAW/ARGUMENT:**

**I.**

**JUDICIAL APPROVAL IS NOT REQUIRED BEFORE THE BUREAU OF PRISONS MAY INVOLUNTARILY MEDICATE THE DEFENDANT BASED ON DANGEROUSNESS UNDER *HARPER*.**

The defendant's motion asks this Court to enjoin BOP from involuntarily medicating him based on BOP's administrative determination under *Harper* that he is dangerous.  He claims that judicial approval is required before a prison can medicate an inmate for this reason. (Motion, pp. 12-13.)  The defendant is incorrect.

4

As a preliminary matter, the defendant is challenging an administrative *Harper* order. This is *not* a situation where the defendant has been ordered by this Court to be forcibly medicated to restore competency under *Sell v. United States*, 539 U.S. 166 (2003), notwithstanding the defendant's persistent attempts to graft *Sell* requirements onto the separate and distinct *Harper* administrative requirements. (*See, e.g.*, Motion, pp. 5-9, 12-13.)

As the government stated in an earlier filing, if a defendant refuses medication but is determined by BOP to be dangerous under *Harper*, he can be involuntarily medicated for that separate administrative reason. (CR 235.) The Ninth Circuit has noted:

> In *Harper,* the Supreme Court recognized that an individual has a significant liberty interest under the Due Process Clause of the Fourteenth Amendment in avoiding the unwanted administration of antipsychotic drugs. *Harper,* 494 U.S. at 221-22, 110 S.Ct. 1028. The Court concluded, however, that a state's interest in administering medication to a dangerous inmate is legitimate and important, *id.* at 225-26, 110 S.Ct. 1028, and held that the Due Process Clause allows a state "to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227, 110 S.Ct. 1028.

*United States v. Hernandez-Vasquez*, 513 F.3d 908, 912 (9th Cir. 2008). It also noted that "the Supreme Court stressed that a *Sell* inquiry is independent of the procedure that allows involuntary medication of dangerous inmates under *Harper*" and "an involuntary medication order based on dangerousness is preferable to consideration of an order intended to render a defendant competent for trial." *Id.* at 913 ("A court need not consider whether to allow forced medication [to render a defendant competent for trial], if forced medication is warranted for a *different* purpose, such as the purposes set out in *Harper* related to the individual's dangerousness . . ."). *See also United States v. Rivera-Guerrero*, 426 F.3d 1130, 1137 (9th Cir. 2005) (defendant may be involuntarily medicated for *Harper* dangerousness, which is separate determination than involuntary medication under *Sell*). The Ninth Circuit noted that these "*Harper*-type grounds," are typically treated "as a civil matter." *Hernandez-Vasquez*, 513 F.3d at 913-14, quoting *Sell*, 539 U.S. at 181-83. Thus, *Sell* forced medication orders by a judge are different from *Harper* administrative orders, and a defendant may be medicated for *Harper* reasons, completely independent of *Sell*'s

requirements, even if he is incidentally restored to competency from medication administered on *Harper* grounds. **3/**

The defendant wrongly claims that he cannot be forcibly medicated under *Harper* "[a]bsent a judicial determination" and "hearing" at which he would be "represented by counsel." (Motion, p. 12.)  Indeed, *Harper* itself rejects this argument.  In addition to holding that, as a matter of substantive due process, the prison may "treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest," *id.* at 227, the Court also held that, as a matter of procedural due process, the procedural protections afforded by the Washington regulations satisfied the requirements of the Due Process Clause.  *Id.* at 228-36. In particular, the Court held that it was permissible for prison officials to order involuntary medication under the regulations without judicial involvement. Like the defendant here argues, the Washington Supreme Court held that "a full judicial hearing, with the inmate being represented by counsel, was required by the Due Process Clause before the State could administer antipsychotic drugs to him against his will." *Harper*, 494 U.S. at 228.  The Supreme Court disagreed, holding that "the Washington Supreme Court erred in requiring a judicial hearing as a prerequisite for the involuntary treatment of prison inmates." *Id.*  The Supreme Court stated:

> Notwithstanding the [medication] risks that are involved, *we conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge.* The Due Process Clause has never been thought to require that the neutral and detached trier of fact be law trained or a judicial or administrative officer.  Though it cannot be doubted that the decision to medicate has societal and legal implications, the Constitution does not prohibit the State from permitting medical personnel to make the decision under fair procedural mechanisms.

