# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>Jared Lee Loughner,<br><br>　　　　　Defendant. | CASE NO. 11cr0187 TUC LAB<br><br>**ORDER ON DEFENDANT'S MOTION TO ENJOIN MEDICATION** |

The defendant, through his counsel, filed an emergency motion to enjoin the Federal Medical Center in Springfield, Missouri from involuntarily medicating him. He maintains that as a pretrial detainee who is not competent to stand trial, he is entitled to a full-blown judicial hearing rather than an administrative hearing before he may be involuntarily medicated on the ground that he is a danger to himself or others. On June 29, 2011, the Court held a hearing at the conclusion of which it denied the defendant's motion. This Order is intended to confirm the Court's ruling and to summarize the bases for it.

I.　**Background**

On May 25, 2011, the Court found the defendant incompetent to stand trial and committed him to the custody of the Attorney General for hospitalization at the Federal Medical Center in Springfield, Missouri. *See* 18 U.S.C. § 4241(d). The task of the FMC staff is to determine whether the defendant will become competent in the foreseeable future, and if so, to oversee his mental restoration. *Id.*

//

To this end, the defendant may be medicated involuntarily, though not without a *judicial* hearing and a finding that such medication "is medically appropriate, is substantially unlikely to have side effects that may undermine the fairness of the trial, and, taking account of less intrusive alternatives, is necessary significantly to further important governmental trial-related interests." *Sell v. United States*, 539 U.S. 166, 179 (2003). In *Washington v. Harper*, however, the Supreme Court held that a prisoner *may* be medicated involuntarily without a judicial hearing if there is an *administrative* finding that he poses a danger to himself or to others. 494 U.S. 210, 215–16 (1990). The Supreme Court explained, "[t]hough it cannot be doubted that the decision to medicate has societal and legal implications, the Constitution does not prohibit the State from permitting medical personnel to make the decision under fair procedural mechanisms." *Id.* at 231. Those "fair procedural mechanisms" have since been codified in 28 C.F.R. § 549.43.

When he was at the FMC previously for his competency examination during March and April, 2011, the defendant threw a chair in his cell on multiple occasions, sometimes while screaming expletives. On a separate occasion, he lunged and spat at his attorney. During his current stay at the FMC, he has been observed hallucinating, yelling for no apparent reason, and again throwing the chair in his cell. This conduct has come on suddenly and with no apparent provocation. On June 14, the FMC staff held a *Harper* hearing, pursuant to § 549.43, and determined that the defendant poses a danger to others. The staff was aware not only of his conduct at the FMC, but also that he is charged with multiple counts of murder and attempted murder and that he has a history of mental illness. The defendant began receiving antipsychotic medications approximately one week after the June 14 *Harper* hearing.

**II.    Standard of Review**

The defendant's essential position is that *Harper* applies only to *convicted* prisoners who are serving a custodial sentence, not to pretrial detainees, and certainly not to pretrial detainees like himself who are incompetent to stand trial. Otherwise, he argues, *Harper* provides an "end run" around *Sell*. (Br. at 2.) He maintains the Court should hold a

contested evidentiary hearing on whether he is dangerous, rather than entrust that judgment to a psychiatrist pursuant to § 549.43. He would also have the Court, on review, import into the *Harper* analysis the substantive due process rights identified in *Sell* and *Riggins v. Nevada*, 504 U.S. 127 (1992), even though the medication at issue in those cases was not involuntarily administered for the purpose of mitigating dangerousness.[1] The Court has considered the defendant's position and rejects it for three reasons.

First, the Court finds that *Harper*, and not *Riggins* or *Sell*, applies here. *Harper* is clear that doctors, not lawyers and judges, should answer the question whether an inmate should be involuntarily medicated to abate his dangerousness and maintain prison safety. *Harper*, 494 U.S. at 231 ("[W]e conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge."). The Supreme Court had the opportunity in both *Riggins* and *Sell* to narrow its holding in *Harper* as it applies to mentally ill pretrial detainees, and it did not do so. To the contrary, in *Sell* the Supreme Court stressed that medication under *Harper* is preferable to medication under *Sell*, and that the two inquiries are independent of one another. *Sell*, 539 U.S. at 182–83; *see also United States v. Hernandez-Vasquez*, 513 F.3d 908, 914 (9th Cir. 2008) (*Sell* orders are "disfavored" and *Harper* inquiry must come first). Justice Kennedy's concurrence in *Riggins* also keeps *Harper* and *Sell* separate. Justice Kennedy, who authored the majority decision in *Harper*, observed in his *Riggins* concurrence

> This is not a case like *Washington v. Harper*, in which the purpose of the involuntary medication was to ensure that the incarcerated person ceased to be a physical danger to himself or others. The inquiry in that context is both objective and manageable. Here the purpose of the medication is not merely to treat a person with grave psychiatric disorders and enable that person to function and behave in a way not dangerous to himself or others, but rather to render the person competent to stand trial.

