1 Judy Clarke
  Clarke and Rice, APC
2 1010 2nd Avenue, Suite 1800
  San Diego, CA 92101
3 (619) 308-8484

4 Mark Fleming
  Law Office of Mark Fleming
5 1350 Columbia Street, #600
  San Diego, CA 92101
6 (619) 794-0220

7 Reuben Camper Cahn
  Ellis Johnston III
8 Janet C. Tung
  Federal Defenders of San Diego, Inc.
9 225 Broadway, Suite 900
  San Diego, CA 92101
10 (619) 234-8467

11 Attorneys for Defendant Jared Lee Loughner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| UNITED STATES OF AMERICA, | ) | Case No. CR 11-0187-TUC LAB |
|---|---|---|
| Plaintiff, | ) | |
| | ) | **MOTION TO RECONSIDER** |
| v. | ) | **ORDER DENYING** |
| | ) | **VIDEOTAPING OF RESTORATION** |
| JARED LEE LOUGHNER, | ) | **PROCEDURES** |
| | ) | |
| Defendant. | ) | |

**Background**

Mr. Loughner is currently committed to MCFP Springfield for the purpose of determining whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." *See* 18 U.S.C. §4241(d)(1). On July 15, defense counsel filed a motion requesting this Court to order videotaping of the clinical assessments of Mr. Loughner during this commitment period. On August 4, the Court denied the motion. The defense respectfully requests that the Court reconsider its order and provide for videotaping of a more limited subset of formal clinical assessments made the BOP's primary evaluator.

1

**Motion to Reconsider**

In denying the initial motion, the Court cited three main concerns: (1) that videotaping proved distracting to Mr. Loughner and a hindrance to the FMC staff; (2) the burden on the FMC staff due to the length of the commitment and scope of the requested videotaping; and (3) that the videotapes of Mr. Loughner's original commitment proved useful to the Court in making a competency determination but did not create binding precedent. *See* Order (DE 275).

This motion respectfully requests that the Court reconsider on the basis of circumstances that alleviate these concerns. Specifically, the Court's concerns about unduly burdening the FMC staff can be ameliorated by limiting the videotaping to just the formal clinical assessments conducted by the BOP's primary evaluator (believed to be Dr. Christina Pietz). This limitation addresses the Court's concern about unfairly saddling the FMC staff with an "interaction by interaction analysis" caused by the broader request for videotaping of all clinical assessments set forth in the initial motion.

Second, it is defense counsel's understanding that Mr. Loughner is presently under 24-hour video camera surveillance in his cell due to his suicide-watch status. An order to videorecord limited interactions would not create any *additional* distraction to Mr. Loughner or burden on the FMC staff. FMC staff would be able to comply simply by recording what a video camera already currently captures.

Third, serious evidentiary concerns warrant the use of videotaping. It is likely that Mr. Loughner suffers from echolalia, a symptom of schizophrenia where the sufferer engages in automatic repetition of the vocalizations of another person. *See, e.g. Gladys J. v. Pearland Independent Sch. Dist.*, 520 F. Supp. 869, 876 (S.D. Tex. 1981) (describing echolalia as "characteristic of . . . schizophrenia). This means that his utterances are apt to be mere repetition of what is said to him, rather than reflections of independently formed thoughts. The presence of echolalia thus poses a serious risk to the integrity of evidence in the restorability process. Restorability will turn on the level and nature of Mr. Loughner's cognitive functioning, much of which will be measured as a function of his spoken communications because those utterances provide us with insight into his thinking and cognitive processes which underlie competence to

understand the proceedings and rationally assist counsel. Simple repetition, arguably, could be relevant to the factual understanding prong, but it is not an adequate basis for assessing the rational assistance prong of competence. This means that it is a crucial question whether his spoken communications reflect "the mental acuity to see, hear and digest the evidence, and the ability to communicate with counsel in helping prepare an effective defense" (*Odle v Woodford*, 283 F.3d 1084, 1089 (9th Cir. 2001)). This may well be the difference between rational cognition and echolalia. The BOP records provided to defense counsel do not reflect consideration of this concern or preservation of the data needed to make this assessment fully. Videotaping would ameliorate this problem.

Finally, along a similar vein, the fact that antipsychotic medications are currently being administered to Mr. Loughner creates an evidence-preservation issue. The "powerful and permanent effects" of antipsychotics pose a threat of permanently depriving Mr. Loughner and his counsel of access to mental-state evidence necessary to evaluate and develop potential mental-state defenses to the charged crimes. As the Supreme Court has acknowledged, the very purpose of antipsychotics is to "alter the chemical balance in a person's brain" and change "his or her cognitive processes." *Washington v. Harper*, 494 U.S. 210, 229 (1990); *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 692 (9th Cir. 2010). This is both a fair-trial issue and an evidence-tampering problem. Justice Kennedy put it most succinctly in his concurrence in *Riggins v. Nevada*:

> When the State commands medication during the pretrial and trial phases of the case for the avowed purpose of changing the defendant's behavior, the concerns are much the same as if it were alleged that the prosecution had manipulated material evidence.

504 U.S. 127, 139 (1992) (Kennedy, J., concurring); *see also id.* at 144 ("The side effects of antipsychotic drugs can hamper the attorney-client relationship, preventing effective communication and rendering the defendant less able or willing to take part in his defense."). In short, "involuntary medication with antipsychotic drugs poses a serious threat to a defendant's right to a fair trial." *Id.* at 138 (Kennedy, J., concurring). *Accord Ruiz-Gaxiola*, 623 F.3d at 692 (noting "the strong possibility that a defendant's trial will be adversely affected by a drugs's

side-effects"). In light of these *Riggins*-type concerns, videotaping is appropriate for evidence-preservation purposes.

## Conclusion

The defense respectfully requests that the Court order that the formal clinical assessments of Mr. Loughner by the primary BOP evaluator at FMC Springfield be videorecorded and provided to defense counsel.

Respectfully submitted,

DATED: August 11, 2011

*Judy Clarke*

JUDY CLARKE
MARK FLEMING
REUBEN CAMPER CAHN
ELLIS M. JOHNSTON III
JANET C. TUNG
Attorneys for Jared Lee Loughner

Copies of the foregoing served electronically to:
Wallace H. Kleindienst, Beverly K. Anderson
Christina M. Cabanillas, Mary Sue Feldmeier