DENNIS K. BURKE
United States Attorney
District of Arizona
WALLACE H. KLEINDIENST
BEVERLY K. ANDERSON
CHRISTINA M. CABANILLAS
MARY SUE FELDMEIER
Assistant U.S. Attorneys
United States Courthouse
405 W. Congress St., Suite 4800
Tucson, Arizona 85701
Telephone: (520) 620-7300
Wallace.Kleindienst@usdoj.gov
Christina.Cabanillas@usdoj.gov
Bev.Anderson@usdoj.gov
Mary.Sue.Feldmeier@usdoj.gov
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CR 11-0187-TUC-LAB |
| Plaintiff, | |
| v. | **GOVERNMENT'S RESPONSE TO "DEFENDANT'S EMERGENCY MOTION FOR PROMPT POST-DEPRIVATION HEARING ON FORCED MEDICATION"** |
| Jared Lee Loughner, | |
| Defendant. | |

Now comes the United States of America, by and through its undersigned counsel, and hereby opposes the "Defendant's Emergency Motion for Prompt Post-Deprivation Hearing on Forced Medication," for the reasons set forth in the accompanying Memorandum of Points and Authorities.

Respectfully submitted this 22nd day of August, 2011.

DENNIS K. BURKE
United States Attorney
District of Arizona

*s/Wallace H. Kleindienst*

WALLACE H. KLEINDIENST
Assistant U.S. Attorney

*s/Christina M. Cabanillas*

CHRISTINA M. CABANILLAS
Assistant U.S. Attorney

**FACTS / PROCEDURAL HISTORY:**

As this Court is aware from prior proceedings in this matter, after the defendant declined to take medication at FMC-Springfield, the prison facility conducted an administrative hearing on June 14, 2011, pursuant to 28 C.F.R. § 549.43 and *Washington v. Harper*, 494 U.S. 210 (1990), to determine whether he should be involuntarily medicated as a danger. 28 C.F.R. § 549.43 (a)(5). After the hearing, doctors concluded that medication was warranted based on the defendant's danger to others. ("*Harper* order"). (Gov's Sealed Exh. 1, p. 9, attached to "Response to Defendant's Emergency Motion to Immediately Enjoin Forcible Medication," filed on June 28, 2011; CR 241, 244.) After receiving briefing and argument, this Court issued a written order denying the defendant's motion to enjoin the June 14th involuntary medication order and rejecting the defendant's various arguments. (CR 252.)

On July 1, 2011, the defendant filed a notice of appeal. That same evening, the Ninth Circuit motions panel granted a temporary stay of medication, requiring BOP doctors to stop medicating the defendant. (Order, July 1, 2011; 9th Cir. Dkt # 3.) On July 11, 2011, it continued the stay, pending briefing and resolution of the appeal. (9th Cir. Dkt # 10.)

The defendant's condition deteriorated after the medication was stopped and on July 18, 2011, FMC-Springfield doctors determined that the defendant was a danger to himself and needed to be medicated under the emergency provision, 28 C.F.R. § 549.43(b). (Def's Exh C.) The Emergency Medication Justification provides further details, including the conclusions of Dr. Robert Sarrazin, the defendant's treating psychiatrist, and that of a reviewing psychiatrist, Dr. James Wolfson, who concurred that medication was appropriate. (Def's Exh. C, Report at 1-5.) Therefore, emergency medication was begun that day. (Further facts concerning this order are set forth in the argument section.)

Three days later, on July 21, 2011, the defendant filed an "Emergency Motion to Enforce Injunction and Compel Daily Production of BOP Records" in the Ninth Circuit, attaching affidavits and exhibits. (9th Cir. Dkt # 19.) On July 22, 2011, the government filed a

2

response, also attaching affidavits under seal. (9th Cir. Dkt # 20-21.) [1] Later that day, the Ninth Circuit denied the defense's request to enjoin BOP's emergency medication of the defendant, without prejudice to renewing his arguments before the district court. (9th Cir. Dkt # 23.) On July 27, 2011, the defendant filed an opening brief in the Ninth Circuit challenging BOP's June 14th *Harper* determination. (9th Cir. Dkt # 24.) On August 10, 2011, the government filed its answering brief, submitting a sealed copy to the Ninth Circuit and a redacted public copy on ECF. [2] (9th Cir. Dkt # 36, 37.) The next day, August 11, 2011, the defense filed an "Emergency Motion for Prompt Post-Deprivation Hearing on Forced Medication" before this Court, also seeking enjoinment of BOP's emergency order.

