# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| United States of America,<br><br>                    Plaintiff,<br>vs.<br><br>Jared Lee Loughner,<br><br>                    Defendant. | CASE NO. 11cr0187 TUC LAB<br><br>**ORDER FOLLOWING HEARING** |
|---|---|

This Order confirms the Court's oral rulings at the hearing held on August 26, 2011.

The Government's motion for reciprocal discovery (Dkt. No. 217) is granted, although the defense obligation to produce reciprocal discovery is tolled until such time the defendant is competent to assist in his defense. The Government's motion to compel compliance with Fed. R. Crim. P. 17(c) (Dkt. No. 277) is denied without prejudice, for the reasons given during the hearing. The defense's motion for reconsideration of the Court's order denying videotaping of restoration procedures (Dkt. No. 279) is also denied without prejudice; the Court will reconsider if Dr. Pietz or some other member of the FMC staff represents that the defendant's mental state has so improved that the presence of a video camera will not impede efforts to diagnose and treat him.

The defense's motion for a post-deprivation hearing (Dkt. No. 278) is denied. The defendant was initially medicated by prison staff, on the ground that he was dangerous to others, following an administrative *Harper* hearing conducted on June 14, 2011. (Dkt. No. 245.) On June 29, the Court declined the defense's request for a *judicial* hearing on the

matter (Dkt. Nos. 250, 252), but a motions panel of the Ninth Circuit subsequently stayed the medication, finding "[t]here is a serious question whether the decision to involuntarily medicate a pre-trial detainee with psychotropic drugs may be made by prison authorities pursuant to *Washington v. Harper*, 494 U.S. 210, 227 (1990), or by the district court applying the *Harper* substantive standard." (Case No. 11-10339, Dkt. No. 10.) That question is now before a merits panel of the Ninth Circuit, and argument is scheduled for August 30. In the meantime, the defendant's condition deteriorated, and on July 18 prison staff began medicating him again, this time on the emergency basis that he was dangerous to himself. Under 28 C.F.R. § 549.43(b), no administrative hearing was required, and none was held.[1] Rather, because of the emergency situation, the decision was justified solely by the written findings of the Chief of Psychiatry and a staff psychiatrist at the FMC. (Dkt. No. 290.)

The post-deprivation hearing the defense requests is a *judicial* hearing at which the Government must demonstrate "that the drugs are essential to mitigating safety concerns after consideration of less intrusive alternatives." (Dkt. No. 278 at 2.) The defense maintains that "[w]hether such justification lies outside the mainstream of psychiatric care, whether less restrictive alternatives of seclusion, restraints, and/and [sic] minor tranquilizers were available and could be used with fewer long-term consequences and better short term efficacy, and whether a neuro-developmental disease such as Schizophrenia can be used to justify an emergency condition such that forced medication is justified for indefinite periods of time, are questions which should be determined at a hearing before the District Court." (*Id.* at 4.)

The Court perceives that judicial review of the FMC's decision to medicate the defendant on the ground that he now poses a danger to himself should be guided by the same standard the Court applied when it considered the defense's request for a judicial

---

[1] The regulation — which was replaced by 28 C.F.R. § 549.46 on August 12, 2011 — read, "Emergencies. For purposes of this subpart, a psychiatric emergency is defined as one in which a person is suffering from a mental illness which creates an immediate threat of bodily harm to self or others, serious destruction of property, or extreme deterioration of functioning secondary to psychiatric illness. During a psychiatric emergency, psychotropic medication may be administered when the medication constitutes an appropriate treatment for the mental illness and less restrictive alternatives (e.g., seclusion or physical restraint) are not available or indicated, or would not be effective."

review of the original round of involuntary medication, to wit, the standard articulated in *Harper*:

> *Harper* is clear that doctors, not lawyers and judges, should answer the question whether an inmate should be involuntarily medicated to abate his dangerousness and maintain prison safety. *Harper*, 494 U.S. at 231 ("[W]e conclude that an inmate's interests are adequately protected, and perhaps better served, by allowing the decision to medicate to be made by medical professionals rather than a judge.").

(Dkt. No. 252 at 3.) Accordingly, the Court will only review the administrative medical decisions of the FMC staff for arbitrariness, meaning that the decisions must have some factual basis and must have been made pursuant to procedures outlined in § 549.43 (now § 549.46). *See, e.g., United States v. Morgan*, 193 F.3d 252, 262–263 (4th Cir. 1999) ("[U]nder *Harper*, the administrative safeguards contained in 28 C.F.R. § 549.43 and the availability of judicial review for arbitrariness adequately protect the due process rights of a pretrial detainee for whom treatment with antipsychotic medication is necessary because he poses a danger to himself or to others in the institutional setting.").

The prison's decision to medicate the defendant after the Ninth Circuit stayed his involuntary medication was not arbitrary. Two psychiatrists intimately familiar with his medical history and behavior while in custody submitted written findings detailing his deterioration and concluding emergency medication was necessary. (Dkt. No. 290.) Consistent with § 549.43, they found that seclusion, restraints, and minor tranquilizers would be ineffective. The defense may disagree with those conclusions, but that does not establish that they are arbitrary. Two more points are important: First, the defense asked the motions panel of the Ninth Circuit to intervene when the involuntary medication of the defendant re-commenced — it even labeled the re-commencement of the medication an "apparent violation" of the motions panel's injunction — and the motions panel declined to do so. (Case No. 11-10339, Dkt. Nos. 19-1, 23.) Second, the Court received notice just before the August 26 hearing that the prison conducted a second *Harper*-like hearing pursuant to § 549.43(a), and that the defendant was found to remain a danger to himself. Thus, the defendant has now received additional process on the latest stage of his involuntary medication: first, the

1  medication was initiated on an emergency basis pursuant to § 549.43(b), and now (or soon)
2  he is being medicated following an administrative hearing conducted pursuant to § 549.46(a).
3  Because this latest *Harper* hearing just took place, a paper record is still forthcoming, and
4  the defendant still has the opportunity to file an administrative appeal. *See* 28 C.F.R. §
5  549.46(a)(8). If the FMC lacked a valid basis for initiating the latest round of involuntary
6  medication, or failed to follow the proper procedures set forth in § 549.46, the defendant is
7  free to refile a challenge to the medication with the Court.

8      This summary confirms the Court's rulings at the August 26 hearing.

9      There is one more matter. On August 26, the Court received a letter from the Warden
10 of the FMC requesting "an additional reasonable period of time to complete the mental health
11 treatment to determine if there is a substantial probability that the defendant will become
12 competent for trial to proceed." Attached to the letter was a progress report from Dr. Pietz,
13 finding that the defendant "remains not competent to stand trial" and requesting an extension
14 of his commitment. This progress report was requested by the Court when it found the
15 defendant incompetent to stand trial on May 25, 2011. (Dkt. No. 221.) The Warden's
16 request — which the Court construes as a request for more time to actually restore the
17 defendant to competency, rather than to determine whether he can be restored, *see* 18
18 U.S.C. § 4241(d) — is taken under submission.[2] The parties should communicate their
19 positions regarding whether the Warden's request for additional time should be granted to
20 the Court telephonically, either jointly or separately, by no later than August 31, 2011.

21     **IT IS SO ORDERED.**

22 DATED: August 30, 2011

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[2] The Warden's letter is also somewhat early. Pursuant to § 4241(d), the Attorney General has up to four months to determine "whether there is a substantial probability that in the foreseeable future [the defendant] will attain the capacity to permit the proceedings to go forward." Here, those four months will expire on Monday, September 26, which is almost a month away.