1                 UNITED STATES DISTRICT COURT
              SOUTHERN DISTRICT OF CALIFORNIA

2

        HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING

3

UNITED STATES OF AMERICA,     )

4                           )

             PLAINTIFF,   )  CASE NO.4:11CR187-TUC LAB

5      VS.               )

                         )  SAN DIEGO, CALIFORNIA

6  JARED LEE LOUGHNER,      )  SEPTEMBER 19, 2011

                         )  12:15 P.M.

7          DEFENDANT.     )

   _____)

8                  REPORTER'S TRANSCRIPT

9                   STATUS HEARING

10  APPEARANCES:

    FOR THE PLAINTIFF:          DENNIS K. BURKE, U.S. ATTORNEY

11                        BY:  WALLACE KLEINDIENST, ESQ.

                             BEVERLY ANDERSON, ESQ.

12                         CHRISTINA CABANILLAS, ESQ.

                     ASSISTANT U.S. ATTORNEYS

13                     405 W. CONGRESS ST., STE. 4800

                     TUCSON, ARIZONA 85701

14

    FOR THE DEFENDANT:          CLARKE & RICE, APC

15                        BY:  JUDY C. CLARKE, ESQ.

                     1010 SECOND AVENUE, STE. 1800

16                     SAN DIEGO, CA 92101

                           -AND-

17                     FEDERAL DEFENDERS, INC.

                     BY:  JANET TUNG, ESQ.

18                        ELLIS JOHNSTON, ESQ.

                     225 BROADWAY, STE. 900

19                     SAN DIEGO, CA 92101

                           -AND-

20                     LAW OFFICE OF MARK FLEMING

                     BY:  MARK F. FLEMING, ESQ.

21                     1350 COLUMBIA STREET, STE. 600

                     SAN DIEGO, CA 92101

22

    COURT REPORTER:            EVA OEMICK

23                     OFFICIAL COURT REPORTER

                     UNITED STATES COURTHOUSE

24                     940 FRONT STREET, STE. 2190

                     SAN DIEGO, CA 92101

25                     TEL: (619) 615-3103

**SAN DIEGO, CALIFORNIA - MONDAY, SEPTEMBER 19, 2011-12:15 P.M.**

THE CLERK:  NO. 15A, UNITED STATES VERSUS JARED LEE LOUGHNER ON FOR STATUS HEARING.

COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE RECORD.

MS. CLARKE:  JUDY CLARKE, JANET TUNG, MARK FLEMING AND ELLIS JOHNSTON ON BEHALF OF MR. LOUGHNER.

MR. KLEINDIENST:  WALLACE KLEINDIENST, BEVERLY ANDERSON AND CHRIS CABANILLAS ON BEHALF OF THE U.S. ATTORNEY'S OFFICE.

THE COURT:  GOOD AFTERNOON.

THE PROSECUTION IS APPEARING BY TELEPHONE FROM TUCSON.  MR. LOUGHNER IS NOT PRESENT.

THE COURT SCHEDULED THIS TELEPHONIC CONFERENCE IN ADVANCE OF THE HEARING THAT WAS PREVIOUSLY SCHEDULED FOR THIS WEDNESDAY.  THE HEARING THIS WEDNESDAY WAS TO DETERMINE WHETHER TO GRANT AN EXTENSION OF THE TIME -- REQUESTED EXTENSION BY THE UNITED STATES FOR THE PURPOSE OF RESTORING MR. LOUGHNER TO CUSTODY.  THAT REQUEST FOR AN EXTENSION IS CONTESTED BY THE DEFENSE, AND THEY FILED PAPERS OBJECTING TO THAT.

BUT AN ISSUE AROSE FRIDAY, AND I TAKE SOME RESPONSIBILITY FOR THIS.  I SUPPOSE I SHOULD HAVE REQUIRED THE POSITIONS BE STATED SOONER THAN FRIDAY, SO WE WOULDN'T HAVE TO RUSH IN ON MONDAY TO DO THIS, AND I APOLOGIZE.

