Judy Clarke
Clarke and Rice, APC
1010 2nd Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

Mark Fleming
Law Office of Mark Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 794-0220

Reuben Camper Cahn
Ellis M. Johnston III
Janet Tung
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Defendant Jared Lee Loughner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | Case No. CR 11-0187-TUC LAB |
| Plaintiff, ) | |
| ) | **MOTION FOR CLARIFICATION OF** |
| v. ) | **PREVIOUS PRODUCTION AND** |
| ) | **COMMITMENT ORDERS** |
| JARED LEE LOUGHNER, ) | **AND TO SUPPLEMENT BOP RECORDS** |
| ) | |
| Defendant. ) | |

## MOTION

In light of comments made at the last hearing by Mr. Loughner's treating psychologist concerning the intentional omission of information in materials provided to the defense, counsel for Mr. Loughner request that the Court clarify that its previous order does not condone or encourage such omission of information material to Mr. Loughner's defense or to an understanding of efforts to restore Mr. Loughner to competency. Counsel further request that the prison supplement its records with any such previously omitted information and produce this information to defense counsel by the close of business on Monday, September 26, 2011, in

order that counsel may properly prepare for the hearing currently scheduled to take place on September 28.

## I.

## **STATEMENT OF FACTS**

On January 14, 2011, this Court ordered the Bureau of Prisons to provide defense counsel with a copy of "all records relating to Jared Lee Loughner." DE 35. On January 20, 2011, the Court amended this order to require that all records be produced on a weekly basis. DE 42.[1]

On May 25, 2011, the Court found Mr. Loughner incompetent to stand trial and ordered that he be committed to the custody of the Attorney General for hospitalization at MCFP Springfield. DE 221. The Court further ordered that the "Director of the facility shall send a report to counsel and chambers by 8/31/2011." *Id.*

At the September 19, 2011, hearing, the Court addressed the issue of whether Mr. Loughner should be present for a hearing next week in which the Court will consider whether to extend Mr. Loughner's commitment at MCFP Springfield. During this hearing, both the Court and the prosecution provided information concerning conversations between Mr. Loughner and his treating psychologist, Dr. Christina Pietz, to which defense counsel had not previously been privy. This included a comment by the Court that Dr. Pietz had "weighed in on [the appearance issue], too, and said it might be therapeutic because as it stands, [Mr. Loughner] is not communicating with his parents because he is afraid the phone calls are being listened to. Being in Tucson would give him an opportunity to have personal visits with his parents that would not be monitored by listening ears or tape-recording." *See* DE 317, Tr. 9/19/11 at 4; ln. 2-7. It also included statements by the prosecution concerning conversations Mr. Loughner apparently had with Dr. Pietz. Mr. Kleindienst proffered to the Court:

---

[1] Both of these orders were originally filed *ex parte* under seal. Since their filing, however, the government has somehow obtained them and attached them to their own public filings. *See, e.g.,* Govt. Resp. to Def's Emergency Motion to Enforce Injunction, 9th Cir. Case No. 11-10339, Exhibit 3.

2

> Mr. Loughner wants to be at the hearing. He very much is concerned that he not be permitted to be at the hearing. He has told Dr. Pietz repeatedly when the hearing is going to be held, are you going back to the hearing. He has told her he wants to be present at the hearing. He has told her that he wants to be present when things are discussed about him because he is hearing it secondhand, and he understands what the hearing is about, and he has understood for the last couple of weeks what the hearing is about. He understands that the hearing is about whether or not he is to be continued on medication involuntarily.

*Id.* at 10; ln.10-20. Of course, as the Court pointed out, that is not the purpose of next week's hearing. *Id.* at 10-11. But when pressed about the source of the prosecution's proffer, the government claimed that it had known about this information "for a while," and that it "confirmed [this information] with Dr. Pietz today." *Id.* at 11; ln. 14-15.

When questioned by defense counsel at the hearing, Dr. Pietz said that she had "been telling [Mr. Loughner] all along that [she] was going to request an extension." *Id.* at 19; ln. 1-3. And after requesting an extension from the Court, Dr. Pietz apparently told Mr. Loughner that she "had actually written a report requesting an extension," something that she indicated Mr. Loughner "had known for quite sometime." *Id.* at 19; ln. 12-14. She also testified that Mr. Loughner had explained to her that he understood the reason for the scheduled hearing. *Id.* at 23; ln. 23. Dr. Pietz admitted that she had not documented her conversations with Mr. Loughner about having requested an extension. *Id.* at 20; ln. 1-2. When queried about the reason why, Dr. Pietz said that she did not document these conversations because "I knew that you would be reading my notes." *Id.* at 20; ln. 5-6. By "you," Dr. Pietz meant defense counsel.

