1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 11cr0187 TUC LAB |
| Plaintiff, | **ORDER EXTENDING RESTORATION COMMITMENT** |
| vs. | |
| Jared Lee Loughner, | |
| Defendant. | |

This Order confirms the Court's rulings at the September 28, 2011 hearing in Tucson.

## I.  Extension of § 18 U.S.C. § 4241(d) Commitment

The matter of the day was whether Mr. Loughner's commitment at FMC Springfield should be extended for the purpose of restoring him to competency to stand trial.  When the Court found Mr. Loughner *in*competent to stand trial, he was committed to FMC Springfield, for no more than four months, "to determine whether there is a substantial probability that in the foreseeable future he will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(1).   Those four months are now up, and pursuant to 18 U.S.C. § 4241(d)(2), the Court can commit Mr. Loughner "for an additional reasonable period of time"  upon finding that there is, in fact, "a substantial probability that within such additional period of time he will attain the capacity to permit the proceedings to go forward."

The extension of Mr. Loughner's commitment was originally recommended by the Warden of FMC Springfield and the staff psychologist there, Dr. Christina Pietz, who is most familiar with Mr. Loughner.   The Government adopted their recommendations, and the

1  defense subsequently filed a motion to deny the extension.  (Dkt. Nos. 310, 311.)  The

2  defense's motion, to be precise, objected to an extension being granted solely on the basis

3  of the recommendations of the Warden and Dr. Pietz, which were submitted directly to the

4  Court.  In the alternative, the defense requested an evidentiary hearing "to determine the

5  legal and factual sufficiency of the request to extend Mr. Loughner's commitment." (Dkt. No.

6  311 at 1.)  The September 28, 2011 hearing *was* that evidentiary hearing, so in a technical

7  sense there is no pending objection to the extension — although it is clear the defense still

8  objects to it.  Nonetheless, the Court heard a full day of testimony and argument, and at the

9  conclusion of the hearing it extended Mr. Loughner's commitment at FMC Springfield for a

10 period of four months, starting September 29, 2011.  The Court found there is a substantial

11 probability that Mr. Loughner can be restored to competency to stand trial.[1]

12         Two points about the Court's finding should be clarified.

13         First, the parties disputed whether the Court needed to make that finding by clear and

14 convincing evidence or merely by a preponderance of the evidence.  *Compare United States*

15 *v. Rodriguez-Lopez*, Case No. 8-CR-2447, 2010 WL 4339282 at *7 (D. N.M. Sept. 22, 2010)

16 (applying "preponderance of the evidence" burden of proof), *with United States v. Weston*,

17 260 F.Supp.2d 147, 155 (D. D.C. 2003) (applying "clear and convincing evidence" burden

18 of proof).  That dispute assumes that, under § 4241(d)(1), what must be proved is "a

19 substantial probability that in the foreseeable future [Mr. Loughner] will attain the capacity to

20 permit the proceedings to go forward," and that the Court must look elsewhere for some

21 burden of proof to ladle on top.

22         The Court sees it differently.  What must be proved is that Mr. Loughner will "attain

23

24         [1] The defense insists that "competency" is not the same thing as "the capacity to
permit the proceedings to go forward" because only the latter takes into account the potential
25 side effects of anti-psychotic drugs that may "interfere with [Mr. Loughner's] ability to obtain
a fair trial." (Dkt. No. 311 at 7.)  The Court disagrees.  One prong of the competency inquiry
26 is a defendant's ability to assist in his defense, and a defendant who is, for example,
extremely sedated by anti-psychotic drugs can hardly be said to be in a position to assist his
27 lawyers.  In any event, as emphasized at the conclusion of the hearing, the Court's finding
in no way forecloses the defense from later arguing that Mr. Loughner lacks the capacity to
28 stand trial because the side effects of his anti-psychotic medications are debilitating in a way
that impinges on his fair trial rights.

1   the capacity to permit the proceedings to go forward," and the burden of proof is "a
2   substantial probability."  Congress well knew how to specify burdens of proof for the findings
3   courts must make relating to a mentally ill defendant's competency to stand trial.  When the
4   Government first moved for a competency hearing in this case (Dkt. No. 141), the Court
5   needed only "reasonable cause" to believe that Mr. Loughner did not understand the
6   proceedings against him or could not assist in his defense in order to grant such a hearing.
7   18 U.S.C. § 4241(a).  The competency determination itself — negative or positive —
8   requires only a "preponderance of the evidence."  18 U.S.C. § 4241(d)-(e).  That Congress
9   did not specify some other burden of proof in 18 U.S.C. § 4241(d)(1) or § 4241(d)(2)(A) must
10   mean that "a substantial probability" *is* the burden of proof.[2]  That's the first point.

