# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| United States of America, | CASE NO. 11cr0187 TUC LAB |
|---|---|
| Plaintiff, | **ORDER DENYING STAY** |
| vs. | |
| Jared Lee Loughner, | |
| Defendant. | |

The Court heard a full day of testimony on September 28, 2011 on the question whether there is "a substantial probability that within [an] additional [reasonable] period of time [the defendant] will attain the capacity to permit the proceedings to go forward." 18 U.S.C. § 4241(d)(2)(A). The Government called two witnesses: the defendant's treating psychologist at FMC Springfield, who has interacted with him on an almost daily basis during the past four months, and an independent forensic and clinical psychiatrist with 40 years of experience treating schizophrenics. The defense called no witnesses. At the conclusion of the hearing, the Court found there was a substantial probability that the defendant can be restored to competency to stand trial, and it extended his commitment to FMC Springfield for an additional period of four months. The Court believes the defendant is likely to become competent to stand trial in that time.

On September 30, the defense filed an emergency motion asking the Court to stay its extension of the defendant's commitment to FMC Springfield while it appeals the Court's ruling to the Ninth Circuit. The motion to stay is **DENIED**. There is overwhelming evidence

that the defendant is getting better, not the least of which is the noticeable improvement in his appearance, demeanor and behavior since he was last in court. The testimony of Dr. Pietz, his daily, treating psychologist, and Dr. Ballenger, an experienced and well-credentialed psychiatrist, established the likelihood and substantial probability that the defendant will continue to get better and can be restored to competency to stand trial in four months time.

The defense's motion attempts to poke holes in the Court's September 28 order by quibbling with the language the Court used to justify its decision. This approach, in the Court's view, elevates semantics over substance and ignores the import of the medical opinion testimony that was presented, which the Court found was corroborated by its own observations of the defendant during the lengthy and, at times, tedious hearing.

## I.     Competency and "Capacity"

The defense's first argument is that the Court found only that the defendant can be restored to competency — and didn't consider whether the demeanor-changing side effects of the medications the defendant is receiving will interfere with his "capacity to permit the proceedings to go forward." *See* 18 U.S.C. § 4241(d)(2)(A). This argument assumes that competency to stand trial is something less than the "capacity to permit the proceedings to forward" because only the latter calls for consideration of the side effects of medication. The Court explicitly rejected this overly-parsed argument in its written order, and explained that the competency inquiry — particularly the question whether a defendant can assist in his defense — necessarily requires that consideration be given to the side effects of medication.[1] (Dkt. No. 343 at 2 n. 1.) To be perfectly clear, the Court would not have found that the defendant can be restored to competency if it entertained any serious concern that the medication prescribed to restore him would be debilitating at trial. Implicit in the Court's oral

---

[1] The Supreme Court's decision in *Sell v. United States* explicitly recognizes that the side effects of medication at trial fold into the competency analysis, and are not an additional, heightened consideration required by the words "capacity to permit the proceedings to go forward" in § 4241(d)(2)(A). 539 U.S. 166, 185 (2003) ("Whether a particular drug will tend to sedate a defendant, interfere with communication with counsel, prevent rapid reaction to trial developments, or diminish the ability to express emotions are matters important in determining the permissibility of medication to *restore competence*.") (emphasis added).

recital of its finding that the defendant can be restored to competency was the recognition that the defendant must be — *and must appear to be* — able to grasp the proceedings and to assist his counsel in his defense. The Court specifically alluded to this concern during the oral pronouncement of its decision.

The defense now claims "the Court suggested that it would reach these questions at a later date" and that "the Court acknowledges that it will be required at some point to determine whether medication has interfered with the defendant's fair trial rights." These statements misrepresent the record and the Court's oral findings. The defense raised concerns about the side effects of the defendant's medication regimen during the hearing, and the Court responded to those concerns as it has done in past hearings when they were raised. Contrary to the defense's claims that the potential side effects of the defendant's antipsychotic drugs were not considered, a fair reading of the record of the September 28 hearing demonstrates the Court evaluated the concerns and found no basis for them on the testimony and evidence presented.[2] It was obviously premature at this stage of the competency restoration process for the Court to determine whether there are side effects of the defendant's medication that will prevent the Court from making a finding of competency in the future. However, the Court stressed to counsel that it took those concerns seriously, and pledged to give full consideration to them before making any definitive finding that the defendant has been restored to competency. (Dkt. No. 343 at 2 n. 1.)

