Judy Clarke
Clarke and Rice, APC
1010 2nd Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

Mark F. Fleming
Law Office of Mark F. Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 300-6202

Reuben Camper Cahn
Ellis M. Johnston III
Janet Tung
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Defendant Jared Lee Loughner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 11-CR-00187-LAB |
| Plaintiff, | |
| v. | **DEFENDANT'S RESPONSE TO THE COURT'S CONCERNS ABOUT FORCED MEDICATION WITHOUT JUDICIAL AUTHORIZATION OR A *SELL* HEARING** |
| JARED LEE LOUGHNER, | |
| Defendant. | |

The Court has requested the defense position on whether or not the court must hold a *Sell* hearing, now that the Court has ordered that Mr. Loughner be recommitted to the FMC Springfield for further "restoration" efforts, and given that the prison continues to forcibly medicate him and the treating psychologist has opined that the only way to restore competency is by medication. The defense has continued to argue that Mr. Loughner may not be forcibly medicated without a judicial hearing that comports with due process and adequately protects Mr. Loughner's fair trial rights, and that his commitment cannot be extended without adequate

1

consideration of these interests. Because these interests have not been sufficiently addressed, counsel continue to object to the prison's forced medication regimen and the Court's extension of Mr. Loughner's commitment until these issues can be properly addressed in a court proceeding with the appropriate due process protections.

To be clear, the defense position is that to justify the twin invasions of Mr. Loughner's liberty – forcible medication and recommitment for purposes of restoration of competency – the court must make several findings: First, the court must find that there exists a substantial probability that Mr. Loughner will be restored to competency within a reasonable period of time; second, that it is substantially unlikely that the means employed will deprive him of a fair trial; third, that the means employed will either advance a substantial governmental interest or, considering less intrusive means, are essential to the safety of Mr. Loughner or others; and fourth, that the means employed are medically appropriate.[1] The Court made the first of these findings on September 28. The court has not yet addressed these other concerns.

# I.

# **BACKGROUND**

On September 19, 2011, this Court expressed its concerns about extending Mr. Loughner's commitment without addressing the requirements of *Sell v. United States*—which would include, among other things, fair trial rights[2] and medication for competency purposes pursuant to a treatment plan identifying drug dosage, quantity, and duration with specificity.[3] The Court stated:

---

[1]These factors are equivalent to the four *Sell* factors. [*See e.g., United States v. Ruiz-Gaxiola*, 623 F.3d 684, 688 (9th Cir. 2010) (a court cannot authorize forced medication to restore competency unless the government shows by clear and convincing evidence that (1) important government interests are at stake; (2) the forced medication is substantially likely to restore competency and substantially unlikely to cause side effects that would impair his fair trial rights; (3) forced medication is necessary to further those interests; and (4) forced medication is medically appropriate).]

[2]*See* 549 U.S. 166, 181 (2003) (citing Justice Kennedy's concurrence in *Riggins v. Nevada*, 504 U.S. 127, 142-45 (1992)).

[3]*See, e.g.*, *United States v. Hernandez-Vasquez*, 513 F.3d 908, 916-17 (9th Cir. 2008).

> [A]ny extension would be for the purpose of restoration. Now, that leads to some other concerns on my part. If now the purpose of the . . . extended commitment is restoration at Springfield, then I think that directly implicates *Sell*. . . .
>
> If I . . . am going to extend the time that Mr. Loughner remains at Springfield and the purpose is to restore him, then if he is being involuntarily medicated, I feel differently about the application that the defense has made at this point. Then all of a sudden the Court is ordering an extension knowing that he is being involuntarily medicated, I think it's incumbent upon me to conduct a *Sell* hearing.
>
> . . . I think it is a game changer and a significant event that if I do extend him, the purpose for the extension is for restoration.

9/19/11 Transcript at 6-7. Later during that hearing, the Court again explained its view of the prospect of granting a request to extend commitment for the purpose of restoration without any authority to medicate for restoration as a conundrum.

> The purpose of the extension would be to restore him and I think it is probably too much to say that we can go forward much beyond next week without a *Sell* hearing if I grant the extension.
>
> . . . So the question, I suppose, on the horizon is [whether] the other considerations get any play or is that the extent of the inquiry under *Sell*.
>
> . . . So I am contemplating that we would have a *Sell* hearing if I grant the motion for the extension.

*Id.* at 30.

In response to these concerns, the government has claimed that the issue of forced medication has been foreclosed by administrative prison proceedings. It claims "[i]f *Harper* grounds exist to involuntarily medicate a defendant (as in this case), no *Sell* involuntary medication order is required because medication is not being administered 'solely' to restore competency." Govt Resp. at 14, DE 324. The government suggests that because the prison has already decided to forcibly medicate Mr. Loughner on dangerousness grounds, "nothing more need be done by this Court other than reiterate that conclusion." *Id.* at 13.

On September 28, the Court ordered that Mr. Loughner's commitment to Springfield be extended for four more months. And it invited the defense to file a response concerning its position on the need for further proceedings. This response follows.

3

## II.

### THE COURT MUST DETERMINE WHETHER THE GOVERNMENT CAN ESTABLISH BY CLEAR AND CONVINCING EVIDENCE THAT FORCED MEDICATION IS ESSENTIAL–CONSIDERING LESS INTRUSIVE MEANS–TO MITIGATE ANY DANGER THAT MR. LOUGHNER MAY POSE TO HIMSELF OR OTHERS.

Despite raising concerns about committing Mr. Loughner for further restoration without conducting a *Sell* hearing, the Court has suggested that even if it holds a "*Sell*" hearing, it "may be pro forma" given the Supreme Court's suggestion in *Sell* that lower courts should first identify other bases for forced medication before conducting the *Sell* analysis. *See* 10/3/11 Order at 4 (citing *United States v. Rivera-Guerrero*, 426 F.3d 1130, 1137 (9th Cir. 2005)). Whether or not any hearing envisioned by the Court reaches consideration of all four *Sell* factors or simply ends with a dangerousness determination, the defense maintains its position that the BOP may not forcibly medicate a pretrial detainee on dangerousness grounds without a judicial proceeding in which the Court engages in a de novo analysis independent of any previous administrative finding. It also maintains for all the reasons urged in previous motions before this Court that the government must prove by clear and convincing evidence that forced medication with psychotropic drugs is essential to mitigating any danger posed to self or others after consideration of less intrusive means. *See, e.g., Riggins v. Nevada*, 504 U.S. 127, 135 (1992).

## III.

### THE COURT MUST ALSO ENGAGE IN A PREDICTIVE ANALYSIS OF WHETHER THE EFFECTS OF FORCED MEDICATION ARE LIKELY TO IMPACT MR. LOUGHNER'S FAIR TRIAL RIGHTS AS REQUIRED BY 18 U.S.C. § 4241(d)(2)(A).

In addition to the above, we request that the Court also engage in the analysis of whether Mr. Loughner's ongoing medication regimen is substantially likely to impair his capacity to permit the proceedings to go forward, which requires the Court to make a predictive determination of the impact on fair trial rights, as required by section 4241(d)(2)(A) and as argued in the defense's September 16 motion to deny the extension of Mr. Loughner's commitment, *see* DE 311.

## IV.

## CONCLUSION

At this point, to justify the twin invasions of Mr. Loughner's liberty – forcible medication and recommitment for purposes of restoration of competency – the court must still find that it is substantially unlikely that the means employed will deprive him of a fair trial, that the means employed will either advance a substantial governmental interest or, considering less intrusive means, are essential to the safety of Mr. Loughner or others; and that the means employed are medically appropriate. The defense requests that the Court promptly address these issues.

DATED: October 5, 2011                    Respectfully submitted,

/s/ *Judy Clarke*
Judy Clarke
Mark F. Fleming
Reuben Camper Cahn
Ellis M. Johnston III
Janet Tung

Attorneys for Defendant Jared Lee Loughner

Copies of the foregoing served electronically to:
Wallace H. Kleindienst, Beverly K. Anderson
Christina M. Cabanillas, Mary Sue Feldmeier