1  Judy Clarke
   Clarke and Rice, APC
2  1010 2nd Avenue, Suite 1800
   San Diego, CA 92101
3  (619) 308-8484

4  Mark Fleming
   Law Office of Mark Fleming
5  1350 Columbia Street, #600
   San Diego, CA 92101
6  (619) 794-0220

7  Reuben Camper Cahn
   Ellis Johnston III
8  Janet C. Tung
   Federal Defenders of San Diego, Inc.
9  225 Broadway, Suite 900
   San Diego, CA 92101
10 (619) 234-8467

11 Attorneys for Defendant Jared Lee Loughner

12              UNITED STATES DISTRICT COURT

13                  DISTRICT OF ARIZONA

14 | UNITED STATES OF AMERICA, ) | Case No. CR 11-0187-TUC LAB
15 |        Plaintiff,         ) |
16 | v.                        ) | **DEFENDANT'S REQUEST FOR VIDEOTAPING OF COMPETENCY INTERVIEWS**
17 | JARED LEE LOUGHNER,       ) |
18 |                           ) |
19 |        Defendant.         ) |

20   The defense hereby respectfully requests that the Court, pursuant to the Fifth, Sixth and

21 Eighth Amendments to the U.S. Constitution, in the interests of justice and for the purposes of

22 preservation of evidence, order videotaping of all competency interviews of Mr. Loughner

23 during his commitment to MCFP Springfield pursuant to 18 U.S.C. § 4241(d)(2). The instant

24 request focuses solely on competency interviews.

### Background

26   Mr. Loughner is currently committed to a four-month term at MCFP Springfield for

27 restoration of competency under 18 U.S.C. § 4241(d)(2). His commitment began on October 12,

28

2011, after the Court found him substantially likely to be restored to competency. *See* Order of September 30 (DE 343).

The defense requested videotaping of procedures at Springfield, first during Mr. Loughner's initial commitment there for a competency evaluation from March 23 to April 28, 2011. The Court granted that request, and found the video recordings it generated helpful to its competency determination. *See* May 25, 2011 Transcript at 47-48.

The defense also requested videotaping during Mr. Loughner's second commitment to Springfield, which was for the purpose of determining whether he can be restored to competency under § 42421(d)(1). Defense counsel initially sought videotaping of all clinical assessments during this time, *see* DE 262, and later narrowed the scope of the request to accommodate the BOP's logistical concerns. *See* DE 279 (requesting video recording of only "formal, clinical assessments" made by the BOP's primary evaluator). At a hearing on the motion BOP prison psychologist Christina Pietz expressed concerns with the scope of the request and suggested that if the request were further narrowed to just competency interviews, "the interviews where I'm asking specific competency-related questions," the video recording would be far less intrusive and less likely to interfere. *See* August 26, 2011 Transcript at 100.

Ultimately, the Court concluded that the utility of videotaping all clinical assessments would be outweighed by the risk of interference with the restorability evaluation process due to Mr. Loughner's obsessive behavior and paranoia. *See id.* at 112-13. The Court denied the motion without prejudice, indicating that it would readily reconsider the matter should the situation change.[1] *Id.* at 113.

---

[1] Dr. Pietz agreed to "ask [Mr. Loughner] as he improves if he would be comfortable" with videotaping and advise the Court. The Court directed Dr. Pietz to "report back...if you think the situation changes from your present assessment where the presence of a camera and videotaping with an audio function of the interviews won't freak him out, won't pose an obstacle to your assessment and your interaction with him, then I'd like to know that as promptly as possible." *Id.* at 111.

**Request for Videotaping of Competency Interviews**

It appears that circumstances have now changed, and the defense hereby renews its request for videotaping. This request is further narrowly tailored in scope, and seeks only video recording of the competency interviews described by Dr. Pietz at the September 28, 2011. *See e.g.*, Transcript at pp. 61-62 ("formal competency interview"), 77 ("structured competency interview"). Because the legal basis for the request remains the same as in the previous motions which this Court is familiar with, defense counsel incorporates by reference the analyses in the July 15 Request for Videotaping of Restoration Procedures and the August 11 Motion to Reconsider. *See* DE 262 & 279.

The video recording request should be granted now. First, it appears that the competency interviews referred to by Dr. Pietz have begun. BOP documents indicate that Dr. Pietz plans a Competency Assessment sometime before November 12, 2011. *See* Exhibit A (under seal) ("Individual Evaluation Plan" dated October 12, indicating that an assessment of competency would occur "within 30 days") (3-MCFP-002836 to 002837). November 12 is less than three weeks away. The most recent production of BOP records indicates that Dr. Pietz had an interview on October 17, 2011 discussing "competency related issues."

Second, the scope of the instant request is minimally intrusive and unlikely to prove unduly burdensome on BOP operations. The video recording equipment is readily available and prison staff members are familiar with the process and techniques for its use. *See* August 26 Transcript at 101. Moreover, at the hearing on the previous motion, Dr. Pietz explained that video recording of just formal competency interviews (as the defense presently requests) would be much less burdensome than video recording of all clinical interviews (as previously requested). She explained:

> At some point when I feel confident that he's no longer as psychotic, no longer as depressed, I'm going to administer a competency instrument, and I also am going to ask him very specific questions related to his competency to stand trial.
>
> If you're asking would I videotape just those last two things, the interviews where I'm asking specific competency-related questions, *that would be different and less time-consuming* than having to . . . videotape him every time I interview him to assess his mental state. . . .

August 26 Transcript at 100 (emphasis added). Moreover, as the most recent BOP records indicate, Mr. Loughner is being removed from his cell and taken to an interview room for the competency evaluation. This is likely to make him more used to being transported before court proceedings take place. As these proceedings will be held in a public forum, his adjustment to a video camera is consistent with the BOP's goals of restoration and preparing him through repetition for some of the processes which a competent defendant faces.[2] It also suggests that the video equipment can be made ready prior to Mr. Loughner's being brought into the room, making the process far less intrusive.

Third, the limited video recording requested here is unlikely to interfere with BOP's efforts to restore Mr. Loughner. Unlike the last request for videotaping, it is no longer BOP's goal to evaluate whether Mr. Loughner can be restored to competency—an evaluative process that the Court thought could be particularly sensitive to external influences. BOP is now charged with actually restoring Mr. Loughner and, at some point, assessing whether he has in fact been restored. This task is apt to be far less vulnerable to the observer effect that concerned the Court about the previous video recording request. *See* August 26 Transcript at 113 (utility of video recording was outweighed by "concerns that I have that having a camera, requiring a camera, and audio taping will interfere with the mission of the Bureau of Prisons, which is to make the assessment and report back to the Court"). Experience in this case supports this distinction. As Dr. Pietz explained, the video recording during Mr. Loughner's first commitment—for a competency assessment, just like the subject of the video recording requested in this motion—did not affect her evaluation or her ability to proceed with the competency evaluation. *See* August 26 Transcript at 106.

Finally, Dr. Pietz's discussion of "competency related issues" with Mr. Loughner and her expressed intention to proceed with a competency assessment by November 12, 2011 suggests that in her opinion he is better and therefore should be able to proceed with videotaping the

---

[2]The Court has also used a video-camera in the courtroom for proceedings when Mr. Loughner has been present, to project the proceedings in an "overflow" courtroom.

formal and/or structured competency interviews. *See* Testimony of Dr. Pietz, August 26, 2011, at 100 ("At some point when I feel confident that he's no longer as psychotic, no longer as depressed, I'm going to administer a competency instrument, and I also am going to ask him very specific questions related to his competency to stand trial."); September 28, 2011 at 61-62 ("At some point, when. . . it's my opinion that he's close to competency, I would do a formal competency interview and I would take notes at that time.") and at 77 ("When he's better able to do those sorts of things, I will do a structured competency interview."). Thus, given Dr. Pietz's venture into "competency related issues" and intention to proceed with an assessment by November 12, it appears the balance between the utility of video recording and risk of undue interference has now tipped in favor of video recordings.[3]

## Conclusion

The defense respectfully requests that the Court order that the formal competency interviews of Mr. Loughner, including administration of competency instruments, be video recorded and provided to defense counsel.

Respectfully submitted,

DATED: October 26, 2011

*/s/ Judy Clarke*

JUDY CLARKE
MARK FLEMING
REUBEN CAMPER CAHN
ELLIS JOHNSTON III
JANET TUNG
Attorneys for Jared Lee Loughner

Copies of the foregoing served electronically to:
Wallace H. Kleindienst, Beverly K. Anderson
Christina M. Cabanillas, Mary Sue Feldmeier, Bruce Ferg

---

[3] Failure to videotape these competency interviews will result in the permanent loss of potentially critical evidence, and undermine the accuracy of the ultimate determination of what are likely to be highly contested issues.