# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　　　　　Plaintiff,<br>　vs.<br><br>Jared Lee Loughner,<br><br>　　　　　　　　　　　Defendant. | CASE NO. 11cr0187 TUC LAB<br><br>**ORDER DENYING REQUEST TO VIDEOTAPE COMPETENCY INTERVIEWS** |

The defense has asked the Court to order the videotaping of all competency interviews of the defendant during his present commitment to FMC Springfield. The purpose of this commitment, of course, is to restore the defendant to competency to stand trial, and the defense believes that "[f]ailure to videotape these competency interviews will result in the permanent loss of potentially critical evidence, and undermine the accuracy of the ultimate determination of what are likely to be highly contested issues." (Dkt. No. 360 at 5 n.5.) The request is **DENIED**.

The request was originally made on July 15, 2011, after the Court had determined the defendant was incompetent to stand trial and he had been committed to FMC Springfield to determine whether he could be rendered competent in the foreseeable future. (Dkt. No. 262.) The Court denied the request on August 4, 2011. (Dkt. No. 275.) It found no legal authority that *required* videotaping, and it recalled that the videotaping of the defendant's original competency examination "was apparently very distracting to the defendant and a hindrance to the FMC staff conducting the examination." (Dkt. No. 275 at 2.) The Court also

1  found the defense's request to be overbroad such that, over the defendant's lengthy
2  commitment period, it would "invariably invite an interaction-by-interaction analysis as to
3  whether videotaping is necessary." (*Id.* at 2.)

4  The defense asked the Court to reconsider its position on August 11, 2011. (Dkt. No.
5  279.) The request this time around was narrower in scope, limited to "the formal clinical
6  assessments of Mr. Loughner by the primary BOP evaluator." (Dkt. No. 279 at 4.)  On
7  August 26, 2011, the Court heard oral argument on the motion for reconsideration, including
8  testimony from the defendant's chief psychologist, Dr. Pietz. (Dkt. No. 307.) This argument
9  did little to assuage the Court's concerns about the impediment videotaping would impose
10 on the work of the FMC staff, and it denied the motion for reconsideration. The denial was
11 without prejudice, however. The Court indicated on August 30, 2011 that it would reconsider
12 "if Dr. Pietz or some other member of the FMC staff represents that the defendant's mental
13 state has so improved that the presence of a video camera will not impede efforts to
14 diagnose and treat him." (Dkt. No. 306 at 1.)

15 Approximately one month later, on September 28, 2011, the Court found there was
16 a substantial probability that the defendant could be restored to competency in the
17 foreseeable future, and, pursuant to 18 U.S.C. § 4241(d)(2), it extended his commitment to
18 FMC Springfield for the purpose of actually attempting that restoration. (Dkt. No. 343.)
19 Given this critical shift in the formal basis for the defendant's commitment to FMC Springfield,
20 as well as for other reasons, the defense renewed its request for videotaping on October 26,
21 2011. It did not ask that all interactions between the defendant and FMC staff be videotaped;
22 it asked only that "the formal competency interviews of Mr. Loughner, including
23 administration of competency instruments" be videotaped. (Dkt. No. 360 at 5.)

24 The Court considered the defense's renewed motion for videotaping and on October
25 28, 2011 ordered Dr. Pietz to file an updated declaration on the issue. (Dkt. No. 362.) Dr.
26 Pietz promptly did that. (Dkt. No. 363-1.) Dr. Pietz said that she raised with the defendant
27 the possibility of videotaping his competency interviews and he indicated "that he did not
28 want to be videotaped." (*Id.* at ¶ 3.) She said she believed "Defendant Loughner will be

reluctant to speak with me if he is being videotaped." (*Id.*)  "Additionally," she said, "Defendant Loughner has recently been resistant to speaking with me, and videotaping at this point may exacerbate his position." (*Id.*)  Dr. Pietz did say, however, that she does not oppose the request to videotape formal competency interviews if ordered to so by the Court. (*Id.*)  Formal competency interviews would be those in which Dr. Pietz administers a "formal competency instrument" or asks "questions relevant to determining [the defendant's] competency." (*Id.* at ¶ 4.)

That Dr. Pietz does not object to videotaping *if ordered by the Court* does not persuade the Court to order it.  It appears that Dr. Pietz's original concerns about the impediment a videotaping requirement would impose on her assessment of and interactions with the defendant have not fully abated.  Although the presence of a videocamera would not prevent Dr. Pietz from coming to conclusion about the defendant's competency to stand trial, that is not a sufficient reason for the Court to order the requested videotaping, particularly when it is apparent that there are enduring concerns about the defendant's willingness to fully engage Dr. Pietz if videocameras are present.  Moreover, the manner and situational context in which Dr. Pietz interacts with the defendant to evaluate his competency to stand trial are not for this Court to manage.  The Court therefore reaffirms its conclusion that providing the defense the opportunity at a future competency hearing to cross-examine the Government's witnesses and call witnesses of its own are adequate adversarial safeguards to protect the defendant's due process and fair trial rights.  (*See* Dkt. No. 275 at 3.)

There are two related matters to address.  First, Dr. Pietz asked that she not be required to produce her personal notes regarding the defendant's competency until the expiration of his current commitment period.  (Dkt. No. 363-1 at ¶ 5.)  The defense agrees to this.  (Dkt. No. 368 at 3.)  Second, the defense is free to videotape or not videotape any interactions between its own experts and the defendant.  If it chooses the former, it has no obligation to provide videotapes to the Government unless it intends to offer them in

//
//

1  evidence at any future hearing.  In such event, the defense must, of course, comply fully with
2  Fed. R. Crim. P. §§ 16(b)(1)(B) and (C) and Fed. R. Ev. 705.
3      **IT IS SO ORDERED.**
4  DATED: November 22, 2011

*[signature: Larry A. Burns]*

**HONORABLE LARRY ALAN BURNS**
United States District Judge