Judy Clarke
Clarke and Rice, APC
1010 2nd Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

Mark Fleming
Law Office of Mark Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 794-0220

Reuben Camper Cahn
Ellis Johnston III
Janet C. Tung
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Defendant Jared Lee Loughner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>v.<br><br>JARED LEE LOUGHNER,<br><br>  Defendant. | Case No. CR 11-0187-TUC LAB<br><br>**DEFENSE OBJECTIONS TO THE PRODUCTION OF PSYCHOLOGIST NOTES TO THE PROSECUTION** |

Pursuant to the Court's order at the February 6, 2012 status hearing, the defense submits its objections to the prosecution receiving a copy of Dr. Pietz's personal notes made during the course of Mr. Loughner's previous four-month restoration commitment to FMC Springfield.

**BACKGROUND**

Mr. Loughner is currently committed to MCFP Springfield for restoration of competency under 18 U.S.C. §4241(d)(2). On January 30, 2012, Dr. Christina Pietz, Mr. Loughner's prison psychologist, submitted a report to the Court which indicated that Mr. Loughner remained incompetent. The Court construed this report as a request for more time, and it granted the

government's motion for a four-month extension of Mr. Loughner's commitment.[1] Along with the report, Dr. Pietz also provided the Court with approximately 62 pages of personal notes from the October 2011 - February 2012 restoration commitment period. Both the defense and the government sought production of the notes, which consist of four sections identified by cover pages: (1) notes relating to Dr. Pietz's interviews with Mr. Loughner; (2) notes relating Dr. Pietz's interviews with defense attorneys; (3) email correspondence between Dr. Pietz and the prosecution; and (4) notes relating to her interview of a potential witness. The notes were provided to the defense at the conclusion of the February 6 hearing.

At the hearing, over the Court's admonition, the government continued to request a copy of the notes, except for those related to meetings between Dr. Pietz and defense counsel. The government agreed that it had no right to receive attorney-client privileged material. The government did not identify any legal basis that might entitle it to discovery of the notes of interviews with Mr. Loughner, nor did it identify any theory of relevance to pending or anticipated litigation.

The Court ordered defense counsel to review the notes to identify privileged material and, by February 13, lodge objections to their production to the government. The defense now files the following objections.

**OBJECTIONS**

**A.   Dr. Pietz's Interviews With Mr. Loughner**

The defense maintains its position that the government is not entitled to discovery of any portion of the notes relating to Dr. Pietz's interviews with Mr. Loughner. These notes are a product of a period of compulsory treatment and evaluation ordered at the government's request and over strenuous objection by the defense. They contain potentially incriminating statements allegedly made by Mr. Loughner in response to Dr. Pietz's questioning. These statements thus fall squarely within the category of compelled statements whose use—and derivative use— violates the Fifth and Sixth Amendments. *See Estelle v. Smith*, 451 U.S. 454, 468-69 (1981) ("A

---

[1] The report, dated January 25, 2012, is on file under seal with the Court.

criminal defendant, who neither initiates a psychiatric evaluation nor attempts to introduce any psychiatric evidence, may not be compelled to respond to a psychiatrist if his statements can be used against him in a capital sentencing proceeding."). In other words, there is no legitimate use to which the government can put the information it discovers.

Moreover, the government has no presently existing interest in the notes. Any legitimate interests it might have—in contesting Dr. Pietz's findings in her January 25, 2012 report, or in relation to potential mental health issues at trial and/or sentencing—are either moot or not ripe. The first issue has become moot; Dr. Pietz's findings were uncontested by the government and accepted by the Court. Indeed, the government itself advocated the accuracy of Dr. Pietz's report, and its motion for an extension of the restoration commitment was granted, thus rendering moot any possible interest in the underlying notes. Indeed, as Dr. Pietz indicated by omitting them from her competency report, many of the statements in the notes are entirely irrelevant to question of competency.

As for the notes' relevance to potential mental health issues at trial and/or sentencing, the government's request is, at best, premature. There is no pending litigation concerning mental health issues. And, while the defense maintains that any potentially self-incriminating statements obtained through Dr. Pietz's examination are inadmissible for any purpose under *Estelle*,[2] any proceeding where such statements might be used to impeach Mr. Loughner is merely speculative at this point. Should such an occasion arise, the proper course would be to follow the procedures set forth in Federal Rule of Criminal Procedure 12.2, which governs the disclosure of mental examination evidence generated for purposes of trial.

Rule 12.2's procedures are designed to prevent premature disclosure to the government of precisely the type of psychiatric evidence at issue here. *See* Fed. R. Crim. P. 12.2(c) (results of a court-ordered examination concerning mental condition relevant to capital sentencing "must

---

[2] *Accord Buchanan v. Kentucky*, 483 U.S. 402, 423 (1987) (statements from a psychiatric report were admissible in rebuttal against the defendant where his own attorneys had requested the psychiatric exam and the psychiatric evidence was the only means for the state to respond to the defendant's mental status defense).

be sealed and must not be disclosed to any attorney for the government" unless the defendant is found guilty of a capital crime and provides notice of his intent to offer expert mental condition evidence at sentencing). The Rules Committee recognized—as did this Court at the February 6 hearing when addressing the government's request—how legally fraught and damaging premature disclosure can be. Specifically, the Committee adopted its procedure for sealing such evidence "until it is clear that the defendant will introduce expert evidence about his or her mental condition" in part because "if the government obtains early access to the accused's statements, it will be required to show that it has not made any derivative use of that evidence. Doing so can consume time and resources." *Id.*, Adv. Comm. Notes, 2002 Amend. The Committee also favorably cited *United States v. Beckford*, 962 F.Supp. 748 (E.D.Va. 1997), a case which imposed the same disclosure limitations on such evidence prior to the rule change because of "the need to strike a balance between securing a defendant's Fifth Amendment rights and affording the Government a meaningful right of rebuttal on mental health issues." 962 F.Supp. at 761. Both these concerns represent why Rule 12.2's disclosure provisions are expressly conditioned on the defense providing notice of its intent to either raise an insanity defense or use mental condition expert evidence—a triggering event that has not happened here.

Rule 12.2's disclosure limitations are specific to mental health evidence generated under that rule after notice has been given by the defendant of an intent to present mental health evidence at trial. Fed. R. Crim. P. 12.2(c)(2). But where, as here, the defense hasn't even given or been required to give 12.2 notice, Fifth Amendment concerns of providing compelled statements to the government at this stage are only amplified insofar as the only compelling reason that the government might have for overcoming these concerns is its need for "a meaningful right of rebuttal on mental health issues." *Beckford*, 962 F.Supp. at 761 (citing *Estelle*, 451 U.S. at 468). And unless and until the defense gives any notice of an intent to introduce mental health evidence, the government has no compelling reason for disclosure. Moreover, the concerns about derivative use and wasted time and resources driving the Rules Committee to amend Rule 12.2 to prohibit early disclosure to the government are no less present when such mental health evidence is generated prior to 12.2 notice. *See also Beckford*, 962

4

F.Supp. at 762 n.11 (echoing the concern that premature disclosure "would present the risk of inadvertent use and would lead to difficult problems respecting the source of prosecution evidence and questioning in the guilt phase). Quite simply, the concerns animating Rule 12.2's disclosure limitations warrant the same treatment for the notes requested by the government now.

Furthermore, the government has essentially conceded that it has no other reason for obtaining these notes. When making its request for production of Dr. Pietz's personal notes, the government acknowledged at the February 6 hearing that it did not intend to use them in its case-in-chief, rather only as potential rebuttal to mental health evidence presented by the defense. The government offered no other theory for why it would be entitled to these notes. Thus, at the very least, the Court should not entertain a government motion for disclosure unless and until the defense gives notice of an intent to introduce mental health evidence under Rule 12.2. In sum, the government is not entitled to the notes. It has offered no authority supporting disclosure, nor has it identified any good reason to receive them at this time.

**B.   Dr. Pietz's Interviews With Defense Attorneys**

The government has agreed that it should not receive these notes, located under the tab "Notes From Interviews With Attorneys," at pages 52-57 of the notes.

**C.   Correspondence With Government Attorneys**

The defense does not object to disclosure to the government of Dr. Pietz's correspondence with government counsel. *See* Tab "Notes From Interviews With Attorneys," at 58-60.

**D.   Witness Interview**

The defense does not object to disclosure to the government of notes concerning Dr. Pietz's interview with the potential witness. *See* pages 60-62.

//
//
//
//
//
//

5

**CONCLUSION**

The defense respectfully requests that the Court withhold the portions of Dr. Pietz's notes relating to her interviews with Mr. Loughner and her interviews with defense counsel. The Court should rule that Dr. Pietz's notes concerning her interviews with Mr. Loughner are not discoverable by the government, or, in the alternative, delay ruling on the issue until such time that they become immediately relevant to litigation concerning Mr. Loughner's mental condition and the defense provides notice of intent to use mental expert evidence under Rule 12.2. If the Court is nonetheless inclined to divulge the notes to the government, the defense requests that the portions containing potentially incriminating statements concerning the offense be redacted.

Respectfully submitted,

/s/ *Judy Clarke*

DATED: February 13, 2012

JUDY CLARKE
MARK FLEMING
REUBEN CAMPER CAHN
ELLIS JOHNSTON III
JANET TUNG
Attorneys for Jared Lee Loughner

Copies of the foregoing served electronically to:
Wallace H. Kleindienst, Beverly K. Anderson
Christina M. Cabanillas, Mary Sue Feldmeier, Bruce Ferg