# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　　　　Plaintiff,<br>　vs.<br><br>Jared Lee Loughner,<br><br>　　　　　　　　Defendant. | CASE NO. 11cr0187 TUC LAB<br><br>**ORDER RE: PRODUCTION OF PSYCHOLOGIST'S PERSONAL NOTES TO THE GOVERNMENT** |

At a hearing on February 6, 2012, the Court extended the defendant's commitment to FMC Springfield for the purpose of restoring him to competency to stand trial. The Court relied on a competency report that it received from Dr. Christina Pietz, the defendant's chief psychologist. Dr. Pietz advised the Court that she has seen substantial improvement in the defendant's mental state over the last few months, and that she believes with continued treatment the defendant may soon become competent to stand trial.

Dr. Pietz's report was accompanied by approximately 60 pages of personal notes, divided into three sections: (1) notes from her interactions with the defendant; (2) notes from conversations with the defense *and* email correspondences with the Government; and (3) notes from an interview of a victim-witness. At the conclusion of the February 6 hearing, both the defense and the Government asked for Dr. Pietz's notes. The Court provided them *only* to the defense, on the understanding that the defense would review the notes to identify any possible attorney-client privileged material, which would be excised before production of the notes to the Government.

The defense lodged its objections with the Court on February 13.  It doesn't object to the Government receiving copies of correspondence between Dr. Pietz and the Government (which the Government obviously already has), nor does it object to the Government receiving copies of Dr. Pietz's notes from her interview with a victim-witness.  The defense does object to the Government receiving copies of Dr. Pietz's notes from her conversations with defense counsel (which the Government concedes it isn't entitled to) and copies of *any* portion of Dr. Pietz's notes from her conversations and interactions with the defendant.  It is only the latter objection, then, that the Court needs to consider.

The Court previously resolved a similar objection in this case.  Before originally finding the defendant incompetent to stand trial, the Court ordered a psychiatric exam.  (Dkt. Nos. 141, 153.)  At that time, the defense asked that any formal, clinical interviews of the defendant during the course of that exam be videotaped for its review.  (Dkt. No. 159 at 5.)  The Court granted that request, but ordered that the videotapes also be produced to the Government.  (Dkt. No. 165 at 5.)   The defense objected to the Government receiving the videotapes, for roughly the same reasons that it now objects to the Government receiving copies of Dr. Pietz's notes.  (Dkt. No. 168 at 7.)  Specifically, the defense argued that any statements the defendant might make during the course of a psychiatric exam would be compelled, and that, at a minimum, the Government's use of the statements should be restricted.  (*Id.*) It relied then, as it does now, on *Estelle v. Smith*, 451 U.S. 454 (1981).  The first time the defense raised this objection, the Court addressed it in this way:

> [T]he Court doesn't need to restrict the Government's use of the clinical interview recordings because the law already does. If the defendant is found competent to stand trial, 18 U.S.C. § 4241(f) forbids the use of that finding against him at trial. In the statute's words, such a finding "shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be possible as evidence in a trial for the offense charged." Moreover, Federal Rule of Criminal Procedure 12.2(c)(4) also provides that no statement made by the defendant in the course of a competency exam, and no other fruits of the statement, may be admitted into evidence against the defendant, unless he relies on an insanity defense at trial or introduces expert evidence regarding his mental state in a capital sentencing hearing.  *See* Fed. R. Crim. P. 12(c)(4)(A)-(B).  In combination, these provisions protect the defendant from the adverse use of what he says to an examiner during a clinical

> interview.
>
> As the defense notes, *Estelle v. Smith* prohibits the content of a competency examination from being used for a "much broader objective" than determining competency to stand trial, and explicitly cautions against uses that are "adverse" to the subject. 451 U.S. 464, 465 (1981). *Estelle* sustained Fifth and Sixth Amendment challenges to a psychiatrist's testimony in the sentencing phase of a capital case based on that psychiatrist's pre-trial examination of the defendant to determine competency. But *Estelle* explicitly said "no Fifth Amendment issue . . . arise[s]" if the examiner's function is limited to assessing a defendant's competency. *Id.* That is the precise and singular purpose of the examination the Court has authorized in this case.

(Dkt. No. 175 at 3.)  *See also Nguyen v. Garcia*, 477 F.3d 716, 726 (9th Cir. 2007) ("Not only are competency hearings entirely distinct in purpose from the guilt phase of trial, but competency hearings do not invoke the same concerns of self-incrimination . . . that are relevant during the guilty and penalty phases of trial.").

The Court stands by its earlier ruling.  That Dr. Pietz's personal notes may contain potentially incriminating statements made by the defendant is not a reason to withhold them outright from the Government.  If, at the time of trial, the defense believes the Government intends to make affirmative use of the statements contained in Dr. Pietz's notes against the defendant, or use the fruits of those statements, it will be entitled to a *Kastigar*-type hearing in which the Government must show that any contested statements were obtained or derived from an independent source.  *See Kastigar v. United States*, 406 U.S. 441 (1972).

The defense also argues that Fed. R. Crim. P. 12.2 bars disclosure of Dr. Pietz's personal notes to the Government.  No it doesn't, for at least three reasons.

First, the particular provision of Rule 12.2 that the defense cites doesn't apply here, but rather in the specific context of capital sentencing proceedings.  That provision is Rule 12.2(c)(2), and it says:

> The results and reports of any examination conducted solely under Rule 12.2(c)(1) after notice under Rule 12.2(b)(2) must be sealed and must not be disclosed to any attorney for the government *or the defendant* unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition.

Fed. R. Crim. P. 12.2(c)(2) (emphasis added).  This needs to be parsed.  Notice under Rule

12.2(b)(2) is notice of an intent to introduce expert evidence relating to a mental defect or condition "bearing on . . . the issue of punishment in a capital case." An examination conducted under Rule 12.2(c)(1) is either a court-ordered competency exam under 18 U.S.C. § 4241 *or* an examination ordered "upon the government's motion." *All* Rule 12.2(c)(2) really says, then, is this: If the defendant intends to offer expert evidence relating to his mental condition in the punishment phase of a capital case, and the court then orders some kind of mental examination of the defendant, the results and reports of that examination aren't made available to counsel if the defendant is acquitted of the capital charges. That Rule has nothing to do with the current, pretrial posture of this case. Here, we are dealing with a competency report and related materials that go to the defendant's ability to stand trial in the first instance.[1]

Second, assuming Rule 12.2(c)(2) does apply here as the defense suggests, it would also bar the disclosure of Dr. Pietz's notes from the defense, as the added emphasis in the above quotation shows. Puzzlingly, the defense's quotation of Rule 12.2(c)(2) in its brief conspicuously omits the words "or the defendant", in what the Court can only regard as a transparent attempt to con the Court into thinking the defense is entitled to Dr. Pietz's notes under Rule 12.2(c)(2) while the Government is not.[2] (*See* Dkt. No. 401 at 4:1.)

Third, Rule 12.2(c)(2), which covers "[t]he results and reports of any examination," draws absolutely no distinction between a competency report, which the defense did not object to the Government receiving, and the notes of the psychologist who drafted that report. Indeed, were the Court were to take the defense's argument seriously and withhold Dr. Pietz's notes from the Government pursuant to Rule 12.2(c)(2), it likewise shouldn't have turned over Dr. Pietz's competency report to the Government. Obviously, that is an absurd

---

[1] The Court also considered the applicability of Rule 12.2 in this case when the defense objected to BOP releasing to the Government the defendant's custodial records and observations of him in custody. The analysis isn't precisely on point here, but it is similar. (*See* Dkt. No. 206 at 4–5.)

[2] This is poor advocacy. It engenders distrust of the defense's pleadings on the Court's part, and it neutralizes the force of any valid legal arguments the defense might otherwise make. The defense is admonished not to again misrepresent the substance of a statute or case in this manner.

outcome.

The Court should, finally, address the defense's argument that the Government isn't entitled to Dr. Pietz's personal notes because it has no present interest in them given that: (1) it didn't contest Dr. Pietz's competency report itself, and (2) it indicated it would only use them in rebuttal to mental health evidence offered by the defense at trial. There are two problems with this argument. First, the Government may have a very legitimate interest in Dr. Pietz's notes to the extent they inform its decision whether to ultimately pursue the death penalty in this case or engage in plea negotiations. The more information the Government has in making those decisions, the better. Second, Rule 12.2 does not condition *disclosure* of competency materials upon the defense's introduction of mental health evidence but rather the *admissibility* of those materials. See Fed. R. Crim. P. 12.2(c)(4). And even then, the Court reads Rule 12.2 as concerned primarily with psychiatric reports commissioned upon a defendant's intent to make his mental condition an issue at trial, not competency reports commissioned to determine whether he can stand trial in the first place.

The defense's objection to the Government receiving Dr. Pietz's personal notes is **OVERRULED**. The few pages containing copies of Dr. Pietz's notes from conversations with defense counsel will be redacted, but the remainder of the notes will be given to the Government.

**IT IS SO ORDERED.**

DATED: February 16, 2012

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge