1 Judy Clarke
Clarke and Rice, APC
2 1010 2nd Avenue, Suite 1800
San Diego, CA 92101
3 (619) 308-8484

4 Mark Fleming
Law Office of Mark Fleming
5 1350 Columbia Street, #600
San Diego, CA 92101
6 (619) 794-0220

7 Reuben Camper Cahn
Ellis M. Johnston III
8 Janet C. Tung
Federal Defenders of San Diego, Inc.
9 225 Broadway, Suite 900
San Diego, CA 92101
10 (619) 234-8467

11 Attorneys for Defendant Jared Lee Loughner

12

UNITED STATES DISTRICT COURT

13

DISTRICT OF ARIZONA

14

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. CR 11-0187-TUC LAB |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **DEFENDANT'S MOTION TO** |
| | ) | **RECONSIDER ORDER OVERRULING** |
| JARED LEE LOUGHNER, | ) | **OBJECTIONS TO PRODUCTION OF** |
| | ) | **PSYCHOLOGIST'S NOTES** |
| | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

21        In its February 16 order, the Court considered and rejected an argument that the defense

22 never made, namely that Federal Rule of Criminal Procedure 12.2 "bars disclosure of Dr. Pietz's

23 personal notes to the Government."  DE 407 at 3.  Had such argument been made, any

24 consternation on the Court's part would have been understandable.  What the defense actually

25 argued, however, and the Court has yet to consider, is whether "the concerns animating Rule

26 12.2's disclosure limitations warrant the same treatment for the notes requested by the

27 government now."  Def. Objections, DE 401 at 5.  The Court should reconsider its order and

28 address this argument.

1

1

**BACKGROUND**

2       On January 30, 2012, the Court received a competency report from Dr. Pietz that found

3   Mr. Loughner remains incompetent to stand trial. *See* 2/8/2012 Order Extending Commitment,

4   DE 399 at 1.  The Court distributed this report to both parties, and they filed a joint notice

5   indicating that neither party intended to introduce evidence disputing the accuracy of Dr. Pietz's

6   findings. *Id.* at 1-2.  At the conclusion of the February 6 extension hearing, the government

7   moved for production of Dr. Pietz's personal notes to both parties.  The defense agreed that it

8   wanted these notes but objected to the government's receipt.  The Court produced the notes to

9   the defense, and questioned the government about its needs for the notes at this time.  The

10  government claimed that it did not intend to use any of Mr. Loughner's statements in its case-in-

11  chief, but it claimed that it had a right to use any statements from these notes as rebuttal.  The

12  Court nevertheless admonished the government that pretrial production might raise concerns

13  about derivative use of these notes.  The government pressed on for production, and the Court

14  ordered the defense to file any objections to the notes' production.

15      The defense's written objections raised several grounds for not producing the notes to the

16  government. *See* DE 401.  One of those arguments concerned the premature nature of the

17  government's request for production. *See id.* at 3-5.  The defense argued that because there was

18  no currently pending litigation concerning mental health issues, the Court should not entertain

19  a production request until such issues arose. *Id.* at 3.  To the extent that the government wanted

20  the notes for trial purposes, i.e., "to impeach Mr. Loughner," *id.*, the defense suggested that the

21  procedures set forth in Rule 12.2 governing disclosure should be followed here, i.e., that "unless

22  and until the defense gives any notice of an intent to introduce mental health evidence [at trial],

23  the government has no compelling reason for disclosure," *id.* at 4.

24      In support of this argument, the defense explained the reasons why the Rules Committee

25  implemented its strict disclosure requirements. *Id.* at 3-4.  And it explained that because the type

26  of mental health evidence sought by the government is "precisely the type of psychiatric

27  evidence at issue here," i.e. compelled pretrial examination of a criminal defendant, *id.* at 3, the

28  Court should consider the reasoning of Rule 12.2, as well as its disclosure procedures, in

1   determining how to deal with the government's request, *id.* at 4-5; *see also specifically id.* at 5,

2   ln.3-4 ("Quite simply, the concerns animating Rule 12.2's disclosure limitations warrant the

3   same treatment for the notes requested by the government now.").

4          Nowhere did the defense argue that the plain language of Rule 12.2 *commands* this result,

5   or to use the Court's characterization, that Rule 12.2 "*bars* disclosure of Dr. Pietz's personal

6   notes to the Government."   2/16/2012 Order, DE 407 at 3 (emphasis added).   Indeed, every

7   single time the defense cited Rule 12.2, it expressly identified Rule 12.2's limitations, namely

8   that the rule "governs the disclosure of mental examination evidence *generated for purposes of*

9   *trial*."  DE 401 at 3, ln.20-21 (emphasis added); *see also id.* at ln.23-24 (noting that Rule 12.2(c)

10  applies to "court-ordered examination concerning mental condition *relevant to capital*

11  *sentencing*") (emphasis added); *id.* at 4, ln.17-19 ("Rule 12.2's disclosure limitations *are specific*

12  *to mental health evidence generated under that rule after notice has been given by the defendant*

13  *of an intent to present mental health evidence at trial*.") (emphasis added).  Rather, the defense

14  argued that "where, as here," Mr. Loughner has given no 12.2 notice which would waive his

15  Fifth Amendment rights, concerns about production of his compelled statements are only

16  amplified, and where concerns about derivative use and wasted resources "are no less present

17  when such mental health evidence is generated prior to 12.2 notice," *id.* at 4, the Court should

18  consider these concerns in denying the government's request for production.

19         Despite the intended clarity of the defense's arguments on this point, the Court

20  misconstrued them as suggesting that Rule 12.2 somehow "bars" production of Dr. Pietz's notes

21  to the government.  And in misconstruing the argument, the Court not only failed to consider

22  whether the reasons underlying Rule 12.2's disclosure requirements warrant similar treatment

23  here, it unfairly  and unfortunately chastised defense counsel for engaging in "poor advocacy."

24  *See* DE 407 at 4 n.2.  As discussed below, however, when properly understood, there is nothing

25  inconsistent, disingenuous, or misrepresentative about the defense's argument in this case.

26         The Court should reconsider its order and consider for the first time the arguments made.

27  //

28  //

1

**ARGUMENT**

2

**A.   Rule 12.2 Doesn't Apply, But the Reason's for the Rule's Disclosure Limitations on the Government Warrant the Same Treatment Here; The Court Should Consider Them in this Context.**

3

4     The Court notes that "the particular provision of Rule 12.2 that the defense cites doesn't

5     apply here, but rather in the specific context of capital sentencing proceedings."  DE 407 at 3.

6     The defense doesn't disagree, and as discussed above, acknowledged this fact every time that

7     it cited Rule 12.2.  Rather, it argued that the reasons animating the rule's disclosure requirements

8     are equally, if not more, present in the instant circumstances.  The Court failed to adequately

9     consider these concerns or their applicability to this situation.

10    To be fair, the Court addressed the Fifth Amendment concerns raised by providing

11    compelled statements protection in the context of the defense's *Estelle* claim.  *See* DE 407 at 2-3

12    (citing DE 175 at 3).  But in reciting its reasoning from a previous order, the Court failed to

13    consider the applicability of Fifth Amendment concerns in this particular context, namely the

14    timing of disclosure to the government.  As discussed in the defense's objections, there is a

15    different calculus for production when statements from compelled pretrial examinations are

16    being sought for use at trial.  Specifically, the defense cited the Rules Committee's favorable

17    citation to *United States v. Beckford*, 962 F. Supp. 748 (E.D.Va. 1997), a case in which the court

18    delayed production of a compelled examination because of "the need to strike a balance between

19    securing a defendant's Fifth Amendment rights and affording the Government a meaningful right

20    of rebuttal on mental health issues," *id.* at 761.  DE 401 at 4.  At the present time, the balancing

21    is completely one-sided; the government has no current need for a "meaningful right of rebuttal"

22    because neither the defense nor the government challenged the accuracy of Dr. Pietz's

23    competency report.  And the defense has not given 12.2 notice of an intent to introduce mental

24    health evidence at trial,  thus no need for production (yet) on that account either.  The Court

25    failed to consider this balancing and should reconsider its order on this ground alone.

26    The other concern animating 12.2's strict disclosure requirements is the unnecessary time

27    and resources that can be consumed addressing derivative use issues at trial.  Indeed, the Court

28    seemed to acknowledge this concern at the February 6 hearing.  The Court repeatedly questioned

4

1   the government's interest in obtaining these statements when it might later have to spend

2   considerable resources proving that no trial testimony was derived from their use.  But while the

3   Court acknowledges the defense's right to prevent even derivative use of these compelled

4   statements, *see* DE 407 at 3, it is completely silent on one of the primary concerns driving the

5   Rules Committee's decision to amend 12.2's disclosure requirements: wasted time and resources.

6   *See* Defense Objections, DE 401 at 4.  Here, the Court has the opportunity to avoid unnecessary

7   and time-consuming litigation just by delaying production of these compelled statements.  It

8   should follow the Rules Committee's wisdom and do so.

9   **B.      Rule 12.2 Doesn't Apply, and the Defense Never Invoked it as a Source of
          Entitlement to Dr. Pietz's Notes.**

10

11   The Court's second point of contention with the defense's objections is founded on the

12   same faulty premise as its first.  The Court chides the defense because "assuming Rule 12.2(c)(2)

13   does apply here *as the defense suggests*, it would also bar the disclosure of Dr. Pietz's notes from

14   the defense . . . ."  DE 407 at 4 (emphasis added).  To be perfectly clear, the defense did not

15   argue that Rule 12.2 applies to notes taken as part of a competency evaluation; to the contrary,

16   it took every pain to explicate 12.2's specific context.  Nor has the defense engaged in "a

17   transparent attempt to con the Court into thinking the defense is entitled to Dr. Pietz's notes

18   under Rule 12.2(c)(2) while the Government is not." *See id.*  Yes, the defense sought production

19   of its own client's compelled custodial statements, but it did not invoke Rule 12.2 as a source

20   of entitlement to those statements.

21   What the defense has consistently and clearly argued all along is that the two primary

22   concerns animating Rule 12.2's limitations on disclosure *to the government*, specifically Fifth

23   Amendment concerns and the wasted time and resources of unnecessary derivative-use litigation,

24   warrant similar delayed disclosure here.  Both of these concerns compel unique limitations on

25   the government and, by definition, impose absolutely no limitation on the defense's ability or

26   right to obtain the compelled statements of its own client.  Whatever the reason for Rule 12.2's

27

28

1  concomitant limitation on production to the defense of 12.2 reports,[1] the sole concerns upon

2  which the defense has focused here fall squarely on governmental limitations.  Because these

3  are the only concerns upon which the defense has focused, and because the defense has  not

4  suggested that Rule 12.2 compels production to the defense, it has not misrepresented this rule

5  in any way whatsoever or presented an inconsistent position in this matter.

6         The Court's rebuke to the defense's good faith advocacy, characterizing the defense as

7  "con" artists who engage in "poor advocacy," *see id.* n.2, is completely unfair and unfounded.

8  Rather, the defense has engaged in the most tried-and-true and well-respected approach to legal

9  reasoning imaginable, one that has been common to the multitudinous novel legal issues that

10  have arisen in this case:  When there in no direct legal precedent on point, identify the underlying

11  concerns, analogize to legal precedent and authority in similar circumstances (if possible, those

12  driven by the same or similar concerns), and explain why the proposed result should follow.  It

13  has done so here, and even if the Court disagrees with the merits of the defense's position, it

14  should–at a minimum–correct the order that so unfairly disparages counsel.

15  **C.    Rule 12.2 Doesn't Apply to Competency Reports Either, Thus No Absurd Results
       Obtain.**

16

17         Finally, the Court worries that if it "were to take the defense's argument seriously and

18  withhold Dr. Pietz's notes from the government pursuant to Rule 12.2(c)(2), it likewise shouldn't

19  have turned over Dr. Pietz's competency report to the Government."  DE 407 at 4.  The defense

20  agrees this would be an absurd result; it's just not one that would obtain in this case or any other,

21  no matter how seriously the Court takes the defense's argument.  Critical to understanding why

22  this is so is remembering the timing and posture of this objection.  The government did not

23  request Dr. Pietz's notes until after it chose not to contest the accuracy of Dr. Pietz's competency

24  report and after the Court orally ruled that it was extending Mr. Loughner's commitment because

25  he remained incompetent.  Thus, at the moment of the government's request, there was no

26  pending issue concerning mental health issues.  Indeed, the government, in making its request,

27

28         [1] The Advisory Committee Notes are totally silent on this point.

1  identified none.  Rather, it only said that it would reserve the right to use them as rebuttal against

2  Mr. Loughner at trial.

3      It is because the government has identified no reason for production of the notes other

4  than for trial purposes that the defense's objection has merit.  It is because the government wants

5  these notes for trial that analogizing to Rule 12.2, which governs evidence of mental health

6  examinations intended for introduction at trial, is appropriate.  And it is because a competency

7  report is necessarily used by the court and the parties to determine competency issues that an

8  objection on these  grounds would fail prior to a court's competency determination.  Quite

9  simply, the government didn't contest Dr. Pietz's finding of incompetency; it only asked for the

10  notes after the Court granted *the government's* motion for an extension; and it has offered no

11  reason why it is entitled to Mr. Loughner's compelled statements at this point.  No absurd results

12  follow from the defense's argument that the government is not entitled to these notes it wants

13  only for trial purposes unless and until the defense gives 12.2 notice.

14      Finally, it should be noted that the Court suggested an alternative reason for production,

15  namely that "the Government may have a very legitimate interest in Dr. Pietz's notes to the

16  extent they inform its decision whether to ultimately pursue the death penalty in this case or

17  engage in plea negotiations."  DE 407 at 5. But whatever the government's interest may be in

18  evaluating a potential plea, such interest does not establish a right of access to, or consideration

19  of,  Mr. Loughner's compelled, involuntary statements.

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28  //

1

**CONCLUSION**

2          For the above reasons, the Court should reconsider its order overruling the defense's

3    objection and consider for the first time the arguments actually presented.

4    DATED:   February 21, 2012                    Respectfully submitted,

5                                                  /s/   *Judy Clarke*
                                                   Judy Clarke
6                                                  Clarke & Rice APC

7                                                  Mark F. Fleming
                                                   Law Office of Mark Fleming
8
                                                   Reuben Camper Cahn
9                                                  Ellis M. Johnston III
                                                   Janet Tung
10                                                 Federal Defenders of San Diego, Inc.

11                                                 Attorneys for Defendant Jared Lee Loughner

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   Copies of the foregoing served electronically to:
     Wallace H. Kleindienst,Christina M. Cabanillas,
28   Mary Sue Feldmeier