1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 11cr0187 TUC LAB |
| Plaintiff, | **ORDER RE: MOTION TO RECONSIDER ORDER OVERRULING OBJECTIONS TO PRODUCTION OF PSYCHOLOGIST'S NOTES** |
| vs. | |
| Jared Lee Loughner, | |
| Defendant. | |

The defense has asked the Court to reconsider its February 16 order overruling its objections to the Government receiving copies of Dr. Pietz's personal notes that accompanied her latest competency report.[1]  (*See* Dkt. No. 407.)  In that order, the Court construed one of the defense's arguments to be that Fed. R. Crim. P. 12.2 "bars disclosure" of the notes, and the Court gave three reasons why that can't be so.  The defense now says it was misunderstood.  Its argument wasn't that Rule 12.2 applies *directly* to Dr. Pietz's notes (because it doesn't), but that it applies *analogously*.  In its own words:

> What the defense actually argued, however, and the Court has
> yet to consider, is whether 'the concerns animating Rule 12.2's
> disclosure limitations warrant the same treatment for the notes
> requested by the government now.'

(Dkt. No. 408 at 1.)  In other words, the defense meant only to mine Rule 12.2 for some

---

[1] The Court should say that the Government has already received the notes.   The Court emailed them to counsel on the afternoon of February 16, 2012, after it emailed its order to the docketing clerk in Arizona for filing.

1   principles that would serve its goal of keeping Dr. Pietz's notes from the Government.

2          What are those principles?  The first is the Defendant's Fifth Amendment right not to

3   have incriminating statements he made to Dr. Pietz used against him at trial.  Here, the

4   defense imputes a singular interest in the notes to the Government — rebutting mental health

5   evidence presented by the defense at trial — and argues that disclosure for that purpose is

6   premature because it hasn't even given notice, as required by Rule 12.2, of its intent to make

7   an issue out of the defendant's mental health at trial.  It relies on *United States v. Beckford*,

8   962 F.Supp. 748, 761 (E.D. VA 1997), which recognized the "the need to strike a balance

9   between securing a defendant's Fifth Amendment rights and affording the Government a

10  meaningful right of rebuttal on mental health issues."  The second principle is that the Court

11  should avoid unnecessary derivative use issues that might arise because of the premature

12  disclosure of Dr. Pietz's notes.  Here, the defense relies on the Advisory Committee's notes

13  to the 2002 amendments to Rule 12.2, in which it recognized that "if the government obtains

14  early access to the accused's statements, it will be required to show that it has not made any

15  derivative use of that evidence.  Doing so can consume time and resources."  In fact, the

16  Court's initial reaction to the Government's request for Dr. Pietz's notes was to withhold them

17  for this very reason.[2]

18         As to the first principle, the Court reiterates that from the moment the defendant's

19  competency was called into question, it has reassured the defense that none of his

20  statements during the course of his treatment may affirmatively be used against him at trial.

21  (*See, e.g.,* Dkt. Nos. 175, 206.)  The Court appreciate's the defense's clarification of its

22  argument, but it still finds the present posture of this case — competency restoration — to

23  be too far removed from the concerns of Rule 12.2 for that Rule to have any force, even by

24  analogy.  *See Nguyen v. Garcia*, 477 F.3d 716, 726 (9th Cir. 2007) ("Not only are

25  competency hearing entirely distinct in purpose from the guilt phase of trial, but competency

26  _____

27       [2] "It just strikes me that it's probably much easier for the Government and certainly easier for me if you just don't have access to things that he may have said about the charges against him or historical events that Dr. Pietz discussed with him.  Then you don't — if you

28  don't have it, you don't have any obligation to explain the things that you want to offer in evidence if the case comes to trial were derived from privileged materials." (Tr. at 14:2–9.)

1    hearings do not invoke the same concerns of self-incrimination . . . that are relevant during

2    the guilt and penalty phases of trial."); Fed. R. Crim. P. 12.2 Advisory Committee notes ("This

3    rule does not deal with the issue of mental competency to stand trial.")

4            As to the second principle, the potential value of Dr. Pietz's notes to the Government

5    *at the present time* outweighs any tax on the Court's resources that might flow from having

6    to hold a *Kastigar*-like hearing to determine whether the Government is attempting to make

7    illegitimate use of the notes.  While the Government may not have requested the notes until

8    *after* the Court extended the defendant's commitment to FMC Springfield on February 6,

9    2012, and even then only cited its interest in rebutting mental health evidence at trial[3], the

10   Court can think of several other reasons for disclosing the notes now.  It gave two of those

11   reasons when it overruled the defense's objections to disclosure: the notes may inform the

12   Government's decision "whether to ultimately pursue the death penalty in this case or

13   engage in plea negotiations." (Dkt. No. 407 at 5.)  Here is another reason: there may be a

14   contested competency hearing in this case, and both sides should have as much information

15   as possible going into that hearing.  Indeed, the defense has already signaled that it will

16   contest any finding that the defendant is competent to stand trial.  (*See* Dkt. No. 360 at 5 n.3

17   ("Failure to videotape these competency interviews will result in the permanent loss of

18

19   [3] This is the defense's characterization of the Government's stated interest in the notes, and it is inaccurate.  When the Government initially requested the notes, it did not give any reason for its interest. (Tr. at 12:20–23.)  The Government did subsequently agree with

20   the Court that the defendant's statements could not be used affirmatively against him at trial, but that does *not* mean it claimed only to want the notes for rebuttal purposes.  To the

21   contrary, the Government's stated position was simply that the notes aren't privileged, in which case it doesn't have to give any additional reason for their production:

22

23          Ms. Feldmeier: Well, we wouldn't use any of his statements in
                the case against him.  That is true, your honor.  I hear where
                you're coming from.
24

25          The Government doesn't believe any of that information that he
                supplies to Dr. Pietz is privileged.  We do think that we're entitled
                to receive it.
26

27          I hear what you're saying, but the only way we would be able to
                use that evidence anyway is if we introduced it as a statement
                made by the defendant.  It would only be –
28

(Tr. at 14:11–19.)

1   potentially critical evidence, and undermine the accuracy of the ultimate determination of

2   what are likely to be highly contested issues.").)

3          The Court should also address the defense's concern that the Court's order unfairly

4   disparages their advocacy.  In their original objection to disclosure, the defense cited Rule

5   12.2(c)(2) - "Disclosing Results and Reports of Capital Sentencing Examination."  This is

6   what the defense said:

7               Rule 12.2's procedures are designed to prevent premature
                disclosure to the government of precisely the type of psychiatric
8               evidence at issue here. *See* Fed. R. Crim. P. 12.2(c) (results of
                a court-ordered examination concerning mental condition
9               relevant to capital sentencing 'must be sealed and must not be
                disclosed to any attorney for the government' unless the
10              defendant is found guilty of a capital crime and provides notice
                of his intent to offer expert mental condition evidence at
11              sentencing).

12  (Dkt. No. 401 at 3–4.)  The Court took issue with this because the defense excised three

13  important words from the Rule.  The Rule doesn't just keep the results of a capital sentencing

14  examination from any "attorney for the government"; it keeps that material from "any attorney

15  for the government *or the defendant.*"  Operating on the assumption that the defense's

16  argument was that Rule 12.2 applied directly to Dr. Pietz's notes, which it obviously doesn't,

17  this seemed an unprofessional omission, and the Court said so.

18         Now, the defense clarifies that its own request for Dr. Pietz's notes was not based on

19  Rule 12.2(c)(2), and that it merely sought to analogize to the Rule given that no legal

20  precedent or authority speaks directly to the present issue.  Moreover, the defense's only

21  interest is in limiting disclosure to the Government, and the Fifth Amendment and efficiency

22  principles it relies on don't really cut both ways.  Or, as the defense puts it, the principles

23  compel "unique limitations on the government and, by definition, impose absolutely no

24  limitation on the defense's ability or right to obtain the compelled statements of its own

25  client." (Dkt. No. 408 at 5.)  That's all fine, but it's still wrong to claim that the concern of Rule

26  12.2(c)(2) limits disclosure of Dr. Pietz's notes to the Government when: (1) the Rule applies

27  to the results of a capital sentencing examination that is ordered after the defendant gives

28  notice that he intends to introduce expert evidence relating to a mental disease or defect in

- 4 -

1   the punishment phase of a capital case; and (2) the Rule also commands that the results of

2   the examination are also to be withheld from counsel for the defendant.

3        By labeling the citation "a transparent attempt to con the Court" the Court didn't mean

4   to disparage counsel, or characterize them categorically as con artists.  They have been

5   appointed in this case because they are experienced and excellent lawyers, and the Court

6   has never doubted that.   It does, though, thoroughly reject their present analogy to Rule

7   12.2.  Sometimes, when there is no direct legal authority for an argument that means *there*

8   *is no argument*.

9        There is one final point to make.  When the Government asked for Dr. Pietz's notes

10  at the February 6 hearing, the defense objected without offering a specific argument.  (Tr.

11  at 13:14–21.)  At that point, the Court engaged counsel for the Government, reaffirmed its

12  previous rulings regarding the admissibility of the defendant's statements while being

13  restored to competency, and agreed to turn the notes over to both sides. (Tr. at 15:24–16:2.)

14  Then, the *Government*, not the defense, raised the possibility that the notes may contain

15  information covered by the attorney-client privilege.  (Tr. at 16:4–10.)  The Court proposed

16  that the defense receive and review the notes first, and then lodge with the Court any

17  objections to disclosure *based on the attorney-client privilege*.  (Tr. at 16:11–20.)   It

18  subsequently said the defense could have "a week to raise any objections," but in context

19  it was clear that the Court wasn't inviting any renewal of previously overruled objections. (Tr.

20  at 17:11–16.)  The defense ignored this directive.  Rather than object to the disclosure of

21  specific pages or passages on the basis of the attorney-client privilege, the defense objected

22  wholesale to the disclosure of Dr. Pietz's notes based on the defendant's 5th and 6th

23  Amendment rights, as well as the animating concerns of Rule 12.2.  All of the latter

24  arguments were previously rejected by the Court, and the Court stands by its earlier rulings.

25  //

26  //

27  //

28  //

1    The motion for reconsideration is **DENIED**.  The Government may have all of Dr.

2  Pietz's personal notes except for those that relate to her conversations with defense counsel.

3    **IT IS SO ORDERED.**

4

5  DATED: February 24, 2012

6

7  **HONORABLE LARRY ALAN BURNS**
   United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11cr0187-TUC LAB