Judy Clarke
Clarke and Rice, APC
1010 2nd Avenue, Suite 1800
San Diego, CA 92101
(619) 308-8484

Mark Fleming
Law Office of Mark Fleming
1350 Columbia Street, #600
San Diego, CA 92101
(619) 794-0220

Reuben Camper Cahn
Ellis Johnston III
Janet C. Tung
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101
(619) 234-8467

Attorneys for Defendant Jared Lee Loughner

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>JARED LEE LOUGHNER,<br><br>Defendant. | Case No. CR 11-0187-TUC LAB<br><br>**DEFENDANT'S OBJECTIONS TO THE PRODUCTION OF PSYCHOLOGIST NOTES TO THE PROSECUTION** |

For the reasons stated below, the defense objects to the government's July 17, 2012, Motion for Production of Psychologist's "Personal Notes."

**BACKGROUND**

Mr. Loughner is currently committed to MCFP Springfield ("Springfield") for restoration of competency under 18 U.S.C. § 4241(d)(2), where he is being treated by BOP psychologist Dr. Christina Pietz. In addition to the treatment notes in Mr. Loughner's file maintained by the Springfield facility, Dr. Pietz keeps a set of "personal notes" about her clinical interactions with

him. The government has previously sought, and the Court has ordered, production of these notes over defense objection.

The government now seeks production of Dr. Pietz's personal notes from February 8 to June 7, 2012. *See* Doc. 446. The defense is concerned that production of the notes may result in their adverse use against Mr. Loughner in the government's decision whether to seek the death penalty, in contravention of the Court's previous rulings. *See* Amended Order Denying Motion to Reconsider (Doc.175); Transcript of Feb. 6, 2012 hearing at 14-15. The defense makes the following objections.

## OBJECTIONS

**A.     Disclosure of the notes are improper for the reasons raised in previous motions**

The defense hereby incorporates by reference the objections made in the motions concerning the disclosure to the government of Dr. Pietz's personal notes. *See* Def. Obj. to the Production of Psychologist Notes to the Prosecution (Doc. 401); Def. Mtn to Reconsider Order Overruling Objections (Doc. 408).

**B.     Use of the notes in the death decision violates due process**

The government's use of Dr. Pietz's personal notes in its decision about whether to seek the death penalty presents additional concerns. This is true because Mr. Loughner's participation in treatment has been undertaken under the terms set forth by this Court, which included explicit limitations on the use of evidence created in the competency process.

In its previous rulings, this Court has been careful to narrowly limit the scope of permissible uses of the fruits of the evaluation and restoration process. In its March 24 order, the Court ruled:

> [T]he Court doesn't need to restrict the Government's use of the clinical interview recordings because the law already does. If the defendant is found competent to stand trial, 18 U.S.C. § 4241(f) forbids the use of that finding against him at trial. In the statute's words, such a finding "shall not prejudice the defendant in raising the issue of his insanity as a defense to the offense charged, and shall not be admissible as evidence in a trial for the offense charged." Moreover, Federal Rule of Criminal Procedure 12.2(c)(4) also provides that no statement made by the defendant in the course of a competency exam, and no other fruits of the statement, may be admitted into evidence against the defendant, unless he relies on an insanity defense at trial or introduces expert evidence regarding his mental state in a capital sentencing hearing. *See* Fed. R. Crim. P.

> 12(c)(4)(A)(B). In combination, ***these provisions protect the defendant from the adverse use of what he says to an examiner during a clinical interview***.
>
> As the defense notes, *Estelle v. Smith* prohibits the content of a competency examination from being used for a "much broader objective" than determining competency to stand trial, and ***explicitly cautions against uses that are "adverse" to the subject***. 451 U.S. 464, 465 (1981). *Estelle* sustained Fifth and Sixth Amendment challenges to a psychiatrist's testimony in the sentencing phase of a capital case based on that psychiatrist's pre-trial examination of the defendant to determine competency. But *Estelle* explicitly said "no Fifth Amendment issue . . . arises" if the examiner's function is limited to assessing a defendant's competency.

March 24, 2011 Order at 3-4 (Doc. 175) (emphases added). More recently, in the last round of litigation about disclosure of the Dr. Pietz's personal notes, the Court referenced its earlier rulings in discouraging the government from seeking disclosure:

> We had early-on litigation about what the scope of discussions could be and what would be admissible. I've made earlier rulings on that.
>
> \*   \*   \*
>
> . . . Of course, that was the subject of a number of motions that were made early on in this case. I tried to accommodate that in the orders by assuring defense counsel that theses would be subject to privilege and that they wouldn't be affirmatively admissible, if at all. . . . But . . . if you want all of it, I'd be inclined to give it to both counsel ***mindful that I've issued orders of the scope of use that can be made here. It's very, very limited.*** He's talking to her for the purposes of treatment. It's privileged to that extent.

Transcript of Feb. 6, 2012 hearing at 13-15 (emphasis added).

Significantly, the Court's assurances about the limited use of compelled statements were made *before* the latest restoration period (February 8 to June 7) for which the government seeks Dr. Pietz's notes. Indeed, the Court advised that disclosures during those sessions would be "protect[ed] . . . from . . . adverse use," that Mr. Loughner's participation was "for the purposes of treatment" only, and that his statements were subject to a "very, very limited" scope of use—which certainly does not encompass the death decision. The decision whether to seek the death penalty is plainly an "adverse use" that should be barred by the Court's rulings.

Under *Doyle v. Ohio*, 426 U.S. 610 (1976), and *Johnson v. United States*, 318 U.S. 189 (1943), it is "fundamentally unfair and a violation of due process" to assure a defendant that a particular course of action (remaining silent in *Doyle* and *Johnson*, participating in treatment

3

1  here) "will carry no penalty" and then to turn around and allow the prosecution to use that action
2  against him. *See Doyle*, 426 U.S. at 618-19 & n.9; *Johnson*, 318 U.S. at 196-97. Particularly
3  when the assurances provided have been made by a court, the Supreme Court has termed this to
4  be a species of "entrap[ment]." *See Johnson*, 318 U.S. at 197 ("An accused having the assurance
5  of the court that his claim of privilege would be granted might well be entrapped if his assertion
6  of the privilege could then be used against him."). This case is no different. It would be
7  fundamentally unfair to inform Mr. Loughner that any statements he might make to Dr. Pietz
8  were protected from "adverse" use, only to allow those statements to be used against him by the
9  government in its death penalty decision.

10  It is true that the Court has stated that the government "may have a very legitimate interest
11  in Dr. Pietz's notes to the extent they inform its decision whether to ultimately pursue the death
12  penalty in this case or engage in plea negotiations." *See* Feb. 16, 2012 Order at 5 (Doc. 407);
13  *see also* Feb. 27, 2012 Order at 3 (Doc. 409) (same). Those remarks, however, addressed a
14  different issue—whether the government's interest in the notes was ripe. The defense argued
15  that the government's interest in using the notes for trial and sentencing litigation was premature.
16  It was in the context of addressing that argument that the Court suggested that the government
17  "may have" a legitimate interest in considering the notes in its death penalty authorization
18  process. In other words, the Court offered the death penalty decision as a presently existing
19  purpose to which the notes might be relevant; it did not explicitly decide whether their use for
20  that purpose was in fact consistent with the Fifth Amendment. Indeed, it had no reason to decide
21  the second question because the issue of adverse use in the death penalty decision had not been
22  raised by the government. Thus, these remarks could not fairly be construed as a Fifth
23  Amendment ruling, especially since such an interpretation would contravene the Court's actual
24  Fifth Amendment ruling prohibiting adverse use under *Estelle*.

25  In any event, such use of compelled statements would violate both this Court's basic
26  approach, as described above, as well as the limitation of their use to competency proceedings
27  as set forth in *Estelle*, the case cited and relied on by the Court's order. *See* March 24, 2011
28  Order at 4. The notion that statements made under the rubric of a mental-healthcare

relationship—in the course of court-ordered *treatment*—could be used to justify a decision to seek the death penalty offends basic notions of fairness.

## CONCLUSION

The Court should deny the government's motion. In the alternative, the court should limit the government's use of the notes to exclude consideration in the course of the death penalty decision.

Respectfully submitted,

*s/ Judy Clarke*

DATED: July 17, 2012

JUDY CLARKE
MARK FLEMING
REUBEN CAMPER CAHN
ELLIS JOHNSTON III
JANET TUNG
Attorneys for Jared Lee Loughner

Copies of the foregoing served electronically to:
Wallace H. Kleindienst, Christina M. Cabanillas,
Mary Sue Feldmeier, Bruce Ferg