# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America, | CASE NO. 11cr0187 TUC LAB |
| Plaintiff, | **ORDER RE: STAR PUBLISHING COMPANY'S MOTION TO VACATE PROTECTIVE ORDER** |
| vs. | |
| Jared Lee Loughner, | |
| Defendant. | |

On February 15, 2013, Star Publishing Company, publisher of *The Arizona Daily Star*, filed a motion to vacate a protective order enjoining the Pima County Sheriff from releasing to the public any materials related to its investigation of this case. The protective order was entered on March 23, 2011, and the Court denied a motion to modify it on May 26, 2011.

The Court has already indicated that it is inclined to grant the motion to vacate. As it explained in its recent order granting Star Publishing leave to intervene to file the motion, the Government initially sought the protective order "until the trial in this matter is complete," and the Court entered it largely out of concern for Mr. Loughner's right to a fair trial under the Sixth Amendment. (Doc. Nos. 157, 220.) Now that Mr. Loughner has pleaded guilty and been sentenced, the Government's time line has expired and the Court's guiding concern has vanished. There is no enduring justification for the protective order, from the Court's perspective.

The Government does not oppose Star Publishing's motion, understanding the Court's point that vacating the protective order leaves open the question—to be resolved in an

Arizona court—whether the investigation materials must be released under Arizona's own public records law. Mr. Loughner, on the other hand, defers to the Court's discretion, but asks that it remain mindful of the federal nature of the prosecution, the *joint* federal-state nature of the investigation, the privacy interests of the victims, and his own interest in not suffering a renewed backlash for his crimes.

The Court entered the protective order, as it just said, to protect Mr. Loughner's right to a fair trial. This is what it said originally:

> The prosecution of Mr. Loughner on federal criminal charges is well under way, and this Court has an ongoing and indubitable obligation under the Sixth Amendment to ensure that he receives a fair trial. This obligation surely gives the Court the authority to take whatever precautionary measures are necessary to protect his fair trial rights. In addition to the constitutional authority for issuing a protective order, the District of Arizona has a Local Criminal Rule, Rule 57.2, that authorizes the Court, "[i]n a widely publicized or sensational criminal case," to "issue a special order governing such matters as extrajudicial statements by parties and witnesses likely to interfere with the rights of the accused to a fair trial by an impartial jury." This is such a case. Even to the extent that Arizona's public records law might authorize disclosure of investigative materials in this case, Mr. Loughner's Sixth Amendment fair trial rights, and the Local Rule, clearly trump the Arizona law. (Doc. No. 169 at 3–4.)

The Court also recognized that the investigation materials aren't judicial records to which there is a presumptive right of access, that the federal case against Mr. Loughner held jurisdictional priority over any state case, and that any of the Sheriff's investigation materials were equally those of the Government pursuant to their joint investigation. But these were accessory points in support of the protective order; they weren't themselves the basis for entering it. Mr. Loughner's right to a fair trial was.

Considering that this right is no longer on the line, Star Publishing's motion to vacate the protective order is **GRANTED**, with the following provisos. First, the Court reiterates that it is taking no position whatsoever on the status of the materials under Arizona's public records law. Maybe they must be handed over, but maybe there is some enduring justification for keeping them from the public's view. That is for an Arizona court to decide,

if it comes to that.[1]  Second, the protective order covers only the investigation materials in the Sheriff's possession.  Yes, those were obtained pursuant to a joint federal-state investigation, but they are the Sheriff's materials nonetheless.  The protective order is **VACATED**.  *This* Court will no longer regulate the Sheriff's release of materials related to the investigation of this case.

Finally, Star Publishing also asks the Court to make clear that nothing in its orders should be construed as preventing or enjoining the FBI from complying with a FOIA request. The Court isn't quite sure what to make of that, but suffice it to say that apart from the documents it has ordered sealed (which it is in the process of inventorying, and some of which it will unseal), the Court has placed no restrictions on the release of information related to this case.  If the FBI receives a FOIA request, it can process it like any other FOIA request it receives.

**IT IS SO ORDERED.**

DATED: February 25, 2013

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[1] Star Publishing says "the Court should remove any confusion as to whether records in the custody of the Sheriff's Department are subject to Arizona's public records statute," the implication being that they must be released. (Doc. No 492 at 7.)  The Court simply doesn't see it that way, as it said when it originally entered the protective order and when it recently granted Star Publishing leave to intervene.  Yes, materials related to a police investigation are generally subject to Arizona's public records law, but confidentiality and privacy concerns can trump that general rule.