---

**3/** A case providing a practical illustration of this principle is *United States v. Grape*, 549 F.3d 591, 594, 597 (3rd Cir. 2008) (defendant was initially determined not to warrant involuntary medication under *Harper*; the district court later issued a forcible medication order under *Sell*; while defendant's appeal of that *Sell* order was pending, he physically and verbally assaulted a Springfield correctional officer and was determined by BOP to qualify for involuntary medication under *Harper*; defendant was found to be restored to competency before oral argument on his *Sell* appeal).

*Harper*, 494 U.S. at 231 (internal citations and quotations omitted) (emphasis added). *See also Parham v. J.R.*, 442 U.S. 584, 607 (1979) ("[D]ue process is not violated by use of informal, traditional medical investigative techniques . . .. The mode and procedure of medical diagnostic procedures is not the business of judges . . .."), cited in *Harper*. The "procedural mechanisms" set forth by the Bureau of Prisons in 28 C.F.R. § 549.43 are consistent with *Harper*. [4/]

The defendant appears to acknowledge that *Harper* precludes his "judicial approval" claim, because he tries unsuccessfully to distinguish that decision. First, he claims that his situation is meaningfully different from Harper's because he has been sent back to FMC-Springfield to determine whether he can be restored to competency; he suggests that BOP medical personnel are not impartial by claiming that their "task is to protect the government's weighty interest in obtaining a verdict on the charges against" the defendant. (Motion, p. 13.) This assertion is baseless and that is not FMC-Springfield's task. As this Court has observed, there is no evidence that the medical professionals at FMC-Springfield are anything other than impartial, noting that it would "defer to their professionalism and experience." (CR 175, p. 4.) Moreover, as the record demonstrates, FMC-Springfield's decision to medicate was based on *Harper* grounds, not on the basis that he should be medicated to restore competency. The defendant's second argument to try to distinguish his case from *Harper* – that his case involves rights that are "legal in nature" – again relies on *Sell* and is without merit because this is not a *Sell* order. (Motion, p. 13.) [5/]

---

[4/] Indeed, BOP enacted that regulation in light of *Harper*, establishing procedures allowing prison officials to order the involuntary medication of a federal inmate without judicial involvement. *See* Administrative Safeguards for Psychiatric Treatment and Medication, 57 Fed. Reg. 53820-01 (Nov. 12, 1992) (codified at 28 C.F.R. § 549.43).

[5/] The defendant also cites *Hernandez-Vasquez* to support his argument that a judge must approve a *Harper* order (Motion, at 12), but that case does not support his position. It holds merely that a district court must consider whether there are other grounds to forcibly medicate, such as for *Harper* dangerousness, *before* assessing whether a defendant can be forcibly medicated to restore competency under *Sell*. It does not hold that a district court must judicially

(continued...)

7

In short, no judicial approval of FMC-Springfield's *Harper* involuntary medication order was necessary before medicating the defendant, as *Harper* itself clearly shows. The defendant's contrary argument is without merit.

## II.

### JUDICIAL REVIEW OF BOP'S ADMINISTRATIVE *HARPER* DETERMINATION IS EXTREMELY LIMITED AND GREAT DEFERENCE IS GIVEN TO THE AGENCY'S DECISION.

As noted above, judicial approval of BOP's administrative *Harper* order was not required before BOP could medicate the defendant. The defendant's arguments challenging certain aspects of the BOP process and administrative *Harper* determination must be evaluated giving great deference to the agency, even if the defendant can seek judicial review of FMC-Springfield's determination.

"There can be little doubt as to both the legitimacy and the importance of the governmental interest presented here," and there are few cases where the "interest in combating the danger posed by a person to both himself and others is greater than in a prison environment, which, by definition, is made up of persons with a demonstrated proclivity for antisocial criminal, and often violent, conduct." [6/] *Harper*, 494 U.S. at 225. The Supreme Court has recognized that prison officials have a "duty" to ensure the safety of their medical staff and may medicate mentally ill inmates who pose a danger:

> Prison administrators have not only an interest in ensuring the safety of prison staffs and administrative personnel, but also the duty to take reasonable measures for the prisoners' own safety. These concerns have added weight when a penal institution . . . is restricted to inmates with mental illnesses. Where an inmate's mental disability is the root cause of the threat he poses to the inmate population, the State's interest in decreasing the danger to others necessarily encompasses an interest in providing him with medical treatment for his illness.

---

[5/] (...continued)
approve a *Harper* dangerousness finding by BOP before BOP may forcibly medicate for that reason. Indeed, such a ruling would have been contrary to *Harper*. Nor has this Court been asked to order forced medication to restore the defendant's competency under *Sell* in any event.

[6/] This is an apt description of the defendant, who is charged with killing six people and shooting 13 others.

8

*Harper*, 494 U.S. at 225-226 (internal citations and quotations omitted). Because of the high government interest in ensuring the safety of staff and inmates in a prison environment, and because "prison officials are best equipped to make difficult decisions regarding prison administration," *id*. at 223-24, then it follows that the defendant needs to cross a very high hurdle to successfully challenge BOP's administrative *Harper* determination.

The Ninth Circuit has not yet determined whether a defendant may try to enjoin and seek judicial review in the district court of a BOP administrative *Harper* determination. The defendant relies on a Fourth Circuit decision in *United States v. Morgan*, 193 F.3d 252 (4th Cir. 1999), but even under that decision, it is clear that great deference is given to FMC-Springfield's decision and judicial review is limited to arbitrariness.

In *Morgan*, the defendant challenged in the district court FMC-Springfield's determination that involuntary treatment with antipsychotic medication was "necessary because Morgan is a danger to himself and to others at Springfield, and necessary to render him competent to stand trial." *Id*. at 257 (emphasis added). When asking the district court to review that order and conduct an evidentiary hearing to determine that such medication was the least restrictive means of establishing competency, defense counsel in *Morgan* relied primarily on a Sixth Circuit decision in which medical personnel sought to involuntarily treat that defendant with antipsychotic medication solely to render him competent to stand trial, contending that Morgan was also entitled to a judicial determination and hearing like the defendant in that Sixth Circuit case. *Id*. (internal citation omitted). The district court in *Morgan* disagreed.

Relying on a pre-*Harper* decision in *United States v. Charters*, 863 F.2d 302 (4th Cir. 1988), the district court in *Morgan* found that "the determination of whether to forcibly medicate a pretrial detainee found to be incompetent to stand trial and dangerous to himself and to others *was best left to the professional judgment of institutional medical personnel and subject to judicial review only for arbitrariness*." *Morgan*, 193 F.3d at 258 (emphasis added). The district court found, based on the record, that Springfield medical personnel

9

complied with 28 C.F.R. § 549.43 and the administrative determination that Morgan should be forcibly medicated was not reached arbitrarily.  *Id.*

The Fourth Circuit analyzed the district court's ruling and the "legitimate government interests," and noted that it had previously held in *Charters* that the defendant's due process rights in the forced medication context were protected by: 1) the framework that placed responsibility for making the medication decision "in the appropriate medical personnel of the custodial institution"; and 2) the fact that the decision to medicate is "essentially medical in nature" and protected from error "first, in the general professional competence and integrity of the government's medical personnel, and second, in the availability of judicial review to guard against arbitrariness in making particular decisions." *Morgan*, 193 F.3d at 260.  This procedure complied with due process "notwithstanding the absence of any adversarial adjudicative element." *Id.*  The Fourth Circuit also noted that the Supreme Court's post-*Charters* decision in *Harper* supported that § 549.43 provided adequate due process to Morgan, noting that "Springfield medical personnel, in determining that Morgan should be forcibly medicated, not only exercised professional judgment in making the decision, but also afforded Morgan an administrative hearing subject to the procedural safeguards mandated by the BOP under 28 C.F.R. § 549.43," which was more than *Charters* required and "virtually identical to the state framework at issue in *Harper*." *Id.* at 262.  The Fourth Circuit determined that, "although § 549.43 does not affirmatively grant the right to obtain judicial review of an administrative determination," it had found in *Charters* that the determination was subject to judicial review for arbitrariness. *Id.*

As the Supreme Court noted in *Youngberg v. Romeo*, 457 U.S. 307, 323-24 (1982), which was cited in *Harper* and dealt with involuntary commitment of a mentally retarded individual, "[c]ourts must show deference to the judgment exercised by a qualified professional" and "interference by the federal judiciary with the internal operations of these institutions should be minimized," so that "the decision, if made by a professional, is presumptively valid."  Thus, this Court must give great deference to the findings of FMC-

Springfield medical professionals and may not re-weigh FMC-Springfield's medical *Harper* determination and substitute its judgment about whether the defendant is dangerous or whether the medication was in the defendant's medical interest.  Under this very deferential standard of review, and for the reasons explained below, the defendant has failed to demonstrate that FMC-Springfield's decision was arbitrary.  This Court should not disturb the prison institution's decision to medicate the defendant based on dangerousness under *Harper.* [7/]

**III.**

**THE DEFENDANT HAS FAILED TO SHOW THAT BOP'S ADMINISTRATIVE DECISION TO MEDICATE THE DEFENDANT UNDER *HARPER* WAS ARBITRARY.**

1. <u>The Defendant Was Afforded The Procedural Protections of 28 C.F.R. § 549.43.</u>

The defendant argues that the "administrative forced medication order is invalid on the additional ground of procedural inadequacy."  (Motion, pp. 13-14.)  Yet, the defendant received the procedural protections set forth in 28 C.F.R. § 549.43, crafted in the wake of *Harper*, and as the Fourth Circuit noted in *Morgan*, that regulation complies with due process.

As did the regulation in *Harper*, 28 C.F.R. § 549.43 requires that the determination of whether to forcibly medicate an inmate be made in the context of an administrative hearing. *See* 28 C.F.R. § 549.43(a).  *See Morgan*, 193 F.3d at 252.  The defendant received such an administrative hearing.  (Exhibit C.)

Under the same regulation, the inmate must be given at least 24-hour advance written notice of the hearing.  28 C.F.R. § 549.43 (a)(1).  The defendant here was given such advance notice.  (Exhibit B; Govt's Exhibit 1, p.13.)

---

[7/]  To the extent the defendant is required to exhaust administrative remedies before challenging the agency determination in district court, such remedies would appear to be exhausted here because he appealed BOP's determination and the Associate Warden affirmed that agency decision.  *See, e.g., United States v. Kourey*, 276 F.Supp.2d 580, 581 n. 1 (S.D. W.Va. 2004).

The inmate must be informed and afforded the right to appear at the hearing, to present evidence, to be represented by a staff representative with sufficient experience or education, and to request that witnesses be questioned.  28 C.F.R. § 549.43 (a)(2).  The defendant was afforded the right to appear at the hearing, although he chose to barricade himself behind his bed.  (Exhibit C; Govt's Exhibit 1, p. 10.)  A staff representative was appointed to represent him, Mr. Getchell, a licensed social worker who works in the mental health unit, so he was afforded his right to a staff representative.  (Exhibit C; Govt's Exhibit 1, p. 3, 5, 8, 10-11, 13.)  *Compare Morgan*, 193 F.3d at 265 (defendant requested representation by a corrections officer, a request FMC-Springfield granted, but the Fourth Circuit found that it was unclear whether the corrections officer had requisite experience or education as required under § 549.43(a)(2), so it remanded for such a determination).  The defendant was also given an opportunity to present witnesses and evidence, but as the record demonstrates, he did not call any witnesses.  (Exhibit C; Govt's Exhibit 1, p. 6.)

The defendant did request an attorney.  (Govt's Exhibit 1, p. 8.)  However, as the Supreme Court determined in *Harper*, and as this Court previously observed in a prior order, the defendant was not entitled to have an attorney at the administrative *Harper* hearing. *Harper*, 494 U.S. at 236; *see also* CR 236  (citing *Harper*).  The defense motion claims that, when the defendant stated that he wanted an attorney, he made this request after the staff representative had asked him whether he wanted witnesses, so he was actually asking that his attorney be called as his "witness."  (Motion, pp.14-15.)  However, it was not unreasonable for BOP personnel to interpret his request for an attorney as a request to be represented by an attorney at the hearing, which the regulation and Supreme Court law do not require.  Moreover, this Court should decline the defendant's invitation to insert its judgment for the judgment of the personnel who actually communicated with the defendant at FMC-Springfield and were in the best position to determine factually what the defendant was requesting.  Finally, the defense never disputes the hearing psychiatrist's findings about the defendant's aggressive actions toward his counsel or others, nor states what, if anything,

the defendant's attorney would have said if called as a witness that would have made a difference to BOP's determination under *Harper* that the defendant was dangerous based on his behavior and conduct. *See Morgan*, 193 F.3d at 267 (discussing failure to show prejudice). [8]

The regulations also provide that the preliminary determination of whether to forcibly medicate an inmate is assigned to a psychiatrist who has not been involved with the diagnosis and treatment of the defendant. *See* § 549.43(a)(3), (5). The defendant's hearing was presided over by such a psychiatrist, who made the decision to medicate. (Exhibit C.) He also provided a written report as required. (*Id.*) *See* § 549.43 (a)(5).

The inmate is also to be afforded a right to submit an appeal within 24 hours and to have that appeal decided within 24 hours. 28 C.F.R. § 549.43(a)(6). The defendant filed such an appeal (Govt's Exhibit 1, p. 5.), and the Associate Warden resolved that appeal, finding that the defendant had been afforded due process at the hearing and upholding the involuntary medication determination (Exhibit E; Govt's Exhibit 1, p. 3).

Thus, FMC-Springfield provided the defendant with the procedural protections afforded pursuant to 28 C.F.R. § 549.43, which comply with *Harper* and due process, and the defendant has failed to show that there was error warranting relief.

2. <u>The Defendant Has Failed to Demonstrate That The Agency's Decision To Involuntarily Medicate Under *Harper* Was "Arbitrary."</u>

The defendant argues that FMC-Springfield's decision to medicate the defendant should not be upheld for several reasons, but in essence, the defendant is asking this Court to

---

[8] Moreover, 28 C.F.R. § 549.43 (a)(2) provides that witnesses need not be called if they possess repetitive information. BOP was already aware of the defendant's mental condition and his conduct in the facility, so again, the defendant fails to show what his attorney would have contributed that would have changed the result, even if the defendant's request for an attorney was somehow a request to call his attorney as a witness. In addition, in its statement of facts, the defense creates the impression that BOP has somehow prevented the defendant from receiving visits from his attorney. (Motion, p. 4.) However, FMC-Springfield reports that this is incorrect and the defendant continues to be able to have access to his attorney.

impermissibly substitute its judgment for the judgment of the medical professionals and officials at the prison facility, to whom great deference is required to be given.

As noted earlier, the Supreme Court permits prison institutions "to treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227; *see also* 28 C.F.R. § 549.43(a)(5) (psychiatrist conducting the hearing determines whether "treatment or psychotropic medication is necessary . . . because the inmate is dangerous to self or others . . ."). The psychiatrist at the hearing informed the defendant that "on the basis of a diagnosis of mental illness and of actions on his part [showing] dangerousness to others within the correctional setting, [the psychiatrist] would authorize treatment with involuntary medication on an involuntary basis." (Exhibit C; *see also* Govt's Exhibit 1, p. 11.)

The defendant contends that his conduct – throwing chairs with doctors present, throwing chairs in his cell, spitting at his attorney, and lunging toward her to where he had to be restrained – is insufficient to show he is dangerous under *Harper*. (Motion, p. 9-10.) Yet, this is precisely the kind of determination that the district court in *Morgan* noted was "best left to the professional judgment of institutional medical personnel and subject to judicial review only for arbitrariness." *Morgan*, 193 F.3d at 258 (emphasis added). It was not "arbitrary" for the Bureau of Prisons to have determined that the defendant's actions show he is "dangerous" to others. *Harper*, 494 U.S. at 227. Indeed, after seeing the defendant's aggressive conduct, and knowing that he has been charged with murder and violent offenses, prison officials had a "duty to ensure the safety of prison staff and administrative personnel" who are interacting with the defendant, *id*. at 225-26, like Dr. Pietz and other staff, and properly determined that the defendant could be medicated involuntarily under *Harper*. When "an inmate's mental disability is the root cause of the threat he poses," the government's "interest in decreasing the danger to others necessarily encompasses an interest in providing him with medical treatment for his illness." *Id.* at 225-26. For this

reason, prison officials may "treat a prison inmate who has a serious mental illness with antipsychotic drugs against his will, if the inmate is dangerous to himself or others and the treatment is in the inmate's medical interest." *Id.* at 227.  Such is the case at bar.  The *Morgan* case also supports that FMC-Springfield's dangerousness decision was not arbitrary in this case, because FMC-Springfield's decision was not found to be arbitrary in *Morgan*, based on facts arguably less serious than exist here.  *See Morgan*, 193 F.3d at 257 (FMC-Springfield determined that the defendant should be involuntarily medicated because his thoughts "make him a potential danger to himself and others because of misunderstandings and impulsive responses"; the Fourth Circuit did not disturb this dangerousness finding and remanded only on the staff representative issue). [9/]

The defendant also contends that BOP's decision whether to medicate was based primarily or solely on a determination that the medication could treat his mental illness.  (*See, e.g.*, Motion, pp. 6-12.)  This claim overlooks the record, which shows that the defendant was involuntarily medicated because it was in his medical interest *and he was a danger*.  (Exhibit C.)  BOP's discussion of the defendant's mental condition and why it believed medication was the best method of treating the defendant's illness was important to address the *Harper* determination concerning whether the "treatment is in the inmate's medical interest." *Harper*, 494 U.S. at 227.  BOP properly so determined based on the record.  (Exhibits C and

---

[9/]  The defendant also asserts that BOP's decision to medicate him as a danger under *Harper* is undermined by the fact that some of the conduct justifying the order preceded his return to Springfield.  (Motion, pp...)  However, the defendant overlooks that when he was at FMC-Springfield originally, he had not yet been committed for hospitalization under 18 U.S.C. § 4241(d); he had been sent to Springfield only for a competency evaluation.  As the first paragraph of 28 C.F.R. § 549.43 notes: "Except as provided in paragraph (b) of this section [which governs emergencies], the procedures outlined herein must be followed *after a person is committed for hospitalization and prior to administering involuntary treatment, including medication.*"  Thus, once the defendant arrived back to Springfield after being committed pursuant to 18 U.S.C. § 4241(d), and once the defendant declined medication, then BOP appropriately convened an administrative *Harper* hearing to determine whether the defendant could be involuntarily medicated pursuant to 28 C.F.R. § 549.43.  As the Ninth Circuit has noted, this *Harper* inquiry must precede any determination by the court that the defendant could be forcibly medicated under *Sell*, so BOP properly conducted that *Harper* inquiry.  *Hernandez-Vasquez*, 513 F.3d at 913.

1    D; Govt's Exhibit 1.)  The defendant has failed to show that the *Harper* determination was

2    "arbitrary."

3         In various parts of his motion, the defendant faults BOP for deciding to medicate the

4    defendant instead of employing what the defendant contends were "less restrictive means."

5    (Motion, pp. 9-12.)  First, the defense quotes supposedly from *Riggins v. Nevada*, 504 U.S.

6    127 (1992), that forced medication "is not medically appropriate unless 'considering less

7    intrusive alternatives, [the medication regime] is essential for the sake of [the inmate's] own

8    safety or the safety of others." (Motion, pp. 5, 8, 9, 11.)  In doing so, the defendant misreads

9    the text.  *Riggins* actually states that the Supreme Court had not "develop[ed] substantive

10   standards for judging forced administration of such drugs in the trial or pretrial settings," and

11   the Court merely commented that *if* Nevada had shown that "treatment with antipsychotic

12   medication was medically appropriate and, considering less intrusive alternatives, essential

13   for the sake of Riggins' own safety or the safety of others," due process would have been

14   satisfied.  504 U.S. at 135.  It does not say that this is the only way that due process can be

15   satisfied.  Thus, the defense turns a mere passing comment into a holding that the Court did

16   not make.

17        Moreover, the claim that BOP overlooked less intrusive means is factually incorrect.

18   Although the defense disagrees with the outcome, the hearing report, reviewed by the

19   administrator, considered and excluded such measures as isolation, restraint, and other kinds

20   of drugs.  Thus, less intrusive means were considered.  Moreover, this argument again asks

21   this Court to substitute its judicial judgment for expert medical judgment, a course that the

22   Supreme Court has expressly repudiated (even recognizing the dangers inherent in

23   psychotropic drugs) in *Harper*, 494 U.S. at 230-33, and the Fourth Circuit rejected in

24   *Morgan*. [10/]  Although a committee's review of the staff's choice of medication was a feature

25

26   _____

         [10/]  Not only should the prison be given great deference in terms of assessing the safety
     needs of the prison, but even isolation and seclusion does not mean an individual cannot be

27                                                                                (continued...)

28                                              16

of the Washington scheme in *Harper*, the Court did not include such review as part of the due process protections it listed as necessary for a valid medication regulation. *Id.* at 233-36.

With regard to the defendant's claim of danger in "exaggerated responses" that may deny due process, the comment ascribed by the defense to Justice Blackmun's concurrence in *Harper* (Motion, p. 6) is incorrect; it actually is part of Justice Stevens' dissent, and thus lacks any authority. The other case cited, *Hrdlicka v. Reniff*, 631 F.3d 1044 (9th Cir. 2011), concerned distribution of printed materials to an inmate, and thus has absolutely nothing to do with the issues in this case.

In short, the defendant has failed to show that BOP's *Harper* determination was "arbitrary" and this Court should decline the defendant's invitation to substitute its judgment for that of the prison officials and medical personnel to whom deference is given.[11]

3. The Defendant's "Dosage" Argument Attempts To Import *Sell* Requirements Into A *Harper* Determination And Should Be Rejected.

The defendant states that the documentation from BOP does not contain the actual medication or the maximum dosage, and contends that such a "blanket authorization plainly violates [his] rights." (Motion, pp. 15-17.) The defendant is wrong.

The defendant claims that the *Harper* order must be "medically appropriate," another *Sell* requirement that he attempts to import. First, as noted earlier, BOP properly determined that treatment by medication was "is in the inmate's medical interest." *Harper*, 494 U.S. at 227. Second, the defendant's more stringent "medical appropriateness" argument overlooks that none of the cases upholding the due process sufficiency of the BOP regulations in the context of *Harper* have found that specification of drug type or dosage is required before a

---

[10] (...continued)
dangerous to others. For example, BOP reports that the food slot can be a very dangerous area, where inmates can easily throw items at staff, or otherwise assault staff through the slot.

[11] The defendant has attached a report from another case where *Harper* medication was apparently not ordered, ostensibly to claim that FMC-Springfield's decision here was arbitrary. However, that other case does not affect or undercut the agency's determination in this specific case, based on this record, that the defendant's conduct demonstrated that he was a danger.

*Harper* order can issue.  While citing to the "debate" about whether *Harper* rendered inmates subject to medication with medically inappropriate drugs, the defense overlooks that the *Harper* majority did not demand that any kind of record about these factors be presented to the courts.  "Unlike Justice Stevens, we will not assume that physicians will prescribe these drugs for reasons unrelated to the medical needs of the patients; indeed, the ethics of the medical profession are to the contrary."  *Harper*, 494 U.S. at 222 n.8.  The defense's reliance on *Riggins* is misplaced because that case concerned a competent, pretrial detainee who was involuntarily administered antipsychotics throughout the course of his murder trial, though the State had never been required to "establish the need" for the medication, with the attendant possibility that being on the medication would affect the accused's ability to participate in the trial and present a defense.  Thus, it is not the kind of *Harper* situation here.  Moreover, the defendant cannot show under *Riggins* that FMC-Springfield's decision is "arbitrary."

The defendant's reliance on *Sell* cases like *Hernandez-Vasquez* (Motion, p. 16) again evidences a persistent attempt to blend the requirements of *Sell* with the requirements of *Harper*, but *Sell* is inapposite to *Harper* orders.

Indeed, as noted earlier, even if the *Harper*-based involuntary medication of the defendant has the incidental effect of restoring him to competency, that does not affect the legitimacy of the *Harper* determination.  The defendant in *Morgan* made a similar claim, and the Fourth Circuit rejected it, noting that he would receive judicial protections in any event before he would be found competent to stand trial:

> Although Morgan provides us with no psychiatric evidence supporting a conclusion that the "dangerousness" finding was made arbitrarily, he essentially requests that we disregard that finding so that we may evaluate the constitutionality of permitting Springfield medical personnel to make the determination of whether to forcibly medicate him solely for the purpose of rendering him competent to stand trial. This we are unwilling to do.

> We realize that forcibly medicating a pretrial detainee on the basis that such treatment is necessary because he is dangerous to himself or to others in the institutional setting might have the incidental effect of rendering him competent to stand trial. However, if such an occurrence should come to pass in the present

18

matter, Morgan would not simply be thrust into the courtroom for trial without additional procedural protections. Rather, he would be statutorily entitled to have a district judge conduct a pretrial examination of his competency to stand trial in the context of an evidentiary hearing, at which time he would be represented by counsel and permitted "to testify, to present evidence, to subpoena witnesses on his behalf, and to confront and cross-examine witnesses who appear at the hearing." 18 U.S.C. § 4247(d) . . . Morgan could be brought to trial only if the government proved to the district judge by a preponderance of the evidence that Morgan was able to understand the nature and consequences of the proceedings against him and to assist properly in his defense. *See id.* § 4241(e).

*Morgan*, 193 F.3d at 263-65. Such is the case at bar. The defendant has failed to show BOP's dangerousness finding was arbitrary, he may not collapse *Harper* into *Sell*, and even if he is rendered competent by the *Harper*-based medication determination, it does not affect BOP's decision that such medication was justified because of dangerousness and does not require additional procedural safeguards.

In any event, the record shows that an initial medication regimen was provided in writing by Dr. Serrazin, as his administrative note from June 21, 2011, reflects. (Govt's Exhibit 1, p. 1.). Thus, the defendant complaint that there was no "dosage," etc., is without merit. [12] Nor has he shown that specific dosage information was a prerequisite to a *Harper* order, as he contends.

Finally, the defendant has asked this Court to "enjoin" BOP's administration of medication. The defendant is properly receiving medication and he has not overcome the presumption that BOP's *Harper* determination was appropriate. Just as a defendant should not be entitled to a stay unless he has shown a "significant possibility of success on the merits," *Hill v. McDonough*, 547 U.S. 573, 584 (2006), the defendant's request to "enjoin" BOP from medicating the defendant should be denied.

---

[12] Indeed, FMC Springfield reports that the defendant has been taking medication orally in lieu of injections, and is tolerating the medication well. FMC-Springfield medical personnel are continuously monitoring the defendant and his treatment regimen.

For the foregoing reasons, this Court should deny the defendant's "Emergency Motion to Immediately Enjoin Forcible Medication."

Respectfully submitted this 28th day of June, 2011.

DENNIS K. BURKE
United States Attorney
District of Arizona

*s/Wallace H. Kleindienst*

WALLACE H. KLEINDIENST
Assistant U.S. Attorney

*s/Christina M. Cabanillas*

CHRISTINA M. CABANILLAS
Assistant U.S. Attorney

Copy of the foregoing served electronically
or by other means this 28th day of June, 2011, to:

Judy M. Clarke, Esq.
Reuben Camper Cahn, Esq.
Mark Fleming, Esq.