---

[1] Both requests represent a marked shift from defense counsel's previous request that they be notified of any administrative hearing conducted under 28 C.F.R. § 549.43. That request acknowledged that a *Harper* hearing may be conducted administratively, and it advanced an interest chiefly in protecting the defendant's rights within the framework set forth in § 549.43. (*See* Doc. No. 232.)

*Riggins*, 504 U.S. at 140. Justice Kennedy went on to emphasize that it was this key difference with *Harper* that justified the additional protections announced in *Riggins* and refined further in *Sell*.

The Supreme Court has explicitly instructed lower courts not to engage in anticipatory overruling of its decisions, which would include extending *Sell*'s protections to a pretrial detainee found to be dangerous pursuant to *Harper*: "The Court neither acknowledges nor holds that other courts should ever conclude that its more recent cases have, by implication, overruled an earlier precedent. Rather, lower courts should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 207 (1997). If the Supreme Court intends for the substantive due process rights identified in *Riggins* and *Sell* to be stitched into the fabric of a *Harper* hearing for individuals like the defendant, it alone holds the prerogative to say so. Likewise, it is the Supreme Court's prerogative, not this Court's, to modify the prescribed *Harper* procedures to guard against the possibility of the hearing becoming a mere pretense for medicating mentally ill pretrial detainees with the true aim of restoring them to competency to stand trial.

Second, if an individual in the custody of the Bureau of Prisons is a danger to himself or others, the nature and extent of that danger cannot possibly depend on the stage to which his case has advanced in the criminal justice process. A dangerous individual is dangerous, whether he is a pretrial detainee or has been convicted and sentenced. The defendant's argument, in essence, is that the bar for a finding of dangerousness must be raised in this case because by treating his dangerousness he may incidentally be restored to competency to stand trial. The Court disagrees with the argument.[2]

//

---

[2] The Third Circuit would disagree as well. *See United States v. Grape*, 549 F.3d 591 (3d Cir. 2008). In *Grape*, the district court ordered the defendant forcibly medicated following a *Sell* hearing. The order was then stayed pending an interlocutory appeal. Meanwhile, the defendant's medical condition continued to deteriorate, and after he assaulted a correctional officer the prison held a *Harper* hearing on short notice, began medicating him immediately, and eventually restored him to competency. The matter on appeal in *Grape* was the *Sell* order, even though the defendant had never been medicated under *Sell*, but the court identified no problem whatsoever with his involuntary medication under *Harper* in spite of his pending challenge to such medication under *Sell*.

Whether an individual is a danger to others in a custodial setting depends primarily on that individual's observed behavior and demeanor, and *Harper* emphatically states that medical personnel, not lawyers or courts, should assess these factors. *Harper* even deems it "facile" to assume that an inmate's intentions, "or a substituted judgment approximating those intentions, can be determined in a single judicial hearing apart from the realities of frequent and ongoing clinical observation by medical professionals." *Harper*, 494 U.S. at 231–32. The long and short of this point is that the medically trained FMC Springfield staff, who observe and interact with the defendant on a daily basis and possess a first-hand understanding of the prison environment, are better suited than this Court to appraise whether the defendant is dangerous to himself or others.

Third, the defendant's position imputes to the FMC a conflict of interest for which there is no evidence. Seizing on language in the administrative decision that involuntary medication will treat the defendant's underlying mental illness, rather than simply mitigate his dangerousness, the defendant argues that the FMC has conflated its obligation to provide a safe environment for its staff and inmates with its charge to restore the defendant to competency. He even goes so far as to suggest it is the task of the FMC "to protect the government's weighty interest in obtaining a verdict on the charges against [him]." (Br. at 13.) The Court finds no evidence that the FMC staff is in any way an ally of the Government prosecution team (it was the FMC staff, after all, who recommended the defendant be found incompetent) and contrary to the argument of counsel, the FMC staff has not been charged with the *obligation* to restore the defendant to competency. They remain free to find that he cannot be, or has not been, restored. *See* 18 U.S.C. § 4241(d).

But more important than that, the argument that the FMC is conflating its tasks mistakenly assumes that under § 549.43 mental illness and dangerousness are independent, separately treatable phenomena. They are not, and indeed, *Harper* does not permit the involuntary medication of dangerous inmates who are not mentally ill. *Harper* is explicit on this point: "We hold that, given the requirements of the prison environment, the Due Process Clause permits the State to treat a prison inmate who has a serious mental illness with

antipsychotic drugs against his will, if the inmate is dangerous to himself or others *and the treatment is in the inmate's medical interest.*" *Harper*, 494 U.S. at 227 (emphasis added). Contrary to the defendant's suggestion that the FMC should attempt only to control his dangerousness, *Harper* approved the abatement of an inmate's dangerousness by the administration of antipsychotic drugs that treat his underlying mental illness. Accordingly, the medical staff's authority is not limited to simply rearranging the furniture in the defendant's cell, or physically restraining him when he is in the company of others so that he is unable to hurt them.

For the above reasons, the Court declines to hold an evidentiary hearing on the defendant's dangerousness, and it declines to import the substantive due process rights identified in *Riggins* and *Sell* into the *Harper* analysis. The involuntary medication of the defendant for dangerousness in controlled by *Harper* exclusively, not by *Riggins* and *Sell*.

**III.   Discussion**

The Fourth Circuit has reviewed the forced medication of a pretrial detainee on dangerousness grounds pursuant to *Harper*, and it confirmed that "the determination of whether to forcibly medicate a pretrial detainee . . . rests upon the professional judgment of institutional medical personnel . . . ." *United States v. Morgan*, 193 F.3d 252, 262 (4th Cir. 1999). The defendant in *Morgan*, like the defendant in this case, was found incompetent to stand trial and committed to the FMC in Springfield, where he was forcibly treated with antipsychotic medication following a § 549.43 hearing. The Fourth Circuit not only confirmed that the dangerousness determination is to be made by prison medical personnel, but it limited the court's involvement to a review for arbitrariness. *Id.* at 263 (citing *Harper*, 494 U.S. at 228). This Court adopts *Morgan*'s holding and rationale, and declines the defendant's invitation to conduct what would amount to a de novo review of the *Harper* hearing that was conducted in this case.

In reviewing for arbitrariness, the only question is whether the administrative finding that the defendant poses a danger to others has some factual basis and was made in compliance with the protocol set forth in 28 C.F.R. § 549.43. *Id.* at 262–63 ("[U]nder *Harper*,

the administrative safeguards contained in 28 C.F.R. § 549.43 and the availability of judicial review for arbitrariness adequately protect the due process rights of a pretrial detainee for whom treatment with antipsychotic medication is necessary because he poses a danger to himself or to others in the institutional setting."). The Court is satisfied that the procedures followed by the FMC staff at the § 549.43 hearing, and the finding of the presiding independent psychiatrist, were not arbitrary.

The defendant was given advance notice of the administrative hearing. He was appointed a staff representative who advised him of his rights at the hearing. The hearing was conducted by an independent psychiatrist who is not involved in diagnosing or treating the defendant. That psychiatrist prepared a written report of his findings, including their factual bases, which was presented to the defendant. The defendant appealed these findings to the FMC's Associate Warden for Health Services. All of this is reflected in Defense Exhibits C and E, which have been filed under seal. (Doc. Nos. 244–45.) These procedures precisely track the requirements of § 549.43, which, in turn, precisely follow the minimum procedural due process interests spelled out in *Harper*.[3]

The defendant argues that he requested his attorney as a witness pursuant to § 549.43(2), and that this request was ignored. In fact, when the defendant's staff representative first asked him if he wished to have any witnesses present, he said "no," called the hearing a "violation of my constitutional rights," and said that his treating psychiatrists needed to read the Bill of Rights. The next day, the staff representative asked the defendant again if he wished to have any witnesses present, and he responded, "Just my attorney." The Court agrees with the apparent interpretation of this statement by the defendant's staff representative who, in light of the defendant's initial response, construed

---

[3] *See* Control, Custody, Care, Treatment and Instruction of Inmates; Administrative Safeguards for Psychiatric Treatment and Medication, 57 Fed.Reg. 53820-01 (Nov. 12, 1992) (identifying *Harper* as a basis for § 549.43).

the statement as a request for legal representation at the hearing, to which he is not entitled.[4] *Harper*, 494 U.S. at 236. There was therefore no violation of § 549.43(2), nor has there been any showing that the defendant was prejudiced by the procedures that were followed.

**IV.   Conclusion**

The Court finds that the defendant was afforded the required due process under *Harper*, and that there was no arbitrariness in the FMC's administrative decision to medicate him on the ground that he is dangerous to others. The defendant's emergency motion to enjoin his involuntary medication is therefore **DENIED**.

**IT IS SO ORDERED.**

DATED: July 1, 2011

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[4] Counsel for the defendant attempts to attribute to him the clarity of mind to ask for his attorney because that attorney (Judy Clarke) would have downplayed the significance of the incident in which he lunged and spat at her, which factored into the finding that he is dangerous to others. The Court rejects that take on the situation. First, the defendant has multiple attorneys (at least four), and he did not identify Ms. Clarke by name. Second, even though mentally ill patients may be capable of rational thought in certain instances, *United States v. McAllister*, 225 F.3d 982, 989 (8th Cir. 2000), the rational thought attributed to the defendant here exceeds that of which the Court believes he is capable in light of its finding that he is incompetent to stand trial and unable to assist properly in his defense. That the defendant first said "no" when asked if he wished to have any witnesses present and then questioned the legal legitimacy of the administrative hearing strongly suggests that his later request for his attorney was a request for *representation* rather than to have counsel appear as a witness. This conclusion is buttressed by the defendant's later statements and conduct at the administrative hearing. At the beginning of the hearing he said, "You have to read me the Bill of Rights or I won't talk to you. I'm not an American citizen." He then barricaded himself behind his bed (the hearing was conducted in his cell) and invoked his rights under the Fifth Amendment.