**LAW/ARGUMENT:**

**I.**

**THIS COURT SHOULD DENY THE DEFENSE'S EMERGENCY MOTION TO ENJOIN MEDICATION OF THE DEFENDANT BASED ON BOP'S JULY 18TH EMERGENCY ORDER.**

For some of the same reasons that he challenged BOP's administrative June 14th *Harper* determination, the defense argues that this Court must judicially approve the medication of the defendant based on BOP's July 18th emergency order finding him to be a danger to himself. The defense not only seeks a de novo hearing with witnesses and evidence (Motion, p. 5, 16, 19), but seeks an "emergency stay" of the defendant's medication and to "enjoin"

---

[1] The defense has not provided the affidavits to this Court that it provided to the Ninth Circuit with its prior motion to enjoin the emergency order. However, the government is The Ninth Circuit ordered the parties' affidavits sealed in its July 22nd order (9th Cir. Dkt # 23), so they are being submitted under seal directly to this Court. They should be made part of the record in this Court if they have not been already, considering they were filed when the defendant was seeking to enjoin this same emergency order in the Ninth Circuit.

[2] The government is providing a copy of the sealed answering brief to this Court. As it did before the Ninth Circuit, the government is also seeking permission to submit a sealed unredacted response to this Court and to file a redacted public version on ECF that omits facts from sealed documents.

3

BOP from "enforcing the administrative medication order" (Motion, p. 21). These arguments are without merit. He is not entitled to the de novo hearing he suggests, and the emergency regulation at issue, 28 C.F.R. § 549.43 (b), provided sufficient due process. At most, any review of BOP's administrative decision to medicate would be for arbitrariness, and its decision was not arbitrary, but justified. The defense also fails to acknowledge that its requested stay of the medication is not in the defendant's medical interest. The defense's various arguments are without merit and its motion should be denied.

> A. The Defendant Has Failed to Cite Any On-Point Controlling Cases Holding That "This Court Must Conduct A Prompt Hearing" With Witnesses and Evidence To Review BOP's Emergency Decision To Medicate, Nor Is Such A De Novo Hearing and Judicial Approval Required.

The defense argues that "any administrative procedures by the prisons" do not provide "adequate procedural protections" and that "any decision to forcibly medicate on dangerousness grounds be reviewed by a court upon presentation of evidence by both parties." (Motion, p. 5, citing *Sell* and *Hernandez-Vasquez*.) However, not a single decision the defendant cites to support his request for a "post-deprivation" hearing of this sort (Motion, pp. 5-8) actually stands for this proposition.

Rather, most of the cases he cites are civil cases that do not involve emergency medication of a detained inmate, but administrative decisions that children should be taken into emergency custody because of official concerns about their well-being. *See Brokow v. Mercer County*, 235 F.3d 1000 (7th Cir. 2000); *Campbell v. Burt*, 141 F.3d 927 (9th Cir. 1998); *Jordan v. Jackson*, 15 F.3d 333 (4th Cir. 1994); *Weller v. Dep't of Social Svcs for Baltimore*, 901 F.2d 387 (4th Cir. 1990). Those decisions are simply inapposite and the interests at issue are not the same as in this case. Moreover, rather than supporting the defendant's position, the decision in *Brandt v. Monte*, 626 F.Supp.2d 469 (D.N.J. 2009) (Motion, pp. 5, 8), actually undercuts his position. Far from mandating *judicial* review of emergency medication orders, *Brandt* holds that due process is satisfied by use of an "intra-administrative review committee" as a "post-deprivation" "check" on the treating physician's

decision to administer emergency medication. *Id.* at 486-88. Such an administrative "check" occurred in this case, because a non-treating psychiatrist (here, Dr. Wolfson) determined, independently of the treating physician (here, Dr. Sarrazin), that emergency medication is necessary and appropriate, even *before* the medication was administered. Thus, the review that the defendant argues he is entitled to, in order to ensure due process, has already occurred. Indeed, the regulation provides greater due process protection than even *Brandt* says is appropriate, and the court in *Brandt* reached its conclusion after weighing the interests set forth in *Matthews v. Eldridge*, 424 U.S. 319, 324 (1976), which the defense erroneously contends mandates an adversarial court hearing and judicial approval. (Motion, pp. 8, 9-20.)

The defense's repeated citation of *Riggins*, *Sell*, and *Hernandez-Vasquez* overlooks that none of those cases dealt with the unique category of a detainee who was determined to be a danger to himself and was medicated specifically to remedy that situation. Rather, they address the kind of procedures to be employed in the non-emergency, "pre-deprivation" context of judicially deciding whether to medicate to restore trial competency. In short, the defendant has failed to provide any pertinent legal authority supporting his position that a judicial hearing and approval is required for an emergency medication order rather than, or in addition to, the administrative process BOP employed.

Moreover, emergency orders do not even require *Harper* procedures, much less judicial approval. Title 28 C.F.R. § 549.43 sets forth an emergency exception to the ordinary *Harper* procedures: "*Except as provided for in paragraph (b) of this section*, the procedures outlined herein [in subsection (a)] must be followed after a person is committed for hospitalization and prior to administering involuntary treatment, including medication." Subsection (b) provides:

> (b) Emergencies. For purposes of this subpart, a psychiatric emergency is defined as one in which a person is suffering from a mental illness which creates an immediate threat of bodily harm to self or others, or extreme deterioration of functioning secondary to psychiatric illness. During a psychiatric emergency, psychotropic medication may be administered when the medication constitutes an appropriate treatment for the mental illness and less restrictive alternatives (e.g.,

5

seclusion or physical restraint) are not available or indicated, or would not be effective.

28 C.F.R. § 549.43(b). [3] The defendant fails to demonstrate that due process demands procedures different than those utilized by BOP under § 549.43 (b) here, and in fact, it does not. *See, e.g., Dancy v. Simms*, 116 F.Supp.2d 652, 655 (D. Md. 2000) ("Quite simply, the decision to administer antipsychotic medication over an inmate's objection comports with due process if the decision was made in the exercise of professional medical judgment and arose in the context of an emergency situation where the inmate posed a danger to himself or others."); *Chapman v. Haney*, 2004 WL 936682, at *27 (D. Neb 2004) (unpublished) (in civil action brought pursuant to 42 U.S.C. § 1983, district court noted that "no court has concluded that the emergency involuntary medication procedures in [28 C.F.R.] § 549.43 . . . violate inmates' procedural due process rights").

Indeed, cases that address emergency medication situations find them exempt from even *Harper* administrative requirements, much less from full-blown judicial review. *See Hogan v. Carter*, 85 F.3d 1113, 1117 (4th Cir. 1996) (en banc) (noting that *Harper* administrative review does not apply to emergencies, and rejecting the notion that a court must "convene full-scale adversary proceedings at any hour of the night, appoint and retain counsel, subpoena witnesses, and allow for cross-examination – all while the very inmates for whose protection the state is constitutionally responsible remain in danger of injury at their own hands"). The Ninth Circuit has effectively reached the same conclusion, finding *Hogan* factually distinguishable only because in the case before it there was "no evidence that [the detainee] posed such an imminent and serious danger to himself or others that the minimal procedural requirements of *Harper* . . . could not be met." *Kulas v. Valdez*, 159 F.3d 453, 456 (9th Cir. 1998). Even Justice Stevens' dissent in *Harper* appears to recognize that an inmate can be medicated on an emergency basis without a due process hearing, based on a

---

[3] The regulation recently was amended. *See* 76 Fed. Reg. 40229-02, 2011 WL 2648228 (eff. 8/12/11) (emergency involuntary medication section is renumbered to § 549.46 (b)).

6

responsible physician's medical judgment that such medication was in the inmate's best interest, because of the distinct interests present in such a situation. 494 U.S. at 246-47 (contrasting the situation in *Harper* with the "imminent danger of injury that triggers the emergency medication provisions").

Other circuits have also held that inmates can be medicated in emergencies without *Harper* administrative hearings or adversarial judicial procedures. In *Leeks v. Cunningham*, 997 F.2d 1330, 1335 (11th Cir. 1993), the Eleventh Circuit noted that even courts which had concluded that involuntary administration of antipsychotic drugs could violate due process under certain circumstances still provided for an "emergency exception." *Leeks* cites three decisions: *United States v. Charters*, 829 F.2d 479, 484 (4th Cir. 1987) (noting that the case did "not present an emergency situation in which violence or the imminent deterioration of a patient will occur in the absence of forcible medication"); *Ronnie v. Klein*, 720 F.2d 266, 269 (3rd Cir. 1983) ("antipsychotic drugs may be constitutionally administered to an involuntarily committed mentally ill patient whenever, in the exercise of professional judgment, such an action is deemed necessary to prevent the patient from endangering himself or others."); and *Sherman v. Four County Counseling Center*, 987 F.2d 397, 409-10 (7th Cir. 1993) (plaintiff was involuntarily medicated, solely on doctor's orders, because he was "hostile and dangerous"; in light of *Harper*, Seventh Circuit concluded that, "[i]n the context in which it acted – medicating an apparently schizophrenic patient in emergency detention – we cannot say that Four County's actions were unconstitutional . . ."). *See also Bee v. Greaves*, 744 F.2d 1387, 1395-96 (10th Cir. 1984) (forcible medication with antipsychotic drugs "may be required in an emergency" because it is "reasonably related to the concededly legitimate goals of jail safety and security"; the decision to do so "must be the product of professional judgment by appropriate medical authorities, applying accepted medical standards").

In short, BOP's July 18th medication decision was permissible without *Harper* procedures or judicial involvement. BOP's emergency procedure under § 549.43 (b)

7

complied with due process, and the defendant has failed to show otherwise. Nor has he provided authority stating that he is legally entitled to the kind of "post-deprivation hearing" he seeks.

B. **BOP Provided Substantive And Procedural Due Process Under 28 C.F.R. § 549.43 (b) And Its Decision To Medicate The Defendant Was Not Arbitrary.**

In *Harper*, 494 U.S. at 228, the Court stated: "Having determined that state law recognizes a liberty interest, also protected by the Due Process Clause, which permits refusal of antipsychotic drugs unless certain preconditions are met, we address next what procedural protections are necessary to ensure that the decision to medicate an inmate against his will is neither arbitrary nor erroneous under the standards we have discussed above." The Court then rejected the argument that a judicial hearing was required, and stated that, notwithstanding the risk of potential side effects from medication, a hearing conducted by doctors, rather than judges, would adequately, and "perhaps better" protect the inmate's due process rights. *Id*. at 231. It then found that "adequate procedures existed" in *Harper* under the Washington policy. Thus, it seems clear from *Harper* that no "arbitrariness" exists if BOP conducts an administrative hearing according to a regulation that complies with due process. As noted above, the emergency provision, § 549.43 (b), provides adequate due process in that context, so *Harper* supports that BOP's compliance with that regulation demonstrates that its administrative decision was not arbitrary.

The propriety of BOP's decision is evident here. As noted earlier, BOP may medicate an inmate under its emergency regulation if: 1) a psychiatric emergency exists, in which "a person is suffering from a mental illness which creates an immediate threat of bodily harm to self or others, or extreme deterioration of functioning secondary to psychiatric illness"; 2) the psychotropic medication "constitutes an appropriate treatment for the mental illness"; and 3) "less restrictive alternatives (e.g., seclusion or physical restraint) are not available or indicated, or would not be effective." 28 C.F.R. § 549.43 (b). BOP complied with its regulation and its decision to medicate was not arbitrary, but appropriate.

8

1    <u>First</u>, Dr. Sarrazin determined

Dr. Sarrazin wrote

Dr. Sarrazin also noted

Dr. Wolfson, an independent psychiatrist not involved in the treatment of the defendant, concurred with these determinations

Dr. Wolfson then wrote:

Thus, BOP determined that there was a "psychiatric emergency" under 28 C.F.R. § 549.43 (b) and this decision was not arbitrary.

<u>Second</u>, the doctors determined that psychotropic medication "constitutes an appropriate treatment for the mental illness." 28 C.F.R. § 549.43 (b).

Dr. Wolfson concurred with Dr. Sarrazin's medication decision. The defendant does not allege that the medication prescribed was an arbitrary treatment. Rather, the choice of medication was appropriate for the defendant. Although the emergency order speaks for itself in terms of establishing the propriety of the

BOP finding, the affidavits that were submitted to the Ninth Circuit further amplify this point. [4/]

Third, Dr. Sarrazin and Dr. Wolfson found that "less restrictive alternatives (e.g., seclusion or physical restraint) are not available or indicated, or would not be effective." 28 C.F.R. § 549.43 (b).

---

[4/] The drugs at issue in *Harper*, 494 U.S. at 214 n.1 and *Riggins*, 504 U.S. at 129-30 involved older generation medications. In *Sell*, the Supreme Court merely referred generally to its discussion of potential effects of antipsychotic drugs in *Harper* and *Riggins*. *Sell*, 539 U.S. at 177-81, 185-86. Haldol was the proposed medication in *United States v. Ruiz-Gaxiola*, 623 F.3d 684, 689 (9th Cir. 2010).

In any event, *Harper* permitted medication of the inmate with even older generation medication without judicial approval, and the defendant's discussion of

Dr. Wolfson concurred that "less restrictive alternatives (e.g., seclusion or physical restraint) . . . would not be effective." 28 C.F.R. § 549.43 (b).

Thus, BOP did not act arbitrarily – but rather, quite appropriately – when the medical doctors determined that medication of the defendant was warranted under the emergency provision set forth in 28 C.F.R. § 249.43 (b). [5]

---

[5] The defendant continues to rely on *Riggins*, stating that the due process clause protects
(continued...)

This Court has already properly rejected the defendant's claim that BOP is biased against the defendant or that it is medicating the defendant for the purpose of restoring his competency rather than for the purpose of addressing his dangerousness.[6/] This Court should reject the defendant's similar argument here. (Motion, pp. 4, 17.) Rather, as the emergency order reflects, the defendant was medicated because he posed a severe danger to himself and BOP acted appropriately, not arbitrarily. *See, e.g., Morgan*, 193 F.3d at 258 (determination of whether to forcibly medicate a pretrial detainee "was best left to the professional judgment of institutional medical personnel and subject to judicial review only for arbitrariness").

The defendant also contends that this Court must judicially ensure that an emergency continues to exist for purposes of § 549.43(b). (Motion, p. 8.) First, the regulations do not specify how long an emergency exists for purposes of that subsection, and "it would be a mistake to define the contours of an emergency so narrowly that only the most dire situations qualify as emergencies." *Chapman v. Haney*, 2004 WL 936682, at *28. Second, the defendant is not entitled to a judicial hearing because BOP may medicate without judicial approval. Third,

---

[5/] (...continued) a pretrial detainee's desire to be free of unwanted medication "absent a showing that they are 'essential' to the government's objectives following consideration of 'less intrusive' alternatives." (Motion, p. 4.) *Riggins* did not concern an administrative emergency decision to involuntary medicate a defendant who posed a danger to himself, as noted earlier. The government would observe, in any event, that emergency medication here was "essential to the government's objectives" (i.e. warranted based on the defendant's danger to himself in the BOP medical facility) and the doctors considered less restrictive alternatives, which is specifically emergency regulation, but found them to be "unavailable or ineffective."

[6/] This Court rejected the claim that BOP "has conflated its obligation to provide a safe environment for its staff and inmates with its charge to restore the defendant to competency." It also found "no evidence that the FMC staff is in any way an ally of the Government prosecution team (it was the FMC staff, after all, who recommended the defendant be found incompetent) and contrary to the argument of counsel, the FMC staff has not been charged with the *obligation* to restore the defendant to competency. They remain free to find that he cannot be, or has not been, restored." (CR 252 at 5; emphasis in original.)

14

Thus, BOP will be conducting a *Harper* hearing pursuant to § 549.43(a) (now § 549.46(a)) in the future. The defense has failed to show that judicial approval of BOP's July 18th emergency medication order is required and that medication should be stopped (his requested remedy) in the absence of such a hearing.

D. The Defendant's Various Other Arguments Are Without Merit.

The defendant argues that the interests at stake demonstrate that an "adversarial hearing" and judicial approval are required (Motion, pp. 8-20), but these arguments are incorrect.

The defendant makes many of the same arguments here that he makes on appeal challenging this Court's denial of his motion to enjoin the June 14th *Harper* determination, such as: 1) as a pretrial detainee, he is entitled to a judicial hearing and approval of the medication decision, notwithstanding *Harper*, and the court should adopt his new multi-factor analysis of the alleged interests at issue and conclude that the prison's interest in medicating him is subordinate to his interest in avoiding it (Op. Br. at 16-44; Motion, pp. 5-20); and 2) *Sell* and *Hernandez-Vasquez* require that "a court, not a prison administrator, would be the decisionmaker in a pretrial context" (Op. Br. at 29-33, 44-46; Motion, pp. 19-20). (9th Cir. Dkt # 24.) The government's answering brief addresses these arguments (Ans. Br. at 15-47, 51-56; 9th Cir. Dkt # 36, 37), and rather than repeating them here, the government would incorporate its appellate arguments in its response before this Court. This Court also analyzed and correctly rejected some of the defendant's arguments when denying his motion challenging the June 14th *Harper* order. (CR 252.)

In addition, unlike the *Harper* determination on appeal, which was based on § 549.43(a), this current motion challenges BOP's emergency administrative order issued based on the defendant's danger to himself under § 549.43(b). The defense fails to adequately balance the interests at issue in that context. For example, by arguing that "a court, not a prison administrator, would be the decisionmaker in a pretrial context" (Motion, p. 19), the defense is still claiming that a judge must approve BOP's emergency decision, which utterly fails to

15

consider the emergency context and the duty and legitimate interest of prison officials and doctors to take care of the inmates under their control, regardless of whether they are pretrial detainees or convicted prisoners. *See also* 18 U.S.C. § 4042(a) (BOP is obligated to "provide suitable quarters and provide for the *safekeeping, care, and subsistence of all persons charged with or convicted of offenses* against the United States") (emphasis added). [7] (*See also* Gov's Ans. Br. at 22-38.) As noted earlier, the Fourth Circuit rejected the suggestion that a court must "convene full-scale adversary proceedings at any hour of the night, appoint and retain counsel, subpoena witnesses, and allow for cross-examination – all while the very inmates for whose protection the state is constitutionally responsible remain in danger of injury at their own hands." *Hogan*, 85 F.3d at 1117. Nor has the defendant shown he is entitled to such a hearing even after medication has begun, as he contends.

The defense contends that its request for a full-blown hearing and judicial approval "do[es] not impact the government's interests because what Mr. Loughner is seeking – a post-deprivation hearing – does not require the prison to suspend its forcible medication regimen" and "requires only that a timely and adequate hearing be held after the emergency decision is made and implemented." (Motion, p. 16.) Yet, not only has the defense failed to show it is legally entitled to such a hearing and judicial approval as explained earlier, but the defense is, in fact, asking this Court to "suspend [the] forcible medication regimen." He asks this Court to substitute its own judgment for that of the medical doctors and issue an "emergency stay" of the defendant's medication and to "enjoin" BOP from "enforcing the administrative medication order." (Motion, p. 21). Halting the defendant's medication, however, is not in the defendant's medical interest. Indeed, when the medication of the defendant was stopped as a result of a court order, the defendant's condition deteriorated to such an extent that he became a danger to himself, which prompted the emergency order that

---

[7] The defense's assertion that the government's only interest in involuntary treatment of a pretrial detainee's mental illness is to restore competency, so that *Sell* procedures must be applied, is patently incorrect. (Motion, p. 16-17.) (*See also* Gov's Ans Br at 22-47.)

is the subject of this motion. This Court should decline the defense's invitation to order the defendant's medication stopped against the BOP psychiatrists' sound medical judgment, which potentially could result in the defendant's return to the same dangerous condition that prompted the emergency order.

Presumably in support of his request to stay the medication, the defense attaches the Ninth Circuit's stay order from July 11, 2011. (Def's Exh. B.) However, that order does not address this situation, where the defendant was medicated based on a different order finding him a danger to himself. In light of the changed circumstances, the Ninth Circuit's own four-factor analysis of whether a stay of medication should be granted demonstrates that the medication should not be halted. For example, in considering the "balance of hardships," this Ninth Circuit found that "the government's interest is no less serious" than the defendant's. (Def's Exh. B, p. 3.) The motions panel deemed this factor to favor stopping the medication only because the government's interest was "less immediate," in that it had "managed to keep Loughner in custody for over six months without injury to anyone . . . *[a]nd the record shows that Loughner is not a danger to himself.*" (*Id.* at 3-4.) That is no longer the case. The Court also found that the competing public interests for and against medicating the defendant were both "significant," but that his interest in not being medicated involuntarily was stronger – because the government to that point was "able to prevent [him] from harming himself or others." (Def's Exh. B, p. 4.) Again, that is no longer true. The defendant also would have a poor likelihood of success if he challenged the emergency order, as exhibited above. Thus, the factors no longer "favor maintaining the status quo by precluding forced medication" as the motions panel determined before. Rather, they favor the course of action taken by the BOP in light of the defendant's changed and deteriorating condition, as the

Ninth Circuit implicitly found when, on the same record presented to this Court, it denied the defendant's motion to halt the emergency medication.

In sum, this Court should defer to the emergency treatment decision made by the BOP doctors, who possess the expertise to make such decisions and are legally and ethically bound to act in the defendant's medical best interests. As the Supreme Court also noted in *Harper*:

> We confront here [BOP's] obligations, not just its interests. [It] has undertaken the obligation to provide prisoners with medical treatment consistent not only with their own medical interests, but also with the needs of the institution. Prison administrators have not only an interest in ensuring the safety of prison staffs and administrative personnel, but also the duty to take reasonable measures for the prisoners' own safety. These concerns have added weight when a penal institution, like [FMC-Springfield] is restricted to inmates with mental illnesses [and] an inmate's mental disability is the root cause of the threat he poses . . .

*Harper*, 494 U.S. at 225-26 (internal citations omitted).

The defense's motion to cease the defendant's medication should be denied.

Finally, the defendant's argument that his fair trial rights will be affected is both unfounded and premature. (Motion, pp. 12-13, 20-21.) (*See also* Gov's Ans. Br. at 54-56.)

For the foregoing reasons, this Court should deny the defendant's motion for a de novo judicial "adversarial hearing" with "witnesses." It should similarly deny the defendant's request to stop the medication. Finally, any review of BOP's medication order would be for arbitrariness, but the decision here was eminently reasonable, not arbitrary.

Respectfully submitted this 22nd day of August, 2011.

DENNIS K. BURKE
United States Attorney
District of Arizona

*s/Wallace H. Kleindienst*

WALLACE H. KLEINDIENST
Assistant U.S. Attorney

*s/Christina M. Cabanillas*

CHRISTINA M. CABANILLAS
Assistant U.S. Attorney

18

1  Copy of the foregoing served electronically
   or by other means this 22nd day of August, 2011, to:
2
   Judy M. Clarke, Esq.
3  Reuben Camper Cahn, Esq.
   Mark Fleming, Esq.
4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28