1            THE GOVERNMENT TOOK THE POSITION AS OF FRIDAY -- AND

2       THIS IS THE FIRST WE WERE ALERTED TO ON FRIDAY AFTERNOON --

3       THAT WE CAN'T GO FORWARD WITH THE WEDNESDAY HEARING WITHOUT

4       MR. LOUGHNER PRESENT.  THEY RELY ON 4247(D) AND 4241(D), BOTH

5       SECTIONS.

6            4247(D) PROVIDES THAT AT A HEARING ORDERED PURSUANT

7       TO THIS CHAPTER, THE PERSON WHOSE MENTAL COMPETENCY WAS

8       SUBJECT OF THE HEARING SHALL BE REPRESENTED BY COUNSEL, AND IF

9       HE IS FINANCIALLY UNABLE TO OBTAIN ADEQUATE REPRESENTATION

10      SHALL HAVE COUNSEL APPOINTED FOR HIM.  THE PERSON SHALL BE

11      AFFORDED AN OPPORTUNITY TO TESTIFY, PRESENT EVIDENCE, TO

12      SUBPOENA WITNESSES ON HIS BEHALF AND TO CONFRONT WITNESSES WHO

13      APPEAR AT THE HEARING.

14           THE GOVERNMENT'S POSITION IS THAT THIS EXTENSION IS

15      CONTROLLED BY 4247 AND THAT THE LANGUAGE OF 4247(D) IMPLIES A

16      RIGHT TO BE PRESENT.  OBVIOUSLY, CROSS-EXAMINATION; IN

17      PARTICULAR, CONFRONTATION IMPLIES PRESENCE.

18           THE DEFENSE HAS SAID, HE DOESN'T NEED TO BE PRESENT.

19      AND IF I UNDERSTAND CORRECTLY, MS. CLARKE, TO THE EXTENT YOU

20      THINK THAT'S REQUIRED, YOU ARE WILLING TO WAIVE HIS PRESENCE?

21           MS. CLARKE:  THAT'S CORRECT.

22           THE COURT:  THE DEFENSE POINTS OUT THAT IT IS NOT IN

23      MR. LOUGHNER'S INTEREST TO BE MOVED AND TRANSPORTED; THAT HE

24      IS SORT OF SITUATED AND THAT THE TRANSPORTATION BACK AND FORTH

25      BETWEEN TUCSON AND SPRINGFIELD IS DISRUPTIVE GIVEN THE

4

1    CIRCUMSTANCES IN HIS CONDITION.

2             DR. PIETZ WEIGHED IN ON THIS, TOO, AND SAID IT MIGHT

3    BE THERAPEUTIC BECAUSE AS IT STANDS, HE IS NOT COMMUNICATING

4    WITH HIS PARENTS BECAUSE HE IS AFRAID THE PHONE CALLS ARE

5    BEING LISTENED TO.  BEING IN TUCSON WOULD GIVE HIM AN

6    OPPORTUNITY TO HAVE PERSONAL VISITS WITH HIS PARENTS THAT

7    WOULD NOT BE MONITORED BY LISTENING EARS OR TAPE-RECORDING.

8             I AM MOSTLY CONCERNED NOT WITH THE EQUITIES HERE AND

9    WITH WHAT'S BEST FOR MR. LOUGHNER IN TERMS OF HIS MENTAL

10   HEALTH AND FACILITATING IMPORTANT COMMUNICATION WITH HIS

11   PARENTS.  I DON'T DISCOUNT THAT, BUT I AM MOSTLY CONCERNED

12   WITH WHAT THE STATUTE REQUIRES HERE.

13            THE GOVERNMENT HAS RELIES ON THE WESTON CASE.  AND

14   THERE IS NO EXPLICIT HOLDING IN WESTON WHICH IS A D.C. CASE,

15   REGARDING THE DEFENDANT'S RIGHT TO BE PRESENT AT AN EXTENSION

16   REQUEST.  BUT IT IS CLEAR TO ME THAT AT LEAST ONE OF THE

17   EXTENSIONS WAS AUTHORIZED BY JUDGE SULLIVAN IN THAT CASE BASED

18   ON AN IN-PERSON HEARING.  THE JUDGE SCHEDULED THAT AT BUTNER.

19   THE JUDGE WENT TO BUTNER.  DEFENDANT WAS PRESENT; COUNSEL WERE

20   PRESENT THERE.  SO I AM A LITTLE CONCERNED ABOUT THIS.

21            ON THE ONE OTHER HAND, PRACTICALLY SPEAKING, I

22   UNDERSTAND THE UTILITY OF YOUR NON-OPPOSITION.  IF

23   MR. LOUGHNER IS INCOMPETENT, IT APPEARS TO ME HE REMAINS

24   INCOMPETENT.  I DON'T KNOW WHAT GOOD IT WOULD DO TO HAVE HIM

25   PRESENT AT A HEARING.  LAWYERS WILL OBVIOUSLY ADVOCATE ON HIS

1    BEHALF.

2              ONE OF THE PROBLEMS HAS BEEN THAT YOU CAN'T LOOK TO

3    HIM FOR ASSISTANCE BECAUSE HE HAS NOT BEEN COMPETENT.  AND

4    FROM A LOGICAL STANDPOINT IT DOESN'T MAKE A LOT OF SENSE TO

5    DRAG HIM TO TUCSON TO ASSIST YOU IN ARGUING AGAINST THE

6    EXTENSION.

7              BUT THE LIFE OF THE LAW IS NOT LOGIC BUT EXPERIENCE,

8    THEY SAY.  AND HERE 4247(D) APPEARS TO REQUIRE PERSONAL

9    PRESENCE, AND MAYBE THAT'S BASED ON EXPERIENCE AND

10   CONSIDERATIONS I HAVE NOT TAKEN INTO CONSIDERATION.

11             ANYWAY, I AM HAPPY TO HEAR FROM YOU.  HERE IS THE

12   OTHER THING, AND THIS IS JUST A FORECAST WHERE WE ARE.  WE ARE

13   IN LIMBO HERE, BECAUSE I UNDERSTAND MY RULING FINDING THAT

14   HARPER CONTROLS AT THIS POINT ON THE QUESTION OF INVOLUNTARY

15   MEDICATION FOR DANGEROUSNESS IS THE POSITION THAT THIS COURT

16   HAS TAKEN HAS BEEN CHALLENGED AND THE APPEAL HAS BEEN ARGUED,

17   AND WE ARE WAITING FOR A DECISION FROM THE COURT OF APPEALS.

18             THE CALCULUS, I THINK, MR. KLEINDIENST, CHANGES TO

19   THIS EXTENT.  IT'S NOW CLEAR THAT THE EVALUATION PERIOD HAS

20   ENDED.  AND THE STATUTE PROVIDES FOR A PERIOD OF 120 DAYS FOR

21   EVALUATION UNDER 4241.  THERE IS NO PROVISION FOR EXTENDING

22   THE EVALUATION PERIOD AS OPPOSED TO THE PERIOD FOR

23   RESTORATION.  I COULDN'T FIND ANY CASES THAT SAY, YES, THE

24   EVALUATION PERIOD CAN BE EXTENDED BEYOND 120 DAYS.

25             THE CONFUSING PART OF THE APPLICATION THAT I GOT

1     FROM THE PRISON WAS THAT THE WARDEN IN THIS COVER LETTER ASKED

2     FOR AN EXTENSION FOR THE PURPOSE OF FURTHER EVALUATION WHEREAS

3     DR. PIETZ SAID THE PURPOSE FOR THE EXTENSION IS RESTORATION.

4     I THINK DR. PIETZ HAS IT CORRECT.  I THINK THAT THE STATUTE

5     SAYS 120 DAYS FOR EVALUATION, AND THEN ANY EXTENSION WOULD BE

6     FOR THE PURPOSE FOR RESTORATION.

7             NOW, THAT LEADS TO SOME OTHER CONCERNS ON MY PART.

8     IF NOW THE PURPOSE OF THE EXTENSION AND THE EXTENDED

9     COMMITMENT IS RESTORATION AT SPRINGFIELD, THEN I THINK THAT

10    DIRECTLY IMPLICATES SELL.  I THINK THERE IS MORE TRACTION TO

11    THE APPLICATION THAT THE DEFENDANTS HAVE MADE IN THE PAST.

12            IF I SAY, LOOK, I AM GOING TO EXTEND THE TIME THAT

13    MR. LOUGHNER REMAINS AT SPRINGFIELD AND THE PURPOSE IS TO

14    RESTORE HIM, THEN IF HE IS BEING INVOLUNTARILY MEDICATED, I

15    FEEL DIFFERENTLY ABOUT THE APPLICATION THAT THE DEFENSE HAS

16    MADE AT THIS POINT.  THEN ALL OF A SUDDEN THE COURT IS

17    ORDERING AN EXTENSION KNOWING THAT HE IS BEING INVOLUNTARILY

18    MEDICATED, I THINK IT'S INCUMBENT UPON ME TO CONDUCT A SELL

19    HEARING.

20            THE NEXT QUESTION IS WHAT'S THE NATURE OF THE SELL

21    HEARING.  AND THIS IS WHERE I NEED SOME ADDITIONAL GUIDANCE, I

22    THINK, FROM THE PARTIES.  SELL INDICATES THAT THE FIRST STEP

23    AMONG THE CONSIDERATIONS IS TO DETERMINE WHETHER INVOLUNTARY

24    MEDICATION IS JUSTIFIED ON SOME OTHER BASIS, FOR EXAMPLE,

25    HARPER.  I FOUND THAT IT IS.

1          SO THE QUESTION IS DO WE GO ANY FARTHER THAN THAT IF

2    WE REITERATE MY FINDING THAT HE CAN BE AT A SELL HEARING; THAT

3    HE CAN BE INVOLUNTARILY MEDICATED BECAUSE OF DANGEROUSNESS,

4    EITHER TO HIMSELF OR TO OTHERS.

5          A FOOTNOTE HERE:  MY UNDERSTANDING IS THAT THE

6    WARDEN REVERSED THE LAST HARPER HEARING THAT AUTHORIZED

7    INVOLUNTARY MEDICATION ON DANGER TO SELF-BASIS.  HE FOUND THAT

8    THE PROCEDURES, THE REQUIRED PROCEDURE UNDER C.F.R. WEREN'T

9    FOLLOWED, AND IF THEY WANTED TO INVOLUNTARILY MEDICATE HIM ON

10   THAT BASIS THAT THEY WOULD HAVE TO REDO THE HEARING AND HONOR

11   HIS REQUEST FOR WITNESSES.

12          SO THOSE ARE THE QUESTIONS NOW.  PRELIMINARILY I AM

13   DEALING ONLY WITH THE ISSUE THAT THE STATUTE REQUIRES THAT HE

14   BE PRESENT, WHETHER THAT OBLIGATION OR RIGHT CAN BE WAIVED.

15   AND THEN I WANT TO FORECAST THAT EVEN AT THIS HEARING TO

16   EXTEND, I THINK THE SELL HEARING THAT THE DEFENSE TEAM HAS

17   REQUESTED IS NOW FULLY IMPLICATED.

18          I THINK IT IS A GAME CHANGER AND A SIGNIFICANT EVENT

19   THAT I -- IF I DO EXTEND HIM, THE PURPOSE FOR THE EXTENSION IS

20   FOR RESTORATION.  KNOWING THAT HE IS BEING INVOLUNTARILY

21   MEDICATED, I THINK IT IS INCUMBENT UPON THE COURT AT THAT

22   POINT TO CONDUCT A SELL HEARING.  WHAT THE PARAMETERS ARE OF

23   THAT HEARING, HOW FAR WE GO WITH THE FINDINGS THAT ARE

24   REQUIRED REMAINS TO BE ARGUED AND CONSIDERED.  THOSE ARE MY

25   PRELIMINARY OBSERVATIONS.

8

1          MR. KLEINDIENST, YOU WANT TO SPEAK TO ANY OF THIS

2     FIRST?

3          MR. KLEINDIENST:  YES, YOUR HONOR.

4          GOOD AFTERNOON.

5          THE COURT:  GOOD AFTERNOON.

6          MR. KLEINDIENST:  YES, YOUR HONOR.  OF COURSE, WE

7     READ THE STATUTE THAT WITH RESPECT TO WHETHER OR NOT DEFENDANT

8     HAS -- SHOULD BE PRESENT AT A HEARING IN THIS CASE, A <u>SELL</u>

9     HEARING OR WHETHER IT'S A HEARING ON WHETHER OR NOT THERE IS A

10    PROBABILITY THAT HE WOULD BE MADE COMPETENT IN THE FUTURE.

11         OUR POSITION IS IT'S NOT CRYSTAL CLEAR, BUT OUR

12    POSITION IS THAT THAT SHOULD GUIDE THE COURT.  THE COURT

13    SHOULD OBVIOUSLY TAKE THAT INTO CONSIDERATION.  IT CERTAINLY

14    SUGGESTS THAT HE DOES HAVE A RIGHT TO BE THERE.  AND I DON'T

15    THINK THAT THAT'S THE TYPE OF RIGHT THAT DEFENDANTS CAN WAIVE.

16         THE COURT:  WHY DO YOU SAY THE LATTER?  BECAUSE

17    REASONABLY AND LOGICALLY IT SEEMS TO ME LIKE JUST THE TYPE OF

18    RIGHT THAT CAN BE WAIVED BECAUSE HE IS STILL INCOMPETENT.  NO

19    ONE DISPUTES THAT.  HE IS NOT RESTORED.  HE IS NOT COMPETENT.

20    AND MY FINDINGS ON INCOMPETENCY FOUND NOT ONLY DID HE NOT

21    FULLY UNDERSTAND THE NATURE OF THE PROCEEDINGS BUT THAT HE

22    WASN'T ABLE TO ASSIST COUNSEL.

23         SO IT SEEMS LIKE LOGICALLY IT WOULD BE FUTILE TO

24    REQUIRE HIM TO BE THERE, BECAUSE COUNSEL HAVE CONTINUED TO TRY

25    TO COMMUNICATE WITH HIM.  I DON'T KNOW WHAT EXACTLY THEIR

1    SCHEDULE HAS BEEN IN VISITING HIM, BUT I KNOW THEY HAVE

2    VISITED HIM, AND THEY MADE THE ASSESSMENT THAT HE DOESN'T NEED

3    TO BE THERE.

4          MS. CLARKE, I AM ASSUMING IMPLICIT IN THAT IS THAT

5    YOU DON'T THINK HE COULD HELP YOU.  LET'S JUST TALK ABOUT THE

6    EXTENSION HEARING NOT ANY SUBSEQUENT SELL HEARING.  YOU DON'T

7    THINK HE COULD HELP YOU ADVOCATE AGAINST AN EXTENSION?

8          MS. CLARKE:  NO.  YOUR HONOR, WE WAIVE HIS PRESENCE.

9    YOU HAVE SEEN THE DESCRIPTIONS OF MR. LOUGHNER'S CONDITION.

10   HE IS ON SUICIDE WATCH.  HE HAS BEEN DESCRIBED AS GRAVELY

11   DISABLED.  WE THINK IT'S AN UNNECESSARY RISK TO BRING HIM TO A

12   HEARING.

13          PRESENCE SORT OF PRESUMES COMPETENCY.  SO WE WOULD

14   WAIVE HIS PRESENCE AT THE EXTENSION HEARING.  WE DON'T SEE

15   ANYTHING IN THE STATUTE THAT REQUIRES IT, PERMITS IT.  HE IS

16   AFFORDED THOSE RIGHTS.  HE HAS COUNSEL, AND COUNSEL IS ACTING

17   IN HIS BEST INTEREST.  I THINK IF THE COURT SAW SOME

18   INDICATION THAT COUNSEL WAS NOT ACTING IN THIS BEST INTEREST

19   THAT IT WOULD BE --

20          THE COURT:  I HAVE NO SUCH INDICATION.  LET ME ASK

21   YOU THIS MORE PARTICULARLY.  I AM NOT -- I HAVE NO INTENTION

22   OF INVADING YOUR ATTORNEY-CLIENT COMMUNICATIONS.

23          BUT HAS SOME MEMBER OF THE DEFENSE TEAM AT LEAST

24   RAISED WITH MR. LOUGHNER, ATTEMPTED TO RAISE WITH HIM THE

25   POSSIBILITY OF HIM BEING PRESENT AT HIS EXTENSION HEARING

1    THAT'S NOW SET FOR WEDNESDAY AND DISCUSSED THIS WITH HIM AND

2    SAID, "OUR INTENTION IS TO KEEP YOU HERE AND WE ARE GOING TO

3    ADVOCATE ON YOUR BEHALF"?

4           MS. CLARKE:  YOUR HONOR, THIS ISSUE WAS RAISED ON

5    FRIDAY.  SO I AM NOT PREPARED TO GIVE THE COURT ANY OTHER

6    INFORMATION THAN THAT.

7           MR. KLEINDIENST:  YOUR HONOR --

8           THE COURT:  GO AHEAD, MR. KLEINDIENST.

9           MR. KLEINDIENST:  WELL, THAT WILL ACTUALLY RAISE MY

10   NEXT POINT.  MR. LOUGHNER WANTS TO BE AT THE HEARING.  HE VERY

11   MUCH IS CONCERNED THAT HE NOT BE PERMITTED TO BE AT THE

12   HEARING.  HE HAS TOLD DR. PIETZ REPEATEDLY WHEN THE HEARING IS

13   GOING TO BE HELD, ARE YOU GOING BACK TO THE HEARING.  HE HAS

14   TOLD HER HE WANTS TO BE PRESENT AT THE HEARING.  HE HAS TOLD

15   HER THAT HE WANTS TO BE PRESENT WHEN THINGS ARE DISCUSSED

16   ABOUT HIM BECAUSE HE IS HEARING IT SECONDHAND, AND HE

17   UNDERSTANDS WHAT THE HEARING IS ABOUT, AND HE HAS UNDERSTOOD

18   FOR THE LAST COUPLE OF WEEKS WHAT THE HEARING IS ABOUT.  HE

19   UNDERSTANDS THAT THE HEARING IS ABOUT WHETHER OR NOT HE IS TO

20   BE CONTINUED ON MEDICATION INVOLUNTARILY.

21          THE COURT:  THAT'S NOT EXACTLY CORRECT.  AS I

22   FORECAST, I THINK THAT'S AN ISSUE THAT IS TIMELY NOW AND THAT

23   WE HAVE TO GET TO.  BUT THE IMMEDIATE ISSUE IS WHETHER THERE

24   IS ENOUGH EVIDENCE TO SUPPORT AN EXTENSION ON THE SUBSTANTIAL

25   PROBABILITY THAT HE CAN BE RESTORED.  HOW THEY RESTORE HIM AND

1    WHAT DUE PROCESS RIGHTS HE HAS DURING THAT PERIOD IS A

2    SECONDARY ISSUE.  IT'S ONE I INTEND TO GET TO ULTIMATELY.  BUT

3    THE IMMEDIATE ISSUE IS JUST THIS QUESTION OF WHETHER AN

4    EXTENSION IS WARRANTED, MR. KLEINDIENST, FOR THE PURPOSE OF

5    ATTEMPTING TO RESTORE HIM AND WHETHER THE GOVERNMENT CAN SHOW

6    A SUBSTANTIAL PROBABILITY OF THAT.

7              MR. KLEINDIENST:  THAT'S EVIDENCE AT THE HEARING.

8    BASICALLY --

9              THE COURT:  WHAT'S YOUR SOURCE, MR. KLEINDIENST?  I

10   AM NOT CHALLENGING YOU AT ALL, BUT I AM INTERESTED IN WHAT

11   YOUR SOURCE OF INFORMATION IS.  IS IT DR. PIETZ'S REPORTS TO

12   THE U.S. ATTORNEY'S OFFICE THAT LEADS YOU TO MAKE THE PROFFERS

13   THAT YOU HAVE MADE REGARDING MR. LOUGHNER'S OWN INTENTIONS?

14             MR. KLEINDIENST:  YOUR HONOR, WE HAVE KNOWN THAT FOR

15   A WHILE.  I CONFIRMED THAT WITH DR. PIETZ DIRECTLY TODAY.

16   AGAIN, SHE IS AVAILABLE BY PHONE.  I THINK THAT ALTHOUGH

17   MS. CLARKE SAYS THAT TRAVEL FROM SPRINGFIELD TO TUCSON WON'T

18   BE GOOD FOR THE DEFENDANT, SHE IS NOT A DOCTOR.  DR. PIETZ IS

19   HIS DOCTOR.  SHE UNDERSTANDS WHAT WOULD BE INVOLVED IF YOU

20   BROUGHT HIM TO TUSCON.  I THINK WE SHOULD GET DR. PIETZ ON THE

21   PHONE.  I THINK THAT WE HAVE AN OBLIGATION TO TELL THE COURT

22   THE DEFENDANT HIMSELF WANTS TO BE PRESENT AT THIS HEARING.

23             THE COURT:  NO, I GET THAT.  I ACCEPT WHAT YOU ARE

24   SAYING.  I AM JUST ASKING WHAT THE SOURCE IS.

25             MR. KLEINDIENST:  DR. PIETZ.

1           THE COURT:  AND SHE -- DR. PIETZ TOLD YOU THAT

2   MR. LOUGHNER HAS COMMUNICATED THOSE INTENTIONS TO HER?

3           MR. KLEINDIENST:  EXACTLY.

4           IN FACT, WHEN SHE TOLD HIM THAT HE WILL NOT BE

5   GOING, HE BECAME VERY ANGRY AT HER BECAUSE HE FELT LIKE SHE

6   WAS LETTING HIM DOWN.  SO I WOULD SUGGEST THE COURT HAS A

7   HEARING, GET HER ON THE PHONE AND TALK TO HER DIRECTLY.  SHE

8   IS THE ONE WHO IS IN THE BEST POSITION TO KNOW.

9           THE COURT:  I'LL ONLY DO THAT IF THERE IS SOME

10  CONTEST ABOUT WHAT YOU REPRESENT SHE SAID.  I AM PREPARED TO

11  ACCEPT THAT HE HAS MADE THOSE STATEMENTS TO DR. PIETZ AND SHE

12  HAS REPEATED THEM ACCURATELY TO YOU.

13          MS. CLARKE, UNLESS YOU CONTEST THAT, I DON'T THINK

14  WE NEED TO TALK TO DR. PIETZ.  APPARENTLY HE HAS TAKEN A

15  DIFFERENT POSITION FROM THE POSITION HIS LAWYERS ADVOCATE WITH

16  THE DOCTOR AND HE SAYS HE WANTS TO BE PRESENT.

17          MS. CLARKE:  WE GET WEEKLY PRODUCTIONS OF RECORDS.

18  I HAVE NOT SEEN THAT IN THE RECORDS.  I HAVE NO WAY OF

19  KNOWING.  BUT APPARENTLY, THE U.S. ATTORNEY HAS TALKED TO

20  DR. PIETZ ABOUT INFORMATION THAT SHE HAS THAT SHE HASN'T

21  SHARED WITH THE RECORDS.

22          THE COURT:  WOULD YOU WANT TO HEAR FROM DR. PIETZ

23  DIRECTLY?  WOULD THAT INFLUENCE YOU?  I AM ASSUMING IF YOUR

24  CLIENT IS SAYING, "LOOK, I WANT TO BE THERE," THAT YOU WOULD

25  DEFER TO HIM.

1      MS. CLARKE:  WELL, IT IS SORT OF AN ODD POSITION TO

2  BE IN.  HE IS INCOMPETENT, ON SUICIDE WATCH.  YOU HAVE SEEN

3  THE DESCRIPTION OF HIM IN THE RECORDS LIKE WE HAVE SEEN THE

4  DESCRIPTION OF HIM IN THE RECORDS.  DR. PIETZ TOLD US BY

5  TELEPHONE CONVERSATION ON I THINK THE 26TH OF AUGUST THAT HE

6  DIDN'T UNDERSTAND HIS LEGAL RIGHTS ENOUGH TO APPRECIATE

7  WHETHER VIDEOTAPING WOULD BE SECURING HIS RIGHTS.

8      WE HAVE ATTACHED TO OUR PLEADING THE AUGUST 25TH 549

9  HEARING, AND I CAN JUST READ A LITTLE BIT OF WHAT

10 MR. LOUGHNER'S APPEARANCE AT THAT HEARING WAS AND THAT'S A

11 HEARING, I THINK, BY HIS SELL.

12      "DURING THE HEARING, MR. LOUGHNER APPEARED DEJECTED,

13 ANXIOUS AND PACED FROM ONE SIDE OF THE DOOR OF THE CELL TO THE

14 OTHER.  HE MADE EYE CONTACT INTERMITTENTLY AND APPEARED MOST

15 OF THE TIME CLOSE TO TEARS."

16      THE COURT:  I DON'T THINK IT'S -- LOOK, MY OWN

17 INSTINCT IS IT'S NOT GOING TO BE HELPFUL.  I DON'T THINK MUCH

18 HAS CHANGED IN TERMS OF FEASIBILITY TO ASSIST YOU.

19      ON THE OTHER HAND, I HAVE A STATUTE THAT APPEARS TO

20 ME TO REQUIRE PERSONAL PRESENCE.  I THINK IT COULD BE WAIVED

21 BY HIS COUNSEL IF HE WERE IN AGREEMENT, BUT NOW I AM GETTING

22 CONTRARY INFORMATION THAT HE IS NOT IN AGREEMENT WITH THAT.

23      LET'S SEE WHAT DR. PIETZ SAYS.  LET'S SEE WHAT SHE

24 RECOUNTS ABOUT HIS MOST RECENT PRONOUNCEMENTS ABOUT THIS

25 PARTICULAR HEARING.

1          MR. KLEINDIENST, YOU HAVE HER NUMBER HANDY?  WE WILL

2    TRY TO CONFERENCE HER IN.

3          MR. KLEINDIENST:  JUDGE, I THINK WE DO.

4          THE COURT:  TISH, CAN YOU ARRANGE A THREE-PARTY

5    CONFERENCE WHERE YOU GET DR. PIETZ ON ALSO?

6          THE CLERK:  YES, BUT I HAVE TO HANG UP AND WE'LL

7    START ALL OVER AGAIN.

8          THE COURT:  LET'S DO THAT.

9          MR. KLEINDIENST:  JUDGE --

10          THE COURT:  YES, MR. KLEINDIENST.

11          MR. KLEINDIENST:  HER NUMBER IS (417) 862-7041,

12    EXTENSION 1444.

13          THE COURT:  I'LL HAVE THE CLERK REPEAT IT BACK TO

14    YOU.

15          THE CLERK:  (417) 862-7041, EXTENSION 1444.

16          MR. KLEINDIENST:  I COULDN'T HEAR IT.

17          THE CLERK:  (417)862-7041, EXTENSION 1444.

18          MR. KLEINDIENST:  THAT'S CORRECT.

19          THE CLERK:  I AM INFORMED BY THE CHECK WE NEED TO

20    HANG UP.  SHE WILL CALL BACK AND GET EVERYBODY ON AND WE'LL

21    CONTINUE WITH THIS.  IF YOU'LL JUST STAND BY AT THE PHONE.

22          YOU'LL HAVE MR. KLEINDIENST'S PHONE NUMBER, TOO,

23    RIGHT, TISH?

24          THE CLERK:  I DO, YOUR HONOR.

25          THE COURT:  WE WILL STAND BY FOR TWO MINUTES, AND

1    WE'LL TRY TO GET EVERYBODY ON LINE.

2            MR. KLEINDIENST:  THAT'S CORRECT, JUDGE.

3                    (SHORT RECESS)

4            THE COURT:  WE ARE ON THE RECORD, MR. KLEINDIENST.

5    YOU AND THE CO-PROSECUTORS ARE PRESENT?

6            MR. KLEINDIENST:  YES, YOUR HONOR.

7            THE COURT:  AND THE DEFENSE COUNSEL ARE ALL PRESENT.

8            DR. PIETZ, ARE YOU WITH US?

9            DR. PIETZ:  I AM, YOUR HONOR.

10           THE COURT:  DR. PIETZ, I AM TRYING TO DECIDE WHETHER

11   TO GO FORWARD WITH THE HEARING ON WEDNESDAY IN THE ABSENCE OF

12   MR. LOUGHNER OR GO FORWARD WITH MR. LOUGHNER BEING PRESENT IN

13   TUCSON ON WEDNESDAY OR THE NEXT AVAILABLE DATE WHERE HE CAN BE

14   TRANSPORTED.  I UNDERSTAND THERE MIGHT BE SOME LOGISTICAL

15   PROBLEMS NOW GETTING HIM THERE ON WEDNESDAY.

16           THE DEFENSE IS WILLING TO WAIVE HIS PRESENCE.  THE

17   ISSUE TO BE DECIDED ON WEDNESDAY IS WHETHER HIS COMMITMENT AT

18   SPRINGFIELD SHOULD BE EXTENDED FOR THE PURPOSE OF RESTORING

19   COMPETENCY.  YOU HAVE TAKEN THE POSITION THAT YOU BELIEVE THAT

20   HIS COMPETENCY CAN BE RESTORED WITH AN EXTENDED COMMITMENT.

21   THE STANDARD REQUIRES THAT THE GOVERNMENT HAS TO CONVINCE ME

22   BY SUBSTANTIAL PROBABILITY OF THE LIKELIHOOD OF THAT.

23           BUT THOSE ARE THE BROAD QUESTIONS.  THE NARROWER

24   QUESTION IS WHETHER MR. LOUGHNER HAS A RIGHT TO BE PRESENT,

25   WHETHER THAT RIGHT CAN BE WAIVED AND WHAT HIS PERSONAL

1    PREFERENCE IS.

2           TO BRING YOU FULLY UP TO SPEED, MS. CLARKE ON

3    MR. LOUGHNER'S BEHALF SAYS SHE IS WILLING TO WAIVE HIS RIGHT

4    TO BE PRESENT.  SEEMS TO ME TO BE LOGICAL GIVEN THAT HE IS

5    NOT -- I FOUND THAT HE IS NOT COMPETENT AT THIS POINT, HAS NOT

6    BEEN RESTORED TO COMPETENCY.  I SEE SOME FUTILITY IN

7    TRANSPORTING HIM TO TUCSON PUTTING HIM THROUGH THAT WHEN HE

8    CAN'T BE OF GREAT ASSISTANCE IN THE MATTER TO BE DETERMINED.

9           ON THE OTHER HAND, THE STATUTE SEEMS TO APPLY A

10   RIGHT TO BE PRESENT.  I WOULD HONESTLY TELL YOU THAT IT WOULD

11   GIVE ME PAUSE IF I KNEW PERSONALLY HE HAD SAID HE WANTED TO BE

12   PRESENT AT THAT PARTICULAR HEARING.  I WOULD BE RELUCTANT TO

13   TAKE A WAIVER FROM HIS COUNSEL IF HE HAS EXPRESSED A DESIRE TO

14   BE PRESENT.

15          SO, MR. KLEINDIENST TELLS US THAT HE HAS HAD SOME

16   CONVERSATIONS WITH YOU IN WHICH YOU RECOUNTED CONVERSATIONS

17   WITH MR. LOUGHNER IN WHICH HE HAS EXPRESSED A DESIRE TO BE

18   PERSONALLY PRESENT AT THIS EXTENSION HEARING.

19          CAN YOU PLEASE INFORM US ABOUT THE CONTEXT OF THOSE

20   CONVERSATIONS?

21          DR. PIETZ:  WELL, WHEN I LEFT THE OFFICE ON FRIDAY,

22   IT WAS MY BELIEF THAT HE WAS GOING TO BE AT THE HEARING ON

23   WEDNESDAY.  SO MY BOSS, DR. RANDY BRANDT, WAS ACTUALLY THE

24   ON-CALL PSYCHOLOGIST, AND I ASKED HIM TO INFORM MR. LOUGHNER

25   THAT HE WOULD BE ATTENDING THE HEARING.  AND HE INDICATED --

1    AND DR. BRANDT ACTUALLY DOCUMENTED HIS NOTE FROM SATURDAY.

2    MR. LOUGHNER INDICATED THAT HE WANTED TO ATTEND THE HEARING

3    AND WAS INTERESTED IN DOING THAT.  IT SEEMED TO INDICATE TO

4    DR. BRANDT HE UNDERSTOOD WHAT THE PURPOSE OF THE HEARING WAS.

5          THE COURT:  DID YOU SPEAK WITH DR. BRANDT OR DID YOU

6    READ THAT IN A REPORT?

7          DR. PIETZ:  I READ IT IN HIS PROGRESS NOTE.

8          THE COURT:  HAVE YOU SPOKEN ON THIS PARTICULAR

9    SUBJECT WITH MR. LOUGHNER YOURSELF?

10         DR. PIETZ:  I TALKED TO HIM THIS MORNING ABOUT IT.

11   THIS MORNING I LEARNED THAT THE TRIP WAS CANCELED AND THAT HE

12   WOULD NOT BE ATTENDING THE HEARING.  AND WHEN I INFORMED HIM

13   OF THAT, HE WAS DISAPPOINTED.  AND I DON'T KNOW IF -- I DON'T

14   KNOW HOW TO INTERPRET HIS BEHAVIOR.  HE WOULD NOT TALK TO ME

15   AFTER I TOLD HIM THAT HE WAS NOT GOING TO ATTEND THE

16   HEARING.

17         THE COURT:  IS YOUR VIEW BASED ON REVIEW OF

18   DR. BRANDT'S REPORT AND YOUR OWN INTERACTION WITH THE

19   DEFENDANT THAT HE DESIRES TO BE PRESENT AT THE EXTENSION

20   HEARING?

21         DR. PIETZ:  I THINK HE DESIRES TO BE THERE.  I ALSO

22   THINK HE SEES THIS AS AN OPPORTUNITY TO POSSIBLY VISIT HIS

23   MOTHER AND FATHER.

24         THE COURT:  I THINK YOU MENTIONED THAT IN YOUR -- IN

25   ONE OF THE REPORTS THAT I READ THAT HE BELIEVES HIS CALLS ARE

COMPUTER-AIDED TRANSCRIPTION

1    BEING MONITORED AND HE DOESN'T HAVE PRIVACY, AND HE WANTS AN

2    OPPORTUNITY TO SPEAK IN PRIVATE WITH HIS PARENTS.

3              DR. PIETZ:  CORRECT.

4              THE COURT:  MS. CLARKE, DO YOU HAVE ANY QUESTIONS OF

5    DR. PIETZ?

6              MS. CLARKE:  IF I COULD.  HI, DR. PIETZ.  THIS IS

7    JUDY CLARKE.

8              DR. PIETZ:  HI, MS. CLARKE.

9              THE COURT:  BEFORE YOU GO, DO YOU SEE A NEED FOR ME

10   TO PUT DR. PIETZ UNDER OATH FOR THIS?

11             MS. CLARKE:  N -- NO.

12             THE COURT:  DR. PIETZ?

13             DR. PIETZ:  YES?

14             THE COURT:  THIS SOUNDS ODD WHEN YOU DO IT BY

15   TELEPHONE, BUT RAISE YOUR RIGHT HAND.

16             DR. PIETZ:  OKAY.

17             THE COURT:  YOU SWEAR THAT THE INFORMATION YOU ARE

18   ABOUT TO GIVE IN RESPONSE TO QUESTIONS PUT TO YOU BY COUNSEL

19   BE THE TRUTH SO HELP YOU GOD?

20             DR. PIETZ:  I DO.

21             THE COURT:  GO AHEAD, MS. CLARKE.

22             MS. CLARKE:  DR. PIETZ, I HEARD WHEN YOU WEREN'T ON

23   THE PHONE WHEN THE PROSECUTOR REPRESENTED A LITTLE WHILE AGO

24   THAT YOU ACTUALLY DISCUSSED THIS UPCOMING HEARING WITH

25   MR. LOUGHNER WEEKS AGO.  SO THAT'S NOT CORRECT; RIGHT?

1          DR. PIETZ:  NO, THAT IS CORRECT.  I ACTUALLY HAVE

2     BEEN TELLING HIM ALL ALONG THAT I WAS GOING TO REQUEST AN

3     EXTENSION.

4          ONE OF MY CONCERNS REGARDING MY RELATIONSHIP WITH

5     HIM IS HE FEELS THAT HE HEARS THINGS ON THE TV OR HEARS THEM

6     FROM OTHER PEOPLE AND ISN'T HEARING THEM DIRECTLY FROM ME.  SO

7     I MADE A PROMISE TO HIM THAT I'D SHARE WITH HIM WHAT MY

8     POSITION WAS.  AND ALSO IF THERE WAS A POSSIBILITY THAT I WAS

9     GOING TO TESTIFY IN HIS CASE.  I TOLD HIM I WOULD LET HIM KNOW

10    THAT.

11          AND SO WHEN I REQUESTED THE EXTENSION WHICH -- I

12    DON'T RECALL THE FIRST DATE OR REPORT, I TOLD HIM THAT I HAD

13    ACTUALLY WRITTEN A REPORT REQUESTING AN EXTENSION.  HE HAD

14    KNOWN FOR QUITE SOMETIME THAT A HEARING IS SCHEDULED SEPTEMBER

15    21ST.  AND SO HE HAD QUERIED ME A COUPLE OF TIMES IF THE

16    HEARING WAS GOING TO TAKE PLACE, IF I AM GOING TO APPEAR AT

17    THE HEARING OR IF HE WOULD APPEAR AT THE HEARING.

18          MS. CLARKE:  I TAKE IT THAT YOU DOCUMENTED THOSE

19    CONVERSATIONS IN YOUR PROGRESS REPORTS?

20          DR. PIETZ:  I DON'T KNOW IF I DOCUMENTED

21    SPECIFICALLY THOSE THINGS.  I DID DOCUMENT TODAY WHAT MY

22    CONVERSATION WAS ABOUT.

23          MS. CLARKE:  BUT THE PREVIOUS CONVERSATIONS ABOUT

24    THE SEPTEMBER 21ST HEARING AND YOUR TESTIMONY YOU DON'T

25    BELIEVE HAVE BEEN DOCUMENTED?

1          DR. PIETZ:  I DON'T THINK I DOCUMENTED THAT, THE

2     CONVERSATION WITH HIM THAT I REQUESTED AN EXTENSION.

3          MS. CLARKE:  IS THERE A REASON YOU WOULD NOT

4     DOCUMENT THAT?

5          DR. PIETZ:  WELL, YES, BECAUSE I KNEW THAT YOU WOULD

6     BE READING MY NOTES.

7          MS. CLARKE:  AND WE WOULD DO WHAT WITH THAT?

8          DR. PIETZ:  WELL, I WASN'T SURE WHAT YOU WOULD DO

9     WITH THAT, BUT I DIDN'T WANT TO DOCUMENT THAT.

10          MS. CLARKE:  SO THAT WE WOULD BE KEPT IN THE DARK

11     ABOUT YOUR INCLINATIONS?

12          DR. PIETZ:  MY OBLIGATION IS TO THE JUDGE.  I HAVE

13     TO LET THE JUDGE KNOW WHAT MY OPINION IS FIRST.  IF I HAD

14     DOCUMENTED IN THE CHART THAT I WAS REQUESTING AN EXTENSION,

15     THEN I WOULD BE VIOLATING THAT WITH THE JUDGE.

16          MS. CLARKE:  ARE THERE OTHER ITEMS LIKE THAT THAT

17     YOU LEAVE OUT OF YOUR PROGRESS NOTES?

18          DR. PIETZ:  IF IT WERE MY OPINION THAT HE WAS

19     COMPETENT TO STAND TRIAL, I WOULD NOT DOCUMENT THAT IN THE

20     RECORD.  I WOULD DOCUMENT THAT IN THE REPORT THAT I SEND TO

21     THE JUDGE FIRST.

22          MS. CLARKE:  DO YOU HAVE ANY INDICATION THAT

23     MR. LOUGHNER UNDERSTANDS WHAT THIS HEARING ACTUALLY IS ABOUT

24     ON THE 21ST?

25          DR. PIETZ:  I DO THINK HE UNDERSTANDS THAT IT'S TO

1    REQUEST AN EXTENSION.

2              MS. CLARKE:  DO YOU THINK HE HAS ANY APPRECIATION

3    FOR WHAT THAT MEANS?

4              DR. PIETZ:  HE UNDERSTANDS THAT IT MEANS HE CAN STAY

5    IN SPRINGFIELD FOR A MORE EXTENDED PERIOD OF TIME.

6              MS. CLARKE:  IS IT CORRECT THAT ON REGULAR OCCASIONS

7    MR. LOUGHNER TELLS YOU HE WOULD PREFER TO BE IN TUCSON?

8              DR. PIETZ:  YES.

9              MS. CLARKE:  AND YOU HAVE TOLD HIM THAT THIS

10   HEARING, IF IT GOES FORWARD, WOULD BE IN TUCSON?

11             DR. PIETZ:  YES.

12             MS. CLARKE:  SO IS IT POSSIBLE THAT HE IS THINKING

13   THAT'S A WAY FOR HIM TO BE IN TUCSON AND NOT IN SPRINGFIELD?

14             DR. PIETZ:  YES, THAT'S ENTIRELY POSSIBLE.

15             MS. CLARKE:  AND NOT BECAUSE THERE IS A HEARING AT

16   WHICH CERTAIN RIGHTS WILL BE DISCUSSED?

17             DR. PIETZ:  YOU ARE ASKING ME TWO DIFFERENT THINGS.

18   I DO THINK HE HAS AN ULTERIOR MOTIVE WHY HE WANTS TO BE IN

19   TUCSON.  I THINK HE WANTS TO VISIT HIS MOTHER AND FATHER.  IN

20   ADDITION TO THAT, HE UNDERSTANDS THAT THERE IS A HEARING TO

21   MAKE A DETERMINATION IF HE CAN BE HAVING AN EXTENDED STAY IN

22   SPRINGFIELD.  AND THAT WOULD ALSO MEAN THAT HE WOULD CONTINUE

23   TO BE MEDICATED.

24             MS. CLARKE:  IS THAT DIFFERENT THAN WHEN YOU ADVISED

25   HIM ABOUT THE PURPOSES OF HIS FOUR-MONTH COMMITMENT WHERE YOU

1    SAID HE DIDN'T THINK HE UNDERSTOOD THE PURPOSES OF THE

2    COMMITMENT?

3            DR. PIETZ:  I AM NOT SURE WHAT YOU ARE ASKING ME.

4            MS. CLARKE:  IN YOUR AUGUST 22ND REPORT, YOU RECOUNT

5    SOME INFORMATION FOR THE COURT, AND YOU ARE TELLING THE COURT

6    THAT LOUGHNER SAID HE UNDERSTOOD THE CONDITIONS OF THE STUDY,

7    BUT YOU ALSO CONCLUDE THAT YOU DON'T THINK HE REALLY

8    UNDERSTOOD THE PURPOSE OF THE STUDY; RIGHT?

9            DR. PIETZ:  I THINK YOU ARE REFERENCING WHAT I DID

10    INITIALLY, WHEN I DID THE INITIAL EXPLANATION OF THE

11    EVALUATION WHEN HE RETURNED HERE THE SECOND TIME?

12            MS. CLARKE:  UH-HUH, YES.

13            DR. PIETZ:  THAT EXPLANATION WAS GIVEN SEVERAL

14    MONTHS PRIOR TO AUGUST.

15            MS. CLARKE:  OKAY.

16            AND THEN WHEN YOU TESTIFIED BY TELEPHONE JUST TWO OR

17    THREE WEEKS AGO, I GUESS IT WAS, YOU INDICATED YOU DIDN'T

18    THINK MR. LOUGHNER UNDERSTOOD HIS RIGHTS IN CONTEXT OF OUR

19    REQUEST FOR HIM TO BE VIDEOTAPED; RIGHT?  YOU RECALL TELLING

20    THE COURT --

21            DR. PIETZ:  I REMEMBER MY TESTIMONY.  I DON'T RECALL

22    THAT THAT'S EXACTLY WHAT I WAS BEING ASKED.

23            MS. CLARKE:  I THINK YOU SAID THAT YOU WEREN'T SURE

24    THAT HE WOULD UNDERSTAND THAT IT WAS TO PROTECT HIS LEGAL

25    RIGHTS?

1          DR. PIETZ:  CORRECT.  VIDEOTAPING, CORRECT.

2          MS. CLARKE:  RIGHT.  BUT IT'S YOUR TESTIMONY TODAY

3   THAT HE UNDERSTANDS THE NATURE OF THE HEARING ON THE 21ST OF

4   SEPTEMBER?

5          DR. PIETZ:  IT'S MY TESTIMONY TODAY THAT

6   MR. LOUGHNER HAS SAID TO ME HE UNDERSTANDS THAT THE HEARING ON

7   SEPTEMBER 21ST IS TO DECIDE IF HIS EVALUATION CAN BE

8   EXTENDED.

9          MS. CLARKE:  AND HAVE YOU PROBED THAT UNDERSTANDING

10  WITH HIM AT ALL?

11         DR. PIETZ:  NO.

12         MS. CLARKE:  ONE MORE QUESTION.

13         YOU INDICATED THAT THERE WOULD BE TIMES WHEN YOU

14  WOULDN'T PUT SOMETHING IN THE REPORT, IN THE P.O.B. RECORDS

15  BECAUSE WE MIGHT SEE THEM?

16         DR. PIETZ:  CORRECT.

17         MS. CLARKE:  DO YOU KEEP NOTES SEPARATE FROM THOSE

18  P.O.B. RECORDS?

19         DR. PIETZ:  WELL, I HAVE WHEN I DID THE FIRST

20  EVALUATION, YES.  I KEEP PERSONAL NOTES ON SOCIAL HISTORY,

21  COMPETENCY-RELATED QUESTIONS.  THOSE ARE ALL PERSONAL NOTES,

22  AND THAT INFORMATION IS NOT INCLUDED IN THE MEDICAL RECORD.  I

23  HAVE NOT KEPT ANY PERSONAL NOTES SINCE HE HAS BEEN RETURNED

24  HERE FOR RESTORATION OF COMPETENCY.

25         THE COURT:  ANYTHING ELSE, MS. CLARKE?

1          MS. CLARKE:  NO, THANK YOU, YOUR HONOR.

2          THANK YOU, DR. PIETZ.

3          THE COURT:  MR. KLEINDIENST, ANY QUESTIONS?

4          MR. KLEINDIENST:  DR. PIETZ, HAS MR. LOUGHNER'S

5   PHYSICAL PRESENCE CHANGED SINCE THAT TIME HE WAS IN COURT?

6          DR. PIETZ:  YES.

7          MR. KLEINDIENST:  HOW SO?

8          DR. PIETZ:  THERE ARE A COUPLE OF THINGS THAT HAVE

9   CHANGED.  PRIOR TO BEING MEDICATED, HE DIDN'T MAINTAIN EYE

10  CONTACT WHICH IS ACTUALLY A SYMPTOM OF PSYCHOSIS.  HE NOW

11  MAINTAINS REGULAR EYE CONTACT.  HIS HYGIENE HAS IMPROVED.  IT

12  IS ACTUALLY NOT -- TODAY IT'S WORSE THAN IT WAS WHEN I SAW HIM

13  ON FRIDAY.

14         MR. KLEINDIENST:  HE WAS TOLD THAT HE WASN'T GOING

15  TO COME TO THE HEARING?

16         DR. PIETZ:  NO, BECAUSE HE WASN'T TOLD UNTIL THIS

17  MORNING.  HE DIDN'T TAKE A SHOWER.  HE HASN'T TAKEN A SHOWER

18  YET TODAY, AND I DON'T THINK HE SHOWERED YESTERDAY.  HE PACES

19  LESS THE PAST COUPLE OF WEEKS.  THERE WAS A TIME WHEN EVERY

20  CONVERSATION YOU HAD WITH HIM HE PACED CONSISTENTLY.  IN THE

21  PAST WEEK HE HAS BEEN ABLE TO SIT ON THE BED AND ACTUALLY

22  CONVERSE WITH US WITHOUT PACING BACK AND FORTH.

23         MR. KLEINDIENST:  WOULD IT BE HELPFUL FOR THE COURT

24  TO SEE HIS APPEARANCE, HIS PHYSICAL APPEARANCE AND DEMEANOR?

25         DR. PIETZ:  I THINK IT WOULD BE HELPFUL FOR THE

25

1    JUDGE TO MAKE A DETERMINATION THAT THE MEDICATION IS HELPING

2    IMPROVE HIM.

3          MR. KLEINDIENST:  WHEN YOU TOLD HIM THIS MORNING

4    THAT HE WAS NOT GOING TO THE HEARING IN TUCSON, YOU TESTIFIED

5    THAT HE GOT ANGRY.  WHAT WAS THAT AGAIN?  CAN YOU JUST CLARIFY

6    THAT?

7          DR. PIETZ:  HE WOULDN'T TALK TO ME.  ONCE HE LEARNED

8    THAT HE WASN'T GOING TO TUCSON, HE WOULD NOT TALK TO ME.

9          MR. KLEINDIENST:  HOW DO YOU INTERPRET THAT?

10          DR. PIETZ:  I THINK HE IS DISAPPOINTED, AND I AM

11    CONCERNED THAT HE BLAMES ME THAT HE IS NOT GOING TO BE GOING

12    TO TUCSON.  IT IS ON THE CONVERSATION THAT I HAD WITH HIM, AND

13    HE AND I WILL HAVE TO TALK ABOUT TOMORROW, BUT MY CONCERN IS

14    HE BLAMES ME FOR THIS.

15          MR. KLEINDIENST:  SO HE REALLY HAS A STRONG DESIRE?

16          DR. PIETZ:  AGAIN, I THINK HE DOES HAVE A STRONG

17    DESIRE TO GO.  AND I DO THINK PART OF THAT IS HE VIEWS IT AS

18    AN OPPORTUNITY TO SEE HIS MOTHER AND FATHER.

19          MR. KLEINDIENST:  IT WOULD ALSO BE AN OPPORTUNITY TO

20    BE PRESENT IN THE HEARING INVOLVING HIS WELL-BEING AND THE

21    FUTURE OF HIS COMMITMENT; CORRECT?

22          DR. PIETZ:  YES.

23          MR. KLEINDIENST:  THAT'S ALL I HAVE, YOUR HONOR.

24          THE COURT:  ANY OTHER QUESTIONS, MS. CLARKE?

25          MS. CLARKE:  JUST ONE MORE.

1           IF MR. LOUGHNER COMES TO TUCSON, DO YOU HAVE ANY

2    IDEA, DR. PIETZ, HOW LONG HE WOULD BE LEFT THERE TO SEE HIS

3    PARENTS?

4           DR. PIETZ:  NO, THAT WOULD BE UP TO THE JUDGE.

5           MR. KLEINDIENST:  I AM SORRY, JUDGE.  I HAVE ONE

6    LAST QUESTION, DR. PIETZ.

7           DR. PIETZ, DO YOU KNOW IN FACT IF HE WERE TO GO BACK

8    FOR THE HEARING THAT THAT WOULD BE DETRIMENTAL TO HIM

9    PHYSICALLY OR MENTALLY?

10          DR. PIETZ:  I DO NOT THINK IT WOULD BE DETRIMENTAL.

11          MR. KLEINDIENST:  DO YOU THINK IT WOULD BE HELPFUL?

12          DR. PIETZ:  I ACTUALLY THINK IT WOULD BE HELPFUL

13   BECAUSE HE HAS VERY LITTLE INTERACTION WITH OTHERS.  AND HE

14   HAS AN OPPORTUNITY TO TRAVEL, HE WOULD BE STIMULATED.  HE'D

15   HAVE AN OPPORTUNITY TO INTERACT WITH PEOPLE.  THAT'S SOMETHING

16   THAT'S BEEN LACKING THE LAST COUPLE OF MONTHS HERE.

17          MR. KLEINDIENST:  THAT'S BECAUSE HE IS ON SUICIDE

18   WATCH IN ISOLATION; RIGHT?

19          DR. PIETZ:  YES.

20          MR. KLEINDIENST:  AT LEAST IN SPRINGFIELD -- AND

21   OBVIOUSLY THEN HAVE CONTACT WITH OTHER PEOPLE OTHER THAN THE

22   ONES THAT HE SEES THERE, YOU BELIEVE WOULD BE VERY HELPFUL?

23          DR. PIETZ:  IT WOULD BE BENEFICIAL, YES.

24          THE COURT:  ANYTHING ELSE, MR. KLEINDIENST?

25          MR. KLEINDIENST:  NO.  THANK YOU, YOUR HONOR.

1           THE COURT:  MS. CLARKE, ANY OTHER QUESTIONS?

2           MS. CLARKE:  NO, YOUR HONOR.

3           THE COURT:  MAY DR. PIETZ BE EXCUSED FROM THE PHONE

4    CALL, THEN?

5           MS. CLARKE:  YES.

6           THE COURT:  MR. KLEINDIENST, ANY OBJECTION TO

7    EXCUSING DR. PIETZ AT THIS POINT?

8           MR. KLEINDIENST:  NO, YOUR HONOR.

9           THE COURT:  DR. PIETZ, THANK YOU.  WE WILL BE IN

10   TOUCH WITH YOU REGARDING THE SCHEDULING OF THE HEARING.

11          DR. PIETZ:  THANK YOU, YOUR HONOR.

12          THE COURT:  ANYTHING ELSE ON THIS POINT?  I AM

13   PREPARED TO RULE ON THIS.

14          MS. CLARKE:  SURE.  I WONDER IF THE COURT COULD

15   BRING SOME CLARITY TO US.  WE JUST LEARNED THAT THERE ARE

16   CERTAIN PIECES OF INFORMATION BEING PROVIDED THAT DON'T GET

17   WRITTEN DOWN BECAUSE OF US.  AND IT ALSO APPEARS THAT

18   DR. PIETZ IS SIDING WITH THE PROSECUTION ABOUT MR. LOUGHNER.

19   THERE DOES SEEM TO BE SOME INFORMATION PROVIDED TO THE COURT

20   AS WELL.

21          THE COURT:  ON THE LATTER POINT, NO.  THE ONLY

22   THING -- I HAVE GOTTEN EXACTLY WHAT I HAVE PASSED ALONG TO

23   YOU.  I HAVE NOT SPOKEN WITH DR. PIETZ PERSONALLY EXCEPT FOR

24   SCHEDULING PURPOSES OF MY LAW CLERKS.  SHE IS NOT REPORTING ON

25   ANY MATTER OF SUBSTANCE TO ME EX PARTE.

1            I THINK AS I UNDERSTAND HER TESTIMONY, THE ORDER

2    SAID THE REPORT SHOULD COME TO ME AND THEN I'LL DISSEMINATE

3    THEM.  I THINK THAT'S PART OF WHAT SHE IS TRYING TO COMPLY

4    WITH WHEN SHE SAYS THAT.

5            NOW, WHETHER THERE ARE ADDITIONAL NOTES THAT YOU ARE

6    ENTITLED TO, WE CAN TAKE THAT UP AT THE TIME.  I AM WILLING TO

7    DO THAT, MS. CLARKE, IF THERE ARE ADDITIONAL NOTES THAT YOU

8    ARE ENTITLED TO DISCOVER, THEN WE CAN ASK DR. PIETZ ABOUT IT

9    AT SUCH TIME THAT SHE APPEARS LIVE AT THE NEXT HEARING.

10            ANYTHING ELSE ON THIS ISSUE OF PERSONAL PRESENCE AT

11   THE EXTENSION HEARING?

12            MS. CLARKE:  NO, YOUR HONOR.

13            THE COURT:  MR. KLEINDIENST, ANYTHING ELSE?

14            MR. KLEINDIENST:  NO, YOUR HONOR.

15            THE COURT:  THE STATUTE I REFERRED TO EARLIER

16   REFERENCES A HEARING PURSUANT TO THIS CHAPTER.  THE CHAPTER IS

17   CHAPTER 300.

18            THE LAW CLERK:  313.

19            THE COURT:  313.  IT INCLUDES ALSO 4241(D) WHICH

20   CONTEMPLATES AN EXTENSION AND A HEARING AND ADVOCACY REGARDING

21   THE EXTENSION.

22            BACK TO 4247 WHICH DEFINES THE NATURE OF THE

23   HEARING.  IT DOES SPECIFICALLY REFERENCE A RIGHT TO

24   CONFRONTATION WHICH IS A PERSONAL RIGHT OF THE DEFENDANT.

25            HERE, WHILE I RESPECT MS. CLARKE'S JUDGMENT ON THIS,

1    I THINK IT COMPLIES WITH WHAT MY FINDINGS HAVE BEEN SO FAR.

2              I HAVE TO SAY IT DOES APPEAR MR. LOUGHNER APPARENTLY

3    IS MAKING SOME PROGRESS.  HE HAS GOT SOME BETTER UNDERSTANDING

4    OF THINGS, ALBEIT I AM NOT PREPARED TO SAY HE IS COMPETENT.

5    BUT HE DOES, ACCORDING TO DR. PIETZ, UNDERSTAND THAT THIS

6    HEARING WAS GOING TO BE ABOUT WHETHER HE STAYS IN SPRINGFIELD

7    LONGER.  HE EXPRESSED A DESIRE TO BE THERE.

8              I THINK BECAUSE OF THE LAG IN PROGRESS REPORTS THAT

9    MS. CLARK WAS UNAWARE OF, THAT APPARENTLY EXPRESSED THAT TO

10   DR. BRANDT ON FRIDAY AND AGAIN SAID SOMETHING TO THAT EFFECT

11   TO DR. PIETZ THIS MORNING.  THOSE ARE NOT MATTERS THAT WOULD

12   HAVE YET BEEN REPORTED TO THE DEFENSE, THEN PERHAPS THEIR

13   POSITION WOULD BE DIFFERENT.

14             IN ANY EVENT, BECAUSE OF THE MANDATE OF 4247(D) AND

15   WHAT I FIND TO BE CREDIBLE TESTIMONY REGARDING THE DEFENDANT'S

16   OWN DESIRE, I WILL REQUIRE THAT THE DEFENDANT BE PRESENT FOR

17   THE EXTENSION HEARING.

18             NOW, BECAUSE OF THAT, I THINK WE NEED TO RESCHEDULE.

19   THE U.S. MARSHAL, DISCUSSING LOGISTICS WITH MY LAW CLERK, SAID

20   CAN'T GET HIM HERE NOW BY WEDNESDAY IF HE HAS TO BE PERSONALLY

21   PRESENT.

22             DO YOU HAVE ANY UPDATE, MR. KLEINDIENST, FROM THE

23   MARSHAL AS TO HOW SOON MR. LOUGHNER COULD BE BROUGHT TO

24   TUCSON?

25             MR. KLEINDIENST:  JUDGE, I CAN CALL AFTER I HANG UP

1    AND CALL THE COURT BACK.

2              THE COURT:  I AM INCLINED TO PUT THIS OFF FOR A

3    WEEK.  WE WERE GOING TO BE THERE ON WEDNESDAY.  I DON'T KNOW

4    WHAT COUNSEL'S SCHEDULE IS, BUT A WEEK FROM WEDNESDAY WOULD BE

5    THE 28TH OF SEPTEMBER TO HAVE THE EXTENSION HEARING AT THAT

6    TIME.

7              MORE THAN JUST MY FINDING THAT THE DEFENDANT HAS A

8    RIGHT TO BE PRESENT, HAS EXPRESSED A DESIRE TO BE PRESENT, I

9    THINK I AM GOING TO GIVE COUNSEL THE OPPORTUNITY TO LOOK INTO

10   THIS ISSUE OF WHAT GOES ON FROM HERE.  ASSUMING THAT I FIND

11   THAT THERE IS A SUBSTANTIAL PROBABILITY HE CAN BE RESTORED,

12   THEN, MR. KLEINDIENST, I THINK WE ARE -- THERE IS MUCH MORE

13   TRACTION TO THE ARGUMENT THAT THE DEFENDANTS HAVE MADE AT THIS

14   POINT THAT AT SOME POINT WHEN I AM COMMITTING HIM FOR AN

15   EXTENDED TIME FOR RESTORATION, THEY GET A SELL HEARING, I

16   THINK.  AND WE ARE BEYOND EVALUATION NOW.  WE ARE BEYOND JUST

17   DEBATING DANGEROUSNESS.

18             THE PURPOSE OF THE EXTENSION WOULD BE TO RESTORE

19   HIM.  AND I THINK IT IS PROBABLY TOO MUCH TO SAY THAT WE CAN

20   GO FORWARD MUCH BEYOND NEXT WEEK WITHOUT A SELL HEARING IF I

21   GRANT THE EXTENSION.

22             AGAIN, I AM INTERESTED IN EACH SIDE'S POSITION WHERE

23   WE GO WITH THE SELL HEARING.  AS I READ SELL, FIRST THING I

24   LOOK TO IS IF MEDICATION IS JUSTIFIED BY ANY OTHER PURPOSE.

25   UP TO THIS POINT I FOUND THAT IT HAS BEEN.  SO THE QUESTION, I

1    SUPPOSE, ON THE HORIZON IS THE OTHER CONSIDERATIONS GET ANY

2    PLAY OR IS THAT THE EXTENT OF THE INQUIRY UNDER SELL.

3            I AM NOT ASKING YOU FOR AN ANSWER TO THOSE THINGS

4    TODAY.  I AM JUST TELLING YOU AS I THINK AHEAD, THOSE THINGS

5    ARE ALL MATTERS THAT NEED TO BE ARGUED AND THE COURT NEEDS TO

6    DECIDE THOSE THINGS.

7            SO I AM CONTEMPLATING THAT WE WOULD HAVE A SELL

8    HEARING IF I GRANT THE MOTION FOR THE EXTENSION.  AND SO YOU

9    SHOULD BE PREPARED TO DISCUSS WHEN WE SHOULD CONDUCT THAT

10   HEARING, WHERE IT SHOULD BE CONDUCTED.  I ASSUME IT WOULD BE

11   IN TUCSON, BUT I AM OPEN TO ANY OTHER SUGGESTIONS.

12           MR. KLEINDIENST:  YOUR HONOR --

13           THE COURT:  YES.

14           MR. KLEINDIENST:  I AM SORRY TO KEEP INTERRUPTING.

15   I APOLOGIZE.

16           THE COURT:  IT'S DIFFICULT TO DO THIS BY TELEPHONE.

17   THE ONLY THING YOU CAN DO IS TO CALL OUT TO ME.

18           YES, MR. KLEINDIENST.

19           MR. KLEINDIENST:  WITH RESPECT TO THE SCHEDULES, I

20   KNOW DR. PIETZ -- I TALKED TO HER ABOUT HER CONFLICTS.  SHE

21   WOULD BE AVAILABLE ON SEPTEMBER 27 AND 28, BUT HAS TO BE THERE

22   SOMEWHERE ON THE 29TH.  PERHAPS MAYBE IF WE HAVE THE HEARING

23   ON THE 27TH AS WELL OVER TO THE NEXT DAY, SHE WOULDN'T BE IN

24   CONFLICT.  I WOULD SUGGEST THE 27TH.

25           THE COURT:  DOES TUESDAY WORK FOR THE DEFENSE AS

1    WELL, MS. CLARKE?

2              MS. CLARKE:  THAT DATE IS CLEAR ON CALENDARS.

3              THE COURT:  MR. KLEINDIENST, I THINK -- WELL, LET ME

4    ASK HANS.  YOU SPOKE -- I AM SPEAKING TO MY LAW CLERK HANS

5    ALLHOFF.

6              YOU HAVE COMMUNICATED WITH U.S. MARSHAL GONZALEZ;

7    CORRECT?

8              THE LAW CLERK:  YES.

9              THE COURT:  AND HE SAID THERE WERE NO FLIGHTS OUT OF

10   MISSOURI THAT WOULD GET MR. LOUGHNER TO TUCSON EITHER

11   WEDNESDAY OR THURSDAY OF THIS WEEK?

12             THE LAW CLERK:  I BELIEVE JUST WEDNESDAY.  I AM NOT

13   CERTAIN.  THIS WEEK WAS VERY, VERY TOUGH ON SUCH SHORT NOTICE.

14   I THINK HE'D BE FINE WITH NEXT WEEK.

15             THE COURT:  I AM INCLINED TO SET IT ON THE 27TH.

16             MS. CLARKE, DO YOU HAVE ANY OBJECTION TO EXTENDING

17   THE DATE FOR THE EXTENSION HEARING UNTIL THE 27TH GIVEN THE

18   FINDING THAT I MADE AND CIRCUMSTANCES HERE?

19             MS. CLARKE:  WELL, YOUR HONOR, I NOTE THAT THE 120

20   DAYS, THE FOUR MONTHS EXPIRES ON THE 26TH OF SEPTEMBER.

21             I AM ALSO A LITTLE PERPLEXED THAT WE WOULD GO

22   FORWARD WITH AN EXTENSION HEARING WITHOUT SELL BEING THE BASIS

23   FOR THE EXTENSION UNLESS THE COURT IS GOING TO DENY THE

24   EXTENSION.

25             THE COURT:  WELL, SEE, I DON'T KNOW.  THE FIRST

1    ISSUE FOR ME, AS I READ THE STATUTE, IS CAN THE GOVERNMENT

2    ESTABLISH A SUBSTANTIAL PROBABILITY THAT HE IS LIKELY TO BE

3    RESTORED.  IF I FIND THAT, YES, THEY CAN ESTABLISH THAT, THEN

4    I THINK WE ARE RIGHT AT THE DOOR AT SELL AT THAT POINT BECAUSE

5    THEN CIRCUMSTANCES HAVE SUFFICIENTLY CHANGED.

6          NOW I HAVE MANDATED THAT HE IS TO BE AT SPRINGFIELD

7    FOR THE PURPOSE OF RESTORATION.  AND I THINK A SELL HEARING

8    WOULD HAVE TO FOLLOW CLOSELY ON THE HEELS OF THAT.  THAT'S

9    JUST MY SENSE OF THINGS BECAUSE I THINK IT CHANGES THE BASIS

10   FOR WHICH, NUMBER ONE, HE IS BEING HELD AT SPRINGFIELD, THE

11   CONTINUED BASIS FOR THE INVOLUNTARY MEDICATION.

12          UP TO THIS POINT IT'S BEEN PREDICATED ON HIS

13   DANGEROUSNESS.  BUT I THINK IT'S A DIFFERENT BALL GAME.  IT IS

14   A GAME CHANGER, AS I SAID, IF I SAY, YES, HE IS LIKELY TO BE

15   RESTORED.  I AM GOING TO SEND HIM BACK TO SPRINGIELD KNOWING

16   THAT THEY ARE GOING TO INVOLUNTARILY MEDICATE HIM.  AT THAT

17   POINT I THINK THE ARGUMENT THAT MR. CAHN HAS MADE REPEATEDLY

18   ON HIS BEHALF HAS MUCH MORE TRACTION THAN IT HAS HAD UP TO

19   THIS POINT.  WE ARE IN THE EVALUATION STAGE NOW.

20          SO I SUPPOSE WE CAN BEGIN THE HEARING TELEPHONICALLY

21   AND I CAN JUST POSTPONE IT FOR HIS PERSONAL PRESENCE.  I AM

22   MINDFUL THAT THE EXTENSION -- YOU SAY THE EXTENSION RUNS OUT

23   ON THE 26TH?

24          MS. CLARKE:  I BELIEVE THAT'S WHAT THE COURT HAS

25   ADVISED IN THE ORDER.

1          MR. KLEINDIENST:  I THINK HE ARRIVED AT SPRINGFIELD

2    WHICH IS -- JUDGE, I AM SORRY.  I THINK WE CAN VERIFY THAT HE

3    ACTUALLY ARRIVED IN SPRINGFIELD ON THE 27TH.  AND I THINK THAT

4    THE LAW SAYS THAT THE TIME COMPUTATION FOR THE EVALUATION --

5          THE CLERK:  IT'S FROM THE DATE HE ARRIVES AT THE

6    FACILITY.

7          MR. KLEINDIENST:  RIGHT.

8          THERE IS A CASE, JUDGE -- I JUST THROW IT OUT TO

9    YOU -- THAT INDICATES THAT IT IS NOT ERROR FOR THE COURT TO

10   HOLD THE EXTENSION HEARING OUTSIDE THE FOUR MONTHS.  AND I

11   WILL JUST GIVE THE COURT THE SITE.

12          IT'S A SECOND CIRCUIT CASE, UNITED STATES VERSUS --

13   I CAN'T PRONOUNCE THE LAST NAME -- MAGASSOUDA,

14   M.A.G.A.S.S.O.U.D.A.

15          THE COURT:  WHAT'S THE SITE?

16          MR. KLEINDIENST:  544 F. 3RD 387.

17          THE COURT:  HERE ARE MY FINDINGS.

18          FIRST, YOU SAY THAT THE 27TH WOULD BE THE 120TH DAY.

19   SO THAT WILL BE MET BY SCHEDULING IT ON THE 27TH.  THAT'S MY

20   FIRST FINDING.

21          TO THE EXTENT WE GO OVER BY A DAY OR TWO, I RELY ON

22   THE AUTHORITY OF THE CASE YOU HAVE CITED THAT SAID IT'S NOT

23   ERROR TO GO BEYOND 120 DAYS.

24          HERE ARE A NUMBER OF FACTORS THAT HAVE COMPLICATED

25   THE EVALUATION.  I THINK IT HAS BEEN COMPLICATED BY

1    INTERVENING ACTIONS BY THE COURT OF APPEALS.  I DON'T MEAN ANY

2    CONDEMNATION OF THAT, BUT THAT'S JUST A REALITY.  THEY WERE

3    TOLD STOP GIVING HIM MEDICATION.  THEN THEY RESTORED HIM, AND

4    THEN THEY BEGAN MEDICATION AGAIN, AND THEY WERE TOLD THEY

5    COULD CONTINUE TO DO THAT.  THE CASE WAS IN THE COURT OF

6    APPEALS INTERMITTENTLY SINCE THE COMMITMENT BEGAN.

7         I DON'T KNOW WHETHER ANY OF THAT COUNTS AS TOLLING

8    ON A LEGAL BASIS.  BUT CERTAINLY, I FIND THAT IT PRESENTS GOOD

9    CAUSE FOR WHAT WOULD AMOUNT TO A ONE- OR TWO-DAY EXTENSION OF

10   THE EXTENSION HEARING.

11        AND GIVEN THE UNCERTAINTY ABOUT WHETHER HE HAD TO BE

12   PERSONALLY PRESENT, I FIND THERE IS ADDITIONAL GOOD CAUSE TO

13   BEGIN ON THE 27TH.  AS I SAID, I THINK THE 27TH IS STILL

14   WITHIN THE STATUTORY TIME.  BUT IF IT IS NOT, I FIND GOOD

15   CAUSE FOR TWO DAYS OR THREE DAYS POSTPONEMENT.

16        WE GO ON THE 27TH.  MS. CLARK, YOU ARE MORE FAMILIAR

17   THAN I AM.  WHAT TIME DO THE AIRLINES ARRIVE, ABOUT 9:00,

18   LEAVE HERE AT 7:00 AND GET THERE AT 9:00?

19        MS. CLARKE:  I THINK YOU CAN'T LEAVE BEFORE LIKE

20   7:50 IN THE MORNING NOW.  SO 9:15, 9:30.

21        THE COURT:  MR. KLEINDIENST, I AM THINKING MAYBE WE

22   SHOULD BEGIN THIS HEARING AT 1:30 IN TUCSON?

23        MR. KLEINDIENST:  I GUESS IT DEPENDS HOW MANY

24   WITNESSES ARE GOING TO TESTIFY.  WE INTEND TO CALL DR. PIETZ.

25   I DON'T KNOW HOW THE DEFENSE IS GOING TO GO.

1              THE COURT:  MS. CLARKE, YOU ANTICIPATE CALLING ANY

2    WITNESSES?

3              MS. CLARKE:  WE DON'T.

4              THE COURT:  IT SOUNDS LIKE WE CAN COMPLETE IT --

5    AT LEAST THE QUESTION OF WHETHER AN EXTENSION IS WARRANTED --

6    THAT AFTERNOON.

7              THE OTHER QUESTIONS MAY REQUIRE SOME ADDITIONAL

8    BRIEFING.  LIKE I SAID, I FORECAST FOR COUNSEL THAT I THINK

9    NOW MY THINKING HAS CHANGED ON THE NECESSITY OF THE SELL

10   HEARING IF HE IS EXTENDED.  BUT WE CAN DISCUSS THAT AND PLAN

11   FOR THAT HEARING WHICH I ASSUME IS GOING TO TAKE SOME

12   PREPARATION IN WHICH THE DEFENSE WOULD PROBABLY WANT TO CALL

13   WITNESSES OR AT LEAST PROFFER EVIDENCE.  WE WILL DEAL WITH

14   THAT AT THE TIME.

15             IF YOU COULD NOTIFY DR. PIETZ TO BE PRESENT IN

16   TUCSON ON THE 27TH FOR A HEARING THAT WILL BEGIN AT 1:30.

17             MR. KLEINDIENST:  JUDGE, COULD WE HAVE SOME TIME TO

18   RESPOND TO THE DEFENDANT'S MOTION THAT WAS FILED ON FRIDAY?

19             THE COURT:  SURE.  CAN YOU GIVE ME SOMETHING BY

20   CLOSE OF BUSINESS ON MONDAY?

21             MR. KLEINDIENST:  THAT WOULD WORK.

22             THE COURT:  OKAY.

23             MS. CLARKE, ANYTHING ELSE?

24             MS. CLARKE:  YOUR HONOR, IF WE ARE GOING FORWARD ON

25   THE 27TH, WE ASK FOR DISCOVERY IN THE PLEADINGS THAT WE FILED

1    ON FRIDAY.  AND IN ORDER TO NOT HAVE ANY FURTHER DELAY, I

2    WONDER IF THE COURT WOULD ORDER THE PRODUCTION OF THE

3    DISCOVERY.

4          THE COURT:  TELL ME SPECIFICALLY WHAT IT IS THAT YOU

5    WANT THAT YOU HAVEN'T GOTTEN.

6          MS. CLARKE:  PRIMARILY ON DR. PIETZ'S STATEMENTS IN

7    ONE OF HER REPORTS THAT HISTORICALLY INMATES HAVE BEEN,

8    DEFENDANTS HAVE BEEN RESTORED WITHIN EIGHT MONTHS.  I FIND NO

9    BASIS FOR THAT.

10         THE COURT:  MR. KLEINDIENST, THAT IS A FAIR REQUEST.

11   SHE HAS RELIED ON SOME ANECDOTAL EXPERIENCE IN GIVING A

12   STATISTICAL STATEMENT REGARDING THE TOTAL TIME IT TAKES FOR

13   RESTORATION WHICH I THINK IS PART OF THE EQUATION HERE.

14         WILL YOU ASK DR. PIETZ TO PLEASE GIVE US ANY

15   DOCUMENT THAT SUPPORTS HER QUOTING OF THAT CIRCUMSTANCE, THAT

16   STATISTIC ABOUT HER FINDING?

17         MR. KLEINDIENST:  ABOUT HER POSITION OR RESEARCH?

18         THE COURT:  WHATEVER SHE BASED IT ON.  SHE HAS

19   OBVIOUSLY BASED IT ON SOMETHING THAT SHE KNOWS, EITHER

20   ANECDOTALLY OR SHE HAS LOOKED AT SOMETHING.  MAYBE THEY

21   CAPTURE STATISTICS ON THESE THINGS.  WHATEVER SHE BASED THAT

22   STATEMENT ON, I WOULD LIKE HER TO PRODUCE THAT TO YOU, AND

23   THEN IF YOU WOULD PRODUCE THAT TO THE DEFENSE.

24         MR. KLEINDIENST:  OKAY.  SO WHAT SHE WANTS IS THE

25   STATEMENT IN THE AUGUST REPORT?

1          THE COURT:  THE MOST RECENT REPORT THAT SHE WROTE.

2          THE LAW CLERK:  THERE ARE TWO DIFFERENT REPORTS.

3          THE COURT:  I'LL TELL YOU SPECIFICALLY WHICH REPORT.

4   GIVE ME JUST A SECOND.  I DON'T HAVE THEM AT HAND HERE, BUT

5   MS. CLARKE HAS.

6          MS. CLARKE:  IT'S IN THE SEPTEMBER 7TH REPORT.

7          THE COURT:  SEPTEMBER 7TH REPORT.  SHE APPARENTLY

8   MAKES A STATEMENT THAT MOST DEFENDANTS ARE RESTORED WITHIN

9   EIGHT MONTHS.

10         MS. CLARKE:  "HISTORICALLY, MOST DEFENDANTS REACH

11  COMPETENCY WITHIN EIGHT MONTHS OF THEIR COMMITMENT."

12         THE COURT:  "HISTORICALLY, MOST DEFENDANTS REACH

13  COMPETENCY WITHIN EIGHT MONTHS OF THEIR COMMITMENT."

14         IF SHE CAN TELL US ON WHAT BASIS SHE MAKES THAT

15  OPINION AND IF THERE IS DATA, IF SHE COULD GATHER THAT AND

16  SUPPLY IT.  I AM ASSUMING THAT THE BUREAU OF PRISONS KEEPS

17  STATS ON A LOT OF THINGS.  THEY MUST HAVE SOME REPORT THAT

18  DOCUMENTS THAT.  SO WHATEVER SHE RELIED ON AS A BASIS FOR THAT

19  STATEMENT IF SHE COULD PRODUCE THAT TO YOU, AND THEN I WANT

20  YOU TO FAX IT TO MS. CLARK AS SOON AS POSSIBLE.

21         MR. KLEINDIENST:  I WILL, YOUR HONOR.

22         MS. CLARKE:  YOUR HONOR, ONE LAST THING.

23         WOULD THE COURT ASK THE U.S. ATTORNEY OR U.S.

24  MARSHALS WILL GIVE US PROMPT NOTIFICATION WHEN MR. LOUGHNER IS

25  TO LEAVE, SO THAT WE'LL HAVE SOME SENSE OF NOT GOING OUT

1    THERE?

2           THE COURT:  YOU WANT HIM THERE SOONER RATHER THAN

3    LATER?  IF THEY CAN TRANSPORT HIM, FOR EXAMPLE, FRIDAY FOR A

4    HEARING ON TUESDAY, THAT WOULD GIVE HIM THE WEEKEND TO

5    COMMUNICATE WITH HIS PARENTS IF HE WAS INCLINED TO DO THAT.

6           MS. CLARKE:  IF HE IS COMING, WE SHOULD HAVE HIM

7    THERE AS LONG AS WE CAN.

8           THE COURT:  MR. KLEINDIENST, IF YOU COULD

9    ACCOMMODATE THAT CONCERN, TOO.  THAT'S MY REQUEST, COMMUNICATE

10   THAT TO THE MARSHAL.

11          MR. KLEINDIENST:  AS LONG AS THERE IS NO PROBLEM IN

12   GIVING HIM HIS MEDICATION.

13          THE COURT:  THAT'S RIGHT.  CONSISTENT WITH THEIR

14   DUTIES IF THEY COULD ACCOMMODATE BY HAVING MR. LOUGHNER THERE

15   SOONER RATHER THAN LATER, EVEN IF HE HAS TO STAY IN TUCSON

16   OVER THE WEEKEND.  DR. PIETZ DID SAY THAT'S HIS ULTERIOR

17   MOTIVE.  AND SO I THINK IT'LL BE GOOD IF HE GETS TO SEE HIS

18   PARENTS.

19          MR. KLEINDIENST:  YOU WANT ME TO ASK FOR FRIDAY AS

20   THE DAY OF DELIVERY?  IS THAT CORRECT, JUDGE?

21          THE COURT:  YES.  IF THAT'S POSSIBLE, I'D LIKE THEM

22   TO TRANSPORT HIM.  AS SOON AS YOU KNOW THAT HE IS GOING TO BE

23   IN TUCSON, WILL YOU CALL MS. CLARKE AND TELL HER BECAUSE THEY

24   OBVIOUSLY WANT TO MEET WITH HIM AND TALK TO HIM, AND THEY WANT

25   TO KNOW WHERE HE IS GOING TO BE.

1          WILL YOU LET HER KNOW AS SOON AS YOU KNOW WHEN HE IS

2     ACTUALLY GOING TO BE TRANSPORTED AND ARRIVE IN TUCSON?

3          MR. KLEINDIENST:  I WILL, YOUR HONOR.

4          THE COURT:  ANYTHING ELSE, MS. CLARKE?

5          MS. CLARKE:  THANK YOU, YOUR HONOR.

6          THE COURT:  LET ME SAY THIS THEN:  THE DATE OF THE

7     21ST IS NOW VACATED IN FAVOR OF THE 27TH AT 1:30 IN TUCSON.

8          THE HEARING ON THE REQUEST TO EXTEND WILL TAKE PLACE

9     AT THAT TIME.  I HAVE ALLUDED TO OTHER MATTERS THAT WILL BE

10    DISCUSSED BUT NOT NECESSARILY DECIDED ON THAT DATE, AND THE

11    PARTIES SHOULD BE PREPARED TO DISCUSS THE SCHEDULING OF THOSE

12    ADDITIONAL MATTERS.  WE ARE IN RECESS.

13          MR. KLEINDIENST:  THANK YOU, JUDGE.

14                        --OOO--

15

16

17          I HEREBY CERTIFY THAT THE TESTIMONY

18          ADDUCED IN THE FOREGOING MATTER IS

19          A TRUE RECORD OF SAID PROCEEDINGS.

20

21          S/EVA OEMICK                9-20-2011

22          EVA OEMICK                      DATE
           OFFICIAL COURT REPORTER

23

24

25

COMPUTER-AIDED TRANSCRIPTION