Dr. Pietz further advised that she did not document any such conversations because her "obligation is to the judge. I have to let the judge know what my opinion is *first*." *Id.* at ln. 12-13 (emphasis added). Of course, any such obligation to notify the judge *first* would have already been met by the time that Dr. Pietz had conversations with Mr. Loughner about having requested an extension and his understanding of the scheduled hearing. Regardless, extending her claim, Dr. Pietz testified that there were other things she would not document because defense counsel might see them, such as whether she believed Mr. Loughner was competent to stand trial because, again, she would "document that in the report that I send to the judge first." *Id.* at ln. 18-21.

3

Finally, Dr. Pietz testified that she kept private, undisclosed notes during Mr. Loughner's first commitment to Springfield but that she hadn't kept any such notes since his return in May. *Id.* at 23; ln. 19-24. She did not disclose whether she had notes of any phone conversations with the Court or the prosecution. Nor did she mention whether there were any undisclosed emails that she may have sent to the Court, the prosecution, or other prison staff concerning her interactions with Mr. Loughner.

## II.

## ARGUMENT

Early on in this case, the Court ordered the Bureau of Prisons to produce all records pertaining to Mr. Loughner. This production "shall include but not be limited to: all medical, intake and psychological records maintained by the Bureau of Prisons on Mr. Loughner . . . ." DE 35 and 42. It is now apparent that the BOP has withheld from the defense (while sharing with the prosecution) information, opinions, and conversations pertaining to issues surrounding Mr. Loughner's competency and commitment, including statements he has made in response to questioning. To the extent that such evidence has been memorialized in the form of notes, email, or some other form of documentation, the failure to produce it to the defense violates the Court's orders. To the extent that BOP officials such as Dr. Pietz have intentionally withheld or omitted such evidence from its records, such actions certainly violate the spirit of the Court's orders, and BOP has offered no valid justification for omitting this information. All such information should be immediately memorialized and produced to the defense in accordance with the Court's orders. Further, it is requested that the Court make clear to the BOP, and to Dr. Pietz, that information relevant to Mr. Loughner's commitment, conversations, and competency, including information provided to him and by him should not be omitted from the notes and records provided to defense counsel.

At the September 19 hearing, government counsel informed the Court of several conversations that Mr. Loughner had with his BOP psychologist, Dr. Pietz, about his putative understanding of upcoming proceedings and his desire to attend. The government claims that it had known about this information "for a while." 9/19/11 Trans. at 11. There was absolutely

nothing in Dr. Pietz's progress notes or any other BOP records previously produced to the defense referencing these conversations, despite the fact that the prosecution had known about them "for a while." Indeed, Dr. Pietz admitted that she had not documented these conversations because she knew that the defense would be looking at her notes. *Id.* at 20. This is unacceptable. Attempting to justify her actions, Dr. Pietz claimed that she did not document this information because her "obligation is to the judge. I have to let the judge know what my opinion is first. If I had documented in the chart that I was requesting an extension, then I would be violating that with the judge." *Id.*

This claim fails on several levels. First, nothing in the Court's commitment order or its production orders limits the information to be recorded by BOP officials concerning Mr. Loughner's commitment. The commitment order simply states that "[t]he director of the facility," *not* Dr. Pietz, "shall send a report to *counsel* and chambers." DE 221 (emphasis added). There's no obligation for the director to send the report "first" to the Court, and there certainly is nothing in the order addressing *Dr. Pietz's* "obligation" to withhold any opinions or conversations that she has had with anyone about Mr. Loughner's competency or related issues. To the extent that Dr. Pietz believes there is some such limitation or obligation of confidentiality, the Court has made clear that it has not communicated any such requirements to Dr. Pietz: "I have not spoken with Dr. Pietz personally except for scheduling purposes of my law clerks." 9/19/11 Trans. at 27. There is no basis to this claim, and the Court should clarify that it intended no such withholding of information from the defense.

Second, it appears that the prosecution was provided with at least some of the information "a while" ago. Omitting discussions with Mr. Loughner concerning his understanding of legal proceedings because the defense "would look at it," yet providing this very same information to the other party to the litigation -- the prosecution -- undercuts any notion of fairness or confidence in the process. Such withholding creates unnecessary surprise, and the provision of critical information to only the prosecution establishes the appearance of bias on Dr. Pietz's part, despite the many claims by the government and the Court that Dr. Pietz should and does perform her duties independently.

1          Third, Dr. Pietz's avowed purpose for omitting information from her notes, thus effectively withholding it from the defense, is undercut by the timing and nature of the comments and conversations that came to light at the September 19 hearing. Much of what the prosecution proffered at the hearing appears to concern conversations that Mr. Loughner had with Dr. Pietz *after* she had requested the extension. *See id.* at 11 (claiming that Mr. Loughner "has understood for the last couple of weeks what the hearing is about"). Dr. Pietz's report requesting the extension was written on August 22, nearly a month before the most recent hearing, yet the prosecution was proffering unrecorded statements made by Mr. Loughner after that time. Dr. Pietz herself testified that she had conversations with Mr. Loughner *after* requesting the extension, *id.* at 19, yet these conversations are nowhere documented in the records produced to the defense. Moreover, it appears that Dr. Pietz "weighed in" prior to the September 19 hearing about whether Mr. Loughner should appear in Tucson, claiming that he is not communicating with his parents because "he is afraid the phone calls are being listened to." *Id.* at 4. Whether this conversation, or conversations regarding Mr. Loughner's desire to attend the hearing, was provided in the first instance to the Court or the prosecution, it was never recorded or produced to the defense, and it has nothing to do with any opinions concerning an extension of Mr. Loughner's commitment. But Mr. Loughner's perceptions or fears, no less than his alleged ability to understand the nature of any future legal proceedings, are critical to the defense's ability to effectively represent him in these proceedings. Dr. Pietz's alleged "obligation" of confidentiality to the Court does not excuse the omission of critical information concerning Mr. Loughner's mental health.

          Equally troubling is the fact that Dr. Pietz testified that she would omit other information from her records, such as her opinion as to Mr. Loughner's competency. *Id.* at 20. To begin, nothing in the Court's order condones withholding of such opinions. More problematic is any decision by Dr. Pietz to omit documenting any interactions or conversations with Mr. Loughner that would support any such conclusions, such as conversations about his ability to understand the nature of particular proceedings in this case. Yet it appears that such conversations and observations have been withheld from records in this case, at least those produced to the defense.

1    Material information should not be withheld from documents that the Court has ordered
2 the BOP to produce to the defense. Such information should not be omitted from records simply
3 because the defense "would be reading [prison officials'] notes." The Court should clarify that
4 its previous orders do not establish any "obligation" to withhold the content of conversations
5 with Mr. Loughner regarding his commitment, and competency from production to the defense.
6 To effectively enforce the Court's orders, it should require Dr. Pietz and any other BOP officials
7 who have omitted such information to memorialize it in writing and produce to the defense
8 forthwith. And to the extent that such information has already been memorialized in the form
9 of emails to the prosecution or the Court or unproduced notes of any such communications, the
10 Court should order that the BOP produce this information promptly. The defense requests that
11 this production occur by the close of business on Monday, September 26, 2011, to give the
12 defense adequate time to prepare for the upcoming hearing currently scheduled for September
13 28.[2]

**CONCLUSION**

15    For reasons set forth above, counsel for Mr. Loughner request that the Court clarify and
16 enforce its previous orders and order production of omitted information promptly.

                                                  Respectfully submitted,

                                                  */s/ Judy Clarke*
19 DATED: September 21, 2011                      _____
                                                  JUDY CLARKE
                                                  MARK FLEMING
                                                  REUBEN CAMPER CAHN
                                                  ELLIS M. JOHNSTON III
                                                  JANET C. TUNG

                                                  Attorneys for Jared Lee Loughner

Copies of the foregoing served electronically to:
Wallace H. Kleindienst, Beverly K. Anderson
Christina M. Cabanillas, Mary Sue Feldmeier

---

[2] Counsel have not yet received the discovery ordered by the Court on September 19, 2011. 9/19/11 Trans. at 38.