11       The second point concerns the definition of "a substantial probability."  Arguably, a
12   "substantial" probability is any probability worth taking seriously, which could very well be a
13   probability of *less* than 50 percent.  For example, a 40 percent chance of rain is enough of
14   a reason to leave the house with a raincoat, or cancel plans to spend a day outside; it
15   wouldn't be unreasonable to label that chance "a substantial *probability*," even if rain is not
16   substantially *probable*.    This supports the Government's argument that "substantial
17   probability" means "not necessarily more probable than not, but at least reasonably
18   conceivable."  (Dkt. No. 324 at 6 (quoting *In re Bendectin Litigation*, 857 F.2d 290, 313 (6th
19   Cir. 1988)).  *But see City of Carter Lake v. Aetna Cas. and Sur. Co.*, 604 F.2d 1052, 1058–59
20   (8th Cir. 1979) (defining "substantial probability" as "highly likely to occur").[3]

21   _____

22       [2] Congress has also specified burdens of proof for the judicial findings required in
     other sections of the Federal Criminal Code relating to mentally ill defendants. *See, e.g.*, 18
23   U.S.C. § 4243(d) (persons found not guilty by reason of insanity of offenses involving bodily
     injury to another or serious damage to the property of another must show by "clear and
24   convincing evidence" that their release would not create a substantial risk to another or
     another's property due to their mental illness).
25

26       [3] The defense also relies on *In re Commitment of Laxton*, 254 Wis.2d 185 (2002) and
     *United States v. Reynolds*, 553 F.Supp.2d 788 (S.D. Tex. 2008).  *Laxton* actually involved
27   a Wisconsin statute pertaining to the civil commitment of sex offenders, and the decision
     defined "substantially probable" — not "a substantial probability" — as "much more likely than
     not."  *Reynolds* held, in the context of a *Sell* hearing to involuntarily medicate a defendant,
28   that "substantially likely" — not "a substantial probability" — means "more likely than not."
     "Substantially probable" and "substantially likely" are different from "a substantial probability"

1    The Court needn't resolve this dispute because the Ninth Circuit has spoken to it.  In

2  *United States v. Rivera-Guerrero*, 426 F.3d 1130 (9th Cir. 2005), the court noted that

3  "[c]ourts have generally construed [§ 4241(d)(2)] to allow extensions for a reasonable period

4  of time only when 'the individual is likely to attain competency within a reasonable time.'" *Id.*

5  at 1143 (quoting *United States v. Baker*, 807 F.2d 1315, 1320 (6th Cir. 1986)).  That, then,

6  is the definition of "a substantial probability": likely.  That's the second point.

7    Considering that the question under § 4241(d)(2) is whether Mr. Loughner can be

8  restored to competency to stand trial in a reasonable amount of time, and that the burden of

9  proof is "a substantial probability," or likelihood, the Court found good cause for granting FMC

10  Springfield a four-month extension to treat Mr. Loughner.  The reports submitted by Dr. Pietz

11  in advance of the hearing, along with the testimony of Dr. Pietz and Dr. Ballenger at the

12  hearing, establish that it is likely Mr. Loughner can become competent to stand trial in this

13  case.[4]  The Court modifies its ruling in one small way: Mr. Loughner's additional four-month

14  commitment to FMC Springfield will begin on the day that he returns to the facility from

15  Tucson.

16  **II.    Denial of Motion to Stay Involuntary Medication**

17    The Court also considered on September 28 the defense's latest motion to cease the

18  involuntary medication of Mr. Loughner.  The defense makes three arguments.

19    The first is the most familiar: Mr. Loughner is entitled to a judicial hearing, as a pretrial

20  detainee, before he can be involuntarily medicated on the ground that he poses a danger to

21  others or to himself.  That argument is now before a merits panel of the Ninth Circuit, but this

22  Court has consistently rejected it.  (*See* Dkt. Nos. 252, 306.)  The Court has reconsidered

23  its previous rulings on this issue in light of the renewed briefing, but concludes there is no

24

25  in the Court's view.

26    [4] In the event the Court is mistaken that "substantial probability" is the governing

27  burden of proof here, the Court holds alternatively that the appropriate burden of proof to
    import to § 4241(d)(2) is preponderance of the evidence.  The Court finds that this burden

28  has also been satisfied.  That is, the Government has shown by a preponderance of the
    evidence that there is a substantial probability that Mr. Loughner will be restored to
    competency.

1   reason to change those rulings.[5]  The decision to medicate Mr. Loughner to prevent him from

2   harming himself or others is best made by prison doctors following *administrative*

3   procedures.  *Washington v. Harper*, 494 U.S. 210, 231 (1990).  The only question for the

4   Court is whether that decision has some factual basis and was made pursuant to the

5   procedures set forth in 28 C.F.R. § 549.46.  *United States v. Morgan*, 193 F.3d 252, 262–63

6   (4th Cir. 1999).

7           That leads to the defense's next argument, which is that the Court should reverse the

8   latest administrative decision to involuntarily medicate Mr. Loughner even pursuant to the

9   minimal review the Court concedes it should conduct.  The defense argues the decision was

10  factually and procedurally deficient.  The Court disagrees.  After medicating Mr. Loughner

11  on an emergency basis on July 18, 2011 on the ground that he was an immediate danger

12  to himself, the prison held *Harper*-style administrative hearings on August 25 and September

13  15.  It is the September 15 hearing in which the most recent medication decision was made.

14  Specifically, that decision was that Mr. Loughner was actively engaging in conduct likely to

15  cause physical harm to himself, and that he was gravely disabled — that is, unable to attend

16  to his own human needs of health and safety.  Based on a review of the hearing report and

17  Mr. Loughner's other medical records that have been submitted to the Court in this case, the

18  Court finds this decision has some factual basis.

19          Mr. Loughner's procedural attack on the September 15 *Harper* hearing is that  "[his]

20  staff representative failed to provide him with any meaningful representation and he was

21  denied the opportunity to have his legal counsel actively participate in the proceedings."

22  (Dkt. No. 321 at 11.)  The case he relies on, *United States v. Humphreys*, 148 F.Supp.2d 949

23  (D. S.D. 2001), involved a staff representative who was not the staff representative requested

24  by the inmate, who testified *against* the inmate, and who had previously filed a disciplinary

25

26          [5] If it has not been pointed out previously, the Ninth Circuit in *Rivera-Guerrero* faced
    a situation in which a inmate was medicated on an emergency basis while a *Sell* medication
27  order was on appeal.  The decision, which took very seriously an inmate's liberty interest in
    not being involuntarily medicated, nonetheless raised no problem with a pretrial detainee
28  receiving only an administrative *Harper* hearing before being medicated to abate
    dangerousness.  426 F.3d at 1143.

report *against* the inmate; *Humphreys* is easily distinguishable from this case.  And contrary to the arguments of the defense, while 28 C.F.R. § 549.46 does give inmates the right to present evidence at a *Harper* hearing, it does not require that their staff representatives develop and present evidence on their behalf.  *See* 28 C.F.R. § 549.46(a)(3).  Regardless, the defense does not identify any evidence that Mr. Loughner asked to be presented and that was not presented.  Finally, Mr. Loughner's lawyers also have no right to participate in the administrative hearing.  *Harper*, 494 U.S. at 236 ("Given the nature of the decision to be made, we conclude that the provision of an independent lay advisor who understands the psychiatric issues involved is sufficient protection.").  The Court finds no defect in the *Harper* hearing conducted on September 15 pursuant to which Mr. Loughner is now being medicated.

The defense's final argument for a stay of Mr. Loughner's involuntary medication is that it violates a temporary stay issued by a motions panel of the Ninth Circuit.  *See* Case No. 11-10339, Dkt. No. 10.  At the time the Ninth Circuit issued a stay of Mr. Loughner's medication, the stated basis for that medication was the finding that Mr. Loughner posed a danger to *others*.  Since then, Mr. Loughner was involuntarily medicated on the emergency basis that he posed a danger to *himself*, and the Ninth Circuit refused to intervene.  *See* Dkt. No. 23.  Indeed, the Ninth Circuit's original order staying Mr. Loughner's medication was conditioned, at least partially, on its understanding that he posed no danger to himself.

> The government's interest is, however, less immediate.  It has managed to keep Loughner in custody for over six months without injury to anyone.  We are confident it can continue to do so for the short period it will take to resolve this issue on the merits.  And the record shows that Loughner is not a danger to himself.

Dkt. No. 10 at 3–4.  This is all to say that the circumstances supporting the involuntary medication of Mr. Loughner *today* have changed to such a degree that the motions panel's July 12 stay has considerably less traction.  He is now being medicated pursuant to a finding that there is a risk he will physically harm himself and that he is so gravely disabled that he cannot "provide for his own essential human needs of health and/or safety."  That is virtually identical to the emergency basis for involuntary medication that the motions panel previously

respected.

**III.     Motion for Clarification of Previous Production and Commitment Orders**

The Court resolved this motion with the parties at the September 28 hearing, and the parties appear to be in agreement.  The hearing transcript should suffice to resolve any uncertainties that later arise.

**IV.     Conclusion**

Mr. Loughner may be re-committed to FMC Springfield for competency restoration for an additional period of four months.  The four months shall begin at the time he arrives at the prison.  The defense's motion to deny the extension is **DENIED**.  The defense's motion to stay Mr. Loughner's involuntary medication is also **DENIED**.  The motion for clarification of production and commitment orders is moot.

**IT IS SO ORDERED.**

DATED:  September 30, 2011

**HONORABLE LARRY ALAN BURNS**
United States District Judge