## II.     Specificity of Treatment

The defense's next argument in support of the requested stay is that the Court failed to base its finding that the defendant can be restored to competency on a specific treatment plan. Here, as with the defense's repeated attempts to have *the Court* intervene in administrative decisions to medicate the defendant on the ground that he is dangerous to himself and others, the defense attempts to import the normative framework for medicating

---

[2] The defense presented no evidence on the issue of side effects at the September 28 hearing, although a motion it filed before the hearing did discuss studies on side effects. Dr. Ballenger testified at the hearing that the defense motion significantly misrepresented the findings and conclusions of that study.

defendants for the purpose of competency restoration established in *Sell v. United States*, 539 U.S. 166 (2003). The Supreme Court recognized in *Sell* that "[t]he specific kinds of drugs at issue may matter . . . . Different kinds of antipsychotic drugs may produce different side effects and enjoy different levels of success." *Id.* at 181. And the Ninth Circuit has reiterated that, in the *Sell* context, "[s]pecificity as to the medications to be administered is critical." *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1140 (9th Cir. 2005). *See also U.S. v. Hernandez-Vasquez*, 513 F.3d 908, 916–17 (9th Cir. 2008) (requiring *Sell* order to identify "(1) the specific medication or range of medications that the treating physicians are permitted to use in their treatment of the defendant, (2) the maximum dosages that may be administered, and (3) the duration of time that involuntary treatment of the defendant may continue before the treating physicians are required to report back to the court on the defendant's mental condition and progress").

Although this Court has resisted the defense's persistent entreaties to blur the distinction between *Harper* and *Sell* hearings, the Court expressed the view at the September 28 hearing that now that the defendant has been recommitted to Springfield explicitly for competency restoration, a *Sell* hearing should take place. That said, the *Sell* hearing in this case may be pro forma given that "[t]he Supreme Court clearly intends courts to explore other procedures, such as *Harper* hearings (which are to be employed in the case of dangerousness) before considering involuntary medication orders under *Sell*." *Rivera-Guerrero*, 426 F.3d at 1137. Indeed, at the end of the September 28 hearing, the Court instructed the parties to expeditiously file briefing outlining their positions on the scope of any *Sell* hearing that might be ordered in this case, given that the defendant is already being medicated pursuant to *Harper.*

But regardless of whether the Court can simply rely on the *Harper* determinations that have been previously made by prison medical personnel and administrators, or must conduct a more robust *Sell* hearing to approve the defendant's ongoing involuntary medication, the Court *did* make a restorability determination on September 28 with reference to a particular treatment plan. The hearing testimony established what medications the defendant is

receiving, what *dosages* of those medications he is receiving, and *when* during the day he is receiving those dosages. The same information was also included in Dr. Pietz's "Forensic Addendum" received by the Court and the parties in advance of the hearing. The defense's emergency motion accuses the Court of skirting the question "whether *future* treatment will achieve restoration," but implicit in the testimony and evidence the Court considered is that the defendant's present medication regimen will continue with only minor modifications, and that the medical experts believe this regimen will succeed in restoring him to competency. Neither *Sell* nor § 4241(d) requires more at this stage in the defendant's commitment — especially in absence of any evidence suggesting the medication regimen is improper. *See* n. 2, *supra*.

## III. "Reasonable Period of Time"

The defense's final argument is that the Court made a finding of restorability "untethered to the four-month period of extension it ordered." (Dkt. No. 345 at 11.) In other words, the Court found that the defendant could be restored to competency, and it approved a four-month extension in his commitment at FMC Springfield, but it failed to find that the former could be accomplished within the latter.

The Court's written order stated:

> [T]he Court heard a full day of testimony and argument, and at the conclusion of the hearing it extended Mr. Loughner's commitment at FMC Springfield for a period of four months, starting September 29, 2011. The Court found there is a substantial probability that Mr. Loughner can be restored to competency to stand trial.

(Dkt. No. 343 at 2.) The defense did not ask the Court to further clarify why it selected the four-month period at the hearing, and rather than seek that clarification now it simply accuses the Court of violating § 4241(d) and "arbitrarily choosing a four-month time period for additional commitment without finding that such time period was sufficient to permit Mr. Loughner's restoration." (Dkt. No. 345 at 18.) Once again, the hearing transcript speaks for itself, and establishes that the Court settled on a four-month extension, rather than the eight month extension sought by Dr. Pietz and the Government for two reasons. First, the Court concluded that a four-month extension was consistent with the language and structure of

§ 4241(d), and was the indicated period of time for an extension recognized by case law. S*ee United States v. Rodriguez-Lopez*, Case No. 8-CR-2447, 2010 WL 4339282 at *8 (D. N.M. Sept. 22, 2010). Second, the Court found that "measurable progress" toward restoring the defendant had been made within the four-month period preceding the September 28 hearing — especially during the 60-70 days immediately preceding the hearing during which the defendant's medication regimen resumed — and that there is "a substantial probability" that the defendant "will attain the capacity to permit the proceedings to go forward" within an additional 120-day commitment. The Court underscored that it had given specific consideration to the duration of the extended commitment when it alerted the Government that it would have to show "*additional measurable progress*" toward competency was being made before any further extensions would be granted.

## IV.  Conclusion

The defense concedes it is not entitled to a stay unless it raises "serious questions going to the merits" of the Court's decision to extend the defendant's commitment to FMC Springfield for competency restoration.  *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011).  For the reasons given above, the Court finds the defense has failed to do that.  The motion for a stay is therefore **DENIED**.

**IT IS SO ORDERED.**

DATED: October 3, 2011

*[signature]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge